1  LIEFF CABRASER HEIMANN &
   BERNSTEIN, LLP
2  Jonathan D. Selbin (State Bar No. 170222)
   Email: jselbin@lchb.com
3  250 Hudson Street, 8th Floor
   New York, NY 10013
4  Telephone: (212) 355-9500
   Facsimile: (212) 355-9592

   SIRI & GLIMSTAD LLP
5  Aaron Siri
   (*pro hac vice* to be filed)
6  LIEFF, CABRASER, HEIMANN &
   BERNSTEIN, LLP
   Email: aaron@sirillp.com
   Daniel M. Hutchinson
7  120 East 31st Street
   (State Bar No. 239458)
   New York, New York 10016
   Email: dhutchinson@lchb.com
8  Telephone: (212) 532-1091
   275 Battery Street, 29th Floor
   Facsimile: (646) 417-5967
   San Francisco, California 94111-3339
9  Telephone: (415) 956-1000
   PARISI & HAVENS LLP
   Facsimile: (415) 956-1008
   David C. Parisi
10 (State Bar No. 162248)
   Email: dcparisi@parisihavens.com
11 212 Marine Street, Unit 100
   Santa Monica, CA 90405
12 *Attorneys for Plaintiff and the Proposed
   Class*
   Telephone: (818) 990-1299
   Facsimile: (818) 501-7852
13

14

15                **UNITED STATES DISTRICT COURT**
                **CENTRAL DISTRICT OF CALIFORNIA**
16                      **SOUTHERN DIVISION**

17  JEFFREY A. THOMAS,                    Case No.
    individually and on behalf of all
18  others similarly situated,
                                          **CLASS ACTION COMPLAINT FOR
19             Plaintiff,                 DAMAGES AND INJUNCTIVE
                                          RELIEF PURSUANT TO 47 U.S.C.
20        v.                              § 227 *ET SEQ*. (TELEPHONE
                                          CONSUMER PROTECTION ACT)**
21  DUN & BRADSTREET
    CREDIBILITY CORP.,                    CLASS ACTION
22
               Defendant.
23                                        **DEMAND FOR JURY TRIAL**

24

25       Plaintiff Jeffrey A. Thomas ("Plaintiff"), individually and on behalf of all

26  others similarly situated, makes the following allegations and claims against

27  Defendant Dun & Bradstreet Credibility Corporation ("DBCC" or "Defendant"),

28

1223421.3                              - 1 -

upon his personal knowledge, the investigation of his counsel, and information and belief as follows:

## NATURE OF ACTION

1. Plaintiff brings this action against Defendant for violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA"), the Federal Communication Commission rules promulgated thereunder, 47 C.F.R. § 64.1200 ("Rules"), and California Business & Professions Code §§ 17200, *et seq.*, the Unfair Competition Law ("UCL"), by Defendant.  DBCC violated the TCPA by contacting Plaintiff and others similarly situated on their cellular telephones via an "automatic telephone dialing system," as defined by 47 U.S.C. § 227(a)(1), without his prior express consent within the meaning of the TCPA.

2. Plaintiff brings this action for damages, and other legal and equitable remedies, resulting from Defendant's conduct in violation of the TCPA, Rules, and UCL.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005 (hereinafter referred to as "CAFA") codified as 28 U.S.C. § 1332(d)(2).  The matter in controversy exceeds $5,000,000, in the aggregate, exclusive of interest and costs, as each member of the proposed Class of thousands is entitled to up to $1,500.00 in statutory damages for each call that has violated the TCPA.  Further, Plaintiff alleges a national class, which will result in at least one Class member from a different state.

4. This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 and 47 U.S.C. § 227 *et seq.*

5. This Court has personal jurisdiction over DBCC because, as a corporation with its headquarters located in California, it has established minimum contacts showing it has purposefully availed itself to the resources and protection of the State of California.

6. Venue is proper in the United States District Court for the Central District of California, because DBCC's corporate headquarters is in this District, because DBCC is deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced, and because DBCC's contacts with this District are sufficient to subject it to personal jurisdiction.

**PARTIES**

7. Plaintiff Jeffrey A. Thomas is and at all times mentioned herein was, an individual citizen of the State of Oregon.

8. Defendant DBCC is a Delaware corporation with a principal place of business at 22761 Pacific Coast Highway, Malibu, California 90265. On information and belief, DBCC is a leading seller of credit building and credibility solutions for businesses.

**THE TELEPHONE CONSUMER PROTECTION ACT OF 1991 (TCPA), 47 U.S.C. § 227**

9. In 1991, Congress enacted the TCPA,[1] in response to a growing number of consumer complaints regarding certain telemarketing practices.

10. The TCPA regulates, among other things, the use of automated telephone equipment, or "autodialers." Specifically, the plain language of section 227(b)(1)(A)(iii) prohibits the use of autodialers to make any call to a wireless number in the absence of an emergency or the prior express consent of the called party.[2]

11. The FCC, the agency Congress vested with authority to issue regulations implementing the TCPA, has defined prior express consent in 47 C.F.R. § 64.1200(f)(8) as "an agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the

---

[1] Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, 105 Stat. 2394 (1991), codified at 47 U.S.C. § 227 (TCPA). The TCPA amended Title II of the Communications Act of 1934, 47 U.S.C. § 201 *et seq.*
[2] 47 U.S.C. § 227(b)(1)(A)(iii).

1223421.3 - 3 -

person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice, and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered."

12. Under the TCPA, the burden is on defendants to demonstrate prior express consent.

13. Regardless of whether there exists prior express consent, the FCC rules allow consumers to make "do-not-call" requests that companies must track in internal do-not-call lists. 47 C.F.R. § 64.1200(c); 16 C.F.R. § 310.4(b)(1)(iii)(B). Telemarketers must provide consumers with an automated opt-out mechanism that "must automatically record the called person's number to the seller's do-not-call list and immediately terminate the call." 47 C.F.R. 64.1200(b)(3). This mechanism was enacted to empower consumers to "stop receipt of unwanted autodialed or prerecorded telemarketing calls to which they never consented."[3]

14. According to findings by the FCC, automated calls are prohibited because, as Congress found, such calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient. The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used.[4]

15. While telemarketing calls to residential lines are exempted where there exists an "established business relationship," no such exemption applies to telemarketing calls to cell phones. *See* 47 C.F.R. § 64.1200(f)(5).

---

[3] Telephone Consumer Protection Act of 1991, Final Rule, 77 Fed. Reg. 34233, 34239 (June 11, 2012).

[4] *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014 (2003).

1223421.3 - 4 -

## LIABILITY FOR TELEMARKETING CALLS UNDER THE TCPA

16. Under the TCPA, "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations."[5]

17. Calls placed by a third party on behalf of that company are treated as if the company itself placed the call.[6]

18. The calls at issue in this case were made by and/or for the benefit of DBCC. Because these calls were made by or on behalf of DBCC, it bears the responsibility for any violations of the TCPA, even if DBCC did not directly place the calls. DBCC is also responsible for the illegal actions of their agents and are also responsible for any illegal actions conducted in the course of any joint venture with any third party.

## TCPA AUTODIALERS

19. The TCPA further provides that "[t]he term 'automatic telephone dialing system' means equipment which has the capacity—(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." (47 U.S.C. 227(a)(1)).

20. The FCC has interpreted an automatic telephone dialing system as follows:

> Under the TCPA, the term "automatic telephone dialing system" or "autodialer" is defined as "equipment which has the capacity – (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." …

---

[5] *See* Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, Memorandum and Order, 10 FCC Rcd. 12391, 12397, ¶ 13 (1995).

[6] *See* Rules and Regulations Implementing the Telephone Consumer Protection Act; Request of State Farm Mutual Automatable Insurance Company for Clarification and Declaratory Ruling, Declaratory Ruling, 20 FCC Rcd. 13664, 13667, ¶ 7 (2005).

1223421.3                                          - 5 -

§ 227(a)(1). *The Commission has emphasized that this definition covers any equipment that has the specified capacity to generate numbers and dial them without human intervention regardless of whether the numbers called are randomly or sequentially generated or come from calling lists. See* Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014, 14092, para. 133 (2003) (2003 TCPA Order). The Commission has, for example, concluded that the scope of that definition encompasses "hardware [that], when paired with certain software, *has the capacity to store or produce numbers and dial those numbers at random, in sequential order, or from a database of numbers*," in light of, among other things, its conclusion that "the purpose of the requirement that equipment have the 'capacity to store or produce telephone numbers to be called' is to ensure that the prohibition on autodialed calls not be circumvented." *Id.* at 14091-93, paras. 131, 133.

*Soundbite TCPA Ruling*, 15 FCC Rcd. 15391 at ¶ 2, n.5 (emphasis added.)

## FACTUAL ALLEGATIONS

**I.     Plaintiff Thomas**

21.    At all times relevant, Plaintiff Thomas was an individual residing in the State of Oregon. Plaintiff Thomas is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

22.    Plaintiff never provided permission to DBCC to call his cellular telephone nor to contact him regarding any services offered by DBCC.

23. Throughout 2013, Plaintiff received phone calls from Defendant on his cellular phone. DBCC repeatedly contacted Plaintiff Thomas on his cellular telephone.

24. On several occasions, Plaintiff Thomas requested that DBCC cease calling him and instructed DBCC to place him on DBCC's do-not-call list. The calls nonetheless persisted.

25. On October 7, 2013, Defendant again called Plaintiff Thomas on his cellular telephone.

26. The following day, Plaintiff Thomas sent DBCC a cease-and-desist letter, which he also provided to the FCC, the State of California Department of Justice, and the Oregon Department of Justice. A true and correct copy of that letter is attached hereto as Exhibit A.

## II. DBCC's Robocalling Campaign

27. DBCC telemarkets its credit related and other services on a national scale either directly or through sophisticated telemarketing sales agents such as OLC, Alorica Inc., Infinity Client Solutions, and Optima Communications International Inc.

28. DBCC is, and at all times mentioned herein was, a "person," as defined by 47 U.S.C. § 153(39).

29. On information and belief, the calls were placed using a predictive dialer. There was a pause after Plaintiff Thomas picked up the phone and before someone came on the line, a characteristic of an automated dialer. All telephone contact by DBCC to Plaintiff and Class Members on their cell phones therefore occurred via an "automatic telephone dialing system," as defined by 47 U.S.C. § 227(a)(1).

30. DBCC's telephone calls to Plaintiff's and Class Members' cell phones were not "for emergency purposes" as described in 47 U.S.C. § 227(b)(1)(A).

1    31.    DBCC's telephone calls to Plaintiff's and Class Members' cell phones
2 placed by an "automatic telephone dialing system" for non-emergency
3 telemarketing purposes and in the absence of Plaintiff's and Class Members' prior
4 express consent violated 47 U.S.C. § 227(b)(1)(A).
5    32.    DBCC acted willfully, knowingly, and without regard to the TCPA
6 when it initiated the calls described above.  Plaintiff and his counsel's pre-filing
7 investigation determined that DBCC has continued to place automated calls to
8 Plaintiff and Class Members without their prior express consent despite scores of
9 complaints about the harassing, inconvenient, and illegal nature of DBCC's calls.
10 (E.g., "they keep calling my cell phone." (Feb. 10, 2012); "just won't stop
11 calling . . ." (Aug. 21, 2012); "I still receive calls from these clowns. Wish there
12 was a law . . ." (Jul. 10, 2012).)
13    33.    On June 20, 2013, the Wall Street Journal reported that "Brian
14 Shappell, a government-affairs liaison for the National Association of Credit
15 Management, a credit-industry advocacy group representing more than 15,000
16 business-credit and financial professionals world-wide, said Dun & Bradstreet
17 Credibility's marketing has prompted numerous complaints from business owners
18 to lawmakers and state agencies around the country" and noted hundreds of
19 complaints to the Federal Trade Commission related to telemarketing of one of
20 DBCC's services.
21    34.    Sophisticated telemarketers such as DBCC and its sales agents require
22 sophisticated phone systems that are capable of storing large amounts of phone
23 numbers and data regarding each phone number, assuring that their employee
24 telemarketers are being fully utilized, managing the large numbers of telemarketing
25 calls made during each day, and keeping track of each call as well as the
26 performance and outcome of each call for future telemarketing purposes.  Hence,
27 sophisticated telemarketers such as DBCC and its sales agents use autodialers, such
28 as the StrataDial VC2 phone system, which not only have the minimal ability to

1  store phone numbers and dial them automatically, but also the capacity to manage a
2  national telemarketing campaign.

3      35.  DBCC's autodialers have the capacity to store, produce, and/or call
4  randomly or sequentially generated numbers.  For example, the instruction manual
5  for DBCC's StrataDial VC2 phone system confirms that DBCC's autodialer
6  "allows" and "enables" DBCC to: (1) import, create, and store a "Sequential Call
7  List"; and (2) make "outbound predictive calls."  DBCC's autodialers accordingly
8  automatically dials phone numbers and route calls to DBCC's agents based on
9  predefined criteria.  The Manual therefore confirms that D&D's autodialer has the
10 capacity to: store telephone numbers, produce telephone numbers, produce numbers
11 randomly, produce numbers sequentially to be dialed and dial such numbers
12 automatically, generate numbers and dial them without human intervention,
13 generate numbers from calling lists and dial them without human intervention,
14 generate numbers randomly and dial them without human intervention, generate
15 numbers sequentially and dial them without human intervention, store numbers and
16 dial those numbers from a database of numbers, store numbers and dial those
17 numbers at random, store numbers and dial those numbers sequentially, produce
18 numbers and dial those numbers from a database of numbers, produce numbers and
19 dial those numbers at random, produce numbers and dial those numbers
20 sequentially, produce telephone numbers to be called using a sequential number
21 generator and to dial such numbers, and/or to produce telephone numbers to be
22 called using a sequential number generator and to dial such numbers.

23     36.  The phone system that called Plaintiff and Class Members is a
24 predictive dialer.

25     37.  The phone system that called Plaintiff and Class Members is an
26 autodialer.

27
28

## CLASS ACTION ALLEGATIONS

38. Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully stated herein.

39. Plaintiff brings this action individually and on behalf of all other persons similarly situated (hereinafter referred to as "the Class") pursuant to Federal Rule of Civil Procedure 23.

40. Plaintiff proposes the following Class definition, subject to amendment as appropriate:

> All persons within the United States who received a non-emergency telemarketing call from or on behalf of DBCC to a cellular telephone through the use of an automatic telephone dialing system.

Collectively, all these persons will be referred to as "Class Members." Plaintiff represents, and is a member of, the Class.

41. Excluded from the Class are: all persons who did not release their cellular phone number to DBCC and state that DBCC may place telemarketing calls to their cellular telephones; DBCC and any entities in which DBCC has a controlling interest; the DBCC's agents and employees; and any Judge to whom this action is assigned.

42. Plaintiff does not know the exact number of members in the Class, but Plaintiff reasonably believes Class Members number, at minimum, in the tens of thousands.

43. Plaintiff and all members of the Class have been harmed by the acts of the Defendant, because their privacy has been violated, they were subject to annoying and harassing calls that constitute a nuisance, and they were charged for incoming calls.

44. This Class Action Complaint seeks injunctive relief and money damages.

1223421.3

- 10 -

45. The joinder of all Class Members is impracticable due to the size and relatively modest value of each individual claim.

46. Additionally, the disposition of the claims in a class action will provide substantial benefit to the parties and the Court in avoiding a multiplicity of identical suits.

47. Further, the Class can be identified easily through records maintained by DBCC and/or its telemarketing agents.

48. There are well defined, nearly identical, questions of law and fact affecting all parties.

49. The questions of law and fact, referred to above, involving the class claims predominate over questions which may affect individual Class Members.

50. Such common questions of law and fact include, but are not limited to, the following:

    a. Whether Defendant used an automatic telephone dialing system in making telemarketing calls to Class Members' cell phones;

    b. Whether Defendant's conduct was knowing and/or willful;

    c. Whether Defendant is liable for statutory damages; and

    d. Whether Defendant should be enjoined from engaging in such conduct in the future?

51. As a person who received a non-emergency telephone call using an automatic telephone dialing system to his cell phone without his prior express consent to DBCC within the meaning of the TCPA, Plaintiff asserts claims that are typical of each Class Member.

52. Plaintiff will fairly and adequately represent and protect the interests of the Class.

53. Plaintiff has no interests which are antagonistic to any member of the Class.

54. Plaintiff has retained counsel experienced in handling class action claims involving violations of consumer protection statutes, including claims under the TCPA and UCL.

55. A class action is the superior method for the fair and efficient adjudication of this controversy.

56. Class wide relief is essential to compel DBCC to comply with the TCPA and UCL.

57. The interest of Class Members in individually pursuing claims against DBCC is slight because the statutory damages for an individual action are relatively small, and are therefore not likely to deter DBCC from engaging in the same behavior in the future.

58. Management of these claims is likely to present significantly fewer difficulties than are presented in many class claims because the calls at issue are all automated.

59. DBCC has acted on grounds generally applicable to the Class, thereby making final injunctive relief and corresponding declaratory relief with respect to the Class as a whole appropriate.

60. Moreover, on information and belief, Plaintiff alleges that the TCPA, Rules, and UCL violations complained of herein are substantially likely to continue in the future if an injunction is not entered.

## CHOICE OF LAW

61. California law applies to Plaintiff's UCL claims because: (1) DBCC resides in California; (2) the application of foreign law, such as the law of Oregon where Plaintiff resides, is contrary to California's public policy; and (3) California has a materially greater interest in the application of its law and the resolution of this case because DBCC resides in California and DBCC designed and implemented its illegal course of conduct in California.

# CAUSES OF ACTION

## FIRST COUNT

### KNOWING AND/OR WILLFUL VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227 *ET SEQ.*

62.  Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully stated herein.

63.  The foregoing acts and omissions of DBCC constitute numerous and multiple knowing and/or willful violations of the TCPA, including but not limited to each of the above-cited provisions of 47 U.S.C. § 227 *et seq.*

64.  As a result of DBCC's knowing and/or willful violations of 47 U.S.C. § 227 *et seq.*, Plaintiff and each member of the Class is entitled to treble damages of up to $1,500 for each and every violation of the statute, pursuant to 47 U.S.C. § 227(b)(3).

65.  Plaintiff and all Class Members are also entitled to and do seek injunctive relief prohibiting such conduct violating the TCPA by DBCC in the future.

66.  Plaintiff and Class Members are also entitled to an award of attorneys' fees and costs.

## SECOND COUNT

### VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT 47 U.S.C. § 227 *ET SEQ.*

67.  Plaintiff incorporates by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

68.  The foregoing acts and omissions of DBCC constitute numerous and multiple violations of the TCPA, including but not limited to each of the above cited provisions of 47 U.S.C. § 227 *et seq.*

69. As a result of DBCC's violations of 47 U.S.C. § 227 *et seq.*, Plaintiff and Class Members are entitled to an award of $500 in statutory damages for each and every violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(B).

70. Plaintiff and Class Members are also entitled to and do seek injunctive relief prohibiting DBCC's violations of the TCPA in the future.

71. Plaintiff and Class Members are also entitled to an award of attorneys' fees and costs.

## THIRD COUNT

### VIOLATIONS OF CALIFORNIA'S UNFAIR COMPETITION LAW, CAL. BUS. & PROF. CODE SECTION 17200, *ET SEQ.*

72. Plaintiff incorporates by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

73. Defendant DBCC's practice of making telephone calls to Plaintiff and members of the Class on their cellular telephones via an "automatic telephone dialing system" without their prior express consent within the meaning of the TCPA violates 47 U.S.C. § 227 *et seq.*, and the Rules promulgated thereunder.

74. Defendant DBCC's conduct described herein violates Cal. Bus & Prof. Code § 17200 *et seq.* (the "UCL") in the following respects:

  a. Defendant DBCC's hiring of and supervision of vendors employing automated and predictive dialing techniques to harass Plaintiff and members of the Class is unlawful and a violation of the UCL.

  b. Defendant DBCC's use of automated and predictive dialing techniques to harass Plaintiff and members of the Class is unlawful and a violation of the UCL.

  c. Each of Defendant DBCC's violations of the TCPA and Rules constitute a separate and independent violation of the UCL because such conduct was illegal and unfair competition within the meaning of the UCL.

75. The harm to Plaintiff and the Class arising from Defendant's illegal practices outweighs the utility, if any, of those practices.

76. The illegal business practices of Defendant are immoral, unethical, oppressive, unscrupulous, and/or substantially injurious to Plaintiff and members of the Class.

77. Unless restrained by this Court, Defendant DBCC will continue to engage in the illegal acts and practices alleged above.

78. Pursuant to Cal. Bus. & Prof. Code § 17203, Plaintiff and the Class are therefore entitled to:

    a. an Order requiring Defendant DBCC to cease the unlawful acts alleged herein; and

    b. payment of their attorneys' fees and costs pursuant to, *inter alia*, Cal. Code Civ. Proc. § 1021.5.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court grant Plaintiff and all Class and Subclass members the following relief against Defendant:

A. Injunctive relief prohibiting such violations of the TCPA, Rules, and the UCL by Defendant in the future;

B. As a result of Defendant's willful and/or knowing violations of 47 U.S.C. § 227(b)(1) and 47 C.F.R. § 64.1200, Plaintiff seeks for himself and each Class and Subclass member treble damages, as provided by statute, of up to $1,500.00 for each and every call that violated the TCPA and Rules;

C. As a result of Defendant's violations of 47 U.S.C. § 227(b)(1) and 47 C.F.R. § 64.1200, Plaintiff seeks for himself and each Class and Subclass member $500.00 in statutory damages for each and every call that violated the TCPA and Rules;

D. An award of reasonable attorneys' fees and costs to counsel for Plaintiff and the Class and Subclass;

E. An order certifying this action to be a proper class action pursuant to Federal Rule of Civil Procedure 23, establishing the appropriate Class and Subclass, as the Court deems appropriate, finding that Plaintiff is a proper representative of the Class and Subclass, and appointing the lawyers and law firms representing Plaintiff as counsel for the Class and Subclass; and

F. Such other relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all counts so triable.

Dated: April 27, 2015  By: */s/ Jonathan D. Selbin*

LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
Jonathan D. Selbin
(State Bar No. 170222)
Email: jselbin@lchb.com
250 Hudson Street, 8th Floor
New York, NY 10013
Telephone: (212) 355-9500
Facsimile: (212) 355-9592

LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
Daniel M. Hutchinson
(State Bar No. 239458)
Email: dhutchinson@lchb.com
275 Battery Street, 29th Floor
San Francisco, California 94111-3339
Telephone: (415) 956-1000
Facsimile: (415) 956-1008

SIRI & GLIMSTAD LLP
Aaron Siri (*pro hac vice* to be filed)
Email: aaron@sirillp.com
120 East 31st Street
New York, New York 10016
Telephone: (212) 532-1091
Facsimile: (646) 417-5967

PARISI & HAVENS LLP
David C. Parisi
(State Bar No. 162248)
Email: dcparisi@parisihavens.com
212 Marine Street, Unit 100
Santa Monica, CA 90405
Telephone: (818) 990-1299
Facsimile: (818) 501-7852

*Attorneys for Plaintiff and the Proposed Class*

# EXHIBIT A

# J AND J THOMAS, INC.     COPY

October 8, 2013

Dun & Bradstreet Credibility Corp.
22761 Pacific Coast Hwy Ste 226,
Malibu, CA 90265-5064



RECEIVED OCT 10 2013

CIVIL ENFORCEMENT DIVISION

On October 7, 2013 Mr. Don Bear called my office regarding our Business Credit Report. He identified himself a Dun & Bradstreet Credibility Corp. employee/telemarketer. The phone number he provided: 866-257-6083 ex. 3120 which is assigned to your company.

In the past year I have requested to be placed on your "Do Not Call List" on several occasions, and had hoped that a casual request would suffice. As it appears you have more than a casual disregard for our repeated verbal requests and in apparent equal disregard for Telephone Consumer Protection Act of 1991 (TCPA) 47 USC Section 227, I find that I am now compelled to communicate my request in writing.

Therefore, the purpose of this letter is to demand that you CEASE AND DESIST contact of any kind with me or any member of J and J Thomas, Inc. to include the following subsidiaries: Concierge Home and Business Watch, J and J Thomas International, Grants Pass Security, and F Wombat and Co. This demand includes but is not limited to, phone calls, texts, emails, faxes and letters/mailers.

Please be advised that I have instructed all managers and employees, to document any and all calls in defiance of this request so that we may take appropriate legal action if necessary. Should you continue these activities in disregard of this CEASE AND DESIST letter, I will not hesitate to pursue legal action against Dun & Bradstreet Credibility Corp. including, but not limited to, civil action and/or criminal complaints.

As Federal law requires that you maintain our company's information on your do-not-call list and prohibits Dun & Bradstreet Credibility Corp. from future calls for at least 10 years, I pray that this will end any contact for the foreseeable future.

Your immediate attention and compliance in this matter is expected.


Concierge HOME & BUSINESS WATCH
Providing peace of mind




J & J THOMAS
International Consultants

305 NE 6th Street, Box 459 Grants Pass, OR 97526 • www.ConciergeHomeandBusinessWatch.com

# J AND J THOMAS, INC.   COPY

Sincerely,

Jeffrey A. Thomas, Executive Vice President
J and J Thomas, Inc.

*This letter does not constitute an exhaustive statement of my position nor is it a waiver of any of my rights and/or remedies in this and/or any other related matter.*

Cc:
Federal Communications Commission,
Complaints Division,
445 12th Street SW,
Washington DC 20554.

Oregon Department of Justice
Consumer Protection
1162 Court Street NE
Salem, OR 97301-4096

State of California Department of Justice
Office of the Attorney General
300 South Spring Street
Los Angeles, CA 90013-1230





305 NE 6th Street, Box 459 Grants Pass, OR 97526 • www.ConciergeHomeandBusinessWatch.com

```
U.S. POSTAGE
PAID
GRANTS PASS, OR
97526
OCT 08, '13
AMOUNT
$6.11
0002536405
```

UNITED STATES POSTAL SERVICE
1000    97301

CERTIFIED MAIL

7012 3050 0000 1941 1194

Oregon Department of Justice
Consumer Protection
1162 Court Street NE
Salem, OR 97301-4096

J AND J THOMAS, INC.
Concierge Home And Business Watch
305 NE 6th Street, Box 459
Grants Pass, OR 97526

RETURN RECEIPT
REQUESTED

9730184095