1  Jonathan D. Selbin (State Bar No. 170222)
2  Daniel M. Hutchinson (State Bar No. 239458)
   Email: dhutchinson@lchb.com
3  LIEFF, CABRASER, HEIMANN &
   BERNSTEIN, LLP
   275 Battery Street, 29th Floor
4  San Francisco, California  94111-3339
   Telephone:  (415) 956-1000
5  Facsimile:  (415) 956-1008

6  [Additional Counsel Listed on Signature Page]

7  *Attorneys for Plaintiff and the Proposed Class*

8              UNITED STATES DISTRICT COURT

9             CENTRAL DISTRICT OF CALIFORNIA

10                  WESTERN DIVISION

11

12 | JEFFREY A. THOMAS, | Case No. CV15-03194 BRO (GJSx) |

JEFFREY A. THOMAS,
individually and on behalf of all
others similarly situated,

                Plaintiff,

        v.

DUN & BRADSTREET
CREDIBILITY CORP.,

                Defendant.

Case No. CV15-03194 BRO (GJSx)

**PLAINTIFFS' OPPOSITION TO DEFENDANT DUN & BRADSTREET CREDIBILITY CORP.'S MOTION TO DISMISS PLAINTIFF'S CLASS ACTION COMPLAINT**

Date:    August 3, 2015
Time:    1:30 p.m.
Place:   Courtroom 14
         Spring St Floor
Judge:   Hon. Beverly Reid O'Connell

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION .................................................................................1

II.   BACKGROUND ..................................................................................2

III.  LEGAL STANDARD ...........................................................................3

IV.   ARGUMENT ........................................................................................4

    A.   Thomas Has Standing to File Suit Under the TCPA as a "Called Party." .............................................................................4

    B.   Thomas Alleges that DBCC Used an ATDS............................ 10

    C.   Thomas States an Actionable Claim for Relief Under the UCL. ..................................................................................... 14

        1.   Thomas Properly Alleges that California Law Applies.......................................................................... 15

        2.   Thomas Has Standing Under Article III and the UCL. .............................................................................. 18

            a.   Thomas Alleges a Loss of Money and Property. ............................................................. 19

            b.   An Alleged Violation of the TCPA Constitutes Injury in Fact..................................... 21

        3.   The Complaint Alleges Both Unlawful and Unfair Practices......................................................................... 23

V.    CONCLUSION .................................................................................. 23

**TABLE OF AUTHORITIES**

**Page**

**CASES**

*Alea London, Ltd. v. American Home Servs., Inc.,*
   638 F.3d 768 (11th Cir. 2011) ................................................................. 4

*Andriesian v. Cosmetic Dermatology, Inc.,*
   No. 3:14-CV-01600-ST, 2015 WL 1638729 (D. Or. Mar. 3, 2015) *report and recommendation adopted*, No. 3:14-CV-01600-ST, 2015 WL 1925944 (D. Or. Apr. 28, 2015) ................................................................................................ 16

*Bardin v. Daimlerchrysler Corp.,*
   136 Cal. App. 4th 1255 (2006) ............................................................... 23

*Beaudry v. TeleCheck Servs., Inc.,*
   579 F.3d 702 (6th Cir. 2009) .................................................................. 22

*Bell Atlantic Corp. v. Twombly,*
   550 U.S. 544 (2007) ........................................................................... 3, 10

*Bias v. Wells Fargo & Co.,*
   942 F. Supp. 2d 915 (N.D. Cal. 2013) ............................................... 15, 17

*Blair v. CBE Grp. Inc.,*
   No. 13-134, 2013 WL 2029155 (S.D. Cal. May 13, 2013) ................. 10, 11

*Bohn v. Pharmavite, LLC,*
   No. CV 11-10430-GHK CWX, 2012 WL 8898669 (C.D. Cal. May 16, 2012) .. 16

*Burlington Ins. Co. v. Devdhara,*
   2009 U.S. Dist. LEXIS 79613 (N.D. Cal. Sept. 3, 2009) ........................ 4

*Buslepp v. B & B Entm't, LLC,*
   No. 12-60089-CIV, 2012 WL 1571410 (S.D. Fla. May 3, 2012) ............ 11

*Cellco P'ship v. Plaza Resorts Inc.,*
   No. 12-81238-CIV, 2013 WL 5436553 (S.D. Fla. Sept. 27, 2013) .......... 8

*Charles Schwab & Co. v. Bank of Am.,*
   No. C 10-4913 JL, 2011 U.S. Dist. LEXIS 53496 (N.D. Cal. May 9, 2011) ........ 3

*Chavez v. Blue Sky Natural Beverage Co.,*
   268 F.R.D. 365 (N.D. Cal. 2010) ........................................................... 15

*Clapper v. Amnesty Int'l USA,*
   133 S. Ct. 1138 (U.S. 2013) .............................................................. 18, 23

*Clothesrigger, Inc. v. GTE Corp.,*
   236 Cal. Rptr. 605 (Ct. App. 1987) ................................................... 15, 16

*Connelly v. Hilton Grant Vacations Co., LLC,*
   No. 12CV599 JLS KSC, 2012 WL 2129364 (S.D. Cal. June 11, 2012) .......... 12

- ii -

1

**TABLE OF AUTHORITIES**
**(continued)**

2

**Page**

3    *Dahlia v. Rodriguez,*
         735 F.3d 1060 (9th Cir. 2013) ................................................................. 3

4

5    *De Los Santos v. Millward Brown, Inc.,*
         No. 13-80670-CV, 2014 WL 2938605 (S.D. Fla. June 30, 2014) ...................... 10

6    *Diamond Multimedia Sys., Inc. v. Superior Court,*
         968 P.2d 539 (Cal. 1999) ................................................................. 15, 16

7

8    *Erickson v. Pardus,*
         551 U.S. 89 (2007) ................................................................................. 3

9    *Fields v. Mobile Messengers Am., Inc.,*
         No. C 12-05160 WHA, 2013 WL 6073426 (N.D. Cal. Nov. 18, 2013) ............. 17

10

11   *Fini v. Dish Network L.L.C.,*
         955 F. Supp. 2d 1288 (M.D. Fla. 2013) .............................................. 9, 21

12   *Forcellati v. Hyland's, Inc.,*
         876 F. Supp. 2d 1155 (C.D. Cal. 2012) ............................................. 15, 16

13

14   *Gesten v. Stewart Law Grp., LLC,*
         No. 14-61650-CIV, 2014 U.S. Dist. LEXIS 175862, 2014 WL 7243330 (S.D. Fla.
         Dec. 19, 2014) .................................................................................... 9

15

16   *Gitson v. Trader Joe's Co.,*
         No. 13–CV–01333–VC, 2014 WL 3933921 (N.D.Cal. Aug.8, 2014) ............... 16

17   *Glauser v. GroupMe, Inc..*
         No. C 11-2584 PJH, 2015 WL 475111, at *7 (N.D. Cal. Feb. 4, 2015) ............. 13

18

19   *Gutierrez v. Barclays Bank Group,*
         2011 WL 579238 (S.D. Cal. Feb. 9, 2011) .......................................... 6, 7

20   *Hammer v. Sam's E., Inc.,*
         754 F.3d 492 (8th Cir. 2014), *cert. denied*, 135 S. Ct. 1175 (2015) ................... 22

21

22   *Hickey v. Voxernet LLC,*
         887 F. Supp. 2d 1125 (W.D. Wash. 2012) .......................................... 13

23   *Ibey v. Taco Bell Corp.,*
         No. 12-CV-0583-H WVG, 2012 WL 2401972 (S.D. Cal. June 18, 2012) ......... 14

24

25   *IMHOFF Inv., L.L.C. v. Alfoccino, Inc.,*
         2015 U.S. App. LEXIS 11617 (6th Cir. July 7, 2015) ......................... 18, 21, 22

26   *In re 5-hour ENERGY Mktg. & Sales Practices Litig.,*
         No. MDL 13–2438 PSG PLAX, 2014 WL 5311272 (C.D. Cal. Sept. 4, 2014) .. 16

27

28   *In re Charles Schwab Corp. Sec. Litig..*
         264 F.R.D. 531 (N.D. Cal. 2009) ....................................................... 17

- iii -

**TABLE OF AUTHORITIES**
(continued)

Page

*In re Sony Grand Wega KDF–E A10/A20 Series Rear Projection HDTV Television Litig.,*
758 F Supp 2d 1077 (S.D. Cal. 2010) ...............................................16

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Products Liab. Litig.*
785 F. Supp. 2d 925 (C.D. Cal. 2011) ...............................................17

*J2 Global Communs., Inc. v. Vision Lab Telecoms., Inc.,*
2006 U.S. Dist. LEXIS 66865 (C.D. Cal. May 9, 2006).......................5

*Johansen v. GVN Michigan, Inc.,*
No. 1:15-CV-00912, 2015 WL 3823036 (N.D. Ill. June 18, 2015) ............1, 9, 10

*Johnson v. Riverside Healthcare Sys., LP,*
534 F.3d 1116 (9th Cir. 2008) .......................................................3

*Knutson v. Reply!, Inc.,*
No. 10CV1267 BEN, 2011 WL 1447756 (S.D. Cal. Apr. 13, 2011)............13, 14

*Kohl v. Am. Home Shield Corp.,*
No. 11cv0700 JM (NLS), 2011 U.S. Dist. LEXIS 94740 (S.D. Cal. Aug. 24, 2011) ..........................................................................3

*Kwikset Corp. v. Superior Court,*
51 Cal. 4th 310 (2011) ...............................................................20

*Lujan v. Defenders of Wildlife,*
504 U.S. 555 (1992)...................................................................18

*Manno v. Healthcare Revenue Recovery Grp., LLC,*
289 F.R.D. 674 (S.D. Fla. 2013)...................................................8, 22

*Margulis v. Generation Life Ins. Co.,*
No. 4:14-CV-1462 SNLJ, 2015 WL 1260483 (E.D. Mo. Mar. 19, 2015) ..........14

*Markovic v. Appriss, Inc.,*
No. 1:13-CV-1439-JMS-MJD, 2013 WL 6887972 (S.D. Ind. Dec. 31, 2013)....20

*Martin v. Leading Edge Recovery Solutions, LLC,*
No. 11 C 5886, 2012 WL 3292838 (N.D. Ill. Aug. 10, 2012) ..........................20

*Mazza v. Am. Honda Motor Co., Inc.,*
666 F.3d 581 (9th Cir. 2012) ...................................................16, 17

*McKenna v. WhisperText,*
No. 5:14-CV-00424-PSG, 2015 WL 428728 (N.D. Cal. Jan. 30, 2015) ............13

*Meyer v. Portfolio Recovery Associates, LLC,*
707 F.3d 1036 (9th Cir. 2012) ...................................................4, 11

**TABLE OF AUTHORITIES**
**(continued)**

Page

*Miller v. Cal. AG's Office*,
No. CIV S-10-1699, GEB, 2011 U.S. Dist. LEXIS 27684 (E.D. Cal. Mar. 17, 2011) ................................................................................................................ 4

*Mims v. Arrow Fin. Servs. LLC*,
132 S. Ct. 740 (2012) .................................................................................. 2, 10

*Mogadam v. Fast Eviction Serv.*,
No. SACV 14-01912 JVS, 2015 WL 1534450 (C.D. Cal. Mar. 30, 2015) ......... 14

*Murray v. GMAC Mortg. Corp.*,
434 F.3d 948 (7th Cir. 2006) ............................................................................ 22

*Nelson v. Santander Consumer USA, Inc.*,
931 F. Supp. 2d 919 (W.D. Wisc. 2013) ............................................................ 8

*Olney v. Job.Com, Inc.*,
2014 U.S. Dist. LEXIS 60843 (E.D. Cal. May 1, 2014) .................................... 4

*Olney v. Progressive Cas. Ins. Co.*,
993 F. Supp. 2d 1220 (S.D. Cal. 2014) .......................................................... 7, 8

*Pacleb v. Cops Monitoring*,
No. 2:14-CV-01366-CAS, 2014 WL 3101426 (C.D. Cal. July 7, 2014) ........ 8, 10

*Peatrowsky v. Persolve*,
No. 12-00935, 2014 WL 1215061 (D. Nev. Mar. 24, 2014) .............................. 11

*Reyes v. Saxon Mortgage Servs., Inc.*,
No. 09CV1366 DMS (WMC), 2009 WL 3738177 (S.D. Cal. Nov. 5, 2009) ...... 11

*Robins v. Spokeo, Inc.*,
742 F.3d 409 (9th Cir. 2014), *cert. granted*, 135 S. Ct. 1892 (2015) ............. 22, 23

*Satterfield v. Simon & Schuster, Inc.*,
569 F.3d 946 (9th Cir. 2009) ..................................................................... 2, 10, 11

*Smith v. Microsoft Corp.*,
2012 U.S. Dist. LEXIS 101197 (S.D. Cal. July 20, 2012) ........................ 7, 18, 22

*Soppet v. Enhanced Recovery Co., LLC*,
679 F.3d 637 (7th Cir. 2012) ................................................................ 1, 7, 8, 20

Swope v. Credit Mgmt., LP,
No. 4:12CV832 CDP, 2013 U.S. Dist. LEXIS 21991, 2013 WL 607830 (E.D. Mo. Feb. 19, 2013) ............................................................................................ 5

*Tourgeman v. Collins Fin. Servs., Inc.*,
755 F.3d 1109 (9th Cir. 2014) ......................................................................... 22

*TwoRivers v. Lewis*,
174 F.3d 987 (9th Cir. Ariz. 1999) .................................................................... 3

1

**TABLE OF AUTHORITIES**
**(continued)**

2

**Page**

3

*United States v. Hayes*,
    555 U.S. 415 (2009)..................................................................................6

4

*Vaccaro v CVS Pharm., Inc.*,
    No. 13-174, 2013 WL 3776927 (S.D. Cal July 16, 2013).............................11, 19

5

6

*Wash. Mut. Bank v. Superior Court*,
    15 P.3d 1071 (Cal. 2001)...........................................................................16

7

**STATUTES**

8

47 U.S.C. § 153(39)........................................................................................5

9

47 U.S.C. § 227(b)(1)(A)......................................................................2, 7, 8, 12

10

47 U.S.C. § 227(b)(1)(A)(iii)..........................................................................6, 8

11

47 U.S.C. § 227(b)(2)(C)..................................................................................6

12

Cal. Bus. & Prof. Code § 17204........................................................................19

13

Pub. L. 102-243, § 2, 105 Stat. 2394 (1991) ......................................................5

14

**RULES**

15

Fed. R. Civ. P. 12(b)(6) ....................................................................................3

16

Fed. R. Civ. P. 8(a)(2)......................................................................................3

17

**TREATISES**

18

13 Wright & Miller, Federal Practice and Procedure,
    § 3531.4 (Supp. 2005) ...............................................................................19

19

**OTHER AUTHORITIES**

20

FCC Fact Sheet on Consumer Protection Proposal (June 18, 2015),
    *available at* https://www.fcc.gov/document/fact-sheet-consumer-protection-
    proposal..................................................................................................13

21

22

FCC Open Commission Meeting Agenda and Video (June 18, 2015),
    *available at* https://www.fcc.gov/events/open-commission-meeting-june-2015.13

23

*In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act
    of 1991,* 18 FCC Rcd. 14014 (July 3, 2003)........................................................11

24

25

**REGULATIONS**

26

*In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991,*
    18 F.C.C.R. 14014 (F.C.C. July 3, 2003) ............................................................21

27

28

1   **I.       <u>INTRODUCTION</u>**

2              In support of its motion to dismiss Plaintiff Jeffrey Thomas's Telephone

3   Consumer Protection Act (TCPA) Complaint, Defendant Dun & Bradstreet

4   Credibility Corp. ("DBCC") misstates the law—both statutory and decisional—and

5   mischaracterizes the Complaint and its accompanying exhibit.  Each of DBCC's

6   claimed bases for relief fails to withstand even modest scrutiny; a fair reading of the

7   Complaint and the law under which it is pled reveals that Thomas plausibly pleads

8   claims under both the TCPA and California Unfair Competition Law (UCL), and

9   the Complaint satisfies constitutional and statutory standing requirements.

10             DBCC misquotes the text of the TCPA itself, excerpting the statute in a way

11  that makes it seem as if Thomas must have been personally charged for the

12  offending calls in order to bring suit under the TCPA.  No such requirement exists,

13  as becomes evident when DBCC's ellipses are removed and replaced with the

14  actual statutory text.  DBCC further confuses the analysis by layering a

15  misapplication of appellate law onto its misreading of the statute, claiming a key

16  case—*Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637, 640 (7th Cir. 2012)—

17  supports its reading of the statute when, if anything, it undermines DBCC's

18  interpretation of it.  Finally, DBCC insists that the letter attached as Exhibit A to

19  the Complaint contradicts the Complaint itself, repeatedly using phrases such as

20  "office line" and "office number" that appear nowhere in the letter.  Even drawing

21  inferences against Thomas, as DBCC urges, DBCC asks the Court to adopt an

22  unsupportable interpretation of the TCPA, which "does not distinguish" between a

23  business or residential cellular phone line.  *See Johansen v. GVN Michigan, Inc.*,

24  No. 1:15-CV-00912, 2015 WL 3823036, at *1 (N.D. Ill. June 18, 2015) (Posner, J.).

25             The Motion's other grounds for relief fail for similar reasons.  DBCC

26  attempts to heighten the pleading standard, ignoring plausible factual allegations in

27  the Complaint supporting the inference that DBCC called Thomas using an

28  automatic dialer.  It misreads his UCL claim, cites summary judgment cases to

1  argue that the Court should undertake a premature choice of law analysis at the

2  pleading stage and overlooks multiple bases for constitutional and statutory

3  standing.

4       In short, the Motion provides no basis for dismissal, and Plaintiff respectfully

5  requests that it be denied in full.

6  **II.    BACKGROUND**

7       Plaintiff Jeffrey Thomas alleges that Defendant DBCC made calls to

8  consumers' cellular phones through the use of automatic telephone dialing systems

9  (ATDS) without their prior express consent, in violation of the TCPA, 47 U.S.C.

10 § 227(b)(1)(A).  Compl. ¶ 31.  Specifically, Thomas alleges that in 2013 DBCC

11 made several autodialed calls to his cellular phone using a predictive dialer, without

12 his prior express consent and in defiance of his explicit requests not to be called.

13 *Id.,* ¶¶ 23-25, 36-37.  He alleges that DBCC similarly placed calls to other

14 consumers' cellular phones without their prior express consent.  *Id.* ¶ 32.  Thomas

15 alleges that DBCC uses automatic, predictive dialers with the capacity to store,

16 produce and/or call randomly or sequentially generated numbers, including the

17 StrataDial VC2 phone system, to make these calls.  *Id.* ¶¶ 35-37.  These calls were

18 annoying, harassing, inconvenient, illegal, and constituted a nuisance, and Thomas

19 and class members were charged for them.  *Id.* ¶¶ 32, 43.

20      As the Supreme Court has explained, Congress enacted the TCPA to prevent

21 automated and prerecorded calls by companies that escaped state invasion of

22 privacy and nuisance statutes by operating interstate.  *Mims v. Arrow Fin. Servs.*

23 *LLC*, 132 S. Ct. 740, 745 (2012).  "The purpose and history of the TCPA indicate

24 that Congress was trying to prohibit the use of ATDSs to communicate with others

25 by telephone in a manner that would be an invasion of privacy." *Satterfield v.*

26 *Simon & Schuster, Inc.*, 569 F.3d 946, 954 (9th Cir. 2009).

27

28

### III.   <u>LEGAL STANDARD</u>

A cause of action need only be supported by "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2); *Erickson v. Pardus*, 551 U.S. 89, 93 (2007).  A complaint need not contain "detailed factual allegations."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Erickson*, 551 U.S. at 93 ("Specific facts are not necessary; the statement need only give the defendant fair notice of what the claim is and the grounds upon which it rests.").  In evaluating the complaint, a court "must accept all factual allegation in the complaint as true and draw all reasonable inferences in favor of the nonmoving party," *Dahlia v. Rodriguez,* 735 F.3d 1060, 1066 (9th Cir. 2013) (quoting *TwoRivers v. Lewis,* 174 F.3d 987, 991 (9th Cir. Ariz. 1999)).

Complaints need only set forth enough facts to state claims that are facially plausible.  *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1122 (9th Cir. 2008).  "Indeed, it may appear on the face of the pleadings that recovery is very remote and unlikely but that is not the test."  *Id.* at 1123 (citation omitted).  "Asking for plausible grounds to infer" the existence of a claim "does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence" to prove that claim.  *Twombly*, 550 U.S. at 556.  Dismissal under Federal Rule of Civil Procedure 12(b)(6) "is inappropriate unless the complaint fails to state a claim to relief that is plausible on its face."  *Dahlia,* 735 F.3d at 1066 (quoting *Twombly*, 550 U.S. at 570).

Applying this "plausibility" standard, courts in the Ninth Circuit hold that dismissal is proper only in "extraordinary" cases.  *See, e.g.*, *Charles Schwab & Co. v. Bank of Am.,* No. C 10-4913 JL, 2011 U.S. Dist. LEXIS 53496, at *6 (N.D. Cal. May 9, 2011); *Kohl v. Am. Home Shield Corp.,* No. 11cv0700 JM (NLS), 2011 U.S. Dist. LEXIS 94740, at *13 (S.D. Cal. Aug. 24, 2011); *Miller v. Cal. AG's Office*, No. CIV S-10-1699, GEB, 2011 U.S. Dist. LEXIS 27684, at *9 (E.D. Cal.

1   Mar. 17, 2011).  For these reasons, in the Ninth Circuit, motions to dismiss are

2   "viewed with disfavor and [are] rarely granted."  *Burlington Ins. Co. v. Devdhara*,

3   2009 U.S. Dist. LEXIS 79613, at *14 (N.D. Cal. Sept. 3, 2009) (internal quotations

4   and citation omitted).

5   **IV.   ARGUMENT**

6        DBCC's motion—which is based on a misleadingly incomplete reading of

7   the statutory text, a misapplication of relevant legal authority and repeated

8   mischaracterizations of the Complaint—provides no basis for dismissing Thomas's

9   claims alleged under the TCPA and UCL.  It should be denied in full.

10       **A.   Thomas Has Standing to File Suit Under the TCPA as a "Called**

11            **Party."**

12        DBCC argues that Thomas lacks standing to bring a claim under the TCPA

13   because he fails to plead that he owns the cellular telephone account and thus

14   cannot be the "called party" within the meaning of the TCPA.  Mot. at 5.  However,

15   this conclusion rests on a misreading of the text of the TCPA and the case law

16   interpreting it, and an interpretation of the Complaint that improperly resolves any

17   ambiguities against Thomas and in favor of DBCC.

18        In the Ninth Circuit, there are three elements to a TCPA claim: "(1) the

19   defendant called a cellular telephone number; (2) using an automatic telephone

20   dialing system; (3) without the recipient's prior express consent."  *Meyer v.*

21   *Portfolio Recovery Associates, LLC*, 707 F.3d 1036, 1043 (9th Cir. 2012).  As a

22   matter of statutory standing, DBCC is incorrect that only the current subscriber of

23   cellular phone (what DBCC refers to as a "called party") may bring suit under the

24   TCPA.  The TCPA is a broad remedial statute that essentially imposes strict

25   liability for automated phone calls to cellular phones.  *See Olney v. Job.Com, Inc.*,

26   2014 U.S. Dist. LEXIS 60843, *24 (E.D. Cal. May 1, 2014) (citing *Alea London,*

27   *Ltd. v. American Home Servs., Inc.*, 638 F.3d 768, 776 (11th Cir. 2011) (TCPA is

28   "essentially a strict liability statute")); *J2 Global Communs., Inc. v. Vision Lab*

1  *Telecoms., Inc.*, 2006 U.S. Dist. LEXIS 66865, *7-8 (C.D. Cal. May 9, 2006)

2  (TCPA is a remedial statute).  It protects "users" of telephones from the "nuisance"

3  and "invasion of privacy" of automated telephone calls.  Pub. L. 102-243, § 2, ¶¶

4  12-14, 105 Stat. 2394 (1991).

5       The cause of action provided in the law expressly allows "any person or

6  entity" to file such a suit, as numerous courts have recognized.  47 U.S.C. §

7  227(b)(3).  Indeed, "there is no requirement in the statute that the plaintiff must

8  actually be the 'subscriber' to the cell phone."  *Swope v. Credit Mgmt., LP*, No.

9  4:12CV832 CDP, 2013 U.S. Dist. LEXIS 21991, 2013 WL 607830, at *2-3 (E.D.

10  Mo. Feb. 19, 2013) ("By its plain language, the TCPA grants standing to 'any

11  person or entity.'"); *see also, e.g.*, *Soulliere v. Central Florida Investments*, 2015

12  U.S. Dist. LEXIS 36858, at *10-12 & n.9 (M.D. Fla. March 24, 2015) (collecting

13  cases); *Agne v. Papa John's Int'l*, 286 F.R.D. 559, 565 (W.D. Wash. 2012); *Page v.*

14  *Regions Bank*, 917 F. Supp. 2d 1214, 1217-18 (N.D. Ala. 2012) (collecting cases);

15  *Anderson v. AFNI, Inc.*, 2011 U.S. Dist. LEXIS 51368, 2011 WL 1808779, at *8

16  (E.D. Pa. May 11, 2011) ("The fundamental point is that § 227(b)(3)

17  unambiguously grants standing to 'any person or entity,' and this grant does not

18  contradict the rest of the statute."); *Kane v. Nat'l Action Fin. Servs., Inc.*, 2011 WL

19  6018403, at *7 (E.D. Mich. Nov. 7, 2011) (same).  Regardless of who pays the

20  cellular phone bill, the user of the cellular phone has standing under the TCPA.

21       Thomas alleges that he is a person or entity within the meaning of 47 U.S.C.

22  § 153(39), Compl. ¶ 21.  He alleges that throughout 2013, he received repeated

23  phone calls from DBCC "on his cellular telephone."  *Id.* ¶ 23.  He alleges that on

24  October 7, 2013, he again received a phone call from DBCC "on his cellular

25  telephone."  *Id.* ¶ 25.  Accordingly, he has standing to sue under the TCPA.

26       DBCC's entire argument is premised upon an untenable construction of the

27  statute.  The TCPA makes it unlawful:

28

1    for any person within the United States, or any person

2    outside the United States if the recipient is within the United

3    States—

4        (A) to make any call (other than a call made for

5    emergency purposes or made with the prior express consent of

6    the called party) using any automatic telephone dialing system

7    or an artificial or prerecorded voice— ...

8        (iii) to any telephone number assigned to a paging service,

9    cellular telephone service, specialized mobile radio service, or

10   other radio common carrier service, or any service for which

11   the called party is charged for the call[.]

12   47 U.S.C. § 227(b)(1)(A)(iii).

13       DBCC misleadingly quotes the statute to make it appear as if "for which

14   the called party is charged for the call" modifies "cellular telephone service," Mot. at 5,

15   when courts repeatedly have held to the contrary.  In *Gutierrez v. Barclays Bank*

16   *Group*, Judge Sabraw invoked the statutory construction doctrine of "last

17   antecedent"[1] to find that the statute did not restrict liability to calls to a cellular

18   telephone service "for which the called party is charged for the call."  2011 WL

19   579238, at *5 (S.D. Cal. Feb. 9, 2011).  He found further confirmation of that

20   interpretation in section 227(b)(2)(C), which provides that the FCC "may, by rule

21   or order, exempt from the requirements of paragraph (1)(A)(iii) of this subsection

22   calls to a telephone number assigned to the cellular telephone service that are not

23   charged to the called party." 47 U.S.C. § 227(b)(2)(C).  As Judge Sabraw

24   concluded, "Clearly, if § 227(b)(1)(A)(iii) did not include 'calls to a telephone

25   service that are not charged to the called party[,]' *i.e.*, calls for which the party was

26   not charged, there would be no need for the FCC to create an exemption."  2011

27   _____

28   [1] Under this doctrine, "a limiting clause or phrase ... should ordinarily be read as
     modifying only the noun or phrase that it immediately follows."  *United States v.*
     *Hayes*, 555 U.S. 415, 425 (2009).

1    WL 579238, at *5.  Thus, the recipient of the call need not be the party who is

2    charged for it.

3         Other courts have adopted Judge Sabraw's "thorough and well-reasoned"

4    analysis.  *Smith v. Microsoft Corp.*, 2012 U.S. Dist. LEXIS 101197, *12 (S.D. Cal.

5    July 20, 2012); *see also, e.g.*, *Olney v. Progressive Cas. Ins. Co.*, 993 F. Supp. 2d

6    1220, 1225 (S.D. Cal. 2014) (declining to "arbitrarily limit standing to only the

7    individual whose name appears on the bill"); *Kane v. Nat'l Action Fin. Servs., Inc.*,

8    2011 U.S. Dist. LEXIS 141480, 2011 WL 6018403, at *5, 8 (E.D. Mich. Nov. 7,

9    2011).

10        DBCC further confuses the analysis by layering a misapplication of appellate

11   law onto its misreading of the statute.  It makes much of the holding in *Soppet v.*

12   *Enhanced Recovery Co., LLC*, that "called party" means "current subscriber of the

13   line."  679 F.3d 637, 640 (7th Cir. 2012) .  But as numerous other courts have

14   recognized, *Soppet* does not resolve the question addressed by DBCC's motion,

15   namely whether a TCPA plaintiff must be the party who pays the cellular phone bill.

16   In *Soppet*, the Seventh Circuit considered whether a defendant who unknowingly

17   called a number that had been reassigned to a new cellular phone customer was

18   nonetheless liable to that new customer under the TCPA for calling the number

19   without the "prior express consent of the called party."  The Court adopted the

20   plaintiff's argument that "called party" in § 227(b)(1)(A) meant the actual, as

21   opposed to the intended, recipient of the call.  To arrive at this conclusion, the

22   Court analyzed the varying references to a "called party" in the TCPA, concluding

23   that the usage in question in that case "unmistakably denote[s] the current

24   subscriber (the person who pays the bills *or needs the line in order to receive other*

25   *calls*)."  *Id.* at 640 (emphasis added).

26        *Soppet*, then, does not hold that the "called party" must be the person who

27   pays the bills; it defines "current subscriber" to include both a bill payer *and* a

28   person who needs the line in order to receive other calls, undermining DBCC's

reliance on it here.  *See Pacleb v. Cops Monitoring*, No. 2:14-CV-01366-CAS, 2014 WL 3101426, at *3 (C.D. Cal. July 7, 2014) (adopting *Soppet* analysis and defining "current subscriber" accordingly).  DBCC's argument stretches *Soppet* beyond the breaking point.  The *Soppet* court's holding applies to an entirely different clause—§ 227(b)(1)(A)—than the one at issue here—§ 227(b)(1)(A)(iii). And, while the Court may have assumed that the "current subscriber" is the one who pays the bills and that the phrase "for which the called party is charged for the call" modifies "cellular telephone service," those issues were not presented in *Soppet* nor essential to its holding.  *Soppet* plainly did not state, and does not stand for the proposition, that to be a TCPA plaintiff one must be a cellular phone bill payer.

    After *Soppet*, the majority of courts to consider whether a person who actually receives a call but does not own the telephone account has standing to sue under the TCPA have held that both a call recipient and an account holder have valid claims.  *See Soulliere v. Central Florida Investments*, 2015 U.S. Dist. LEXIS 36858 (M.D. Fla. March 24, 2015); *Olney v. Progressive Cas. Ins. Co.*, 993 F. Supp. 2d 1220, 1225 (S.D. Cal. 2014) (finding that "the regular user of a cellular telephone has standing to bring a claim under the TCPA, regardless of whether he is responsible for paying the bill"); *Manno v. Healthcare Revenue Recovery Grp., LLC*, 289 F.R.D. 674, 683 (S.D. Fla. 2013) (plaintiff whose wife paid the cellular phone bills had standing); *Cellco P'ship v. Plaza Resorts Inc*., No. 12-81238-CIV, 2013 WL 5436553, at *4 (S.D. Fla. Sept. 27, 2013) ("After carefully reviewing the text of the TCPA and its legislative intent, the Court concludes that a cause of action for a violation of the statute inures either to the subscriber of the telephone or the person to whom the subscriber provides the telephone for that person's primary use."); *Nelson v. Santander Consumer USA, Inc.,* 931 F. Supp. 2d 919, 926-27 (W.D. Wisc. 2013), *vacated*, *Nelson v. Santander Consumer USA, Inc.,* No. 11-CV-307, 2013 WL 5377280 (W.D. Wis. June 7, 2013); *Page v. Regions Bank*, 917 F.

1  Supp. 2d 1214, 1219 (N.D. Ala. 2012) (notwithstanding that cellular phone number
2  was registered in fiancée's name, plaintiff who regularly uses and carries cellular
3  phone is the "called party"); *Fini v. Dish Network L.L.C.*, 955 F. Supp. 2d 1288,
4  1296 (M.D. Fla. 2013) (current subscriber is the party who regularly uses and
5  carries the phone); *Gesten v. Stewart Law Grp., LLC*, No. 14-61650-CIV, 2014 U.S.
6  Dist. LEXIS 175862, 2014 WL 7243330, at *3 (S.D. Fla. Dec. 19, 2014).

7       Thomas alleges that he regularly used "his" cellular phone and as such has
8  standing regardless of whether he pays the bill. *See Johansen v. GVN Michigan,*
9  *Inc.*, No. 1:15-CV-00912, 2015 WL 3823036, at *1 (N.D. Ill. June 18, 2015)
10  (Posner, J.) (holding that the TCPA "does not distinguish" between a business or
11  residential cellular phone line).  Furthermore, DBCC's attempts to demonstrate
12  inconsistency between the Complaint and Exhibit A come up short.  Contrary to
13  DBCC's briefing, the October 8, 2013, letter does not state that the October 7 call
14  was made to an "office number" or "office line."  Mot. at 6.  And DBCC does not
15  dispute that the phone number in question belonged to a cellular telephone.
16  Thomas merely used the phrase "called my office," which in the context of a
17  cellular telephone call means very little.  In any event, to the extent the language is
18  vague and subject to competing interpretations the Court should decline DBCC's
19  invitation to draw inferences against Thomas at the pleading stage.

20       Regardless, Thomas alleges that DBCC called a cellular telephone he
21  regularly used—points unchallenged by DBCC in its motion.  Accordingly, he has
22  standing to bring a claim under the TCPA.  *See Soulliere*, 2015 U.S. Dist. LEXIS
23  36858, at *13-14 (finding standing where it was undisputed that plaintiff was the
24  primary or regular user of his cell phone and received the calls at issue, "regardless
25  of whether plaintiff's employer… owns plaintiff's cell phone number and pays the
26  bill").[2]

27  _____
28  [2] DBCC also argues that the TCPA does not apply to Thomas's call because it was
   actually a call to a business.  This argument—which is not supported by a single
   case on point—fails for the same reasons its initial argument fails.  First, the

PLAINTIFFS' OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS
CV15-03194 BRO (GJSX)

## B.     Thomas Alleges that DBCC Used an ATDS.

DBCC next urges the Court to set an impossibly high bar at the pleading stage by requiring Thomas to allege intricate details of the exact automatic telephone dialing system (ATDS) DBCC used to call him on October 7, 2013.  But this information is solely within DBCC's possession, and it is virtually impossible for a plaintiff to obtain prior to discovery.[3]  Still, the Complaint contains abundant factual information to state a plausible allegation that DBCC called Thomas's cellular phone line using an ATDS.

The issue of whether a defendant's calling device is an ATDS is a question of fact that is not properly resolved without discovery.  *See Satterfield v. Simon & Schuster, Inc.,* 569 F.3d 946, 951 (9th Cir. 2009) (ATDS is a factual question); *Blair v. CBE Grp. Inc.*, No. 13-134, 2013 WL 2029155 (S.D. Cal. May 13, 2013) (ATDS is resolved with discovery).  Accordingly, a plaintiff who alleges that a defendant used an ATDS or a device with an ATDS's characteristics makes a factual allegation entitled to a presumption of truth under *Twombly* and *Iqbal*. *Buslepp v. B & B Entm't, LLC*, No. 12-60089-CIV, 2012 WL 1571410, at *1 (S.D.

_____

*Footnote continued from previous page*

Complaint does not allege a call to a business; it alleges a call to a cellular phone, as the statute requires.  More importantly, as discussed *supra* Sec. A, the statute imposes liability irrespective of whether an individual or business owns the cellular phone line. *Johansen*, 2015 WL 3823036, at *1 (N.D. Ill. June 18, 2015) (Posner, J.) (holding that the TCPA "does not distinguish" between a business or residential cellular phone line).  Indeed, the TCPA "always prohibits autodialed calls to cellular phones, even business phones." *De Los Santos v. Millward Brown, Inc.*, No. 13-80670-CV, 2014 WL 2938605, at *7 (S.D. Fla. June 30, 2014) (rejecting identical argument in a constitutional vagueness challenge); *see also Mims*, 132 S. Ct. 740, 745 (2012) (observing that the TCPA prohibits the use of an automatic dialer to call "any . . . cellular telephone" without prior express consent).
[3] Indeed, DBCC guards its ATDS secrets so jealously that it will not even share them with the Court, notwithstanding rules to the contrary.  *See* Mot. at 12, n. 5 (enigmatically asserting that the StrataDial VC2 was not the system used to call Thomas); L.R. 7-6 (requiring that factual contentions be set forth in declarations and other written evidence); *see also Pacleb*, 2014 WL 3101426, at *2 ("[U]nless a court converts a Rule 12(b)(6) motion into a motion for summary judgment, a court cannot consider material outside of the complaint (e.g., facts presented in briefs, affidavits, or discovery materials).").

1   Fla. May 3, 2012) (citing *Satterfield*, 569 F.3d at 951); *Reyes v. Saxon Mortgage*
2   *Servs., Inc.*, No. 09CV1366 DMS (WMC), 2009 WL 3738177, at *4 (S.D. Cal. Nov.
3   5, 2009) (ATDS adequately pled by alleging that the defendant "frequently made
4   calls to Plaintiff's cell phone using an automatic telephone dialing system
5   (including an automated dialing machine, dialer, and auto-dialer) and an artificial or
6   prerecorded voice").
7       To plead the use of an ATDS, a plaintiff at most need only allege that that
8   "Defendant used an automatic telephone dialing system which had the capacity to
9   produce or store and dial numbers randomly or sequentially, to place telephone
10  calls to Plaintiff's cellular telephone." *Blair v. CBE Grp. Inc.*, No. 13-134, 2013
11  WL 2029155 (S.D. Cal. May 13, 2013) (collecting cases); *see also Vaccaro v CVS*
12  *Pharm., Inc.*, No. 13-174, 2013 WL 3776927 (S.D. Cal July 16, 2013); *cf.*
13  *Peatrowsky v. Persolve*, No. 12-00935, 2014 WL 1215061 (D. Nev. Mar. 24, 2014)
14  (plaintiff must merely allege the use of an ATDS and need not include the more
15  detailed statutory definition).
16      Here, the Complaint directly alleges the use of an ATDS, specifically a
17  predictive autodialer—which is hardware that, "when paired with certain software,
18  has the capacity to store or produce numbers and dial those numbers at random, in
19  sequential order, or from a database of numbers," *Meyer*, 707 F.3d at 1043 (quoting
20  *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act*
21  *of 1991,* 18 FCC Rcd. 14014, 14091-93 (July 3, 2003))—and provides abundant
22  circumstantial evidence from which the Court can conclude that DBCC called
23  Thomas and class members using an ATDS.  The Complaint straightforwardly
24  alleges that all telephone contact by DBCC to Thomas and class members
25  "occurred via an 'automatic telephone dialing system,' as defined by 47 U.S.C.
26  § 227(a)(1)."  Compl. ¶ 29.  It alleges that DBCC used that system to call Thomas
27  and other class members without their prior express consent, in violation of
28

§ 227(b)(1)(A).  *Id.* ¶ 31.  It alleges that the calls were placed using a predictive dialer and an autodialer.  *Id.* ¶¶ 29, 36-37.

The Complaint alleges abundant circumstantial evidence that an ATDS was used.  It alleges a "pause" after Thomas picked up the phone and before someone came on the line, "characteristic of an automated dialer."  *Id.* ¶ 29; *see Connelly v. Hilton Grant Vacations Co., LLC*, No. 12CV599 JLS KSC, 2012 WL 2129364 (S.D. Cal. June 11, 2012) (finding that a silent delay on the telephone line supports inference that call was placed using an ATDS).  It alleges that "sophisticated telemarketers such as DBCC and its sales agents use autodialers, such as the StrataDial VC2 phone system, which not only have the minimal ability to store phone numbers and dial them automatically, but also the capacity manage a national telemarketing campaign."  *Id.* ¶ 34.  It alleges that "DBCC's autodialers have the capacity to store, produce, and/or call randomly or sequentially generated numbers," citing in great detail the instruction manual for DBCC's StrataDial VC2 phone system, which confirms that DBCC's autodialer "allows and enables DBCC to: import, create, and store a 'Sequential Call List'" and "make outbound predictive calls."  *Id.* ¶ 35.[4]  Based on the instruction manual, the Complaint alleges that DBCC's autodialer "has the capacity to" do a large number of things, including among other things generating, storing and producing telephone numbers randomly, sequentially and without human intervention, and dialing them.  *Id.*  It alleges that "scores" of other class members have complained about receiving illegal, automated calls without consent, leading to "hundreds" of Federal Trade Commission complaints—suggestive of a widespread campaign characteristic of an ATDS.  *Id.* ¶ 32.

In short, the Complaint directly alleges the use of an ATDS; alleges details of a specific ATDS alleged to be used by DBCC (including that it has the present

---

[4] DBCC's contention that Thomas "does not allege which phone system(s) are used by DBCC," Mot. at 12, is belied by the plain language of the Complaint.  *See* Compl. ¶ 35 (alleging details about "DBCC's StrataDial VC2 phone system").

1  capacity to generate and dial numbers randomly, automatically, sequentially,

2  without human intervention, and to make predictive calls); alleges other facts

3  supporting the inference that DBCC uses an ATDS to call cellular phones; and

4  alleges specific details about the calls received by Thomas and class members.

5  Accordingly, Thomas has met his pleading-stage burden of plausibly alleging that

6  his cellular phone line was called by an ATDS.[5]

7          Even the authority cited by DBCC recognizes that very little detail is

8  required at the pleading stage in order to provide adequate notice to a TCPA

9  defendant.  A plaintiff is permitted to allege, for example, "details of the call from

10 which the Court could infer the use of an automatic dialing system."  *See Knutson v.*

11 *Reply!, Inc.,* No. 10CV1267 BEN, 2011 WL 1447756, at *1 (S.D. Cal. Apr. 13,

12 2011).  In *Knutson*—a case cited by DBCC—the court acknowledged that it is

13 difficult for a plaintiff to allege the type of calling system used without the benefit

14 of discovery.  *Knutson v. Reply!, Inc.*, No. 10-CV-1267 BEN WMC, 2011 WL

15 291076, at *2 (S.D. Cal. Jan. 27, 2011); *accord Hickey v. Voxernet LLC*, 887 F.

16 Supp. 2d 1125, 1129-30 (W.D. Wash. 2012).  The court denied a subsequent

17 motion to dismiss after the plaintiff added allegations of a five-second delay

18 [5] DBCC belabors the point that an ATDS must have the present capacity to perform
   autodialing functions without human intervention—all of which the Complaint
19 alleges.  In any event, the cases DBCC relies on are distinguishable.  Contrary to
   DBCC's representation, Mot. at 14, *Glauser v. GroupMe, Inc.* was not a motion to
20 dismiss; it was decided at summary judgment.  No. C 11-2584 PJH, 2015 WL
   475111, at *7 (N.D. Cal. Feb. 4, 2015).  The TCPA claim in *McKenna v.*
21 *WhisperText*, meanwhile, was dismissed for failing to allege an ATDS because the
   plaintiff conceded that purportedly offending text messages were sent only with
22 human intervention.  *See* No. 5:14-CV-00424-PSG, 2015 WL 428728, at *3 (N.D.
   Cal. Jan. 30, 2015).  As a recent Declaratory Ruling and Order confirms, the FCC
23 interprets ATDS broadly, with a focus on "capacity" and an intent to "ensure
   robocallers cannot skirt consumer requirements through changes in calling
24 technology design or by calling from a list of numbers."  FCC Fact Sheet on
   Consumer Protection Proposal (June 18, 2015), *available at*
25 https://www.fcc.gov/document/fact-sheet-consumer-protection-proposal; FCC
   Open Commission Meeting Agenda and Video (June 18, 2015), *available at*
26 https://www.fcc.gov/events/open-commission-meeting-june-2015 (approving
27 forthcoming Order).
28

1    followed by a click, and a particular number that displayed when he received calls

2    and that did not ring and was automatically terminated when he tried to call it.

3    *Knutson*, 2011 WL 1447756, at *1. Other cases cited by DBCC are similarly

4    inapposite.  *See Margulis v. Generation Life Ins. Co.*, No. 4:14-CV-1462 SNLJ,

5    2015 WL 1260483, at *2 (E.D. Mo. Mar. 19, 2015) (dismissing complaint that

6    alleged "absolutely no facts," other than that she received one call with a pause via

7    ATDS from "an agent" of the defendants); *Ibey v. Taco Bell Corp.*, No. 12-CV-

8    0583-H WVG, 2012 WL 2401972, at *3 (S.D. Cal. June 18, 2012) (dismissing

9    complaint because it failed to allege "that the device has the capacity to store or

10   produce telephone numbers" and that the system used a random or sequential

11   number generator, and for the additional reason that the plaintiff appeared to allege

12   that human intervention was required).  Thomas's Complaint suffers from none of

13   those deficiencies.

14       Nor, contrary to DBCC's argument, is Thomas required to plead which make

15   and model of ATDS DBCC used to call him on October 7, 2013, or otherwise plead

16   details with particularity.  Rather, he need only allege "enough contextual facts to

17   rise above mere speculation." *Mogadam v. Fast Eviction Serv.*, No. SACV 14-

18   01912 JVS, 2015 WL 1534450, at *2 (C.D. Cal. Mar. 30, 2015) ("Because whether

19   a defendant used an ATDS is often a fact exclusively within the defendant's

20   possession, the Court cannot expect that the plaintiff will be able to plead the

21   existence of the system with specificity before an opportunity for discovery.").

22   Because he has done so, DBCC's motion should be denied on this ground.

23       **C.    Thomas States an Actionable Claim for Relief Under the UCL.**

24       DBCC takes a scattershot approach at Thomas's UCL claim, arguing that

25   Thomas fails to allege that California law applies, lacks constitutional and/or

26   statutory standing and asserts a UCL claim that is wholly derivative of the TCPA

27   claim.  In its haste to steer the Court toward dismissal, however, DBCC misstates

28   the law and serially misconstrues the Complaint.  Based upon the allegations in the

Complaint, Thomas has standing to assert a claim under California law, and has set forth allegations that plausibly give rise to a UCL violation.

### 1. Thomas Properly Alleges that California Law Applies.

DBCC contends that Thomas has "failed to plead a single fact demonstrating that California has any contacts to his claims whatsoever." Mot. at 16. But a fair reading of the Complaint demonstrates that this is mere rhetoric. Whether to apply California law to Thomas's and other class members' claims involves a case-specific and fact-intensive determination, usually reserved for class certification, about whether California has sufficiently significant contacts with the plaintiffs' claims. *See Forcellati v. Hyland's, Inc.*, 876 F. Supp. 2d 1155, 1159-61 (C.D. Cal. 2012). Thomas alleges that DBCC is a corporation headquartered in Malibu, California, and is thus a resident of California; that it designed and implemented its illegal course of conduct in California; and that California law and public policy weigh in favor of applying California law to the facts of this case. Compl. ¶¶ 5-6, 8, 61. At this early juncture, these allegations properly state a claim for the application of California law to a consumer class action. *See Chavez v. Blue Sky Natural Beverage Co.,* 268 F.R.D. 365, 379 (N.D. Cal. 2010); *see also Diamond Multimedia Sys., Inc. v. Superior Court*, 968 P.2d 539, 557 (Cal. 1999) (discussing California's "legitimate and compelling interest in preserving a business climate free of fraud and deceptive practices"); *Clothesrigger, Inc. v. GTE Corp.*, 236 Cal. Rptr. 605, 609 (Ct. App. 1987) (observing that California may have an "important interest" in applying its law to punish and deter wrongful and fraudulent conduct. affecting consumers in other states).

Choice of law determinations are generally reserved for the class certification stage because, on a motion to dismiss, "the record with respect to balancing the competing states' interests is not sufficiently developed." *Bias v. Wells Fargo & Co.*, 942 F. Supp. 2d 915, 928 (N.D. Cal. 2013) (declining to make choice of law determination on motion to dismiss where complaint alleged that the scheme was

1    "designed and perpetrated by executives in California"); *In re 5-hour ENERGY*

2    *Mktg. & Sales Practices Litig.,* No. MDL 13–2438 PSG PLAX, 2014 WL 5311272,

3    at *18–19 (C.D. Cal. Sept.4, 2014) (holding that at the pleading stage of litigation,

4    "a choice of law analysis would be premature"); *Forcellati*, 876 F. Supp. 2d at

5    1159-61 ("Courts rarely undertake choice-of-law analysis to strike class claims at

6    this early [pleading] stage in litigation."); *Bohn v. Pharmavite, LLC*, No. CV 11-

7    10430-GHK CWX, 2012 WL 8898669, at *2 (C.D. Cal. May 16, 2012);

8    *Andriesian v. Cosmetic Dermatology, Inc.*, No. 3:14-CV-01600-ST, 2015 WL

9    1638729, at *11 (D. Or. Mar. 3, 2015) *report and recommendation adopted*, No.

10   3:14-CV-01600-ST, 2015 WL 1925944 (D. Or. Apr. 28, 2015); *Gitson v. Trader*

11   *Joe's Co.,* No. 13–CV–01333–VC, 2014 WL 3933921, at *1 (N.D.Cal. Aug.8,

12   2014); *In re Sony Grand Wega KDF–E A10/A20 Series Rear Projection HDTV*

13   *Television Litig.,* 758 F Supp 2d 1077, 1096 (S.D. Cal. 2010)); *see also Diamond*

14   *Multimedia Sys., Inc. v. Superior Court*, 968 P.2d 539, 557 (Cal. 1999) (discussing

15   California's "legitimate and compelling interest in preserving a business climate

16   free of fraud and deceptive practices"); *Clothesrigger, Inc. v. GTE Corp.*, 236 Cal.

17   Rptr. 605, 609 (Ct. App. 1987) (observing that California may have an "important

18   interest" in applying its law to punish and deter wrongful conduct affecting

19   consumers in other states). ("In a putative class action, the Court will not conduct a

20   detailed choice-of-law analysis during the pleading stage.").

21       Tellingly, every case relied upon by DBCC in support of its motion to

22   dismiss is an order on class certification.  In *Mazza v. Am. Honda Motor Co., Inc.*,

23   666 F.3d 581, 590 (9th Cir. 2012), the Ninth Circuit reversed a class certification

24   decision, finding that the district court abused its discretion in applying the three-

25   step California choice of law test discussed in *Wash. Mut. Bank v. Superior Court*,

26   15 P.3d 1071, 1078-79 (Cal. 2001).  Significantly, the *Mazza* court found that

27   California *did have* sufficiently significant contact to the claims of each class

28   member to meet the plaintiffs' initial choice of law burden because Honda's

corporate headquarters was located there, as were one-fifth of the proposed class members and an advertising agency that produced certain allegedly fraudulent misrepresentations. *Id.* Honda did not dispute that this constituted sufficient contacts for choice of law purposes, only that other states' interest in applying their laws outweighed California's. *Id. Mazza* has nothing to say about what must be alleged in a complaint in order to apply California law. *Bias*, 942 F. Supp. 2d at 929 n. 7. It does, however, demonstrate that the location of the alleged tortfeasors—here, California—is of consequence to the choice of law analysis.

Similarly, *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Products Liab. Litig.* provides no support for DBCC at this early stage. 785 F. Supp. 2d 925, 927 (C.D. Cal. 2011). A multidistrict litigation, there the parties had developed "an extensive factual record concerning Toyota's activities in California and throughout the United States," and the record, which by then spanned at least 1,425 docket entries, "provide[d] a factual basis to take up Toyota's Due Process challenge and the application of a particular choice-of-law rule." *Id.* at 926 n. 1, 927. Here, in contrast, DBCC's motion is the sixteenth docket entry, and facts potentially relevant to the choice of law determination have not yet been developed through discovery.[6] *In re Charles Schwab Corp. Sec. Litig.* and *Fields v. Mobile Messengers Am., Inc.* are inapposite for the same reasons. 264 F.R.D. 531, 538 (N.D. Cal. 2009) (at class certification, declining to apply California law to nationwide securities class); No. C 12-05160 WHA, 2013 WL 6073426, at *4 (N.D. Cal. Nov. 18, 2013) (at class certification, observing that plaintiffs failed to take any depositions in order to meet their burden of showing sufficiently significant contacts).

---

[6] During the meet and confer before DBCC's motion was filed, plaintiff's counsel offered to engage in limited discovery in order to determine exactly which ATDS was used in order to inform the parties' choice of law positions, but defense counsel declined, preferring to push forward on the pleadings alone.

1       At the pleading stage, the Court is not yet in a position to evaluate the factual

2   details of the conduct alleged in this case or weigh the competing states' interests at

3   stake.  Nor does DBCC's selective reading of the Complaint make this

4   determination any easier or less premature.  *See* Mot. at 16 (noting that Thomas

5   sent a copy of his letter "to the *Oregon Department of Justice*" (emphasis in

6   original) but failing to mention that he also sent it to the *California Department of*

7   *Justice*, *see* Compl., Ex. A.).  Upon a sufficient record, the Court can determine

8   which state's law to apply, but until that time, DBCC's argument is premature.

9       **2.**    <u>**Thomas Has Standing Under Article III and the UCL.**</u>

10      DBCC argues that Thomas lacks both Article III and UCL standing because

11  he fails to allege that he "'lost' any 'money or property'" as a result of DBCC's

12  conduct.  Mot. at 18.[7]  This reading misapprehends key portions of the Complaint

13  and is squarely contradicted by an opinion issued by the Sixth Circuit Court of

14  Appeals just this week.  *See IMHOFF Inv., L.L.C. v. Alfoccino, Inc.*, 2015 U.S. App.

15  LEXIS 11617, *6-15 (6th Cir. July 7, 2015) (holding that a plaintiff who alleges a

16  violation of the TCPA has Article III standing).  A plaintiff has standing to sue in

17  federal court when he can show that: (1) he has suffered an injury in fact that is

18  "concrete, particularized, and actual or imminent," (2) the injury was "fairly

19  traceable to the challenged action," and (3) the injury is capable of legal or

20  equitable redress.  *See Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1147 (U.S.

21  2013) (citation omitted); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61

22  (1992).  Generally, federal standing is easily satisfied, because it simply requires a

23  showing that the Court's subject matter jurisdiction is properly invoked. "Standing

24  is found readily, particularly when injury to some traditional form of property is

25  _____

26  [7] While the Court can always consider its subject matter jurisdiction, DBCC did not
    move to dismiss the Complaint under Rule 12(b)(1), so its Article III standing
    challenge should be disregarded. *Cf. Smith v. Microsoft Corp.*, No. 11-CV-1958

27  JLS (BGS), 2012 WL 2975712, at *1 (S.D. Cal. July 20, 2012) (considering
    Constitutional standing challenge under Rule 12(b)(1)).

28

asserted."  13 Wright & Miller, Federal Practice and Procedure, § 3531.4, at 830 (Supp. 2005).  To have standing under the UCL, meanwhile, Thomas must allege "lost money or property as a result of the unfair competition."  Cal. Bus. & Prof. Code § 17204.

### a. __Thomas Alleges a Loss of Money and Property.__

Thomas alleges an economic injury sufficient to afford him standing under both Article III and the UCL.  Contrary to DBCC's unsupported characterization, Thomas's contention that he and all members of the proposed class "were charged for incoming calls" is not a conclusory allegation; it is a factual allegation.  Mot. at 19; Compl. ¶ 43; *Vaccaro v CVS Pharm., Inc*., No. 13-174, 2013 WL 3776927 (S.D. Cal July 16, 2013) ("It does not follow that factual allegations that borrow or echo statutory language are necessarily legal conclusions. Factual allegations do not cease to be factual even if they quote a statute's language. For instance, allegation of a telephone call remains factual even though the word "call" is found in the TCPA.").  By alleging that he had to pay money for the calls, Thomas pleads "lost money or property" for purposes of Article III and UCL § 17204.[8]

Disregarding the above allegation, DBCC contends that pleading multiple unwanted calls placed to a paid cellular phone line does not implicate a money or property interest, Mot. at 19, but this claim is not supported by California law. Indeed, interpreting this provision of the UCL, the California Supreme Court held:

> There are innumerable ways in which economic injury
> from unfair competition may be shown.  A plaintiff may
> (1) surrender in a transaction more, or acquire in a
> transaction less, than he or she otherwise would have; (2)
> have a present or future property interest diminished; (3)
> be deprived of money or property to which he or she has a

---

[8] DBCC again refers to the cellular phone line as an "office line," a phrase that appears nowhere in the Complaint or Exhibit A.

1                 cognizable claim; or (4) be required to enter into a

2                 transaction, costing money or property, that would

3                 otherwise have been unnecessary. . . . Neither the text of

4                 Proposition 64 nor the ballot arguments in support of it

5                 purport to define or limit the concept of 'lost money or

6                 property,' nor can or need we supply an exhaustive list of

7                 the ways in which unfair competition may cause

8                 economic harm.

9 *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 323 (Cal. 2011). *Kwikset* made

10 clear that "lost money or property" under the UCL is not narrowly limited to

11 tangible items or specific transactions, but instead encompasses any loss with an

12 economic value.  If a cell phone customer such as Thomas buys a fixed pool of

13 minutes per month, and some of those minutes are improperly depleted by DBCC's

14 phone calls, Thomas has lost something of economic value.  Only an excessively

15 narrow and formalistic definition of "losing money or property," as DBCC attempts

16 here, could lead one to conclude otherwise.  Thomas's economic injury readily

17 passes the injury test under the UCL.

18        The broad federal recognition that the TCPA protects a property interest

19 lends further support to this conclusion.  *See, e.g.*, *Soppet,* 679 F.3d at 638–39 ("An

20 automated call to a landline phone can be an annoyance; an automated call to a cell

21 phone adds expense to annoyance…. [Plaintiff] is out of pocket the cost of airtime

22 minutes…"); *accord Martin v. Leading Edge Recovery Solutions, LLC*, No. 11 C

23 5886, 2012 WL 3292838, at *2 (N.D. Ill. Aug. 10, 2012); *Markovic v. Appriss, Inc.*,

24 No. 1:13-CV-1439-JMS-MJD, 2013 WL 6887972, at *3 (S.D. Ind. Dec. 31, 2013).

25 FCC rules provide that wireless customers are "charged" for incoming calls for

26 TCPA purposes when the calls count against a monthly allocation of minutes:

27                 Wireless subscribers who purchase a large "bucket" of minutes

28                 at a fixed rate nevertheless are charged for those minutes, and

PLAINTIFFS' OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS
CV15-03194 BRO (GJSX)

1    for any minutes that exceed the "bucket" allowance. This

2    "bucket" could be exceeded more quickly if consumers receive

3    numerous unwanted telemarketing calls.

4   *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991,* 18

5   F.C.C.R. 14014, 14115 (F.C.C. July 3, 2003) (emphasis added); *see also Fini v.*

6   *Dish Network L.L.C.*, 955 F. Supp. 2d 1288, 1297 (M.D. Fla. 2013) (adopting

7   "highly persuasive" FCC rationale and finding as a matter of law that a plaintiff had

8   standing to sue under the TCPA because the calls she received counted against a

9   paid-for monthly allocation).  By alleging the receipt of unwanted calls on a paid

10  cellular phone line, Thomas satisfies standing under both Article III and the UCL.

11       DBCC provides no legal basis for the litany of factual questions it contends

12  the Complaint must address at the pleading stage, rather than in discovery, nor does

13  it explain why the Court should draw inferences against Thomas that are

14  purportedly "suggest[ed]" by Exhibit A.  Mot. at 19.  Only by ignoring

15  inconvenient law, inventing heightened pleading requirements for UCL standing

16  and invoking the magic word "conclusory" to overlook inconvenient factual

17  allegations can DBCC claim Thomas lacks standing.  The argument that "strains

18  credulity" is DBCC's.

19          **b.**   **An Alleged Violation of the TCPA Constitutes Injury**

20                 **in Fact.**

21       Independently, Thomas has Article III standing whether or not he lost money

22  or property because he alleges a violation of the TCPA.  Just this week, the Sixth

23  Circuit held that a plaintiff who alleges a violation of the TCPA has Article III

24  standing to bring his claim against a defendant.  *IMHOFF Inv., L.L.C.*, 2015 U.S.

25  App. LEXIS 11617, at *6-15.  This accords with the general rules of Article III

26  standing conferred by Congress:  provided a plaintiff who sues under a federal

27  statute is "among the injured"—*i.e.*, had his or her own personal rights violated—

28  and the rights conferred by the statute protect against "individual, rather than

collective, harm," that plaintiff has suffered an injury in fact, regardless of whether she or she alleges measurable damages. *Robins v. Spokeo, Inc.*, 742 F.3d 409, 413-14 (9th Cir. 2014) (plaintiff alleging violation of Fair Credit Reporting Act (FCRA) satisfied Article III injury-in-fact requirement because FCRA violations are "concrete, *de facto* injuries"), *cert. granted*, 135 S. Ct. 1892 (2015)[9]; *Hammer v. Sam's E., Inc.*, 754 F.3d 492, 499 (8th Cir. 2014) (same), *cert. denied*, 135 S. Ct. 1175 (2015); *see also Beaudry v. TeleCheck Servs., Inc.,* 579 F.3d 702, 705–07 (6th Cir. 2009) (ruling that the FCRA "permits a recovery when there are no identifiable or measurable actual damages"); *Murray v. GMAC Mortg. Corp.,* 434 F.3d 948, 952–53 (7th Cir. 2006) (ruling that the FCRA "provide[s] for modest damages without proof of injury"); *see also Tourgeman v. Collins Fin. Servs., Inc.*, 755 F.3d 1109, 1114-16 (9th Cir. 2014) (plaintiff who alleged violation of Fair Debt Collection Practices Act had Article III standing), *as amended on denial of reh'g and reh'g en banc* (Oct. 31, 2014).

TCPA injuries satisfy Article III's injury-in-fact requirement. *IMHOFF Inv., L.L.C.*, 2015 U.S. App. LEXIS 11617, at *6-15 (citing circuit precedent "and the text and legislative history of the TCPA itself" and holding that a TCPA plaintiff has Article III standing); *Smith v. Microsoft Corp.*, No. 11-CV-1958 JLS (BGS), 2012 WL 2975712, at *6 (S.D. Cal. July 20, 2012) (analyzing language and legislative history of TCPA and finding that plaintiff who pled a TCPA violation alleged "a particularized injury in satisfaction of Article III premised on the invasion of his privacy, even absent any economic harm"); *accord Manno v. Healthcare Revenue Recovery Grp., LLC*, 289 F.R.D. 674, 682 (S.D. Fla. 2013)

---

[9] DBCC implies that the Court should disregard this doctrine notwithstanding relevant controlling authority because it is "simply wrong" and is presently pending before the Supreme Court.  While the Court need not base its holding on this doctrine alone, DBCC provides no legitimate basis to disregard it.

1   (collecting cases).  Because Thomas has pled a violation of the TCPA, he has

2   alleged an actual injury for the purpose of Article III.[10]

3          **3.     The Complaint Alleges Both Unlawful and Unfair Practices.**

4          Finally, DBCC argues that because Thomas "appears to proceed only under

5   the 'unlawful' prong" of the UCL, his UCL claim must be dismissed insofar as it is

6   based "*solely*" on the TCPA claim, which fails.  Mot. at 19-20.  This statement is

7   doubly wrong.  First, DBCC misreads the Complaint: Thomas states a claim under

8   both the "unlawful" *and* "unfair" prongs of the UCL.  Compl. ¶¶ 72-76 (alleging

9   "unlawful" conduct and "unfair" competition whose practices' harms outweigh

10  their utility and "are immoral, unethical, oppressive, unscrupulous and/or

11  substantially injurious to Plaintiffs and members of the Class").  *See Bardin v.*

12  *Daimlerchrysler Corp.*, 136 Cal. App. 4th 1255, 1264-73 (2006) (discussing two

13  tests for unfair competition under the UCL).  Second, DBCC draws the incorrect

14  conclusion.  Thomas states a UCL claim both because he has plausibly alleged

15  violations of the TCPA warranting relief under the unlawfulness prong, but also,

16  independently and distinctly, because he has alleged a violation of the UCL under

17  the unfairness prong.

18  **V.     CONCLUSION**

19         For the foregoing reasons, Plaintiff respectfully requests that DBCC's motion

20  to dismiss be denied.

21

22

23

24

_____

25  [10] In its motion, DBCC does not appear to challenge the causation and redressibility
    elements of Article III standing.  *See Clapper*, 133 S. Ct. at 1138.  Nonetheless, the
26  Complaint pleads that DBCC caused Thomas's injury, which can be fairly
    redressed through the award of damages and injunctive relief.  *See* Compl. ¶¶ 62-78
27  and Prayer for Relief.  Moreover, where statutory rights for the basis of the injury,
    the standing inquiry boils to "essentially the injury in fact prong."  *Spokeo*, 742
28  F.3d 409, 413-14 (citation and internal quotation marks omitted).

1    Dated:  July 8, 2015          LIEFF, CABRASER, HEIMANN
                                      & BERNSTEIN, LLP
2

3                                  By: */s/   Daniel M. Hutchinson*
                                        Daniel M. Hutchinson
4
                                   LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
5                                  Jonathan D. Selbin (State Bar No. 170222)
                                   Email: jselbin@lchb.com
6                                  250 Hudson Street, 8th Floor
                                   New York, NY  10013
7                                  Telephone:  (212) 355-9500
                                   Facsimile:  (212) 355-9592
8
                                   LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
9                                  Daniel M. Hutchinson
                                   (State Bar No. 239458)
10                                 Email: dhutchinson@lchb.com
                                   275 Battery Street, 29th Floor
11                                 San Francisco  94111-3339
                                   Telephone:  (415) 956-1000
12                                 Facsimile:  (415) 956-1008

13                                 SIRI & GLIMSTAD LLP
                                   Aaron Siri
14                                 (*pro hac vice* to be filed)
                                   Email: aaron@sirillp.com
15                                 120 East 31st Street
                                   New York, New York 10016
16                                 Telephone: (212) 532-1091
                                   Facsimile: (646) 417-5967
17
                                   PARISI & HAVENS LLP
18                                 David C. Parisi
                                   (State Bar No. 162248)
19                                 Email:  dcparisi@parisihavens.com
                                   212 Marine Street, Unit 100
20                                 Santa Monica, CA 90405
                                   Telephone:  (818) 990-1299
21                                 Facsimile:  (818) 501-7852

22                                 *Counsel for Plaintiff and the Proposed Class*

23

24

25

26

27

28