UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| Case No. | CV 15-03194 BRO (GJSx) | Date | August 5, 2015 |
|---|---|---|---|
| Title | JEFFREY A. THOMAS V. DUN & BRADSTREET CREDIBILITY CORP. | | |

| Present: The Honorable | BEVERLY REID O'CONNELL, United States District Judge | |
|---|---|---|
| Renee A. Fisher | Not Present | N/A |
| Deputy Clerk | Court Reporter | Tape No. |
| Attorneys Present for Plaintiffs: | | Attorneys Present for Defendants: |
| Not Present | | Not Present |

**Proceedings:** (IN CHAMBERS)

## ORDER DENYING MOTION TO DISMISS [16]

### I. INTRODUCTION

Pending before the Court is Defendant Dun & Bradstreet Credibility Corp.'s ("Defendant") Motion to Dismiss Plaintiff Jeffrey A. Thomas's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (Dkt. No. 16.) After considering the papers filed in support of and in opposition to the instant motion, the Court deems this matter appropriate for decision without oral argument of counsel. *See* Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15. For the following reasons, the Court **DENIES** Defendant's motion.

### II. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff is a resident and citizen of the State of Oregon and Executive Vice President of a company called J and J Thomas, Inc. (Compl., ¶¶ 7, Ex. A.) Defendant sells credit building and credibility solutions for businesses. (Compl. ¶ 8.) Plaintiff initiated this putative class action on April 28, 2015, alleging violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. §§ 227 *et seq.*, and California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 *et seq.* Plaintiff seeks to represent a nationwide class of individuals who have received non-emergency telemarketing calls from or on behalf of Defendant to their cellular telephones without prior express consent. (Compl. ¶ 40.)

According to the Complaint, Plaintiff received numerous calls from Defendant to his cellular telephone throughout 2013. (Compl. ¶ 23.) Plaintiff alleges these calls were unlawful under the TCPA because he never granted Defendant permission to contact him

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| Case No. | CV 15-03194 BRO (GJSx) | Date | August 5, 2015 |
|---|---|---|---|
| Title | JEFFREY A. THOMAS V. DUN & BRADSTREET CREDIBILITY CORP. | | |

about any of Defendant's business credit services. (Compl. ¶ 22.) Plaintiff further alleges he requested Defendant cease calling him and even asked Defendant to place him on the company's "do-not-call" list on several occasions; Defendant nevertheless continued to call Plaintiff's cellular telephone. (Compl. ¶ 24.)

On October 7, 2013, Defendant again called Plaintiff's cellular telephone. (Compl. ¶ 25.) Frustrated by the continued calls, Plaintiff sent a cease-and-desist letter on October 8, 2013 detailing his efforts over the past year to be placed on Defendant's "do-not-call" list. (Compl. ¶ 26, Ex. A.) The letter stated the following, in pertinent part:

> [T]he purpose of this letter is to demand that you CEASE AND DESIST contact of any kind with me or any member of J and J Thomas, Inc.[,] to include the following subsidiaries: Concierge Home and Business Watch, J and J Thomas International, Grants Pass Security, and F Wombat and Co. This demand includes but is not limited to, phone calls, texts, emails, faxes and letters/mailers.

(Compl. Ex. A.) Plaintiff provided a copy of the letter to the Federal Communications Commission ("FCC"), Oregon Department of Justice, and State of California Department of Justice. (Compl. ¶ 26.)

Plaintiff contends Defendant's actions violate the TCPA and constitute unlawful and unfair business practices under the UCL. (Compl. ¶¶ 62–78.) Plaintiff alleges Defendant acted knowingly and willfully by continuing to call Plaintiff's cellular telephone despite his requests to be placed on the company's "do-not-call" list. (Compl. ¶ 64.) Plaintiff seeks statutory damages under the TCPA, injunctive relief, and an award of attorney's fees and costs. (Compl. Prayer for Relief.) Defendant now seeks to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (Dkt. No. 16.) Plaintiff timely opposed the motion, (Dkt. No. 13), and Defendant timely replied, (Dkt. No. 19).

## III.   LEGAL STANDARD

Under Rule 8(a), a complaint must contain a "short and plain statement of the claim showing that the [plaintiff] is entitled to relief." Fed. R. Civ. P. 8(a). If a

Case 2:15-cv-03194-BRO-GJS Document 23 Filed 08/05/15 Page 3 of 13 Page ID #:197

LINK:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| Case No. | CV 15-03194 BRO (GJSx) | Date | August 5, 2015 |
|---|---|---|---|
| Title | JEFFREY A. THOMAS V. DUN & BRADSTREET CREDIBILITY CORP. | | |

complaint fails to do this, the defendant may move to dismiss it under Rule 12(b)(6). Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Thus, there must be "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility'" that the plaintiff is entitled to relief. *Id.* (quoting *Twombly*, 550 U.S. at 557).

Where a district court grants a motion to dismiss, it should provide leave to amend unless it is clear that the complaint could not be saved by any amendment. *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008) ("Dismissal without leave to amend is improper unless it is clear, upon de novo review, that the complaint could not be saved by any amendment."). Leave to amend, however, "is properly denied . . . if amendment would be futile." *Carrico v. City & Cty. of S.F.*, 656 F.3d 1002, 1008 (9th Cir. 2011).

## IV. DISCUSSION

Defendant challenges Plaintiff's claims under the TCPA on three primary bases. First, Defendant argues Plaintiff lacks statutory standing because he was not a "called party" within the meaning of § 227(b)(1)(A)(iii). Second, Defendant contends the October 7, 2013 call was a business-to-business call and argues § 227(b)(1)(A)(iii) only applies to telemarketing activities directed at consumers. Third, Defendant asserts Plaintiff has failed to plausibly allege Defendant called him using an automatic telephone dialing system ("ATDS"), which is required for liability under § 227(b)(1)(A)(iii).

Defendant also seeks to dismiss Plaintiff's UCL claim. Defendant argues this claim is derivative of Plaintiff's claims under the TCPA and fails for the same reasons stated above. Defendant also argues that because Plaintiff is a resident and citizen of Oregon, he should not be permitted to invoke the protections of California law. Finally,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| Case No. | CV 15-03194 BRO (GJSx) | Date | August 5, 2015 |
|---|---|---|---|
| Title | JEFFREY A. THOMAS V. DUN & BRADSTREET CREDIBILITY CORP. | | |

Defendant asserts Plaintiff lacks statutory standing under the UCL because he has not alleged a loss of money or property. The Court will discuss each claim and the parties' respective arguments in turn.

### A. Plaintiff's Claims Under the TCPA

Plaintiff maintains Defendant violated § 227(b)(1)(A)(iii) by calling his cellular telephone on multiple occasions throughout 2013, including on October 7, 2013, which lead to the cease-and-desist letter. To state a claim under the TCPA, Plaintiff must allege all three of the following: (1) Defendant called Plaintiff's cellular telephone; (2) Defendant used an ATDS; and (3) Plaintiff did not give prior express consent to the calls at issue. *Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1043 (9th Cir. 2012); *Flores v. Adir Int'l, LLC*, No. CV 15-00076 AB, 2015 WL 4340020, at *3 (C.D. Cal. July 15, 2015); *Jordan v. Nationstar Mortg. LLC*, No. CV 14-00787 WHO, 2014 WL 5359000, at *4 (N.D. Cal. Oct. 20, 2014). Defendant challenges Plaintiff's allegations regarding the first and second elements.

### 1. Whether Plaintiff Is a "Called Party" Under the TCPA

Defendant first argues Plaintiff lacks statutory standing under the TCPA because he is not a "called party" within the meaning of § 227(b)(1)(A)(iii). (Mot. to Dismiss at 5‑7.) Defendant asserts the proper definition of a "called party" requires that the plaintiff be the current subscriber of the line. In arguing Plaintiff was not the "called party" here, Defendant relies on the cease-and-desist letter, which Plaintiff signed in his capacity as Executive Vice President of J and J Thomas, Inc. and which indicates Defendant called the company's "office" on October 7, 2013. (*See* Compl. Ex. A.) According to Defendant, the letter demonstrates that Plaintiff's company, not Plaintiff, is the current subscriber of the line.

As relevant here, the TCPA provides that

> It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States . . . to make any call (other than a call made for emergency purposes or made with the prior express consent of the "called party") using any automatic

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 15-03194 BRO (GJSx) | Date | August 5, 2015 |
|---|---|---|---|
| Title | JEFFREY A. THOMAS V. DUN & BRADSTREET CREDIBILITY CORP. | | |

telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the "called party" is charged for the call.

47 U.S.C. § 227(b)(1)(A)(iii). The TCPA confers a private right of action to "[a] person or entity" to sue for violations of § 227(b)(1). *Id.* § 227(b)(3). Although § 227(b)(3) does not expressly limit who may file suit, most federal courts have read § 227(b)(1) to limit standing to a "called party." The issue often arises where the defendant intends to call one party and inadvertently calls the plaintiff. The issue may also arise where the name on the account is not the same as the regular user of the line.

The federal courts interpreting § 227(b)(1) to limit standing under the TCPA are divided on the issue of who is a "called party." *See Pacleb v. Cops Monitoring*, No. CV 14-01366 CAS, 2014 WL 3101426, at *3 (C.D. Cal. July 7, 2014). In resolving the question, some courts have found that only the intended recipient of the call may maintain an action under § 227(b)(1). *See, e.g. Cellco P'ship v. Dealers Warranty, LLC*, 2010 WL 3946713, at *10 (D.N.J. Oct. 5, 2010); *Leyse v. Bank of Am., N.A.*, No. CV 09-07654 JGK, 2010 WL 2382400, at *4–6 (S.D.N.Y. June 14, 2010). Other courts have concluded that the subscriber of the line at the time the call is made may bring suit. *See, e.g.*, *Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637, 643 (7th Cir. 2012) ("We conclude that 'called party' in § 227(b)(1) means the person subscribing to the called number at the time the call is made."); *Pacleb*, 2014 WL 3101426, at *3 (adopting *Soppet*'s reasoning). Still other courts have found that the "regular user" of a line may bring a claim, regardless of whether he or she is the account holder or contractually responsible for paying the bill. *See, e.g.*, *Olney v. Progressive Cas. Ins. Co.*, 993 F. Supp. 2d 1220, 1226 (S.D. Cal. 2014); *Gutierrez v. Barclays Grp.*, No. CV 10-01012 DMS, 2011 WL 579238, at *4–6 (S.D. Cal. Feb. 9, 2011) (finding the subscriber has standing to sue under the TCPA and that there is no requirement a plaintiff show he or she was charged for the call to prevail). Finally, a minority of courts have relied upon the language of § 227(b)(3) to conclude the TCPA confers standing on any person or entity. *See, e.g.*, *Swope v. Credit Mgmt., LP*, No. CV 12-00832 CDP, 2013 WL 607830, at *3 (E.D. Mo. Feb. 19, 2013) (following the plain terms of § 227(b)(3) but finding standing "even if the TCPA limits standing to 'called parties'"); *Page v. Regions Bank*, 917 F. Supp. 2d 1214, 1217–19 (N.D. Ala. 2012) (same).

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 15-03194 BRO (GJSx) | Date | August 5, 2015 |
|---|---|---|---|
| Title | JEFFREY A. THOMAS V. DUN & BRADSTREET CREDIBILITY CORP. | | |

The Ninth Circuit has not addressed the issues of whether the TCPA limits standing to called parties, or, if so, who falls within this definition. The Seventh Circuit has considered who is "called party" in applying the prior express consent exception and holds that a "called party" is "the person subscribing to the called number at the time the call is made." 679 F.3d at 643. Many federal courts in California follow the Seventh Circuit's reasoning and limit the definition of a "called party" or persons with standing under § 277(b)(1) to the current subscriber. *See, e.g.*, *Charkchyan v. EZ Capital, Inc.*, No. CV 14-03564 ODW, 2015 WL 3660315 (C.D. Cal. June 11, 2015); *Pacleb*, 2014 WL 3101426, at *3; *Olney*, 2014 WL 294498, at*3; *Gutierrez*, 2011 WL 579238, at *5.

As indicated above, Defendant argues standing under § 227(b)(1) should be limited to the current subscriber of the line. Plaintiff, on the other hand, focuses on § 227(b)(3) and argues any person or entity enjoys statutory standing under the TCPA. The Court need not resolve the questions of whether the TCPA limits standing to called parties or, if so, who falls within this class of persons. Under any definition, Plaintiff has alleged sufficient facts to demonstrate he is a "called party".

According to the Complaint, Defendant called Plaintiff on numerous occasions throughout 2013 "on his cellular telephone." (Compl. ¶ 23.) Applying the current subscriber definition advanced by Defendant, Plaintiff is a "called party", as no facts or allegations suggest he is not the current subscriber of "his" cellular telephone; and indeed, a common sense reading of this allegation suggests Plaintiff is the current subscriber of his own line. Nor does the Complaint contain any details indicating that Defendant did not intend to call Plaintiff, or that Plaintiff is not the regular user of "his" cellular telephone. Thus, even assuming the TCPA limits standing to called parties, Plaintiff is one, regardless of which definition applies.

Defendant relies on the cease-and-desist letter in arguing that J and J Thomas, Inc., not Plaintiff, must be the current subscriber of the line. This argument is unavailing for two reasons. First, the letter refers only to the October 7, 2013 call. (*See* Compl. Ex. A.) But Plaintiff alleges Defendant "repeatedly contacted" him "on his cellular telephone" throughout 2013. (Compl. ¶ 23.) Thus, even assuming Defendant called J and J Thomas Inc.'s "office" on October 7, 2013, as the letter states, this fact would not negate Defendant's potential liability for the other calls to Plaintiff's cellular telephone throughout the year.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 15-03194 BRO (GJSx) | Date | August 5, 2015 |
|---|---|---|---|
| Title | JEFFREY A. THOMAS V. DUN & BRADSTREET CREDIBILITY CORP. | | |

Moreover, the cease-and-desist letter does not contradict or undermine Plaintiff's basic theory of liability. Defendant asserts that a call to J and J Thomas, Inc.'s office could not be a call to Plaintiff's cellular telephone. But Defendant does not explain why it would be implausible for Plaintiff and a company with his name to share a line. And even assuming the line is used by J and J Thomas, Inc. for business purposes, Defendant does not explain why it would be implausible for Plaintiff, the company's Executive Vice President, to be the subscriber of the line.[1] At this stage of the proceedings, the Court must construe the allegations in Plaintiff's favor. As nothing in the Complaint or cease-and-desist letter suggests Plaintiff is not the current subscriber, regular user, or intended recipient of the calls to "his" cellular telephone, the Court finds no basis upon which to dismiss Plaintiff's TCPA claims for lack of statutory standing.

### 2. Whether Section 227(b)(1)(A)(iii) Applies to Business-to-Business Calls

Defendant next argues § 227(b)(1)(A)(iii) does not apply to business-to-business calls. (Mot. to Dismiss at 7‑10.) Defendant cites various authorities indicating the TCPA was enacted to protect consumers from telemarketing calls and asserts § 227(b)(1)(A)(iii) should be read to permit calls to a business. As other federal courts have noted, § 227(b)(1)(A)(iii) "prohibits calls using an automated dialing system 'to any telephone number assigned . . . to a cellular telephone service'" and accordingly "does not distinguish" between calls to residential versus business lines. *See Johansen v. GVN Mich., Inc.*, No. CV 15-00912, 2015 WL 3823036, at *1 (N.D. Ill. June 18, 2015) (Posner, J.) (quoting 47 U.S.C. § 227(b)(1)(A)(iii)). In rejecting a similar argument raised by the defendant in *Johansen*, Judge Posner observed that a separate provision of the TCPA, § 227(b)(1)(B), prohibits calls "to any residential telephone line." *Id.* (quoting 47 U.S.C. § 227(b)(1)(B)). That § 227(b)(1)(A)(iii) does not include any express limitation or distinction between residential and business lines suggests the provision applies to all calls to cellular telephones, regardless of the nature of the line's use. *See Russello v. United States*, 464 U.S. 16, 23 (1983) ("Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion."); *see also Bentley v. Bank of Am., N.A.*, 773 F. Supp. 2d 1367,

---

[1] Indeed, the letter's request that Defendant cease contacting "me or any member of J and J Thomas, Inc." suggests Plaintiff and the company share the line.

Case 2:15-cv-03194-BRO-GJS Document 23 Filed 08/05/15 Page 8 of 13 Page ID #:202

LINK:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| Case No. | CV 15-03194 BRO (GJSx) | Date | August 5, 2015 |
|---|---|---|---|
| Title | JEFFREY A. THOMAS V. DUN & BRADSTREET CREDIBILITY CORP. | | |

1374 (S.D. Fla. 2011) ("Defendants have cited to no authority demonstrating that the exemption of section 227(b)(1)(B) for an established business relationship likewise applies to claims brought under section 227(b)(1)(A). In the absence of such authority, and when considering that the exemption appears to only qualify the language of section 227(b)(1)(B), the Court is not persuaded at this time that the exemption similarly applies to section 227(b)(1)(A).").

The Court need not resolve the scope of § 227(b)(1)(A)(iii) to settle the instant dispute. In arguing Plaintiff's TCPA claims fail because the calls here were to a business, Defendant again relies mistakenly on the cease-and-desist letter. Plaintiff alleges Defendant called his cellular telephone throughout 2013. (Compl. ¶ 23.) The logical, if not only plausible, inference is that the calls were to a residential number. For the same reasons discussed above, the cease-and-desist letter does not undermine or contradict this theory of liability. The letter references one incident only, and no facts suggest the line Defendant called on October 7, 2013 could not be shared by Plaintiff and his business, J and J Thomas, Inc. Thus, even assuming § 227(b)(1)(A)(iii) does not apply to business calls, this limitation would not necessarily bar Plaintiff's claims because the facts as alleged suggest Defendant called a residential number.

### 3. Whether Plaintiff Has Plausibly Pleaded Defendant Used an ATDS

Section 227(b)(1)(A)(iii) creates liability only where a defendant engages in telemarketing activities using an ATDS.[2] Defendant's final challenge to the TCPA claims asserts Plaintiff has failed to plausibly allege it called him using such a device. (Mot. to Dismiss at 10–15.) As discussed in further detail below, Defendant's argument is premature and better suited to a motion for summary judgment; a fair reading of the Complaint suggests Defendant used an ATDS.

The TCPA defines an ATDS as "equipment which has the capacity—(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1). The TCPA does not define the term "capacity." In interpreting § 227(a)(1), the Ninth Circuit holds that "a system need not actually store, produce, or call randomly or sequentially generated

---

[2] The section also prohibits telemarketing activities using "an artificial or prerecorded voice," but Plaintiff alleges Defendant used an ATDS.

Case 2:15-cv-03194-BRO-GJS Document 23 Filed 08/05/15 Page 9 of 13 Page ID #:203

LINK:

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 15-03194 BRO (GJSx) | Date | August 5, 2015 |
|---|---|---|---|
| Title | JEFFREY A. THOMAS V. DUN & BRADSTREET CREDIBILITY CORP. | | |

telephone numbers" to fall within the definition of an ATDS; rather, "it need only have the capacity to do it." *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 951 (9th Cir. 2009).[3]

Plaintiff's allegations accord with this broad definition of an ATDS. Plaintiff alleges Defendant telemarkets its services using a "predictive dialer." (Compl. ¶ 29.) Plaintiff also alleges there was a "pause" after he answered the phone, which is "characteristic of an automated dialer." (Compl. ¶ 29.) Although Defendant argues these allegations alone are insufficient to plausibly plead its use of an ATDS, Defendant ignores and misconstrues Plaintiff's remaining allegations. For example, Defendant glosses over the allegations regarding its likely need for a "sophisticated phone system" capable of "stor[ing] phone numbers and dial[ing] them automatically." (Compl. ¶ 34.) And Defendant's close dissection of the allegations regarding the StrataDial VC2 misreads the thrust of the Complaint. That Plaintiff alleges "telemarketers such as [Defendant]" use autodialers "such as the StrataDial VC2 phone system" does not undermine the plausibility that Defendant in fact used such a system to call Plaintiff.[4] And assuming Defendant did use such as system, as Plaintiff alleges, Defendant could be found to have used an ATDS, as the StrataDial VC2 "'allows' and 'enables' [Defendant] to: (1) import, create, and store a 'Sequential Call List'; and (2) make 'outbound predictive calls.'" (Compl. ¶ 35.)

Together, Plaintiff's allegations plausibly plead Defendant's use of an ATDS. Plaintiff need not prove as much at this stage of the proceedings. *See Pacleb*, 2014 WL 3101426, at *4 ("Plaintiff alleges that the defendant called him using an ATDS. Whether defendant actually did so is better adjudicated after the evidentiary record has been

---

[3] Additionally, Congress has delegated authority to the FCC to "prescribe regulations to implement the requirements" of § 227. *See* 47 U.S.C. § 227(b)(2). Pursuant to this authority, the FCC defines an ATDS to include "any equipment that has the specified capacity to generate numbers and dial them without human intervention regardless of whether the numbers called are randomly or sequentially generated or come from calling lists." *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 27 F.C.C. Rcd. 15391, 15392 ¶ 2, n.5 (2012). The purpose of the "capacity" rule "is to ensure that the prohibition on autodialed calls not be circumvented." *Id.*

[4] Indeed, Plaintiff later references the system as "DBCC's StrataDial VC2" and "DBCC's autodialer." (Compl. ¶ 35.)

Case 2:15-cv-03194-BRO-GJS Document 23 Filed 08/05/15 Page 10 of 13 Page ID #:204

LINK:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| Case No. | CV 15-03194 BRO (GJSx) | Date | August 5, 2015 |
|---|---|---|---|
| Title | JEFFREY A. THOMAS V. DUN & BRADSTREET CREDIBILITY CORP. | | |

developed."); *Iniguez v. The CBE Grp.*, 969 F. Supp. 2d 1241, 1247 (E.D. Cal. 2013) ("Plaintiff's complaint alleges both that Defendant used an automatic telephone dialing system and that Defendant's system utilized an artificial voice. Either allegation is sufficient on its own to support Plaintiff's claims."); *see also Knutson v. Reply!, Inc.*, No. CV 10-01267, 2011 WL 1447756, at *1 (S.D. Cal. Apr. 13, 2011) (noting the difficulty a TCPA plaintiff faces in "knowing the type of calling system used without the benefit of discovery"). Accordingly, the Court will not dismiss Plaintiff's TCPA claims on this ground at this time.

### B. Plaintiff's Claim Under the UCL

Defendant also moves to dismiss Plaintiff's claim under the UCL. Defendant first argues this claim must be dismissed because Plaintiff, an Oregon resident and citizen, has pleaded insufficient facts to justify the extraterritorial application of California law. (Mot. to Dismiss at 15–18.) Defendant also argues Plaintiff lacks statutory standing under the UCL.[5] (Mot. to Dismiss at 18–20.)

#### 1. Whether Plaintiff May Bring a Claim Under the UCL

"Whether a nonresident plaintiff can assert a claim under California law is a constitutional question based on whether California has sufficiently significant contacts with the plaintiff's claims." *Forcellati v. Hyland's, Inc.*, 876 F. Supp. 2d 1155, 1160 (C.D. Cal. 2012) (citing *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 589–90 (9th Cir. 2012)). In *Forcellati*, the court rejected the same argument Defendant raises here under similar factual circumstances. Like Plaintiff, the plaintiff in *Forcellati* was not a California resident and brought various claims under California consumer protection laws on behalf of a nationwide putative class. In rejecting an argument against extraterritorial application of California law, *Forcellati* found sufficient contacts because the defendant

---

[5] Although Defendant asserts Plaintiff "does not and cannot allege facts to establish Article III standing," (*see* Mot. to Dismiss at 18), Defendant has not supported this assertion with any factual or legal arguments, (*see generally id.*). The Court therefore limits its analysis to the question of statutory standing under the UCL. To the extent Defendant believes the United States Supreme Court's recent grant of certiorari of *Robins v. Spokeo, Inc.*, 742 F.3d 409 (9th Cir. 2014) favors a stay of these proceedings, (*see* Mot. to Dismiss at 18 n.9), this issue is not before the Court. The Court will not entertain the issue unless and until it is fully briefed by both parties.

Case 2:15-cv-03194-BRO-GJS   Document 23   Filed 08/05/15   Page 11 of 13   Page ID #:205

LINK:

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | **CV 15-03194 BRO (GJSx)** | Date | August 5, 2015 |
|---|---|---|---|
| Title | **JEFFREY A. THOMAS V. DUN & BRADSTREET CREDIBILITY CORP.** | | |

was allegedly headquartered in California such that the "application of California law poses no constitutional concerns." *Id.* (citing *Chavez v. Blue Sky Natural Beverage Co.*, 268 F.R.D. 365, 379 (N.D. Cal. 2010) ("Defendants are headquartered in California and their misconduct allegedly originated in California. With such significant contacts between California and the claims asserted by the class, application of the California consumer protection laws would not be arbitrary or unfair to defendants.")). Plaintiff similarly alleges that Defendant maintains a principal place of business in California. (Compl. ¶ 8.) Thus, Defendant bears the burden "to defeat the presumption that California law applies and to 'show a compelling reason justifying displacement of California law.'" *Forcellati*, 876 F. Supp. 2d at 1160 (quoting *Rasidescu v. Midland Credit Mgmt., Inc.*, 496 F. Supp. 2d 1155, 1159 (S.D. Cal. 2007)).[6]

Defendant has not satisfied its burden. Defendant cites to *Fields v. Mobile Messengers America, Inc.*, No. CV 12-05160 WHA, 2013 WL 6073426, at *4–5 (N.D. Cal. Nov. 18, 2013), but this case involved a choice of law analysis at the class certification stage. It is therefore unhelpful here, as the question of whether Plaintiff has proposed a certifiable nationwide class is not before the Court at this time. *Opperman v. Path, Inc.*, No. CV 13-00453 JST, 2014 WL 1973378, at *11 (N.D. Cal. May 14, 2014) (finding case law discussing choice of law in the context of class certification distinguishable on a motion to dismiss); *Bohn*, 2012 WL 8898669, at *3 (same).

---

[6] Defendant relies on *In re Charles Schwab Corp. Securities Litigation*, 264 F.R.D. 531, 538 (N.D. Cal. 2009) for the proposition that extraterritorial application of California law requires nonresident plaintiffs to allege the purported misconduct occurred within the state. (Mot. to Dismiss at 16.) As Plaintiff alleges Defendant "designed and implemented its illegal course of conduct in California," (Compl. ¶ 61), *In re Charles Schwab* does not alter the Court's conclusion. *See Bohn v. Pharmavite, LLC*, No. CV 11-10430 GHK, 2012 WL 8898669, at *3 (C.D. Cal. May 16, 2012) ("Plaintiff alleges that Defendant's headquarters are in California and that it 'manufactures, distributes, markets and sells' the products at issue to consumers nationwide 'from its headquarters in Mission Hills, California.' Therefore, application of California law poses no constitutional concerns.") (internal citation omitted); *see also Norwest Mortg., Inc. v. Superior Ct.*, 72 Cal. App. 4th 214, 224–225 (Cal. Ct. App. 1999) ("[S]tate statutory remedies may be invoked by out-of-state parties when they are harmed by wrongful conduct occurring in California.").

That Plaintiff alleges Defendant employed other companies to help conduct its telemarketing activities is also immaterial to the question of extraterritorial application. If Defendant "designed and implemented its illegal course of conduct in California," as Plaintiff alleges, it presumably directed and oversaw these companies from its headquarters within the state. This is sufficient to demonstrate wrongful conduct occurring in California.

Case 2:15-cv-03194-BRO-GJS   Document 23   Filed 08/05/15   Page 12 of 13   Page ID #:206

LINK:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| Case No. | CV 15-03194 BRO (GJSx) | Date | August 5, 2015 |
|---|---|---|---|
| Title | JEFFREY A. THOMAS V. DUN & BRADSTREET CREDIBILITY CORP. | | |

The only compelling reason Defendant identifies for displacing California law is Oregon's one-year statute of limitations for the state's analogous consumer protection law. That Oregon law would bar Plaintiff's claims as untimely may be an issue relevant to certification. But that inquiry is reserved for another day. Because Defendant "can only meet [its] burden by engaging in an analytically rigorous discussion of each prong of California's 'governmental interests' test based on the facts and circumstances of this case, and this [p]laintiff's allegations," the Court finds Defendant's cursory reference to Oregon's limitations period insufficient to show a compelling reason to justify displacing California law. Accordingly, the Court will not dismiss Plaintiff's UCL claim on this basis at this time.

### 2. Whether Plaintiff Lacks Statutory Standing

To establish standing under the UCL, a plaintiff must (1) demonstrate a loss or deprivation of money or property sufficient to constitute an injury in fact; and (2) show that the defendant's unfair business act or practice caused the economic injury. *In re Sony Gaming Networks and Customer Data Sec. Breach Litig.*, 903 F. Supp. 2d 942, 965 (S.D. Cal. 2012) (quoting *Kwikset Corp. v. Super. Ct.*, 51 Cal. 4th 310, 322 (Cal. 2011)); *see also* Cal. Bus. & Prof. Code § 17204. Courts have found an injury in fact sufficient to confer standing under the UCL where a party has expended money, lost money or property, or been denied money to which it has a cognizable claim as a result of unfair conduct. *See Martinez v. Welk Grp., Inc.*, 907 F. Supp. 2d 1123, 1137–38 (S.D. Cal. 2012) (collecting cases).

Plaintiff alleges he was charged for the incoming calls from Defendant to his cellular telephone. (Compl. ¶ 43.) This allegation is sufficient to demonstrate a loss of money or property. Contrary to Defendant's assertion, the allegation is not conclusory or implausible. Plaintiff is likely responsible for paying his own cellular telephone bill, and cellular telephone plans commonly allocate a fixed number of minutes per month to the account holder. If unwanted telemarketing calls deplete some of these allocated minutes, the holder has lost something of economic value. *See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 185 F.C.C.R. 14014, 14115 (2003).

LINK:

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | **CV 15-03194 BRO (GJSx)** | Date | August 5, 2015 |
|---|---|---|---|
| Title | **JEFFREY A. THOMAS V. DUN & BRADSTREET CREDIBILITY CORP.** | | |

    Although Defendant maintains Plaintiff has not properly connected this allegation to Defendant's conduct, the Court finds otherwise. Construing the allegations on the whole, the Complaint alleges that Defendant repeatedly called Plaintiff's cellular telephone throughout 2013, without his consent or authorization, and that he was charged for these calls. These allegations are sufficient to demonstrate standing under the UCL. Thus, Plaintiff's UCL claim remains viable.[7]

## V. CONCLUSION

    For the foregoing reasons, the Court **DENIES** Defendant's Motion to Dismiss. The hearing scheduled for Monday, August 17, 2015, at 1:30 p.m. is hereby **VACATED**.

    **IT IS SO ORDERED.**

|  | : |
|---|---|
| Initials of Preparer | Rf |

---

[7] Defendant also argues Plaintiff's UCL claim fails because it is derivative of his claims under the TCPA. (Mot. to Dismiss at 19–20.) Because the Court finds no basis upon which to dismiss Plaintiff's TCPA claims at this time, the Court also rejects this argument as to Plaintiff's UCL claim.