1   Jonathan D. Selbin (State Bar No. 170222)
    Daniel M. Hutchinson (State Bar No. 239458)
2   Email: dhutchinson@lchb.com
    LIEFF, CABRASER, HEIMANN &
3   BERNSTEIN, LLP
    275 Battery Street, 29th Floor
4   San Francisco, California  94111-3339
    Telephone:  (415) 956-1000
5   Facsimile:  (415) 956-1008

6   SIRI & GLIMSTAD LLP
    Aaron Siri
7   (admitted *pro hac vice*)
    Email: aaron@sirillp.com
8   120 East 31st Street
    New York, New York 10016
9   Telephone: (212) 532-1091
    Facsimile: (646) 417-5967

10

11  [Additional Counsel Listed on Signature Page]

12  *Attorneys for Plaintiff and the Proposed Class*

13                  UNITED STATES DISTRICT COURT

14                 CENTRAL DISTRICT OF CALIFORNIA

15                      WESTERN DIVISION

16

17  JEFFREY A. THOMAS,                    Case No. CV15-03194 BRO (GJSx)
    individually and on behalf of all
18  others similarly situated,            **PLAINTIFF'S NOTICE OF MOTION
                                          AND MEMORANDUM OF POINTS
19              Plaintiff,                 AND AUTHORITIES IN SUPPORT OF
                                          UNOPPOSED MOTION FOR
20         v.                             PRELIMINARY APPROVAL OF CLASS
                                          ACTION SETTLEMENT**
21  DUN & BRADSTREET
    CREDIBILITY CORP.,                    Judge:  Hon. Beverly Reid O'Connell
22                                        Hearing Date:   September 26, 2016
                Defendant.                Time:           1:30 p.m.
23                                        Place:          Courtroom 14

24

25

26

27

28

MOTION FOR PRELIMINARY APPROVAL
                                                    OF CLASS ACTION SETTLEMENT
                                                        CV15-03194 BRO (GJSX)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION ..................................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES .......................................... 2

INTRODUCTION ..................................................................................................... 2

I.    STATEMENT OF THE FACTS ..................................................................... 3

    A.    Procedural Background ....................................................................... 3

    B.    The Classwide Discovery ................................................................... 3

    C.    The Parties Settled After Engaging in Full Classwide Discovery ........ 4

    D.    The Proposed Settlement. ................................................................... 5

        1.    The Settlement Class ............................................................... 5

        2.    Monetary Relief for Settlement Class Members ....................... 6

        3.    Defendant's Practice Changes .................................................. 7

        4.    Cy Pres Distributions .............................................................. 7

        5.    Class Release .......................................................................... 7

        6.    Class Representative Service Award ........................................ 7

        7.    Attorneys' Fees and Costs ....................................................... 8

        8.    Administration and Notice ....................................................... 8

II.    ARGUMENT AND AUTHORITY ............................................................... 10

    A.    Class Action Settlement Approval Process ....................................... 10

    B.    This Settlement Is The Product Of Serious, Informed, And Arm's-Length Negotiations ............................................................... 12

    C.    The Settlement Is Within The "Range Of Reasonableness" For Preliminary Approval ....................................................................... 13

        1.    The Settlement Provides Substantial Relief For Class Members ............................................................................... 14

        2.    The Settlement Treats All Class Members Fairly ................... 15

        3.    The Settlement Is Fair And Reasonable In Light Of The Alleged Claims And Defenses ............................................... 15

    D.    The Class Representative's Service Award Is Reasonable ................. 17

    E.    The Contemplated Attorneys' Fees And Costs Are Fair And Reasonable ....................................................................................... 18

    F.    Provisional Certification Of The Settlement Class Is Appropriate .... 21

    G.    The Proposed Notice Program Is Constitutionally Sound ................. 23

III.    CONCLUSION ............................................................................................ 24

# TABLE OF AUTHORITIES

**Page**

## CASES

*Aliano v. Joe Caputo & Sons—Algonquin, Inc.*,
   No. 09 C 910, 2011 WL 1706061 (N.D. Ill. May 5, 2011) ................................. 16

*Boeing Co. v. Van Gemert*,
   444 U.S. 472 (1980) ......................................................................................... 19

*Campbell-Ewald Co. v. Gomez*,
   136 S. Ct. 663 (2016) ....................................................................................... 17

*Chapman v. First Index, Inc.*,
   No. 09 C 5555, 2014 WL 840565 (N.D. Ill. March 4, 2014) ............................ 16

*Chem. Bank v. City of Seattle* (*In re Wash. Pub. Power Supply Sys. Sec Litig.*),
   19 F.3d 1291 (9th Cir. 1994) ............................................................................ 19

*Class Plaintiffs v. City of Seattle*,
   955 F.2d 1268 (9th Cir. 1992) ......................................................... 10, 11, 13, 14

*Craftwood Lumber Co. v. Interline Brands, Inc.*,
   No. 11-CV-4462, 2015 WL 1399367 (N.D. Ill. Mar. 23, 2015) ........................ 18

*Franco v. Ruiz Food Prods.*,
   No. 10-cv-02354-SKO, 2012 WL 5941801 (N.D. Cal. 2012) ........................... 12

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) .................................................................... 12, 13

*Hansen v. Ticket Track, Inc.*,
   213 F.R.D. 412 (W.D. Wash. 2003) .................................................................. 22

*Harris v. Vector Marketing Corp.*,
   No. C-08-5198, 2011 WL 1627973 (N.D. Cal. April 29, 2011) ........................ 11

*Hashw v. Dep't Stores Nat'l Bank*,
   No. CV 13-727 (RHK/BRT), 2016 WL 1729525 (D. Minn. Apr. 26, 2016) ...... 18

*In re Activision Sec. Litig.*,
   723 F. Supp. 1373 (N.D. Cal. 1989) ................................................................. 20

*Jordan v. County of Los Angeles*,
   669 F.2d 1311 (9th Cir. 1982) .......................................................................... 22

*Linney v. Cellular Alaska P'ship*,
   C-96-3008-DLJ, 1997 WL 450064 (N.D. Cal. July 18, 1997) ..................... 12, 20

*Lo v. Oxnard European Motors, LLC*,
   No. 11CV1009 JLS, 2012 WL 1932283 (S.D. Cal. May 29, 2012) ................... 21

1
2

# TABLE OF AUTHORITIES
## (continued)

Page

3

*Malta v. Fed. Home Loan Mortg. Corp.*,
   No. 10-CV-1290 BEN, 2013 WL 644219 (S.D. Cal. Feb. 4, 2013) ........21, 22, 23

4

*Meyer v. Portfolio Recovery Associates*,
   696 F.3d 943 (9th Cir. 2012) .................................................................16, 22, 23

5

*Mullane v. Cent. Hanover Bank & Trust Co.*,
   339 U.S. 306 (1950).................................................................................................23

*Officers for Justice v. Civil Serv. Comm'n*,
   688 F.2d 615 (9th Cir. 1982) ...............................................................................12, 13

*Rodriguez v. West Publ'g Corp.*,
   563 F.3d 948 (9th Cir. Cal. 2009).......................................................................12, 17

*Six Mexican Workers v. Ariz. Citrus Growers*,
   904 F.2d 1301 (9th Cir. 1990) ...............................................................................19

*Spokeo v. Robins*,
   135 S. Ct. 1892 (2016).............................................................................................17

*Staton v. Boeing Co.*,
   327 F.3d 938 (9th Cir. 2003) .................................................................................21

*Tarlecki v. Bebe Stores, Inc.*,
   No. C 05-1777, 2009 WL 3720872 (N.D. Cal. Nov. 3, 2009) ...........................21

*Torrisi v. Tucson Elec. Power Co.*,
   8 F.3d 1370 (9th Cir. 1993) ...........................................................................7, 19

*Vandervort v. Balboa Capital Corp.*,
   8 F. Supp. 3d 1200 (C.D. Cal. 2014) .................................................................18

*Vigus v. Southern Illinois Riverboat/Casino Cruises, Inc.*,
   274 F.R.D. 229 (S.D. Ill. 2011) .........................................................................16

*Vizcaino v. Microsoft Corp.*,
   290 F.3d 1043 (9th Cir. 2002) .............................................................................19

*Wright v. Linkus Enter., Inc.*,
   259 F.R.D. 468 (E.D. Cal. 2009) .......................................................................19

## STATUTES

47 U.S.C. § 227(b)(1)(A).............................................................................................2

## RULES

Fed. R. Civ. P. 23...............................................................................................22, 23

24
25
26
27
28

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

**TREATISES**

4 *Newberg on Class Actions* (4th Ed. 2002)
§ 11.25...........................................................................................................11, 13

4 *Newberg on Class Actions* (4th ed. 2002)
§ 11.41................................................................................................................10

*Manual for Complex Litigation* (Fourth) (2004)
§ 13.14................................................................................................................12

*Manual for Complex Litigation* (Fourth) (2004)
§ 21.312 ..............................................................................................................23

*Manual for Complex Litigation* (Fourth) (2004)
§ 21.63................................................................................................................10

*Manual for Complex Litigation* (Fourth) (2004)
§ 21.632 ........................................................................................................12, 21

*Manual for Complex Litigation* (Fourth) (2004)
§21.633................................................................................................................21

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### NOTICE OF MOTION AND MOTION

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

NOTICE IS HEREBY GIVEN that on September 26, 2016, at 1:30 p.m., or as soon as the matter may be heard, in the Courtroom of the Honorable Beverly Reid O'Connell of the Central District of California, located at 312 North Spring Street, Los Angeles, California, Courtroom 14, Spring Street Floor, Plaintiff Jeffrey Thomas ("Plaintiff") on behalf of himself and all others similarly situated, by and through his undersigned counsel, requests that this Court grant preliminary approval of the parties' proposed Settlement Agreement.  Dun and Bradstreet Credibility Corp. does not object to the motion in the context of the parties' proposed settlement.

The Motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities in Support of Motion for Preliminary Approval and the exhibit thereto, the Proposed Order Granting Preliminary Approval, the Declaration of Daniel M. Hutchinson and the exhibit thereto, the pleadings and papers filed in this case, and any oral argument this Court permits.

## MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

Plaintiff Jeffrey A. Thomas ("Plaintiff") respectfully moves the Court for preliminary approval of the nationwide class action settlement ("Settlement") reached between Plaintiff and Dun & Bradstreet Credibility Corp. ("Defendant"). The proposed Settlement would resolve all claims in the above-entitled action (the "Action"). The Action alleges that Defendant or others on its behalf called Plaintiff and Class Members on their cellular telephones through the use of an automatic telephone dialing system without Plaintiff's or Class Members' prior express consent, in violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227(b)(1)(A).

As described below, the Settlement requires Defendant to pay an all-cash sum of $10,500,000.00 into a settlement fund ("Fund"). Each Class Member who files a qualified claim will receive a *pro rata* cash payment. No money will revert back to Defendant. The Settlement also confirms practice changes designed to prevent violations of the TCPA's provisions on dialing cell phones using an automatic telephone dialing system. Therefore, the alleged conduct that gave rise to this litigation has ended.

Proposed Class Counsel and Defendant have engaged in extensive formal and informal discovery and evaluation of Plaintiff's hotly contested TCPA claims. The parties reached settlement only weeks before Plaintiff was to file his Motion for Class Certification. With this motion, Plaintiff seeks preliminary approval of the Settlement, and provisional certification of a nationwide class for purposes of providing the Class with notice of the Settlement and an opportunity to opt-out, object, or otherwise be heard. The proposed Settlement satisfies all criteria for preliminary settlement approval under Ninth Circuit law and is fair, reasonable, and adequate.

1   I.      **STATEMENT OF THE FACTS**

2          A.      **Procedural Background**

3          Following over a year of extensive pre-filing investigation and related

4   litigation, Plaintiff Thomas filed this action on April 28, 2015.  Declaration of

5   Daniel M. Hutchinson ("Hutchinson Decl."), ¶¶ 21-26, 28; Dkt No. 1.

6          The parties engaged in significant motion practice regarding their respective

7   pleadings.  Hutchinson Decl., ¶ 30.  On June 12, 2015, Defendant filed a motion to

8   dismiss the Complaint.  Dkt. No. 16.  Plaintiff filed an opposition and provided

9   supplemental authority to the Court.  Dkt. Nos. 17, 18.  Following full briefing by

10  the parties, the Court denied that motion on August 5, 2015.  *Thomas v. Dun &*

11  *Bradstreet Credibility Corp.*, 100 F. Supp. 3d 937 (C.D. Cal. 2015) (Dkt. No. 23).

12         Defendant filed an Answer on August 20, 2015, vigorously contesting

13  Plaintiff's TCPA claims and asserting 26 affirmative defenses.  Dkt. No. 26.  Over

14  the next two months, the parties met and conferred extensively regarding Plaintiff's

15  proposed motion pursuant to Rule 12(f) to strike certain of Defendant's affirmative

16  defenses.  Hutchinson Decl., ¶ 34.  Following that process, Defendant filed an

17  amended answer that withdrew seven affirmative defenses.  Dkt. No. 38.

18         B.      **The Classwide Discovery**

19         The parties have engaged in significant discovery regarding Plaintiff's

20  allegations.  Hutchinson Decl., ¶ 36.  After Plaintiff served discovery requests on

21  July 27, 2015, the parties negotiated a stipulated protective order and met and

22  conferred regularly for four months regarding Plaintiff's discovery requests.  *Id.*, ¶

23  37-39.  Those efforts culminated in a motion to compel and joint stipulation

24  pursuant to Local Rule 37-2.3 regarding several categories of contested discovery

25  requests.  *Id.*, ¶ 40.  However, shortly before filing the motion, the parties came to a

26  compromise agreement that resulted in the production of several key categories of

27  discovery.  *Id.*, ¶ 40.

28         First, Defendant produced call data to Plaintiff's expert so that he could

1    determine the total number of cellular telephone numbers dialed by Defendant.

2    Hutchinson Decl., ¶ 41.  Second, Defendant produced a total of 8,812 pages of

3    documents and responded in detail to eight interrogatories propounded by Plaintiff.

4    *Id.*, ¶ 42.  In addition, Plaintiff obtained 982 documents in response to a nonparty

5    subpoena to call vendor OLC, Inc..  *Id.* ¶ 43.  Plaintiff's counsel examined this

6    information and prepared to file for class certification on June 6, 2016.  *Id.*, ¶ 44.

7    Plaintiff scheduled and fully prepared for Rule 30(b)(6) depositions of

8    Defendant's witnesses in May 2016.  Hutchinson Decl., ¶ 45.  But, some two days

9    before the depositions were to proceed, the parties postponed them to pursue

10   mediation.  *Id.*, ¶ 53.

11   For its part, Defendant engaged in extensive discovery of the named plaintiff.

12   Defendant served document requests and interrogatories, and deposed Plaintiff

13   Thomas.  Hutchinson Decl., ¶ 46-48.  Defendant served third-party discovery

14   requests on Plaintiff Thomas' business, wife, and cell phone provider, and deposed

15   Plaintiff's wife in her individual capacity and as a representative for Plaintiff's

16   business.  *Id.* ¶ 49-50.

17   Additionally, Defendant will continue to provide Class Counsel with any

18   additional information as necessary to reasonably confirm the material information

19   provided to Class Counsel during settlement negotiations and administrative plans

20   and procedures for compliance with the terms of the Settlement.  Hutchinson Decl.,

21   ¶ 59.   Such discovery will further confirm that the terms of the Settlement are fair,

22   reasonable, and adequate.

23   **C.**   **The Parties Settled After Engaging in Full Classwide Discovery**

24   As described above, by the time the parties explored settlement, they had

25   already fully litigated for a year and Plaintiff had prepared to file his motion for

26   class certification.  Hutchinson Decl., ¶¶ 28-44.  The litigation included hotly

27   contested motion practice and classwide discovery.  *Id.*  This discovery was

28   essential to the parties' ability to become fully informed on all relevant case issues.

The parties participated in settlement negotiations with the assistance of the Hon. Morton Denlow (Ret.), a JAMS mediator.  Hutchinson Decl., ¶ 54.  Before the mediation date, the parties exchanged written mediation statements laying out their relative views of the law and the facts and potential relief for the proposed Class. *Id.*  During the daylong mediation session, counsel exchanged a series of counterproposals on key aspects of the Settlement, including the parameters of the non-reversionary common fund that will provide monetary relief for the Class.  *Id.* At all times, the parties' settlement negotiations were highly adversarial, non-collusive, and at arm's length.  *Id.*, ¶ 55.  The Settlement Agreement is a result of these arm's-length negotiations, which were themselves the product of an adversarial, yearlong discovery process.  *Id.*, ¶ 55-56.  At the time the case settled, Plaintiff's counsel was preparing to draft a motion requesting that the Court certify a class identical in all material respects to the Settlement Class now proposed for certification.  *Id.*, ¶ 44.  Plaintiff was therefore acutely aware of the risks posed at class certification and that class certification in this case would be hotly contested. *Id.*, ¶ 53.

### D.   The Proposed Settlement.

The Settlement's details are contained in the Agreement signed by the parties, a copy of which is attached as Exhibit 1.  For purposes of preliminary approval, the following summarizes the Agreement's terms:

#### 1.   The Settlement Class

The Settlement Class is comprised of:

all persons within the United States who, between April 28, 2011 and January 31, 2016, received a nonemergency Call from or on behalf of Dun & Bradstreet Emerging Businesses Corp., or its predecessor entities, Dun & Bradstreet Credibility Corp., Credibility Corp. and Brad Acquisition Corp. to a cellular telephone through the use of an automatic telephone dialing system.

Agreement § 2.32.  Excluded from the Class are Defendant; its parent companies, affiliates or subsidiaries, or any employees thereof, and any entities in which any of such companies has a controlling interest; the judge or magistrate judge to whom the Action is assigned; any member of those judges' staffs and immediate families; and Plaintiff's counsel.  *Id.*  Discovery confirms that approximately 1,192,555 persons in the Class received calls.  Hutchinson Decl., ¶ 58.

### 2. <u>Monetary Relief for Settlement Class Members</u>

The Settlement requires Defendant to create a Settlement Fund of $10,500,000.  Agreement § 4.02.  Out of this Fund, eligible Settlement Class Members who file a qualified claim will receive a Settlement Award.  *Id.*  Class Members who received calls at more than one cellular telephone number may make a claim for each number called.  *Id.* §§ 4.03, 9.01.  Awards will be distributed, at the Class Member's election, by check or secure electronic payment.  *Id.* § 4.03.

The amount of each Class Member's Award will be based on a *pro rata* distribution, depending on the number of valid and timely claims.  *Id.* § 4.04. While it is not possible to predict the precise amount of the Awards until all claims have been submitted, Class Counsel, based on their experience in similar TCPA class actions, estimate awards in the range of $60 to $120 after deductions for Court-approved attorneys' fees and costs, a Court-approved incentive award to the Plaintiff, and costs of notice and claims administration.  *See id.*; Hutchinson Decl., ¶ 62.  Checks for Cash Awards will be valid for 180 days from the date of the check.  Agreement § 9.03.  In the event the combined amounts of uncashed checks exceeds $200,000 180 days after the initial distribution, the Claims Administrator will make a second distribution of the remaining funds on a pro rata basis to those Class Members who previously cashed checks or received electronic payments.  *Id.* § 7.05.

In order to exercise the right to obtain the relief outlined above, Class Members need only complete a simple, one-page claim form and provide it to the

Claims Administrator via the Internet site, through a dedicated telephone hotline, or by postage-paid return mail. *Id.* § 9.02. Class Members will have 90 days from the Settlement Notice Date—*i.e.* more than 120 days from the Preliminary Approval Order—to submit their claim forms, or 60 days to submit written requests to be excluded from or opt out of the Class—*i.e.* more than 90 days from the Preliminary Approval Order. *Id.* §§ 2.09, 2.26, 2.27; *cf. Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370 (9th Cir. 1993) (approving notice sent 31 days before the deadline for objections).

### 3.   <u>Defendant's Practice Changes</u>

Defendant initiated certain practice changes designed to prevent violations of the TCPA's provisions on dialing cell phones using an automatic telephone dialing system. Agreement § 4.01. These practice changes will protect Settlement Class Members from receiving automated calls in violation of the TCPA.

### 4.   <u>*Cy Pres* Distributions</u>

In the event that the combined amounts of any settlement payment checks to Class Members that remain uncashed for more than 180 days is equal to or less than $200,000, the money will be distributed *cy pres* to an organization to be proposed by the parties prior to the preliminary approval hearing. Hutchinson Decl., ¶ 64.

### 5.   <u>Class Release</u>

In exchange for the benefits allowed under the Settlement, Class Members who do not opt out will provide a release tailored to the practices at issue in this case. Specifically, they will release all claims "that arise out of" the "use of an 'automatic telephone dialing system' or 'artificial or prerecorded voice' to contact or attempt to contact Settlement Class Members." Agreement § 14.01.

### 6.   <u>Class Representative Service Award</u>

Prior to the Final Approval hearing, the Class Representative will ask the Court to award him a service award for the time and effort he has personally

invested in this Action.  The proposed class notice informs Class Members that Plaintiff will apply for an incentive award of $10,000.  As part of the Settlement, Defendant takes no position on, and retains its right to oppose, an incentive payment to be paid to the Plaintiff from the Settlement Fund.  Receipt of any service award is *not* conditioned on approval of the settlement.  Agreement § 5.02. Class Counsel has submitted a declaration detailing the time, risk, and burden carried by the Plaintiff in this Action, and the benefit he provided to counsel and the class throughout the litigation.  *See* Hutchinson Decl., ¶¶ 27-57.[1]

### 7.    Attorneys' Fees and Costs

Also prior to the Final Approval hearing, Class Counsel will apply to the Court for an award of attorneys' fees and costs.  Defendant will not contest Class Counsel's application to this Court for payment of attorneys' fees of not more than 30 percent of the Settlement Fund and costs incurred by Class Counsel in litigating this action.  Agreement § 5.01.  As addressed below (and as will be further addressed in Class Counsel's motion for attorneys' fees and costs which will be filed prior to final approval), this amount comports with the Ninth Circuit's benchmark for compensating Class Counsel in common fund class action settlements for the work they have performed in procuring a settlement for the Class, as well as the work remaining to be performed in documenting the settlement, securing Court approval of the settlement, overseeing settlement implementation and administration, assisting Class Members, and obtaining dismissal of the action.  The enforceability of the Settlement is *not* contingent on Court approval of an award of attorneys' fees or costs.  *Id*.

### 8.    Administration and Notice

All costs of notice and claims administration will be paid from the Settlement

---

[1] Plaintiff will provide a signed declaration detailing his involvement in the Action, and explaining his support of the Settlement Agreement, if and when the parties move for final approval of the Settlement.

1    Fund.  The parties request that Kurtzman Carson Consultants LLC ("KCC")

2    administer the Settlement, subject to review by Class Counsel, which will include

3    the following duties:  (1) issuing Class Notice and claim forms; (2) obtaining new

4    addresses for returned email and mail; (3) setting up and maintaining the settlement

5    website and toll-free number; (4) responding to Class member inquiries regarding

6    the claims administration process; (5) approving or rejecting claims; and

7    (6) calculating and issuing settlement payments.  Agreement §§ 7.01-7.06.

8    Defendant has agreed to cooperate with KCC to ensure that it has all of the

9    information it needs to perform these tasks.  *Id.* § 7.05.

10       Within thirty business days of entry of the Preliminary Approval Order, the

11   Settlement Administrator will issue the Class Notice via mail or email to all Class

12   Members for whom Defendant possesses contact information, or for whom the

13   Settlement Administrator can obtain an email and/or mailing address using

14   information in the Notice Database to be provided by Defendant.  *Id.* §§ 8.01, 8.02.

15   Before the initial mailing, the Claims Administrator will check each mailing

16   address against the each address against the United States Post Office National

17   Change of Address Database.  *Id.*  Any Notices that are returned as non-deliverable

18   with a forwarding address will promptly be re-mailed by the Claims Administrator

19   to such forwarding address.  *Id.*  For any that are returned with no forwarding

20   address, the Claims Administrator will conduct a search using the corresponding

21   telephone number in the Notice Database and, if a reasonable match is found, re-

22   mail Class Notice accordingly.  *Id.*

23       Further, the Settlement Administrator will establish and maintain a settlement

24   website.  *Id.* § 8.03.  The settlement website will provide generalized information,

25   including the following: the Settlement Agreement; the Settlement Notice; the FAQ

26   Notice; the Preliminary Approval Order; a downloadable Claim Form for anyone

27   wanting to print and mail a hard copy of the Claim Form; the operative complaint

28   and answer in the Action; and, when filed, the Final Approval Order.  *Id.*  The

1    website will also provide for online submission of Claims.  *Id.*

2           The Settlement Administrator will calculate the pro rata recoveries of

3    qualified claimants and issue checks or electronic payments to Class Members who

4    submitted valid and timely claims within 30 days after entry of final judgment

5    approving the settlement and the appeals period has run.  *Id.* §§ 2.23, 9.03.

6           The parties negotiated with KCC a hard cap of $800,000 on settlement notice

7    and administration costs.  Hutchinson Decl., ¶ 63.  The amounts paid from the

8    Settlement Fund therefore will not exceed $800,000 unless there is a significant

9    change in the scope of work being performed.  *Id.*

10   **II.    ARGUMENT AND AUTHORITY**

11          **A.    Class Action Settlement Approval Process**

12          Federal courts strongly favor and encourage settlements, particularly in class

13   actions and other complex matters, where the inherent costs, delays, and risks of

14   continued litigation might otherwise overwhelm any potential benefit the class

15   could hope to obtain.  *See Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276

16   (9th Cir. 1992) (noting the "strong judicial policy that favors settlements,

17   particularly where complex class action litigation is concerned"); *see also*

18   4 *Newberg on Class Actions* § 11.41 (4th ed. 2002) (citing cases).  The traditional

19   means for handling claims like those at issue here—individual litigation—would

20   unduly tax the court system, require a massive expenditure of public and private

21   resources and, given the relatively small value of the claims of the individual Class

22   members, would be impracticable.  Thus, the proposed Settlement is the best

23   vehicle for Class Members to receive relief to which they are entitled in a prompt

24   and efficient manner.

25          The *Manual for Complex Litigation* (Fourth) (2004) § 21.63 ("*Manual for*

26   *Compl. Lit.*") describes a three-step procedure for approval of class action

27   settlements:

28                 (1)  Preliminary approval of the proposed settlement at an

1  informal hearing;

2  (2)  Dissemination of mailed and/or published notice of

3  the settlement to all affected class members; and

4  (3)  A "formal fairness hearing" or final settlement

5  approval hearing, at which class members may be heard

6  regarding the settlement, and at which evidence and

7  argument concerning the fairness, adequacy, and

8  reasonableness of the settlement may be presented.

9  This procedure, used by courts in this Circuit and endorsed by class action

10  commentator Professor Newberg, safeguards class members' due process rights and

11  enables the Court to fulfill its role as the guardian of class interests.  4 *Newberg*

12  § 11.25.

13  With this motion, Plaintiff requests that the Court take the first step in the

14  settlement approval process by granting preliminary approval of the proposed

15  Settlement.  The purpose of preliminary evaluation of proposed class action

16  settlements is to determine whether the settlement is within the "range of

17  reasonableness," and thus whether notice to the class of the settlement's terms and

18  holding a formal fairness hearing would be worthwhile.  *Id.*  In general, the Court

19  should grant preliminary approval if the Settlement:  "(1) appears to be the product

20  of serious, informed, non-collusive negotiations; (2) has no obvious deficiencies;

21  (3) does not improperly grant preferential treatment to class representatives or

22  segments of the class; and (4) falls within the range of possible approval."

23  *Harris v. Vector Mktg. Corp.*, No. C-08-5198, 2011 WL 1627973, at *7 (N.D. Cal.

24  Apr. 29, 2011) (citations omitted).  The decision to approve or reject a proposed

25  settlement is committed to the Court's sound discretion.  *See City of Seattle*,

26  955 F.2d at 1276 (in context of class action settlement, appellate court cannot

27  "substitute [its] notions of fairness for those of the [trial] judge and the parties to

28  the agreement," and will reverse only upon strong showing of abuse of discretion)

1  (quoting *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 626 (9th Cir.

2  1982)).

3      Granting preliminary approval of this Settlement will allow all Class

4  Members to receive notice of the proposed Settlement's terms and the date and time

5  of the final Settlement approval hearing, at which Class Members may voice

6  approval of or opposition to the Settlement, and at which the parties and Class

7  Members may present further evidence and argument concerning the fairness,

8  adequacy, and reasonableness of the Settlement.  *See Manual for Compl. Lit.*, at

9  §§ 13.14, § 21.632.  Although the parties have requested a hearing, a hearing is not

10  required at the preliminary approval stage.  The Court may grant preliminary

11  approval upon an informal application by the settling parties, and may conduct any

12  necessary hearing in court or in chambers, at the Court's discretion.  *See id.* at

13  § 13.14.

14      **B.    This Settlement Is The Product Of Serious, Informed, And
        Arm's-Length Negotiations**

15

16      The Court's role is to ensure that "the agreement is not the product of fraud

17  or overreaching by, or collusion between, the negotiating parties, and that the

18  settlement, taken as a whole, is fair, reasonable and adequate to all concerned."

19  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998) (internal quotes and

20  citations omitted).  Where Class Counsel are experienced in litigating class actions,

21  and where the settlement is reached in arm's-length negotiations, the settlement is

22  presumed to be fair.  *Linney v. Cellular Alaska P'ship*, C-96-3008-DLJ, 1997 WL

23  450064 (N.D. Cal. July 18, 1997); *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948,

24  965 (9th Cir. 2009) ("We put a good deal of stock in the product of an arms-length,

25  non-collusive, negotiated resolution . . . ."); *Franco v. Ruiz Food Prods.*, No. 10-cv-

26  02354-SKO, 2012 WL 5941801, at *11 (N.D. Cal. 2012) ("[T]he court may

27  presume that, through negotiation, the parties, their counsel, and the mediator

28  arrived at a reasonable range of settlement by considering Plaintiffs' likelihood of

1   recovery.").

2          As detailed above, the Settlement is the result of intensive, arm's-length

3   negotiations between attorneys experienced in the litigation, certification, trial, and

4   settlement of nationwide class action cases.  Counsel for both parties are

5   experienced and understood the legal and factual issues involved in this case.   In

6   the course of negotiating this Settlement, the parties engaged in a series of

7   contested settlement sessions.

8          As also detailed above, proposed Class Counsel thoroughly investigated and

9   analyzed Plaintiff's TCPA claims through formal, hard-fought classwide discovery.

10  Counsel had the benefit of discovery into Defendant's autodialer practices, expert

11  analysis of its data, and depositions of Plaintiff, his business, and his wife.  As a

12  result, Class Counsel were well-positioned to evaluate the strengths and weaknesses

13  of their case, as well as the appropriate basis upon which to settle it.  *Compare*

14  *Hanlon*, 150 F.3d at 1027 (approving settlement where there was no evidence

15  suggesting "that the settlement was negotiated in haste or in the absence of

16  information").

17      **C.      The Settlement Is Within The "Range Of Reasonableness" For
               Preliminary Approval**
18

19         At the preliminary approval stage, courts evaluate whether the proposed

20  settlement is within the "range of reasonableness" such that notice to the class of

21  the terms and conditions of the Settlement, and holding a final approval hearing,

22  would be worthwhile.  4 *Newberg* § 11.25.  While the threshold for preliminary

23  approval requires only that the Settlement fall within a "range of reasonableness"

24  (*see supra*), the Settlement meets the criteria for final approval and thus exceeds

25  that threshold.  At the final approval stage, a proposed Settlement may be approved

26  by the trial court if it is determined to be "fundamentally fair, adequate, and

27  reasonable."  *City of Seattle*, 955 F.2d at 1276 (*quoting Officers for Justice*,

28  688 F.2d at 625.  In affirming the settlement approved by the trial court in *City of*

*Seattle*, the Ninth Circuit Court of Appeals noted that it "need not reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute, for it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements." *Id.* at 1291 (internal quotation and citation omitted).  The district court's ultimate determination finally approving the Settlement "will involve a balancing of several factors" which may include: "the strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel . . . and the reaction of the class members to the proposed settlement."  *Id.*

### 1.   The Settlement Provides Substantial Relief For Class Members

The Settlement provides relief for all Class Members to whom Defendant made automated calls.  Agreement §§ 4.01, 4.02.  All Class Members will benefit from Defendant's business practice changes, protecting them from violations of the TCPA's provisions on the use of an automatic dialing system.  The Settlement also requires Defendant to pay $10,500,000 into a Settlement Fund, out of which eligible Class Members will receive Settlement Awards in the form of cash payments.  *Id.* §§ 4.03.  Most importantly, the Settlement provides Class Members with real monetary relief, despite the fact that this is a purely statutory damages case involving nominal economic damages or actual damages (such as invasion of privacy) that are difficult to quantify.

The claim form for monetary relief is simple and straightforward.  Class Members need only provide: (1) the Settlement Class Member's full name or business name; (2) confirmation they received a cellular telephone call or text; and (3) election to receive payment through either a mailed check or electronic payment.  *Id.* § 9.02.

1   The Settlement Fund is non-reversionary, ensuring that all or nearly all

2   monetary benefits will go to Class Members.  Any residual amounts under

3   $200,000 remaining after all the payments contemplated by the Settlement are

4   made that would be economically unfeasible to distribute will be donated *cy pres* to

5   a nonprofit organization to be proposed by the parties prior to the preliminary

6   approval hearing.  *Id.* § 7.04f.

**2.**    **The Settlement Treats All Class Members Fairly**

8   The Settlement provides each Class Member with the same prospective relief

9   and also provides *pro rata* monetary compensation to all Class Members who

10  submit claims.  *Id.* §§ 4.04, 4.05.  Class Members who received calls at more than

11  one cellular telephone number may make multiple claims.  *Id.* §§ 4.03, 9.01.

12  Because the precise number of calls Defendant made to each Class Member is

13  substantially difficult, unduly burdensome, and economically unfeasible to

14  determine, allowing all potential Class Members the opportunity to make a claim

15  for monetary relief and allocating such relief regardless of the number of calls each

16  Class Member may have received is reasonable and fair.  Hutchinson Decl. ¶ 61.  It

17  is also common in TCPA litigation.  *See, e.g.*, *In re Capital One Tel. Consumer*

18  *Prot. Act Litig.*, 80 F. Supp. 3d 781, 789 (N.D. Ill. 2015), *appeals dismissed* (May

19  5, 2015; June 8, 2015; June 26, 2015).

**3.**    **The Settlement Is Fair And Reasonable In Light Of The Alleged Claims And Defenses**

22  Entering into settlement discussions, Plaintiff and Class Counsel were

23  confident in the strength of their case, but also aware of the risks inherent to

24  litigation and the various defenses available to Defendant.

25  First, there was a risk that the Court would decline to certify this case as a

26  class action.  Defendant maintains that class certification would be inappropriate in

27  this Action.  Courts have either granted or denied class certification in TCPA cases

28  depending upon the facts of the case.  *Compare Meyer v. Portfolio Recovery*

1   *Associates*, 696 F.3d 943 (9th Cir. 2012) (upholding certification of a TCPA class)

2   *with Vigus v. Southern Illinois Riverboat/Casino Cruises, Inc.*, 274 F.R.D. 229, 237

3   (S.D. Ill. 2011) (denying class certification of TCPA class).  In particular, Plaintiff

4   had to contend with Defendant's position that the alleged prior express consent of

5   plaintiff and/or Class Members could undermine predominance or other findings

6   necessary for class certification.  "Courts are split on whether the issue of

7   individualized consent renders a TCPA class uncertifiable on predominance and

8   ascertainability grounds, with the outcome depending on the specific facts of each

9   case."  *Chapman v. First Index, Inc.*, No. 09 C 5555, 2014 WL 840565, at *2 (N.D.

10  Ill. March 4, 2014) (citing cases).  If Defendant was able to present convincing facts

11  to support its position, the Court might decline to certify the class, leaving only the

12  named Plaintiff to pursue his individual claims.

13          Second, the Action also presented risks on the merits.  While Plaintiff

14  testified that he received auto-dialed calls from Defendant on his cellular phone,

15  Defendant would no doubt continue to argue that Plaintiff's business, and not

16  Plaintiff, was the proper party in this action.  Moreover, even though the Court

17  denied Defendant's motion to dismiss, it left undecided a number of issues of law

18  that Defendant would likely raise in any future dispositive motion practice.  The

19  Court did not decide whether one must be a "called party" to have standing under

20  the TCPA, whether § 227(b)(1)(A)(iii) applies to business calls, and whether

21  California law should apply to this action.  Dkt. No. 23.  Defendant continued to try

22  to marshal facts in support of its argument that Thomas was not the "current

23  subscriber" of the line, and therefore ineligible for relief in this action.  *See* Dkt.

24  No. 19.

25          Third, at least some courts view awards of aggregate, statutory damages with

26  skepticism and reduce such awards on due process grounds.  *See, e.g.*, *Aliano v. Joe

27  Caputo & Sons—Algonquin, Inc.,* No. 09 C 910, 2011 WL 1706061, at *4 (N.D. Ill.

28  May 5, 2011) ("[T]he Court cannot fathom how the minimum statutory damages

1315389.6                    - 16 -

1   award for willful FACTA violations in this case — between $100 and $1,000 per

2   violation — would not violate Defendant's due process rights . . . . Such an award,

3   although authorized by statute, would be shocking, grossly excessive, and punitive

4   in nature.").

5          Fourth, Defendant contends that Plaintiff may lack standing to pursue his

6   claims after *Spokeo v. Robins*, 136 S. Ct. 1540 (2016); *but see Meyer v. Portfolio*

7   *Recovery Assocs., LLC*, 707 F.3d 1036,1043 (9th Cir. 2012)(holding that continuing

8   violations of TCPA invade class members' privacy and constitute irreparable

9   harm).  Additionally, Defendant has, in the past, made an offer of judgment under

10  Rule 68 and claimed that Plaintiff's claims consequently were mooted.  Although

11  that specific proposition was rejected in *Campbell-Ewald Co. v. Gomez*, 136 S. Ct.

12  663 (2016), there remains the possibility that a more complete tender might moot

13  Plaintiff's claims.  Indeed, this was more than just a theoretical possibility as a prior

14  TCPA action against Defendant by the same Plaintiff's counsel was mooted for this

15  very reason.  *Vadai v. Dun & Bradstreet Credibility Corp.*, 302 F.R.D. 308

16  (S.D.N.Y. 2014).

17         Finally, there is the risk of losing a jury trial.  And, even if Plaintiff and the

18  Class did prevail, any recovery could be delayed for years by an appeal.  The

19  Settlement provides substantial relief to Class Members without further delay.

20  **D.    The Class Representative's Service Award Is Reasonable**

21         Service awards for class representatives are "fairly typical in class action

22  cases." *Rodriguez v. W. Publ'g Corp*., 563 F.3d 948, 958 (9th Cir. 2009).  Such

23  awards are "intended to compensate class representatives for work done on behalf

24  of the class [and] make up for financial or reputational risk undertaken in bringing

25  the action." *Id.*.  Unlike absent Class Members, who will enjoy the benefits of the

26  representatives' efforts without taking any personal action, the named Plaintiff

27  exposed himself, his business, and his family to Defendant's investigation,

28  committed himself to all the rigors of litigation in the event the case did not settle,

1  and subjected himself to all the obligations of named parties.  The Class

2  Representative also provided valuable information to Class Counsel, assisted with

3  the initial case investigation, and reviewed the settlement terms and discussed the

4  settlement with Class Counsel before determining that it was in the best interests of

5  the Class.  Hutchinson Decl. ¶ 66.

6       Plaintiff will separately move for attorneys' fees and a service award prior to

7  final approval, but for the purposes of preliminary approval, the service award

8  contemplated in the Settlement falls within the range of reasonableness.  Modest

9  incentive awards, such as those that Plaintiff plans to request in connection with the

10  Settlement, promote the public policy of encouraging individuals to undertake the

11  responsibility of representative lawsuits.  Moreover, the amount contemplated here,

12  $10,000 for the lone Class Representative, is reasonable and typical in class actions

13  that settle at similar procedural postures.  *See Vandervort v. Balboa Capital Corp.*,

14  8 F. Supp. 3d 1200, 1208 (C.D. Cal. 2014) (approving $10,000 service award to

15  class representative in TCPA case); *Craftwood Lumber Co. v. Interline Brands,*

16  *Inc.*, No. 11-CV-4462, 2015 WL 1399367, at *6 (N.D. Ill. Mar. 23, 2015)

17  (collecting cases and approving $25,000 service award to TCPA class

18  representative); *Hashw v. Dep't Stores Nat'l Bank*, No. CV 13-727 (RHK/BRT),

19  2016 WL 1729525, at *10 (D. Minn. Apr. 26, 2016) ($15,000)

20  **E.      The Contemplated Attorneys' Fees And Costs Are Fair And**
   **Reasonable**

21

22       Prior to the Final Approval Hearing, Class Counsel will seek an award of no

23  more than thirty percent of the Settlement Fund in attorneys' fees and costs, which

24  includes fees and reasonable litigation costs associated with the Action.

25       This amount—which was negotiated only after the substantive terms of the

26  Settlement were agreed upon—is supported by the percentage-of-the-fund method

27  that Ninth Circuit courts use to determine fees and costs in common fund class

28  action cases.  In the Ninth Circuit, the benchmark for an award of attorneys' fees

and costs is twenty-five percent of the settlement fund.  *See Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993) (citing *Six Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990)).  When examining fees and costs, "district courts in the Ninth Circuit 'should be guided by the fundamental principle that fee awards out of common funds be *reasonable under the circumstances*.'"  *Wright v. Linkus Enter., Inc.*, 259 F.R.D. 468, 476 (E.D. Cal. 2009) (citing *Chem. Bank v. City of Seattle* (*In re Wash. Pub. Power Supply Sys. Sec Litig.*), 19 F.3d 1291, 1296 (9th Cir. 1994) (internal quotations omitted and emphasis in original)).  "In looking at the circumstances of each case, relevant factors may include early settlement, achievement of an excellent result, risk, and a showing of standard fees for similar litigation."  *Id.* at 476-77 (citing *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048-50 (9th Cir. 2002)).

As will be demonstrated further in Class Counsel's motion for attorneys' fees and costs, all four factors demonstrate that Class Counsel's contemplated request for an award of attorneys' fees and costs is reasonable under the circumstances. First, Class Counsel worked hard to achieve an excellent resolution of this case. *See generally* Hutchinson Decl. ¶¶ 27-57.  Of course, Class Counsel spent fewer hours prosecuting this action than they would have had the case proceeded to trial. However, the common fund doctrine "rests on the perception that persons who obtain the benefit of a lawsuit without contributing to its cost are unjustly enriched at the successful litigant's expense."  *See Wright*, 259 F.R.D. at 477 (quoting *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478, (1980)).  Therefore, "awarding Plaintiffs' attorneys a percentage of the total settlement amount w[ill] adequately compensate Plaintiffs' counsel for the proposed settlement at an early stage in the litigation."  *Id.*  Moreover, awarding Plaintiff's counsel a reasonable percentage of the common fund promotes the public policy of encouraging timely settlements. *Vizcaino*, 290 F.3d at 1050, n.5 (noting "it may be a relevant circumstance that counsel achieved a timely result for class members in need of immediate relief");

1    *see also In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1378 (N.D. Cal. 1989)

2    (approving fees awards that amount to 30 percent of the common fund in part

3    because such a benchmark "will encourage plaintiffs' attorneys to move for early

4    settlement").  Thus, the first factor weighs in favor of finding that the requested fees

5    and costs award is reasonable.

6          Second, the Settlement provides Class Members with substantial benefits.

7    Class Members who do not want Defendant to call them using automated dial

8    systems and/or pre-recorded or artificial voices are protected by Defendant's

9    business practice changes.  And, the Settlement Agreement creates a fund of

10   $10,500,000 out of which each class member may seek a Settlement payment.

11   Given the results achieved, the requested fees and costs award is reasonable.  *See,*

12   *e.g.*, *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 ("[I]t is the very

13   uncertainty of outcome in litigation and avoidance of wasteful and expensive

14   litigation that induce consensual settlements.  The proposed settlement is not to be

15   judged against a hypothetical or speculative measure of what might have been

16   achieved by the negotiators. Thus, the very essence of a settlement is compromise,

17   a yielding of absolutes and an abandoning of highest hopes.") (citations omitted).

18         Third, Plaintiff's counsel have devoted significant resources to the

19   investigation and prosecution of this case with no guarantee that counsel would be

20   compensated for their time or reimbursed for their expenses.  To the contrary,

21   payment of counsel's fees and expenses has always been contingent on a successful

22   recovery of damages.  Thus, there was a substantial risk of nonpayment.  Moreover,

23   the Court has not yet certified the case as a class action, and Defendant has

24   steadfastly denied that class certification would be appropriate.  Defendant also has

25   denied liability for the claims Plaintiff asserts.  Even if Plaintiff ultimately prevails

26   at trial, a result that is not guaranteed, he likely faces a long and costly appeals

27   process.

28         Fourth, Plaintiff's request is in line with fees and costs requested in similar

1    actions.  Not only does the amount comport with the Ninth Circuit's benchmark, it

2    is also consistent with fees approved in recent Ninth Circuit cases involving similar

3    TCPA claims.  *See, e.g.*, *Adams v. AllianceOne Receivables Mgmt., Inc.*, 08-cv-

4    00248-JAH-WVG, Dkt. No. 137 (S.D. Cal. Sept. 28, 2012) (awarding thirty percent

5    of a $9 million common fund in fees); *Lo v. Oxnard European Motors, LLC*,

6    No. 11CV1009 JLS, 2012 WL 1932283, at *3 (S.D. Cal. May 29, 2012) (awarding

7    twenty-five percent of common fund in fees in TCPA action that settled in just over

8    two months); *Malta v. Fed. Home Loan Mortg. Corp*., No. 10-CV-1290 BEN,

9    2013 WL 644219, at *8 (S.D. Cal. Feb. 4, 2013) (preliminarily approving

10   attorneys' fees "equal to 25% of the Settlement Fund Maximum Payment, or

11   $4,275,000").  Further, the fact that the Settlement does not make the Class's

12   prospective and monetary relief dependent upon attorneys' fees for Class Counsel

13   weighs in favor of the requested fees and costs.  *See Tarlecki v. Bebe Stores, Inc.,*

14   No. C 05-1777, 2009 WL 3720872, at *2 (N.D. Cal. Nov. 3, 2009) (citing *Staton v.*

15   *Boeing Co., 327 F.3d 938, 972 (9th Cir. 2003)) ("In common fund settlements*

16   where the fees are deducted from the common fund, the approval of the settlement

17   agreement as a whole does not depend on the quantum of the fees.")

18        In short, Class Counsel's contemplated fees and costs request is appropriate

19   under the "percentage of the fund" method.

20        **F.**      **Provisional Certification Of The Settlement Class Is Appropriate**

21        This Court has not yet certified this case as a class action.  For settlement

22   purposes, Plaintiff respectfully requests that the Court provisionally certify the

23   Class defined in the Agreement.  Agreement § 2.32.  Provisional certification for

24   settlement purposes permits notice of the proposed Settlement to issue to inform

25   Class Members of the existence and terms of the proposed Settlement, their right to

26   be heard on its fairness, their right to opt out, and the date, time and place of the

27   formal fairness hearing.  *See Manual for Compl. Lit.*, at §§ 21.632, 21.633.

28   Defendant waives its right to challenge class certification solely for purposes of this

1   Settlement.  For the reasons set forth below, provisional certification is appropriate

2   under Rule 23(a) and (b)(3).

3        The numerosity requirement of Rule 23(a) is satisfied because the Class

4   combined consists of approximately 1,192,555 people throughout the United States,

5   and joinder of all such persons is impracticable.  *See* Fed. R. Civ. P. 23(a)(1) ;

6   *Jordan v. County of Los Angeles,* 669 F.2d 1311, 1319 & n.10 (9th Cir. 1982)

7   (listing thirteen cases in which courts certified classes with fewer than 100

8   members).  The commonality requirement is satisfied because there are many

9   questions of law and fact common to the Settlement Class that center on

10  Defendant's common practice of using an automated dialing system to call or text

11  Class Members.  *See* Fed. R. Civ. P. 23(a)(2).  Courts in the Ninth Circuit likewise

12  relied upon almost identical common questions to find that commonality was

13  satisfied in similar cases in which consumers alleged violations of the TCPA.  *See,*

14  *e.g.*, *Meyer*, 707 F.3d at 1041-42 (upholding finding of commonality in TCPA

15  action); *Malta*, 2013 WL 444619, at *2 (finding common questions of fact "in that

16  the calls were made by Wells Fargo to class members . . . using auto-dialing

17  equipment or with a prerecorded voice message" and common questions of law

18  "including:  (1) whether Wells Fargo negligently violated the TCPA; (2) whether

19  Wells Fargo willfully or knowingly violated the TCPA; and (3) whether Wells

20  Fargo had "prior express consent" for the calls.").  The typicality requirement is

21  satisfied because Plaintiff's TCPA claims, which are based on Defendant's

22  systematic use of automated calls to Plaintiff and all members of the Class, are

23  "reasonably coextensive with those of the absent class members."  *See* Fed. R. Civ.

24  P. 23(a)(3); *Meyer,* 707 F.3d at1041-42 (upholding typicality finding); *Malta*, 2013

25  WL 444619, at *2-3 (finding typicality where TCPA claim stemmed from the same

26  course of conduct and were based on the same legal theory).  The adequacy of

27  representation requirement is satisfied because Plaintiff's interests are coextensive

28  with, and not antagonistic to, the interests of the Settlement Class.  *See* Fed. R. Civ.

1   P. 23(a)(4); *see also Meyer*, 707 F.3d at 1042; *Malta*, 2013 WL 444619, at *3.

2   Further, Plaintiff is represented by qualified and competent counsel who have

3   extensive experience and expertise in prosecuting complex class actions, including

4   TCPA actions.  *See* Hutchinson Decl. ¶¶ 5-6 & Exhibit A.

5         The predominance requirement of Rule 23(b)(3) is satisfied because common

6   questions present a significant aspect of the case and can be resolved for all

7   Settlement Class members in a single adjudication.  *See* Fed. R. Civ. P. 23(b)(3) ;

8   *see also Malta*, 2013 WL 444619, at *2.  Because the claims are being certified for

9   purposes of settlement, there are no issues with manageability, and resolution of

10  thousands of claims in one action is far superior to individual lawsuits and

11  promotes consistency and efficiency of adjudication.  *See* Fed. R. Civ. P. 23(b)(3) ;

12  *see also Malta*, 2013 WL 444619, at *4 (superiority met where "considerations of

13  judicial economy favor litigating a predominant common issue once in a class

14  action instead of many times in separate lawsuits" and the "small individual claims

15  of class members" made it "unlikely that individual actions will be filed").  For

16  these reasons, certification of the Settlement Class for purposes of settlement is

17  appropriate.

18      **G.**    **The Proposed Notice Program Is Constitutionally Sound**

19        "Rule [23(e)] requires the court to 'direct notice in a reasonable manner to all

20  class members who would be bound by a proposed settlement, voluntary dismissal,

21  or compromise' regardless of whether the class was certified under Rule 23(b)(1),

22  (b)(2), or (b)(3)." *Manual for Compl. Lit., supra*, at § 21.312.  The best practicable

23  notice is that which is "reasonably calculated, under all the circumstances, to

24  apprise interested parties of the pendency of the action and afford them an

25  opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust*

26  *Co.*, 339 U.S. 306, 314 (1950).  According to the *Manual, supra*, at § 21.312, the

27  settlement notice should:

28          •        Define the class;

1      •      Describe clearly the options open to the class members and the

2  deadlines for taking action;

3      •      Describe the essential terms of the proposed settlement;

4      •      Disclose any special benefits provided to the class representatives;

5      •      Provide information regarding attorneys' fees;

6      •      Indicate the time and place of the hearing to consider approval of the

7  settlement, and the method for objecting to or opting out of the settlement;

8      •      Explain the procedures for allocating and distributing settlement funds,

9  and, if the settlement provides different kinds of relief for different categories of

10  class members, clearly set out those variations;

11      •      Provide information that will enable class members to calculate or at

12  least estimate their individual recoveries; and

13      •      Prominently display the address and phone number of class counsel

14  and the procedure for making inquiries.

15      The proposed forms of Notice, attached as Exhibit B and C to the

16  Agreement, satisfy all of the criteria above.  The Notice Plan provides for direct,

17  individual notice via either email or mail. Agreement §§ 8.01-8.07.   And, skip

18  tracing will be performed for returned email and direct mail notices. *Id.* § 8.02a.

19  Also, notice will be provided to Class Members online through the settlement

20  website. *Id.* § 8.05.

21  **III.   CONCLUSION**

22      For all of the foregoing reasons, Plaintiff respectfully requests that the Court

23  do the following:  (1) preliminarily approve the proposed Settlement as fair,

24  adequate, and reasonable; (2) conditionally certify the Settlement Class and appoint

25  Plaintiff as class representative; (3) appoint Class Counsel; and (4) appoint KCC as

26  the Settlement Administrator to administer the proposed Notice and Claims

27  Program.

28

1

2   Dated: September 8, 2016          LIEFF, CABRASER, HEIMANN
                                         & BERNSTEIN, LLP

3
                                     By: */s/  Daniel M. Hutchinson*
4                                          Daniel M. Hutchinson

5                                    LIEFF CABRASER HEIMANN
                                       & BERNSTEIN, LLP
6                                    Jonathan D. Selbin (State Bar No. 170222)
                                     Email: jselbin@lchb.com
7                                    250 Hudson Street, 8th Floor
                                     New York, NY  10013
8                                    Telephone:  (212) 355-9500
                                     Facsimile:  (212) 355-9592
9

10                                   Daniel M. Hutchinson
                                     (State Bar No. 239458)
11                                   Email: dhutchinson@lchb.com
                                     275 Battery Street, 29th Floor
12                                   San Francisco, California  94111-3339
                                     Telephone:  (415) 956-1000
13                                   Facsimile:  (415) 956-1008

14                                   John T. Spragens
                                     (State Bar No. 031445)
15                                   Email:  jspragens@lchb.com
                                     One Nashville Place
16                                   150 Fourth Avenue North, Suite 1650
                                     Nashville, TN  37219-2423
17                                   Telephone:  (615) 313-9000
                                     Facsimile:  (615) 313-9965

18                                   SIRI & GLIMSTAD LLP
19                                   Aaron Siri
                                     (admitted *pro hac vice*)
20                                   Email: aaron@sirillp.com
                                     120 East 31st Street
21                                   New York, New York 10016
                                     Telephone: (212) 532-1091
22                                   Facsimile: (646) 417-5967

23                                   PARISI & HAVENS LLP
                                     David C. Parisi
24                                   (State Bar No. 162248)
                                     Email:  dcparisi@parisihavens.com
25                                   212 Marine Street, Unit 100
                                     Santa Monica, CA 90405
26                                   Telephone:  (818) 990-1299
                                     Facsimile:  (818) 501-7852

27                                   *Counsel for Plaintiff and the Proposed Class*

28

1315389.6                    - 25 -           MOTION FOR PRELIMINARY APPROVAL
                                              OF CLASS ACTION SETTLEMENT
                                              CV15-03194 BRO (GJSX)