Jonathan D. Selbin (State Bar No. 170222)
Daniel M. Hutchinson (State Bar No. 239458)
Email: dhutchinson@lchb.com
LIEFF, CABRASER, HEIMANN &
BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, California  94111-3339
Telephone:  (415) 956-1000
Facsimile:  (415) 956-1008

SIRI & GLIMSTAD LLP
Aaron Siri
(admitted *pro hac vice*)
Email: aaron@sirillp.com
136 Madison Avenue, Fifth Floor
New York, New York 10016
Telephone: (212) 532-1091
Facsimile: (646) 417-5967

[Additional Counsel Listed on Signature Page]

*Attorneys for Plaintiff and the Proposed Class*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| JEFFREY A. THOMAS, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>DUN & BRADSTREET CREDIBILITY CORP.,<br><br>Defendant. | Case No. CV15-03194 BRO (GJSx)<br><br>**PLAINTIFF'S MOTION AND MEMORANDUM IN SUPPORT OF MOTION FOR ATTORNEYS' FEES AND COSTS AND FOR A SERVICE AWARD TO THE CLASS REPRESENTATIVE**<br><br>Judge:   Hon. Beverly Reid O'Connell<br>Hearing Date:  March 20, 2017<br>Time:           1:30 p.m.<br>Place:          Courtroom 7C |

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION ...................................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES .......................................... 1

I.   INTRODUCTION ................................................................................................ 1

II.  BACKGROUND ................................................................................................... 2

    A.   Class Counsel Negotiated an Outstanding Result for the Class. .......... 2

        1.   The Prospective Changes Benefit the Class. ............................. 2

        2.   The Common Settlement Fund Achieved for the Class. ............ 2

    B.   Class Counsel Undertook Considerable Risk in Prosecuting this Action. ........................................................................................................... 3

    C.   Class Counsel Obtained an Efficient Resolution to this Matter. .......... 5

III. ARGUMENT AND AUTHORITY .................................................................... 5

    A.   The Requested Fee Award Is Fair, Reasonable, and Justified under California Law. ............................................................................................ 5

        1.   This Case Is Well Suited for a Percentage-of-the-Fund Approach under California Law. .................................................. 6

        2.   Class Counsel Have Obtained an Excellent and Efficient Result. .......................................................................................... 7

    B.   In the Alternative, the Requested Fee Award is Fair, Reasonable, and Justified Under Federal Law. ...................................... 9

        1.   The Requested Fee is Presumptively Reasonable Because it Resulted from Arm's Length Negotiations. ......................... 10

        2.   The Court Should Apply the Percentage-of-the-Fund Method. ...................................................................................... 11

        3.   Class Counsel's Fee Request is Warranted Under the Percentage-of-the-Fund Method. .............................................. 13

            a.   Class Counsel have Obtained an Excellent Result......... 13

            b.   The Risks of Litigation Supports the Requested Fee. ...................................................................................... 15

            c.   The Skill Required and Quality of Work Performed Supports the Requested Fee. ...................................... 16

            d.   Class Counsel's Undertaking of the Actions on a Contingency-Fee Basis Supports the Requested Fee. ...................................................................................... 17

            e.   The Requested Fee Comports with Fees Awarded in Similar Actions.................................................................. 18

        4.   A Lodestar Plus Multiplier Cross-Check Supports the Requested Fee. ........................................................................... 19

            a.   Class Counsel's Lodestar is Reasonable. ...................... 20

            b.   The Fee Requested Represents an Appropriate Multiplier on Class Counsel's Lodestar. ......................... 22

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**TABLE OF CONTENTS**
**(continued)**

**Page**

C.    Class Counsel Are Not Seeking Reimbursement of their Costs on Top of the Fee Award, Although Such Reimbursement Would be Justified. ..................................................................... 23

D.    The Named Plaintiff's Service Award Is Reasonable. ....................... 24

IV.   CONCLUSION ............................................................................... 25

1324925.4

# TABLE OF AUTHORITIES

**Page**

## CASES

*Adams v. AllianceOne Receivables Mgmt., Inc.*,
No. 3:08-cv-00248-JAH-WVG (S.D. Cal. Sept. 28, 2012) .............................. 18

*Aichele v. City of Los Angeles*,
No. CV 12-10863, 2015 WL 5286028 (C.D. Cal. Sept. 9, 2015) .................... 19

*Aliano v. Joe Caputo & Sons—Algonquin, Inc.*,
No. 09 C 910, 2011 WL 1706061 (N.D. Ill. May 5, 2011) ............................... 4

*Allen v. JPMorgan Chase Bank, N.A.*,
No. 13-8285 (N.D. Ill. Oct. 21, 2015) ............................................................ 18

*Beckman v. KeyBank, N.A.*,
293 F.R.D. 467 (S.D.N.Y. 2013) ..................................................................... 23

*Behrens v. Wometco Enter., Inc.*,
118 F.R.D. 534 (S.D. Fla. 1988), aff'd,
899 F.2d 21 (11th Cir. 1990) ........................................................................... 12

*Blum v. Stenson*,
465 U.S. 886 (1994) .......................................................................................... 21

*Boeing Co. v. Van Gemert*,
444 U.S. 472 (1980) .......................................................................................... 10

*Bostick v. Herbalife Int'l of Am.*,
Case No. 2:13-cv-02488-BRO (C.D. Cal. May 14, 2015) (Dkt. No.
145) ............................................................................................................. 13, 25

*Campbell-Ewald Co. v. Gomez*,
136 S. Ct. 663 (2016) .................................................................................... 5, 16

*Chen v. Allstate Ins. Co.*,
819 F.3d 1136 (9th Cir. 2016) ....................................................................... 5, 16

*Craft v. County of San Bernardino*,
624 F. Supp. 2d 1113 (C.D. Cal. 2008) ....................................................... 19, 23

*Craftwood Lumber Co. v. Interline Brands, Inc.*,
No. 11-CV-4462, 2015 WL 1399367
(N.D. Ill. Mar. 23, 2015) ............................................................................. 18, 25

*Cummings v Sallie Mae*,
Case No. 1:12-cv-9984 (N.D. Ill.) .................................................................. 18

*Davis v. J.P. Morgan Chase & Co.*,
827 F. Supp. 2d 172 (W.D.N.Y. 2011) ........................................................... 23

*De Los Santos v Millword Brown, Inc.*,
9:13-cv-80670-DPG (S.D. Fla.) ...................................................................... 18

*Di Giacomo v. Plains All Am. Pipeline*,
No. H-99-4137, 2001 WL 34633373 (S.D. Tex. Dec. 19, 2001) ..................... 23

*Djukich v. AutoNation Inc.*,
Case 2:13-cv-04455-BRO (C.D. Cal. Nov. 12, 2015) (Dkt. No.
145) ............................................................................................................. 13, 25

- iii -

**TABLE OF AUTHORITIES**<br>**(continued)**

**Page**

*Fiant v. Weatherby, Inc.*,
  Case No. 2:15-cv-02991-BRO (C.D. Cal. June 13, 2016) (Dkt. No.
  37) ........................................................................................................ 13, 25

*Fulford v. Logitech, Inc.*,
  No. 08-cv-02041 MMC, 2010 U.S. Dist. LEXIS 144437
  (N.D. Cal. Mar. 5, 2010) ............................................................................ 22

*Glass v. UBS Fin. Servs., Inc.*,
  No. C-06-4068 MMC, 2007 WL 221862 (N.D. Cal. Jan. 26, 2007)
  aff'd, 331 F. App'x 452 (9th Cir. 2009) .................................................... 19

*Glendale City Employees' Assn. v. City of Glendale*
  15 Cal.3d 328 (1975) ................................................................................... 7

*Graehl v. Wellpoint, Inc.*,
  Case 2:14-cv-00421-BRO (C.D. Cal. Jan. 8, 2016) (Dkt. No. 62) ............. 13, 25

*Hanlon v. Chrysler Corp*,
  150 F.3d 1011 (9th Cir. 1998) ............................................................ 11, 12, 19

*Hensley v. Eckerhart*,
  461 U.S. 424 (1983) ............................................................................... 10, 13

*Hvorcik v. Sheahan*,
  1997 WL 695721 (N.D. Ill. Oct. 30, 1997) ............................................... 20

*In re Activision Sec. Litig.*,
  723 F. Supp. 1373 (N.D. Cal. 1989) .......................................................... 12

*In re Apple Computer, Inc. Derivative Litig.*,
  No. C 06-4128 JF (HRL), 2008 WL 4820784
  (N.D. Cal. Nov. 5, 2008) ............................................................................ 10

*In re AXA Rosenberg Investor Litig.*,
  No. 11-cv-00536-JSW (N.D. Cal. April 2, 2012) ...................................... 22

*In re Bluetooth Headset Prods. Liab. Litig.*,
  654 F.3d 935 (9th Cir. 2011) ..................................................................... 10

*In re Capital One*,
  80 F. Supp. 3d 781 .................................................................................... 18

*In re Heritage Bond Litig. v. U.S. Trust Co. of Tex., N.A.*,
  No. 02-ML-1475-DT(RCx), 2005 WL 1594389
  (C.D. Cal. June 10, 2005) .......................................................................... 19

*In re M.D.C. Holdings Sec. Litig.*,
  No. CV 89-0090 E (M), 1990 WL 454747
  (S.D. Cal. Aug. 30, 1990) .......................................................................... 19

*In re Media Vision Tech. Sec. Litig.*,
  913 F.Supp. 1362 (N.D. Cal. 1996) ........................................................... 23

*In re Mego Fin. Corp. Sec. Litig.*,
  213 F.3d 454 (9th Cir. 2000) ................................................................ 15, 18

*In re Mercury Interactive Corp. Sec. Litig.*,
  618 F.3d 988 (9th Cir. 2010) ....................................................................... 1

1324925.4

**TABLE OF AUTHORITIES**
(continued)

Page

*In re Omnivision*,
559 F. Supp. 2d 1036 (N.D. Cal. 2007)......................................................passim

*In re Rite Aid Corp. Sec. Litig.*,
146 F. Supp. 2d 706 (E.D. Pa. 2001) ........................................................23

*In re Rite Aid Corp. Secs. Litig.*,
362 F. Supp. 2d 587 (E.D. Pa. 2005)........................................................23

*In re Washington Pub. Power Supply System Sec. Litig.*,
19 F.3d 1291 (9th Cir. 1994) .............................................................10, 12, 17

*Juarez v. Citibank, N.A.*,
Case No. 16-cv-01984-WHO, 2016 WL 4547914
(N.D. Cal. Sept. 1, 2016) ..........................................................................4

*Kerr v. Screen Extras Guild, Inc.*,
526 F.2d 67 (9th Cir. 1975)........................................................................20

*Laffitte v. Robert Half Int'l, Inc.*,
1 Cal.5th 480 (2016)................................................................1, 6, 7, 8

*Linder v. Thrifty Oil Co.*,
23 Cal.4th 429 (2000) ..................................................................................7

*Linney v. Cellular Alaska P'ship*,
151 F.3d 1234 (9th Cir. 1998) ..................................................................15

*Linney v. Cellular Alaska P'ship*,
No. C-96-3008 DLJ, 1997 WL 450064
(N.D. Cal. July 18, 1997) ..........................................................................14

*Loretz v. Regal Stone, Ltd.*,
756 F. Supp. 2d 1203 (N.D. Cal. 2010).....................................................20

*Malta v. Wells Fargo Home Mortgage*,
10-cv-01290-BEN-NLS (S.D. Cal. June 21, 2013) (Dkt. No. 92) ..............23

*Melendres v. City of Los Angeles*
45 Cal.App.3d 267 (1975) .......................................................................7, 8

*Mills v. Electric Auto–Lite Co.*,
396 U.S. 375 (1970) ....................................................................................23

*Moore v. Verizon Communs., Inc.*,
No. 09-1823 SBA (JSC), 2013 WL 588035
(N.D. Cal. Nov. 27, 2013) ..........................................................................22

*New Eng. Carpenters Health Benefits Fund v. First Databank*,
Civil Action No. 05–11148–PBS, 2009 WL 2408560 (D. Mass.
Aug. 3, 2009) ..............................................................................................23

*Nwabueze v. AT&T Inc.*,
No. C 09-01529 SI, 2014 WL 6199596
(N.D. Cal. Jan. 29, 2014).............................................................................21

*Parker v. City of Los Angeles*
44 Cal.App.3d 556 (1974) ...........................................................................7

*Rodriguez v. West Publishing Corp.*,
563 F.3d 948 (9th Cir. 2009) ......................................................................24

- v -

**TABLE OF AUTHORITIES**
**(continued)**

Page

*Romero v. Dep't Stores Nat'l Bank*,
No. 15-CV-193-CAB-MDD, 2016 WL 4184099
(S.D. Cal. Aug. 5, 2016) ........................................................... 4, 16

*Roos v. Honeywell Int'l, Inc.*,
241 Cal.App.4th 1472 (2015) ........................................................ 7, 8

*Ross v. Trex Co.*,
No. 09-cv-00670-JSW, 2013 WL 2365865
(N.D. Cal. Dec. 16, 2013) ................................................................ 22

*Simon v. Healthways, Inc.*,
(C.D. Cal. Dec. 17, 2015) Case No. 14-cv-08022-BRO,
2015 WL 10015953 ................................................................. 3, 8, 15

*Spokeo v. Robins*,
136 S. Ct. 1540 (2016) ............................................................... 4, 16

*Stanger v. China Elec. Motor, Inc.*,
No. 13–56903, 2016 WL 191986 (9th Cir. Jan. 15, 2016) ............... 22

*Staton v. Boeing Co.*,
327 F.3d 938 (9th Cir 2003) ..................................................... passim

*Steiner v. Am. Broad. Co.*,
248 Fed. Appx. 780 (9th Cir. Cal. 2007) ........................................ 22

*Swedish Hosp. Corp. v. Shalala*,
1 F.3d 1261 (D.C. Cir. 1993) ........................................................ 12

*Taylor v. Shippers Transport Express, Inc.*,
Case 2:13-cv-02092-BRO (C.D. Cal. May 14, 2015) (Dkt. No. 246) .......... 6, 25

*Thomas v. Dun & Bradstreet Credibility Corp.*,
100 F. Supp. 3d 937 (C.D. Cal. 2015) ............................................. 5

*Vadai v. Dun & Bradstreet Credibility Corp.*,
302 F.R.D. 308 (S.D.N.Y. 2014) ........................................... 5, 16, 20

*Van Vranken v. Atlantic Richfield Co.*,
901 F. Supp. 294 (N.D. Cal. 1995) ................................................ 25

*Vendervort v. Balboa Capital Corp.*,
8 F. Supp. 3d 1200 (C.D. Cal. 2014) ............................................. 19

*Vizcaino v. Microsoft Corp.*,
290 F.3d 1043 (9th Cir. 2002) .................................................. passim

*Walsh v. Kindred Healthcare*,
No. C 11-00050 JSW, 2013 WL 6623190
(N.D. Cal. Dec. 16, 2013) .......................................................... 14, 22

*Wilkins v. HSBC Bank Nev., N.A.*,
No. 14-190, 2015 WL 890566
(N.D. Ill. Feb. 27, 2015) ................................................................ 18

*Yuzary v. HSBC Bank USA, N.A.*,
No. 12 Civ. 3693 (PGG), 2013 WL 5492998
(S.D.N.Y. Oct. 2, 2013) ................................................................ 23

1324925.4

**TABLE OF AUTHORITIES**
**(continued)**

Page

### STATUTES

47 U.S.C. § 227 *et seq.* ........................................................................ 9

### RULES

Fed. R. Civ. P. 23(e) ............................................................................ 9

Fed. R. Civ. P. 23(h) .......................................................................... 13

### TREATISES

ALI, Principles of the Law of Aggregate Litigation
  (2010) § 3.13(b) & cmt. b ................................................................ 6

Federal Judicial Center, *Manual for Complex Litigation*,
  § 27.71 (4th ed. 2004) .................................................................... 13

Newberg on Class Actions
  § 14:6 (4th Ed. 2002) ...................................................................... 11

### OTHER AUTHORITIES

Coffee, *The Regulation of Entrepreneurial Litigation: Balancing
  Fairness and Efficiency in the Large Class Action*
  (1987) 54 U.Chi.L.Rev. 877 .............................................................. 8

Morawetz, *Bargaining, Class Representation, and Fairness*
  (1993) 54 Ohio St. L.J. 1 .................................................................. 8

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1324925.4

## NOTICE OF MOTION AND MOTION

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

NOTICE IS HEREBY GIVEN that on March 20, 2017, at 1:30 p.m., or as soon as the matter may be heard, in the Courtroom of the Honorable Beverly Reid O'Connell of the Central District of California, located at 350 West 1st Street, Los Angeles, California, Courtroom 7C, Class Counsel will, and hereby do, move for an Order awarding the following from the common Settlement Fund: (1) attorneys' fees and costs in the amount of $3,150,000, which is 30% of the $10,500,000 common fund created for the Class (with no additional payment of Class Counsel's out-of-pocket costs); and (2) a Service Award to the Class Representative of $10,000.

As discussed in the accompanying memorandum, the requested awards are fair, reasonable, and justified under applicable law.  This motion is based upon this notice, the attached memorandum of points and authorities, the accompanying declarations of Daniel M. Hutchinson and Aaron Siri, and the exhibits thereto, and other papers filed in support of preliminary and final approval of the Settlement, any oral argument that is held regarding this motion, the complete record in this litigation and such other matters as the Court may consider.[1]

---

[1] Class Counsel have filed this brief well in advance of the March 20, 2017, hearing so that it can be made available to Class Members prior to the objection and claims deadline.  Consistent with *In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988 (9th Cir. 2010), and best practices, a copy of this brief will be uploaded to the settlement website, www.CredibilityTCPASettlement.com, within 24 hours.

- 1 -

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.   INTRODUCTION

Class Counsel's efforts created a $10,500,000 non-reversionary common fund (the "Settlement Fund"), which will go to Class Members as cash payments estimated to be between $60 and $120 per Class Member.  Class Counsel, having vigorously and effectively represented the Class, respectfully move the Court for an award of reasonable attorneys' fees and costs totaling $3,150,000, which is 30% of the common fund created for the Class, *inclusive of* costs.  Class Counsel also respectfully move the Court for a $10,000 Service Award to the Named Plaintiff.

The requested fee is fair, reasonable, and appropriate under applicable law. Class Counsel's fee request is inclusive of, and not in addition to, their reasonable expenses incurred in this litigation.  If granted, the fee would represent 30 percent of the total monetary payout, which is well below the 33.3 percent that courts apply in common fund cases arising under California law.  *See Laffitte v. Robert Half Int'l, Inc.*, 1 Cal.5th 480 (2016) (approving trial court's award of 33.3% of $19 million settlement for attorneys' fees).  In the alternative, the request is consistent with Ninth Circuit's benchmark for common fund cases.  *See, e.g., Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1049 (9th Cir. 2002) (approving trial court's award of 31.9% of $96.885 million settlement for attorneys' fees and costs, including a 28% fee award and $3,825,497.86 in costs).  Moreover, the requested fee is well-justified under the circumstances of this litigation, given prospective practice changes designed to stop the automated calls to cell phones, the substantial monetary benefits that Class Counsel's efforts generated for Class Members, the challenges and risks that Class Counsel assumed in pursuing this matter on a contingency basis, the time and resources that Class Counsel expended prior to reaching a Settlement, and the market rate for similar class action settlements.

The Ninth Circuit has held that the value of settlements should be enhanced for purposes of fee analyses where there are significant "nonmonetary benefits

PLAINTIFF'S MOTION & MEMO ISO FOR ATTYS' FEES
AND COSTS & SERVICE AWARD TO CLASS REP
CV15-03194 BRO (GJSX)

conferred by the litigation." *See id.*  Yet Class Counsel seek no such additional valuation here, despite the prospective practice changes in Defendant's conduct, which put a stop to the automated calls that form the basis for this litigation, and which are a direct result of the litigation.  Class Counsel's request is also supported by a lodestar cross-check, if the Court chooses to perform an optional cross-check.

Class Counsel respectfully submit that their fee request is appropriate in light of the extraordinary result achieved for the Class.  In light of this strong result, and for the reasons discussed below, Class Counsel respectfully request that the Court grant their fee request in full, and approve the Named Plaintiff service award.

## II.   BACKGROUND

### A.   Class Counsel Negotiated an Outstanding Result for the Class.

The Settlement achieved by Class Counsel provides both core prospective practice changes and significant monetary relief for the Class.

#### 1.   The Prospective Changes Benefit the Class.

The alleged conduct driving this litigation is Defendant's harassing, repeated, and intrusive autodialed calls to cellular telephones without prior express consent. Time and again, Class Counsel have heard from Class Members that the single most important thing to them is that such calls stop. [2]  Accordingly, the Settlement confirms prospective practice changes designed to prevent the dialing of cell phones using an automatic telephone dialing system.  Agreement ¶ 4.01.  While Class Counsel have not attempted to monetize the value of these practice changes, this relief was a key goal of Class Members and will prevent them from being subjected to the unwanted autodialed calls that are the entire basis for this litigation.

#### 2.   The Common Settlement Fund Achieved for the Class.

In addition to the core prospective relief, the Settlement also provides that

---

[2] Declaration of Daniel M. Hutchinson in Support of Class Counsel's Motion for Attorneys' Fees ("Hutchinson Decl."), ¶ 62; Declaration of Aaron Siri in Support of Class Counsel's Motion for Attorneys' Fees ("Siri Decl."), ¶ 60.

Defendant will pay $10,500,000 into a Settlement Fund.  Agreement ¶ 4.02.  From this Fund, each Class Member who submits a valid and timely claim will receive a *pro rata* cash payment.  *Id.* ¶ 4.02.  Class Counsel estimated that the awards will be in the range of $60 to $120.  To receive a cash payment, Class Members need only complete a simple, one-page claim form and provide it to the Claims Administrator via the Internet site, by telephone, or by mail within 90 days of the Settlement Notice Date.  *Id.* ¶¶ 2.09, 9.02.  The Settlement achieved by Class Counsel therefore provides exceptional monetary relief.

### B.    Class Counsel Undertook Considerable Risk in Prosecuting this Action.

This matter has required Class Counsel to spend time on this litigation that could have been spent on other matters.  Moreover, because Class Counsel undertook representation of this matter on a pure contingency-fee basis, they shouldered the risk of expending substantial costs and time in litigating the action without any monetary gain in the event of an adverse judgment.  Hutchinson Decl., ¶ 64; Siri Decl., ¶ 62.

This action was especially risky.  First, there was an acute risk that the Court would decline to certify this case as a class action.  In fact, this Court very recently denied class certification in a similar TCPA class action, finding that the issue of prior express consent was an individualized issue that precluded class certification. *Simon v. Healthways, Inc.*, Case No. 14-cv-08022-BRO, 2015 WL 10015953 (C.D. Cal. Dec. 17, 2015).  Some of Class Counsel lost class certification on this precise basis in a similar action in this District.  *See Aghdasi v. Mercury Ins. Grp., Inc.*, No. CV 15-4030-R, 2016 WL 5899290, at *1 (C.D. Cal. Jan. 21, 2016) (describing "individualized" issues regarding prior express consent that predominated over common questions).  Plaintiff faced the very same issue in this matter. If Defendant was able to present convincing facts to support its position, the Court might decline to certify the class, leaving only Plaintiff's individual claims.

Second, the Action also presented risks on the merits.  While Plaintiff testified that he received autodialed calls from Defendant on his cellular phone, Defendant would no doubt continue to argue that Plaintiff's business, and not Plaintiff, was the proper party in this action.  Moreover, even though the Court denied Defendant's motion to dismiss, it left undecided a number of issues of law that Defendant would likely raise in any future dispositive motion practice.  The Court did not decide whether one must be a "called party" to have standing under the TCPA, whether § 227(b)(1)(A)(iii) applies to business calls, and whether California law should apply to this action.  Dkt. No. 23.  Defendant tried to marshal facts in support of its argument that Thomas was not the "current subscriber" of the line, and therefore ineligible for relief in this action.  *See* Dkt. No. 19.

Third, some courts view awards of aggregate, statutory damages with skepticism and reduce such awards on due process grounds.  *See, e.g.*, *Aliano v. Joe Caputo & Sons—Algonquin, Inc.,* No. 09 C 910, 2011 WL 1706061, at *4 (N.D. Ill. May 5, 2011) (noting that FACTA statutory damages of $100 to $1000 per violation, "although authorized by statute, would be shocking, grossly excessive, and punitive in nature").

Fourth, Plaintiff faced the risk of an adverse ruling from the Supreme Court or FCC that would have eviscerated the class claims.  Hutchinson Decl. ¶¶ 67-68.  Defendant still contends that Plaintiff may lack standing to pursue his claims after *Spokeo v. Robins*, 136 S. Ct. 1540 (2016).  *Compare Romero v. Dep't Stores Nat'l Bank*, No. 15-CV-193-CAB-MDD, 2016 WL 4184099, at *6 (S.D. Cal. Aug. 5, 2016) (dismissing TCPA claims where the plaintiff "has not and cannot satisfy the injury-in-fact requirement of Article III") *with Juarez v. Citibank, N.A.,* Case No. 16-cv-01984-WHO, 2016 WL 4547914, at *3 (N.D. Cal. Sept. 1, 2016) (finding standing post-*Spokeo*).  Additionally, Defendant has, in the past, made an offer of judgment under Rule 68 and claimed that Plaintiff's claims consequently were mooted.  Although that specific proposition was rejected in *Campbell-Ewald Co. v.*

*Gomez*, 136 S. Ct. 663 (2016), there remained the risk that a more complete tender might moot Plaintiff's claims until the Ninth Circuit recently decided *Chen v. Allstate Ins. Co.*, 819 F.3d 1136, 1149 (9th Cir. 2016).  Indeed, this was more than just a theoretical possibility as a prior TCPA action against Defendant by the same Plaintiff's counsel was mooted for this very reason.  *Vadai v. Dun & Bradstreet Credibility Corp.*, 302 F.R.D. 308 (S.D.N.Y. 2014).

Finally, there is the risk of losing a jury trial.  And, even if Plaintiff and the Class did prevail, any recovery could be delayed for years by an appeal.  The Settlement provides substantial relief to Class Members without further delay.

**C.     Class Counsel Obtained an Efficient Resolution to this Matter.**

Although Class Counsel seek fees based on a percentage-of-the-fund and not a lodestar analysis, they nonetheless worked closely and in cooperation with one another to ensure efficient case management.  By assigning specific tasks among firms, they were able to avoid duplicating or replicating work.  For example, counsel for the two firms split primary responsibility for drafting briefs relating to Defendant's motion to dismiss, Plaintiff's discovery motion, Plaintiff's motion for class certification, and Plaintiff's motion for preliminary settlement approval.[3]

**III.   ARGUMENT AND AUTHORITY**

**A.     The Requested Fee Award Is Fair, Reasonable, and Justified under California Law.**

Plaintiff brought a claim under California Business & Professions Code §§ 17200, *et seq.*, the Unfair Competition Law ("UCL").  *See* Class Action Complaint (Dkt. No. 1) at ¶¶1-2, 61, 72-78.  In denying Defendant's motion to dismiss, this Court found that Plaintiff pled sufficient facts to justify application of the UCL to the nationwide class.  *Thomas v. Dun & Bradstreet Credibility Corp.*, 100 F. Supp. 3d 937, 946-47 (C.D. Cal. 2015).  Accordingly, because California law governed the UCL claim in the case, it also governs the fee request.  *See*

---

[3] Hutchinson Decl., ¶¶ 83-85; Siri Decl., ¶¶ 71-78.

*Vizcaino*, 290 F.3d at 1047.

Under California law, Class Counsel's request is squarely supported by the percentage-of-the-fund method of calculating attorneys' fees applicable to common fund cases like this one. *See Laffitte*, 1 Cal.5th 480; *accord Taylor v. Shippers Transport Express, Inc.*, Case 2:13-cv-02092-BRO, at *21 (C.D. Cal. May 14, 2015) (Dkt. No. 246) (awarding fees of 1/3 of the $11,040,000 common fund in case arising under California law).[4]  The award of attorneys' fees is "within the discretion of the trial court," with the goal being "the award of a reasonable fee to compensate counsel for their efforts."  *Laffitte*, 1 Cal.5th at 504.  In light of the significant benefit secured for the Class, Class Counsel respectfully submit that an award of attorneys' fees and costs based on 30% of the common fund constitutes a "reasonable fee to compensate counsel for their efforts."

### 1.    This Case Is Well Suited for a Percentage-of-the-Fund Approach under California Law.

The California Supreme Court recently "join[ed] the overwhelming majority of federal and state courts in holding that when class action litigation establishes a monetary fund for the benefit of the class members, and the trial court in its equitable powers awards class counsel a fee out of that fund, the court may determine the amount of a reasonable fee by choosing an appropriate percentage of the fund created."  *Laffitte*, 1 Cal.5th at 503; *see also* ALI, Principles of the Law of Aggregate Litigation (2010) § 3.13(b) & cmt. b (finding that "most courts and commentators now believe the percentage method is superior" and that it "should be the method utilized in most common-fund cases").  The Supreme Court's position is consistent with the longstanding practice in California courts of awarding attorneys' fees based on a percentage when litigation results in a common

---

[4] All decisions not available on Westlaw have been compiled as Exhibits B-K to Hutchinson Declaration.

fund that benefits a class.[5]  This method serves the interests of justice by attracting competent counsel to undertake complex cases on contingency, a goal that is particularly important in the class action context.[6]

Class Counsel seek a fee percentage less than those approved by other courts: only 30% of the common fund for their attorneys' fees.  *See Laffitte,* 1 Cal.5th 480 (approving attorneys' fees of 1/3 of $19 million settlement fund).  Even before *Laffitte*, California courts have customarily approved payments of attorneys' fees amounting to 33.3% of the common fund in comparable class actions.  *See, e.g.*, *Barbosa v. Cargill Meat Sols. Corp.*, 297 F.R.D. 431, 451 (E.D. Cal. 2013) (awarding 33.3% in a UCL class action and summarizing nine cases that awarded between 30% and 33.3% of a common fund as attorneys' fees).  In some circumstances, courts have approved percentage awards that are even higher.  *See, e.g.*, *Roos v. Honeywell Int'l, Inc.*, 241 Cal.App.4th 1472, 1494-96 (2015) (trial court did not abuse discretion in approving attorney's fees of 37.5% of the $8.15 million class action settlement fund).  Accordingly, a 30% award in this case, particularly in light of the tremendous benefit Class Counsel successfully obtained for Class Members, is well within the range of a reasonable fee award.

## 2.   <u>Class Counsel Have Obtained an Excellent and Efficient Result.</u>

The Settlement requires payment of $10.5 million—a substantial sum.  A

---

[5] *See, e.g.*, *Glendale City Employees' Assn. v. City of Glendale*, 15 Cal.3d 328, 341, fn. 19 (1975) (awarding a percentage of the fund to attorneys "under the rule that a litigant who creates a fund in which others enjoy beneficial rights may require those beneficiaries to pay their fair share of the expense of litigation"); *Parker v. City of Los Angeles*, 44 Cal.App.3d 556, 567-68 (1974) (affirming fee award of 33.3%).

[6] *See, e.g.*, *Linder v. Thrifty Oil Co.*, 23 Cal.4th 429, 434 (2000) ("Courts long have acknowledged the importance of class actions as a means to prevent a failure of justice in our judicial system."); *Melendres v. City of Los Angeles*, 45 Cal.App.3d 267, 273 (1975) (competent counsel "will be more willing to undertake and diligently prosecute proper litigation for the protection or recovery of the fund if [they are] assured that [they] will be promptly and directly compensated should [their] efforts be successful") (quotation omitted).

PLAINTIFF'S MOTION & MEMO ISO FOR ATTYS' FEES
AND COSTS & SERVICE AWARD TO CLASS REP
CV15-03194 BRO (GJSX)

1   percentage method is thus well-suited to this case, because it ensured that Class

2   Counsel's incentives were maximally aligned with Class Members' interest:

3   obtaining maximum monetary benefit for Class Members. *Roos*, 241 Cal.App.4th

4   at 1492 (the percentage method "better aligns the interests of class counsel and

5   class members . . . [by] ty[ing] the attorneys' fees awards to the overall result

6   achieved . . . .") (quotation and citation omitted).[7]

7        This is the paragon case for a percentage approach.  The California Supreme

8   Court has observed that one benefit of the percentage method is "the

9   encouragement it provides counsel to seek an early settlement and avoid

10  unnecessarily prolonging the litigation."  *Laffitte*, 1 Cal.5th at 503; *see also*

11  *Melendres*, 45 Cal. App. 3d at 273 (noting that a percentage of the fund acts as an

12  important incentive to encourage counsel "to undertake and diligently prosecute

13  proper litigation for the protection or recovery of the fund") (quotation omitted).

14       While settlement after years of litigation can hardly be classified as "early,"

15  Class Counsel made an informed decision to settle prior to the filing of class

16  certification and dispositive motions that could have eliminated or significantly

17  weakened Plaintiff's claims.  Based on extensive discovery and years of legal

18  experience litigating similar consumer class action claims, Class Counsel

19  determined that this settlement—as opposed to protracted litigation—would

20  provide the maximum benefit to as many Class Members as possible, and to as

21  large a Class as possible.  In making this informed decision, Class Counsel were

22  aware of this Court's decision in *Simon,* 2015 WL 10015953.  If the litigation had

23  proceeded, Defendant likely would have argued that *Simon* precludes any class

24  ────────────

[7] *See also* Coffee, *The Regulation of Entrepreneurial Litigation: Balancing
25  Fairness and Efficiency in the Large Class Action* (1987) 54 U.Chi.L.Rev. 877, 878
(stressing "the incentives that the law holds out so as to motivate attorneys to
26  perform as we believe informed clients would want them"); Morawetz, *Bargaining,
Class Representation, and Fairness* (1993) 54 Ohio St. L.J. 1, 5 (noting that "[t]he
27  law and economics literature has suggested that clients are unable to monitor their
attorneys' behavior in the class setting and that fee structures should be altered to
28  better align attorney incentives with the interests of the client class.").

PLAINTIFF'S MOTION & MEMO ISO FOR ATTYS' FEES
AND COSTS & SERVICE AWARD TO CLASS REP
CV15-03194 BRO (GJSX)
1324925.4

1    recovery in this action.  This was just one of many risks. *See infra* Section III.B.3.b.

2            By prioritizing the interests of the Class and concluding that a settlement

3    before adjudication of the class certification issue best served those interests, Class

4    Counsel obtained a benefit for every Class Member.  In this case had proceeded

5    through full class certification briefing, all Class Members may have received less,

6    notwithstanding the additional time delay to prolong the litigation.  In this matter,

7    Counsel's skillful approach to litigation exemplified this Court's own policy of

8    promoting dispute resolution to secure better results without needless expense or

9    time-consuming litigation. *See, e.g.*, Order/Referral to ADR, Dkt. No. 34.

10           **B.**      **In the Alternative, the Requested Fee Award is Fair, Reasonable,**
                         **and Justified Under Federal Law.**
11

12           Plaintiff also brought claims under the Telephone Consumer Protection Act,

13   47 U.S.C. § 227 *et seq.* ("TCPA").  *See* Class Action Complaint (Dkt. No. 1) at ¶1-

14   2, 62-71.  Class Counsel seek a total award of attorneys' fees and costs of

15   $3,150,000, or 30% of the Settlement Fund of $10,500,000—without accounting

16   for the value of Settlement's prospective practice changes.  Class Counsel are not

17   seeking additional payment of their litigation expenses on top of this requested fee

18   award, but rather are seeking those expenses as part of the total amount requested.

19           In this Circuit, "[a]ttorneys' fees provisions included in proposed class action

20   settlement agreements are, like every other aspect of such agreements, subject to

21   the determination whether the settlement is 'fundamentally fair, adequate, and

22   reasonable.'"  *Staton v. Boeing Co.*, 327 F.3d 938, 963 (9th Cir 2003) (quoting Fed.

23   R. Civ. P. 23(e)).  The "common fund" doctrine applies where, as here, a litigation

24   results in the recovery of a certain and calculable fund on behalf of a group of

25   beneficiaries.  The Ninth Circuit and other federal courts have long recognized that

26   when counsel's efforts result in the creation of a common fund that benefits

27   plaintiffs and unnamed class members, counsel have an equitable right to be

28   compensated from that fund for their successful efforts in creating it.  *See Boeing*

1324925.4

1   *Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) ("lawyer who recovers a common
2   fund…is entitled to a reasonable attorney's fee from the fund as a whole"); *Staton*,
3   327 F.3d at 967 (quoting *Boeing*); *In re Wash. Pub. Power Supply Sys. Sec. Litig.*,
4   19 F.3d 1291, 1300 (9th Cir. 1994) ("those who benefit in the creation of a fund
5   should share the wealth with the lawyers whose skill and effort helped create it").

6       In common fund cases, as opposed to cases analyzing fees under a fee-
7   shifting provision, courts within the Ninth Circuit have discretion to use one of two
8   methods to determine whether the request is reasonable: (1) percentage-of-the-fund;
9   or (2) lodestar plus a risk multiplier.  *Staton*, 327 F.3d at 967-68.  "Though courts
10  have discretion to choose which calculation method they use, their discretion must
11  be exercised so as to achieve a reasonable result."  *In re Bluetooth Headset Prods.*
12  *Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011).  Class Counsel's request for fees is
13  reasonable under—and warrants application of—the percentage-of-the-fund
14  analysis.  The reasonableness of Class Counsel's fee award request is confirmed by
15  the optional lodestar cross-check, which courts may choose to employ.

16      **1.**      **The Requested Fee is Presumptively Reasonable Because it**
17              **Resulted from Arm's Length Negotiations.**

18      As the United States Supreme Court has explained: "A request for attorney's
19  fees should not result in a second major litigation.  Ideally, of course, litigants will
20  settle the amount of a fee."  *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983).  While
21  the Court must perform its own evaluation to verify that the requested fees are
22  reasonable and not the product of collusion, it should give weight to the judgment
23  of the parties and their counsel where, as here, the fees were agreed to through
24  arm's length negotiations after the parties agreed on the other key deal terms.  *See,*
25  *e.g., In re Apple Computer, Inc. Derivative Litig.,* No. C 06-4128 JF (HRL), 2008
26  WL 4820784, at *3 (N.D. Cal. Nov. 5, 2008).

27      Here, Class Counsel negotiated with Defendant under the guidance of a
28  retired federal judge to reach an agreed-upon fee amount that they regarded as

reasonable based on, *inter alia*, the benefits achieved for the Class and applicable legal principles, and did so only *after* they reached agreement on the other key deal terms.  Hutchinson Decl., ¶ 57.  That fact serves as "independent confirmation that the fee was not the result of collusion or a sacrifice of the interests of the class." *Hanlon v. Chrysler Corp*, 150 F.3d 1011, 1029 (9th Cir. 1998).  Under these circumstances, the Court should give weight to the judgment of the parties and their counsel regarding reasonable fees.

## 2.   The Court Should Apply the Percentage-of-the-Fund Method.

The fairest and most efficient way to calculate a reasonable fee where, as here, contingency fee litigation has produced a common fund is by awarding class counsel a percentage of the total fund.  There is an important policy reason behind choosing to apply the percentage-of-the-fund method, rather than the lodestar method, in common fund cases such as this one:

> Unlike the lodestar method which can encourage class
> counsel to devote unnecessary hours to generate a
> substantial fee, under the [percentage-of-the-fund]
> method, the more the attorney succeeds in recovering
> money for the client, and the fewer legal hours expended
> to reach that result, the higher dollar amount of fee the
> lawyer earns.  Thus, one of the primary advantages of the
> [percentage-of-the-fund] method is that it is thought to
> equate the interests of class counsel with those of the class
> members and encourage class counsel to prosecute the
> case in an efficient manner.

Newberg on Class Actions § 14:6 (4th ed. 2002).  The percentage-of-the-fund method comports with the legal marketplace, where counsel's success is frequently measured in terms of the results counsel has achieved.  *See Swedish Hosp. Corp. v.*

1   *Shalala*, 1 F.3d 1261, 1269 (D.C. Cir. 1993) (in common fund cases "the monetary

2   amount of the victory is often the true measure of [counsel's] success").  By

3   assessing the amount of the fee in terms of the amount of the benefit conferred on

4   the class, the percentage method "more accurately reflects the economics of

5   litigation practice" which, "given the uncertainties and hazards of litigation, must

6   necessarily be result-oriented."  *Id.*  Moreover, it most effectively aligns the

7   incentives of the class members and their counsel and thus encourages counsel to

8   spend their time efficiently, and to focus on maximizing the relief available to the

9   class, rather than their own lodestar hours.  *Vizcaino*, 290 F.3d at 1050 n.5; *In re*

10  *Activision Sec. Litig.*, 723 F. Supp. 1373, 1375 (N.D. Cal. 1989).  Finally, it

11  comports with the private legal market's established practice to reward attorneys for

12  taking the risk of nonpayment by paying them a premium for successfully resolving

13  contingency fee cases.  *See In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d

14  at 1300 ("[I]f this 'bonus' methodology did not exist, very few lawyers could take

15  on the representation of a class client given the investment of substantial time,

16  effort, and money, especially in light of the risks of recovering nothing.").

17          For these reasons, the percentage-of-the-fund method is applied more

18  frequently than the lodestar plus multiplier method in common fund cases in the

19  Ninth Circuit.  *See, e.g., Vizcaino*, 290 F.3d at 1050 ("[T]he primary basis of the fee

20  award remains the percentage method."); *In re Omnivision Techs.*, 559 F. Supp. 2d

21  1036, 1046 (N.D. Cal. 2007) ("[U]se of the percentage method in common fund

22  cases appears to be dominant.").[8]  Class Counsel submit that the Court should use

23  the standard percentage-of-the-fund approach to determine the attorneys' fees here.

24

25

26

27

28

---

[8] By contrast, courts rely on the lodestar method under circumstances not applicable
here; *i.e.*, where "there is no way to gauge the net value of the settlement or of any
percentage thereof."  *Hanlon*, 150 F.3d at 1029.

### 3.     Class Counsel's Fee Request is Warranted Under the Percentage-of-the-Fund Method.

Class Counsel's request for attorneys' fees and costs is fair and reasonable under the circumstances of this case. "[I]n most common fund cases, the award exceeds th[e] benchmark." *Omnivision*, 559 F. Supp. 2d at 1047; *see also Vizcaino*, 290 F.3d at 1048-50 (awarding 28%, plus $3.8 million in costs). Courts consider a number of factors to determine the appropriate percentage to apply, including: (1) the results achieved; (2) the risk of litigation; (3) the skill required and the quality of work; (4) the contingent nature of the fee; and (5) awards made in similar cases. *Vizcaino*, 290 F.3d at 1048-50; *Omnivision*, 559 F. Supp. 2d at 1046. Applying these factors, this Court has frequently found an award of 28%, plus costs, to be appropriate. *Bostick v. Herbalife Int'l of Am.*, Case No. 2:13-cv-02488-BRO, at *54-*57 (C.D. Cal. May 14, 2015) (Dkt. No. 145) (awarding 28% of $17.5 million reversionary settlement, plus costs); *Djukich v. AutoNation Inc.*, Case 2:13-cv-04455-BRO , at*17-*22 (C.D. Cal. Nov. 12, 2015) (Dkt. No. 145) (awarding 28% of common fund settlement, plus costs); *Fiant v. Weatherby, Inc.*, Case No. 2:15-cv-02991-BRO, at *17-*23 (C.D. Cal. June 13, 2016) (Dkt. No. 37) (same); *Graehl v. Wellpoint, Inc.*, Case 2:14-cv-00421-BRO, at *16-*21 (C.D. Cal. Jan. 8, 2016) (Dkt. No. 62) (same). These factors favor approval of the 30% fee award, exclusive of costs, requested here – particularly given the prospective relief in this settlement.

### a.     Class Counsel have Obtained an Excellent Result.

The results obtained for the class are generally considered to be the most important factor in determining the appropriate fee award in a common fund case. *See Hensley*, 461 U.S. at 435; *Omnivision*, 559 F. Supp. 2d at 1046; *see also* Federal Judicial Center, *Manual for Complex Litigation*, § 27.71, p. 336 (4th ed. 2004) (the "fundamental focus is on the result actually achieved for class members") (citing Fed. R. Civ. P. 23(h) committee note). Standing alone, this factor supports Class Counsel's fee request.

**Prospective Relief**: Ninth Circuit courts repeatedly have held that where, as here, class counsel achieves significant benefits that are not accounted for in the dollar value of the common settlement fund, the court "should consider the value of [such] relief as a relevant circumstance in determining what percentage of the common fund class counsel should receive as attorneys' fees." *Staton*, 327 F.3d at 974; *see also Vizcaino*, 290 F.3d at 1049 (affirming enhanced fee award where "the court found that counsel's performance generated benefits beyond the cash settlement fund"); *Linney v. Cellular Alaska P'ship*, No. C-96-3008 DLJ, 1997 WL 450064, *7 (N.D. Cal. July 18, 1997) (granting fee award of 33.3% of common fund where settlement provided additional non-monetary relief).

Class Counsel's interviews with Plaintiff and Class Members revealed that stopping the autodialed calls to their cell phones was the primary goal of this litigation.[9]  Defendant's prospective practice changes are designed to achieve this result and will protect Settlement Class Members from receiving automated calls in violation of the TCPA.  If the value of this benefit were to be taken into consideration, it would increase the common fund's value above $10,500,000 and effectively "reduce[]the overall percentage of the fees that counsel" seek.  *See Walsh v. Kindred Healthcare*, No. C 11-00050 JSW, 2013 WL 6623190 at *3-5 (N.D. Cal. Dec. 16, 2013) (approving fee request of 30% of the common fund, finding that this request was effectively a smaller percentage of the actual recovery on behalf of the class since it did not account for  the "substantial injunctive relief" obtained through the settlement).  Thus, the prospective relief supports the request.

**Monetary Relief**:  The Settlement requires payment of $10,500,000 into a common fund, out of which Class Member claimants will receive their *pro rata* share of cash payments.  While the precise amount of individual payments cannot yet be determined, Class Counsel estimated that claimants will receive recovery of between $60 to $120 each.  The Settlement achieved by Class Counsel therefore

---

[9] Hutchinson Decl., ¶ 40; Declaration of Jeffrey Thomas ("Thomas Decl."), ¶ 3.

1  provides significant monetary relief to the Class Members, particularly here, where

2  the damages are purely statutory damages, rather than "actual" damages.

3       The fact that the $10,500,000 fund does not constitute the full measure of

4  statutory damages potentially available to the Class does not merit any reduction in

5  the requested fee award. "The proposed settlement is not to be judged against a

6  hypothetical or speculative measure of what might have been achieved by the

7  negotiators" because "the very essence of a settlement is compromise, a yielding of

8  absolutes and an abandoning of highest hopes." *Linney v. Cellular Alaska P'ship*,

9  151 F.3d 1234, 1242 (9th Cir. 1998) (citations omitted); *see also In re Mego Fin.*

10  *Corp. Sec. Litig*., 213 F.3d 454, 459 (9th Cir. 2000) (settlement of only a fraction of

11  potential recovery fair given nature of claims and facts of case). This is particularly

12  true where, as here, the Settlement was reached at arm's length through protracted

13  negotiations by experienced counsel, after extensive litigation and motion practice,

14  and after taking into consideration the risks involved in the actions. Thus, the

15  requested 30% award (subsuming Class Counsel's costs) is reasonable.

16        **b.**    **The Risks of Litigation Supports the Requested Fee.**

17       "The risk that further litigation might result in Plaintiffs not recovering at all,

18  particularly a case involving complicated legal issues, is a significant factor in the

19  award of fees." *Omnivision*, 559 F. Supp. 2d at 1046-47; *see also Vizcaino*, 290

20  F.3d at 1048 (risk of dismissal or loss on class certification is relevant to evaluation

21  of a requested fee).

22       In addition to the class certification risks under this Court's *Simon* decision,

23  discussed above, the Action also presented risks on the merits. These risks

24  included Defendant's omnipresent arguments that: (1) Plaintiff's business, and not

25  Plaintiff, was the proper party in this action; (2) Plaintiff was not a "called party"

26  with standing under the TCPA; (3) Section 227(b)(1)(A)(iii) does not apply to

27  business calls; and (4) Plaintiff was not the "current subscriber" of his business'

28  telephone line. *See* Dkt. Nos. 19, 23. These issues were hotly contested in briefing

1   regarding Defendant's motion to dismiss and would have been the subject of any

2   dispositive motion filed by Defendant.

3         Defendant has contended that Plaintiff lacks standing to pursue his claims

4   after *Spokeo v. Robins*, 136 S. Ct. 1540 (2016).  While many courts have rejected

5   these arguments, some have found them persuasive.  *See Romero*, at *6.

6   Additionally, for most of this litigation, Class Counsel faced the risk that

7   Defendant's Rule 68 offer or a tender of payment would moot Plaintiff's claims just

8   like Defendant's offer mooted identical claims in *Vadai*, 302 F.R.D. 308.  This risk

9   only dissipated earlier this year after decisions from the Supreme Court and Ninth

10  Circuit in *Campbell-Ewald*, 136 S. Ct. 663, and *Chen*, 819 F.3d 1136.

11        Finally, there is the risk of losing a jury trial or on appeal.  The Settlement

12  provides substantial relief to Class Members without further delay.

13        Given all of these risks present when Class Counsel undertook the case on a

14  contingency fee basis, Class Counsel's fee award request is reasonable.

15          **c.**      <u>**The Skill Required and Quality of Work Performed**</u>
16                  <u>**Supports the Requested Fee.**</u>

17        The "prosecution and management of a complex national class action

18  requires unique legal skills and abilities" that are to be considered when evaluating

19  fees.  *Omnivision*, 559 F. Supp. 2d at 1047 (citation omitted).  Class Counsel are

20  experienced class action litigators who have successfully prosecuted complex

21  consumer cases, and who have become particularly skilled and experienced in

22  litigating TCPA class actions.[10]  Class Counsel performed significant factual

23  investigation prior to bringing this action; engaged in motion practice including

24  opposing a complex motion to dismiss and preparing a motion to compel discovery;

25  engaged in written discovery, including non-party discovery, and depositions;

26  engaged the services of an expert; participated in protracted and hard-fought

27  negotiations with Defendant; and efficiently and vigorously negotiated a

28  ────────────────────

[10] Hutchinson Decl., ¶¶ 2-5; Siri Decl., ¶¶ 2-5.

1324925.4

PLAINTIFF'S MOTION & MEMO ISO FOR ATTYS' FEES
AND COSTS & SERVICE AWARD TO CLASS REP
CV15-03194 BRO (GJSX)

$10,500,000 Settlement with prospective practice changes that are important to Class Members.[11]  Class Counsel's skill and expertise, reflected in the prompt and significant Settlement, support the fee request.

### d.    Class Counsel's Undertaking of the Actions on a Contingency-Fee Basis Supports the Requested Fee.

The Ninth Circuit has long recognized that the public interest is served by rewarding attorneys who assume representation on a contingent basis to compensate them for the risk that they might be paid nothing at all for their work. *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d at 1299 ("Contingent fees that may far exceed the market value of the services if rendered on a non-contingent basis are accepted in the legal profession as a legitimate way of assuring competent representation for plaintiffs who could not afford to pay on an hourly basis regardless whether they win or lose."); *Vizcaino*, 290 F.3d at 1051 (courts reward successful class counsel in contingency cases "for taking the risk of nonpayment by paying them a premium over their normal hourly rates").

Class Counsel prosecuted this matter on a purely contingent basis, agreeing to advance all necessary expenses and knowing that they would only receive a fee if there was a recovery.  Class Counsel have spent considerable outlays of time and money by, among other things, (1) investigating these actions; (2) conducting legal research and briefing an opposition to Defendant's motion to dismiss and preparing a discovery motion; (3) retaining an expert to analyze Defendant's call data; (4) conducting discovery; (5) negotiating the Settlement; (6) administering the Settlement; and (7) responding to Class Member inquiries.[12]  Class Counsel expended these resources despite the real risk they would never be compensated.[13] Class Counsel's "substantial outlay, when there is a risk that that none of it will be

---

[11] Hutchinson Decl., ¶¶ 21-62; Siri Decl., ¶¶ 6-60.

[12] Hutchinson Decl., ¶ 72; Siri Decl., ¶¶ 61-70.

[13] *See* Hutchinson Decl., ¶¶ 65-70 (describing similar actions for which counsel received no compensation); Siri Decl., ¶¶ 63-68.

PLAINTIFF'S MOTION & MEMO ISO FOR ATTYS' FEES
AND COSTS & SERVICE AWARD TO CLASS REP
CV15-03194 BRO (GJSX)

recovered, further supports the award of the requested fees" here. *Omnivision*, 559 F. Supp. 2d at 1047.

Further, Class Counsel devoted the appropriate amount of time, resources, and energy necessary to handle this matter. Such devotion to this matter in lieu of other opportunities further supports the requested fee award.

### e.     The Requested Fee Comports with Fees Awarded in Similar Actions.

The fee requested is well within the range commonly awarded in similar nationwide TCPA class action settlements in this Circuit and throughout the country. *See, e.g., Adams v. AllianceOne Receivables Mgmt., Inc.*, No. 3:08-cv-00248-JAH-WVG (S.D. Cal. Sept. 28, 2012) (Dkt. No. 137) (awarding 30% of the $9 million settlement fund, plus costs); *In re Capital One*, 80 F. Supp. 3d 781 (awarding 36% of the first $10 million of the fund); *De Los Santos v Millword Brown, Inc.*, 9:13-cv-80670-DPG (S.D. Fla. Sept. 11, 2015) (Dkt. No. 84) (awarding 33.3% of $11 million settlement as attorneys' fees, plus costs); *Allen v. JPMorgan Chase Bank, N.A.*, No. 13-8285 (N.D. Ill. Oct. 21, 2015) (Dkt. No. 93 at 6) (awarding 33.3% fee award in $10,200,000 settlement); *Cummings v. Sallie Mae*, Case No. 1:12-cv-9984 (N.D. Ill. May 30, 2014) (Dkt. No. 91) (awarding 33.3% of the $9,200,000 fund for fees); *Wilkins v. HSBC Bank Nev., N.A.*, No. 14-190, 2015 WL 890566 (N.D. Ill. Feb. 27, 2015) (awarding 30% of the first $10 million of the fund); *Craftwood Lumber Co. v. Interline Brands, Inc.*, No. 11-CV-4462, 2015 WL 1399367, at *5 (N.D. Ill. Mar. 23, 2015) (awarding attorneys' fee of "30% of the first $10 million of the settlement," plus costs); *Gehrich v. Chase Bank USA, N.A.*, No. 12-5510, 2016 WL 806549, at *16 (N.D. Ill. Mar. 2, 2016) (awarding "30% of the first $10 million of the settlement").

In fact, Class Counsel's requested fee award is *less than* the typical fee often awarded in class actions in this Circuit and District. *See, e.g., In re Mego*, 213 F.3d 457, 463 (9th Cir. 2000) (affirming fee award of one third of common fund);

1    *Vendervort v. Balboa Capital Corp.*, 8 F. Supp. 3d 1200, 1210 (C.D. Cal. 2014)

2    (awarding attorneys' fees and costs of 33% of the fund in TCPA class action); *In re*

3    *Heritage Bond Litig. v. U.S. Trust Co. of Tex., N.A.,* No. 02-ML-1475-DT(RCx),

4    2005 WL 1594389, at *20 (C.D. Cal. June 10, 2005) (awarding 33.3% of fund).[14]

5         In short, Class Counsel's fee request is reasonable and fair under the

6    "percentage of the fund" method.

7              **4.    A Lodestar Plus Multiplier Cross-Check Supports the**
                       **Requested Fee.**
8

9         A court applying the percentage-of-the-fund method may, but is not required

10   to, use the lodestar-multiplier method as a "cross-check on the reasonableness of a

11   percentage figure." *Vizcaino*, 290 F.3d at 1050 & n.5; *Craft v. County of San*

12   *Bernadino*, 624 F. Supp. 2d 1113, 1122 (C.D. Cal. 2008) ("A lodestar cross-check

13   is not required in this circuit, and in some cases is not a useful reference point.");

14   *Aichele v. City of Los Angeles*, No. CV 12-10863, 2015 WL 5286028, at *6 (C.D.

15   Cal. Sept. 9, 2015) (same).  It is also often not useful where, like here, an "early"

16   settlement achieved exceptional results for the class.  *See, e.g., Glass v. UBS Fin.*

17   *Servs., Inc.*, No. C-06-4068 MMC, 2007 WL 221862, at *16 (N.D. Cal. Jan. 26,

18   2007) aff'd, 331 F. App'x 452 (9th Cir. 2009) ("Under the circumstances presented

19   here, where the early settlement resulted in a significant benefit to the class, the

20   Court finds no need to conduct a lodestar cross-check.").  If the Court chooses to

21   perform a cross-check, however, it confirms that a 30% fee award is reasonable.

22        The first step in the lodestar-multiplier approach is to multiply the number of

23   hours counsel reasonably expended by a reasonable hourly rate.  *Hanlon,* 150 F.3d

24   at 1029.  Once this raw lodestar figure is determined, the court may then adjust that

25   figure based upon its consideration of many of the same "enhancement" factors

26   ─────────────────

27   [14] *See also In re M.D.C. Holdings Sec. Litig.,* No. CV 89-0090 E (M), 1990 WL
     454747, at *7 (S.D. Cal. Aug. 30, 1990) (awarding 30% fee where settlement
28   obtained "in a very short period of time" and finding that class counsel should be
     rewarded, not penalized, for achieving early success for the class).

considered in the percentage-of-the-fund analysis, such as: (1) the results obtained; (2) whether the fee is fixed or contingent; (3) the complexity of the issues involved; (4) the preclusion of other employment due to acceptance of the case; and (5) the experience, reputation, and ability of the attorneys. *See Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975).

### a.   Class Counsel's Lodestar is Reasonable.

The accompanying declarations of Class Counsel set forth the hours of work and billing rates used to calculate their lodestar.  As described in those declarations, Class Counsel and their staffs have devoted a total of approximately 1,102.5 hours to this litigation, and have a total lodestar to date of approximately $631,748.50.[15] These amounts do not include the additional time that Class Counsel will spend going forward in seeking approval of, and implementing, the Settlement, including assisting Class Members with claims and overseeing claims administration generally, tasks that can require substantial additional hours not reflected in a multiplier calculated on current lodestar.  Class Counsel's lodestar will grow as they continue to finalize the settlement process and close the litigation.  The claims period will last for several months, and Class Counsel's commitment of time and labor to this case will continue until (and likely beyond) that date.  Class Counsel will continue to assist Class Members with individual inquiries, will oversee the claims resolution process, and will help resolve Class member challenges to the result of their claims submissions.  Judging by previous experiences, these responsibilities will require substantial numbers of hours of work by Class Counsel

---

[15] For this calculation, Class Counsel have included time spent on the *Vadai v. Dun & Bradstreet Credibility Corp.*, as their work in that prior case benefitted the Class here.  *See, e.g., Loretz v. Regal Stone, Ltd.*, 756 F. Supp. 2d 1203, 1214 (N.D. Cal. 2010) (holding that time from separate, previous cases against the same defendant may count toward class action lodestar where "the work performed advanced [the pending] class action."); *see also Hvorcik v. Sheahan*, 1997 WL 695721 (N.D. Ill. Oct. 30, 1997) (including time from prior action "inured to the benefit of class members in this action" where "much of the legal work performed in the [previous] case required the plaintiffs' attorney to expend fewer hours in *Hvorcik*").

1324925.4

over the coming months.[16]

Class Counsel's time was spent primarily on the following tasks: (1) investigating the claims of the Plaintiff and Class Members; (2) conducting legal research and briefing an opposition to Defendant's motion to dismiss, discovery motion, and motion for class certification; (3) conducting discovery, including depositions; (4) negotiating the Settlement; (5) administering the Settlement; and (6) responding to Class Member inquiries.[17]

Class Counsel's lodestar is reasonable.  Class Counsel prosecuted the claims at issue efficiently and effectively, making every effort to prevent the duplication of work that might have resulted from having multiple firms working on this case. Tasks were reasonably divided among law firms to avoid replicating work.[18] Further, tasks were delegated appropriately among partners, associate attorneys, paralegals, and other staff according to their complexity such that the attorneys with higher billing rates billed time only where necessary.

Class Counsel's hourly rates are also reasonable.  In assessing the reasonableness of an attorney's hourly rate, courts consider whether the claimed rate is "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1994).  Class Counsel here are experienced, highly regarded members of the bar with extensive expertise in the area of class actions and complex litigation involving consumer claims like those at issue here.[19] Class Counsel's customary rates used in calculating the lodestar here have been approved by courts in this District and other courts.[20]

---

[16] Hutchinson Decl., ¶ 75; Siri Decl., ¶ 74.

[17] Hutchinson Decl., ¶ 72; Siri Decl., ¶ 71.

[18] Hutchinson Decl., ¶ 85; Siri Decl., ¶ 78.

[19] Hutchinson Decl., ¶¶ 2-15; Siri Decl., ¶¶ 1-5.

[20] Hutchinson Decl., ¶¶ 30-34; Siri Decl., ¶ 16.  *See also Nwabueze v. AT&T Inc.*, No. C 09-01529 SI, 2014 WL 6199596, at *2 (N.D. Cal. Jan. 29, 2014) ("[T]he Court also finds that the rates requested are within the range of reasonable hourly

**b.    The Fee Requested Represents an Appropriate Multiplier on Class Counsel's Lodestar.**

The 30% fee requested by Class Counsel reflects a multiplier of 4.99 of Class Counsel's combined lodestar.

While the multiplier resulting from the lodestar cross-check is admittedly on the high-end of approved multipliers, it is not outside of the range of reasonableness. *See, e.g., Vizcaino*, 290 F.3d at 1051 and Appendix (citing cases approving multipliers in common fund cases going as high as 19.6). This is particularly true given the excellent results achieved for the class and the risks Class Counsel undertook in taking on this case. *See Stanger v. China Elec. Motor, Inc.*, No. 13–56903, 2016 WL 191986, at *4 (9th Cir. Jan. 15, 2016) (reversible error to decline to award a multiplier where certain risk factors were present). *See also In re Bluetooth*, 654 F.3d 935, 941-42 (9th Cir. 2011) (discussing relevant factors in determining reasonableness of multiplier).

Courts have approved fee awards resulting in multipliers which are much higher than that requested here. *See, e.g., Steiner v. Am. Broad. Co.*, 248 Fed. Appx. 780, 783 (9th Cir. Cal. 2007) (upholding fee award yielding multiplier of 6.85, finding that it "falls well within the range of multipliers that courts have

---

rates for contingency litigation approved in this District."); *Walsh v. Kindred Healthcare*, No. C 11-00050 JSW, 2013 U.S. Dist. LEXIS 176319, at *2 (N.D. Cal. Dec. 16, 2013) ("The Court concludes Plaintiffs have shown that the requested rates are reasonable."); *Ross v. Trex Co.*, No. 09-cv-00670-JSW, 2013 WL 2365865, at *4 (N.D. Cal. Dec. 16, 2013) (finding the "reasonable hourly rates of counsel . . . compare favorably to other rates awarded in this judicial district"); *Moore v. Verizon Communs., Inc.*, No. 09-1823 SBA (JSC), 2013 WL 588035, at *14 (N.D. Cal. Nov. 27, 2013) ("The Court concludes that the hourly rates for the attorneys who billed time on this case are reasonable given the geographic location and experience of counsel."); *In re AXA Rosenberg Investor Litig.*, No. 11-cv-00536-JSW, at *2 (N.D. Cal. April 2, 2012) (White, J.) ("The Court has also reviewed Lead Counsel's hourly rates and concludes that these rates are appropriate for attorneys in this locality of Lead Counsel's skills and experience."); *Fulford v. Logitech, Inc.*, No. 08-cv-02041 MMC, 2010 WL 807448, at *4 (N.D. Cal. Mar. 5, 2010) ("The Court further finds that Plaintiff's Counsels' hourly rates are reasonable for their skill and the work they performed.").

1324925.4

1   allowed"); *Craft v. County of San Bernardino*, 624 F. Supp. 2d 1113, 1125 (C.D.

2   Cal. 2008) (approving fee award yielding a multiplier of 5.2 and stating that "there

3   is ample authority for such awards resulting in multipliers in this range or higher");

4   *Malta v. Wells Fargo Home Mortgage*, 10-cv-01290-BEN-NLS (S.D. Cal. June 21,

5   2013) (Dkt. No. 92) (approving a multiplier of approx. 5.1 in TCPA settlement);

6   *Vizcaino*, 290 F.3d at 1051 and Appendix (affirming 28% fee award where

7   multiplier equaled 3.65, plus costs; and citing cases approving multipliers in

8   common fund cases going as high as 19.6.  In fact, numerous federal courts

9   throughout the country recognize that "[c]ourts regularly award lodestar multipliers

10  of up to eight times lodestar, and in some cases, even higher multipliers." *Yuzary v.*

11  *HSBC Bank USA, N.A.*, No. 12 Civ. 3693 (PGG), 2013 WL 5492998 (S.D.N.Y.

12  Oct. 2, 2013) (awarding 31.7% of $15,625,000 settlement, yielding a multiplier of

13  7.6).[21]  The fee requested is eminently reasonable.

14  **C.    Class Counsel Are Not Seeking Reimbursement of their Costs on**
15  **Top of the Fee Award, Although Such Reimbursement Would be**
     **Justified.**

16        Under well-settled law, Class Counsel are entitled to reimbursement of the

17  expenses they reasonably incurred investigating and prosecuting this matter.  *See*

18  *Staton*, 327 F.3d at 974; *In re Media Vision Tech. Sec. Litig.*, 913 F. Supp. 1362,

19  1366 (N.D. Cal. 1995) (citing *Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 391-92

20  (1970)).  Class Counsel are not seeking payment of costs in addition to their

21

22  _____
     [21] *See also Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 481-82 (S.D.N.Y. 2013)
23  (awarding 33% of $4.9 million settlement, yielding a multiplier of 6.3); *Davis v.*
     *J.P. Morgan Chase & Co.*, 827 F. Supp. 2d 172, 185 (W.D.N.Y. 2011) (awarding
24  one third of $42 million, yielding a multiplier of 5.3); *New Eng. Carpenters Health*
     *Benefits Fund v. First Databank*, Civil Action No. 05–11148–PBS, 2009 WL
25  2408560 (D. Mass. Aug. 3, 2009) (awarding 24% of a $350 million settlement,
     yielding a multiplier of 8.3); *In re Rite Aid Corp. Secs. Litig.*, 362 F. Supp. 2d 587
26  (E.D. Pa. 2005) (awarding 25% of the $126,641,315 settlement fund, yielding a
     multiplier of 6.96); *Di Giacomo v. Plains All Am. Pipeline*, No. H-99-4137, 2001
27  WL 34633373 (S.D. Tex. Dec. 19, 2001)  (awarding 30% of $29.5 million global
     settlement, yielding a multiplier of 5.3); *In re Rite Aid Corp. Sec. Litig.*, 146 F.
28  Supp. 2d 706, 736 n.44 (E.D. Pa. 2001) (awarding 25% of a $193 million
     settlement and stating a lodestar multiplier in the range of 4.5 to 8.5 is
     "unquestionably reasonable.").

recovery of 30% of the Fund, and will instead be reimbursed costs out of that 30%.
To date, Class Counsel have incurred out-of-pocket costs for (1) expert data
analysis of Defendant's call data; (2) deposition fees; (3) travel to court hearings,
deposition, and mediation; (4) hard costs such as the mediator's fee, legal research
through Westlaw and Federal Express, postage, and messengering fees; and (5)
other costs such as printing, copying, and telephone charges.[22]  These relatively
modest out-of-pocket costs were necessary to secure the resolution of this litigation.
*See In re Media Vision*, 913 F. Supp. at 1367-72 (costs related to retention of
experts, photocopy costs, travel expenses, postage, telephone costs, computerized
legal research fees, and filing fees may be reimbursed).

### D.   The Named Plaintiff's Service Award Is Reasonable.

As the Ninth Circuit has recognized, "named plaintiffs, as opposed to
designated class members who are not named plaintiffs, are eligible for reasonable
incentive payments."  *Staton*, 327 F.3d at 977; *Rodriguez v. West Publishing Corp.*,
563 F.3d 948, 958 (9th Cir. 2009) (service awards "are fairly typical in class action
cases").  Such awards are "intended to compensate class representatives for work
done on behalf of the class [and] make up for financial or reputational risk
undertaken in bringing the action."  *Id*.  Incentive awards, such as that requested
here, promote the public policy of encouraging individuals to undertake the
responsibility of representative lawsuits.  The requested service award of $10,000
for the Named Plaintiff is well justified.

In addition to lending his name to this matter, and thus subjecting himself to
public attention, Mr. Thomas was actively engaged in this Action.  Among other
things, he (1) provided information to Class Counsel for the complaint and other
pleadings; (2) reviewed pleadings and other documents including the complaint; (3)
communicated on a regular basis with counsel and kept himself informed of
progress in the litigation and settlement negotiations; (4) reviewed and approved the

---

[22] *See* Hutchinson Decl., ¶¶ 76-77; Siri Decl., ¶¶ 75-76.

1324925.4

proposed settlement; and – most significantly – (5) submitted to extensive discovery, including the depositions for himself, his wife, and his business.[23] His dedication to this Action was notable, particularly given the relatively modest size of their personal financial stakes in this case. *See Van Vranken v. Atlantic Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995) (awarding $100,000 incentive award in part on the ground that, "[i]n exchange for his participation, Van Vranken will not receive great personal benefit"). Indeed, he personally turned down a full Rule 68 offer of relief from Defendant in order to pursue this class settlement.

Moreover, the amount requested here, $10,000 (less than 0.01% of the Settlement Fund), is reasonable and less than amounts frequently awarded in TCPA actions. *See, e.g., Craftwood*, 2015 WL 1399367, at *6 (collecting cases and approving $25,000 service award to TCPA class representative). It is also consistent with the service awards frequently awarded by this Court. *Taylor*, Case No. 2:13-cv-02092-BRO, at *31-*32 (approving $15,000 incentive award); *Graehl*, Case No. 2:14-cv-00421-BRO, at *24-*25 (approving $12,500 incentive award); *Djukich*, Case No. 2:13-cv-04455-BRO , at*24-*25 (approving $10,000 incentive award); *Fiant*, Case No. 2:15-cv-02991-BRO, at *25-*26 (same); *Bostick*, Case No. 2:13-cv-02488-BRO, at *59-*60 (approving $10,000 for the lead plaintiff ).

Accordingly, Class Counsel respectfully ask the Court to approve an incentive award of $10,000 to the Named Plaintiff.

## IV.   **CONCLUSION**

For the foregoing reasons, Class Counsel respectfully request that the Court grant Plaintiff's motion for an award from the Settlement Fund of attorneys' fees and costs in the total amount of $3,150,000 and an incentive award in the amount of $10,000 to the Class Representative.

---

[23] *See* Thomas Decl., ¶¶ 3-4.

1324925.4

| 1 | Dated: December 8, 2016 | LIEFF, CABRASER, HEIMANN |
| | | & BERNSTEIN, LLP |

2

3      By: */s/   Daniel M. Hutchinson*
                    Daniel M. Hutchinson

4

5      LIEFF CABRASER HEIMANN
         & BERNSTEIN, LLP

6      Jonathan D. Selbin (State Bar No. 170222)
       Email: jselbin@lchb.com

7      250 Hudson Street, 8th Floor
       New York, NY  10013

8      Telephone:  (212) 355-9500
       Facsimile:  (212) 355-9592

9

10     Daniel M. Hutchinson
       (State Bar No. 239458)

11     Email: dhutchinson@lchb.com
       275 Battery Street, 29th Floor

12     San Francisco, California  94111-3339
       Telephone:  (415) 956-1000
       Facsimile:  (415) 956-1008

13

14     John T. Spragens
       (Tennessee State Bar No. 031445)

15     Email:  jspragens@lchb.com
       One Nashville Place

16     150 Fourth Avenue North, Suite 1650
       Nashville, TN  37219-2423

17     Telephone:  (615) 313-9000
       Facsimile:  (615) 313-9965

18     SIRI & GLIMSTAD LLP
       Aaron Siri

19     (admitted *pro hac vice*)
       Email: aaron@sirillp.com

20     136 Madison Avenue, Fifth Floor
       New York, New York 10016

21     Telephone: (212) 532-1091
       Facsimile: (646) 417-5967

22     PARISI & HAVENS LLP
       David C. Parisi

23     (State Bar No. 162248)
       Email:  dcparisi@parisihavens.com

24     212 Marine Street, Unit 100
       Santa Monica, CA 90405

25     Telephone:  (818) 990-1299
       Facsimile:  (818) 501-7852

26

27     *Counsel for Plaintiff and the Proposed Class*

28

- 26 -

PLAINTIFF'S MOTION & MEMO ISO FOR ATTYS' FEES
AND COSTS & SERVICE AWARD TO CLASS REP
CV15-03194 BRO (GJSX)