Timothy R. Hanigan (SBN 125791)
LANG, HANIGAN & CARVALHO, LLP
21550 Oxnard Street, Suite 760
Woodland Hills, CA 91367
Tel: (818) 883-5644
Fax: (818) 704-9372
Attorneys for Objector/Class Member,
DANIEL HALL

# UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA
## WESTERN DIVISION

| | |
|---|---|
| JEFFREY A. THOMAS, individually and on behalf of all others similarly situated, | Case No. 2:15-CV-03194-BRO-GJS |
| Plaintiffs, | |
| v. | |
| DUN & BRADSTREET CREDIBILITY CORP., | The Honorable Beverly Reid O'Connell |
| Defendant. | |

## OBJECTION OF DANIEL HALL

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................ 1

STANDING AND PRELIMINARY STATEMENTS......................................... 2

OBJECTIONS ........................................................................................................... 4

I.   Because Defendants Have Agreed Not to Contest Class Counsels' Fee Request, this Court Should Exercise its Fiduciary Duty Carefully in Assessing Reasonable Attorneys' Fees. ........................................................................................................... 4

II. Federal, and Not State Law, Governs the Calculation of Attorneys' Fees.................... 5

III. Class Counsels' 30% Request is Excessive................................................... 6

   A.   25% is the Benchmark................................................................................. 7

   B.   There are No Special Circumstances Justifying an Award Above the Benchmark........................................................................................8

IV.   Under Either the Lodestar Method or the Percentage Method with a Lodestar Cross-Check, the 4.99 Multiplier Confirms the Requested $3.15 Million in Attorneys' Fees is Excessive. ................................................................................... 11

V.   Class Counsel Must Give a Better Explanation as to Why they Are Entitled to Bill for Time Spent in *Vadai v. Dunn & Bradstreet Credibility Corp.* ............................... 14

VI.   This Court Should Judicially Supervise Allocation of Attorneys' Fees.................... 15

   CONCLUSION & PRAYER ....................................................................... 16

OBJECTION OF DANIEL HALL

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*Americana Art China Co. v. Firefox Printing Packaging, Inc.*, 743 F.3d 243 (7th Cir. 2014) .... 12

*Bayat v. Bank of the W.*, C-13-2376 EMC, 2015 WL 1744342

(N.D. Cal. Apr. 15, 2015) ........................................................................................ 8, 11

*Bellows v. NCO Fin. Sys., Inc.*, 07-CV-1413 W (AJB), 2009 WL 35468

(S.D. Cal. Jan. 5, 2009) ................................................................................................. 11

*Bostick v. Herbalife Int'l of Am.*, Case No. 2:13-cv-02488-BRO

(C.D. Cal. May 14, 2015) (Dkt. No. 145) ....................................................... 10, 12

*Burlington v. Dague,* 505 U.S. 557 (1992) ...................................................... 13

*Djukich v. AutoNation Inc.*, Case 2:13-cv-04455-BRO (C.D. Cal. Nov. 12, 2015)

(Dkt. No. 145) ...................................................................................................... 9, 12

*Duke v. Bank of Am., N.A.*, No. 5:12-cv-04009, ECF Doc. 59 (N.D. Cal.) ........................ 8

*Fiant v. Weatherby, Inc.*, Case No. 2:15-cv-02991-BRO (C.D. Cal. June 13, 2016) ... 9, 10, 13

*Fleury v. Richemont N.A., Inc.*, C-05-4525 EMC, 2008 WL 3287154

(N.D. Cal. Aug. 6, 2008) ................................................................................................. 13

*Gehrich v. Chase Bank USA, N.A.*, 316 F.R.D. 215 (N.D. Ill. Mar. 3, 2016) ........................ 8

*Graehl v. Wellpoint, Inc.*, Case 2:14-cv-00421-BRO (C.D. Cal. Jan. 8, 2016) ............... 6, 9, 13

*Hopkins v. Stryker Sales Corp.*, 2013 WL 496358 (N.D.Cal.2013) ........................................ 11

*In re "Agent Orange" Prods. Liab. Litig.*, 818 F.2d 216 (2d Cir. 1987 ..................................... 16

*In re Diet Drugs Prods. Liab. Litig.*, 401 F.3d 143, 173 (3d Cir. 2005)) (Ambro, J., concurring) ...................................................................................................... 16

*In re ECOtality, Inc. Sec. Litig.*, 13-CV-03791-SC, 2015 WL 5117618

(N.D. Cal. Aug. 28, 2015) ................................................................................................. 11

OBJECTION OF DANIEL HALL

*In re High Sulfur Content Gasoline Prods. Litig.*, 517 F.3d 220 (5th Cir. 2008) ........................ 16

*In re HP Inkjet Printer Litig.*, 716 F.3d 1173 (9th Cir. 2013) ........................................ 5

*In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036 (N.D. Cal. 2008)................................ 6, 7

*In re Southwest Voucher Litigation*, 799 F.3d 701 (7th Cir. 2015) ................................... 4

*In re Trans Union Corp. Privacy Litig.*, 629 F.3d 741 (7th Cir. 2011) ............................. 5

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291 (9th Cir. 1994)...................... 13

*In re: Mercury Interactive Corp. Securities Litigation*, 618 F.3d 988 (9th Cir. 2010) ..................... 4

*Katz v. China Century Dragon Media, Inc.*, LACV1102769JAKSSX,
2013 WL 11237202 (C.D. Cal. Oct. 10, 2013)................................................. 15

*Kelly v. Wengler*, 822 F.3d 1085 (9th Cir. 2016) ................................................ 13

*Klee v. Nissan N. Am., Inc.*, CV1208238AWTPJWX, 2015 WL 4538426
(C.D. Cal. July 7, 2015) ...................................................................... 6

*Laffitte v. Robert Half Intern. Inc.*, (Cal. 2016)376 P.3d 672 ..................................... 5

*Landsman & Funk, P.C. v. Skinder-Strauss Associates*, 639 Fed. Appx. 880 (3d Cir.
2016)(unpublished) ...................................................................... 12

*Loretz v. Regal Stone, Ltd.*, 756 F. Supp. 2d 1203 (N.D. Cal. 2010)........................ 15

*Malta v. Wells Fargo Home Mortgage*, 10-cv-01290-BEN-NLS
(S.D. Cal. Jne 21, 2013) (Dkt. No. 92) ....................................................... 12

*McCabe v. Six Continents Hotels, Inc.*, 12-CV-04818 NC, 2016 WL 491332
(N.D. Cal. Feb. 8, 2016) .................................................................. 7

*Michel v. WM Healthcare Solutions, Inc.*, No. 1:10-cv-638, 2014 WL 497031
(S.D. Ohio Feb. 7, 2014) ............................................................... 8, 12

*New Jersey v. E.P.A.*, 703 F.3d 110 (D.C. Cir. 2012................................. 15

*Pallister v. Blue Cross and Blue Shield of Montana*, 285 P.3d 562 (Mont. 2012)................ 5

*Piambino v. Bailey*, 757 F.2d 1112 (11th Cir. 1985) ................................... 4

OBJECTION OF DANIEL HALL

*Roberti v. OSI Sys., Inc.*, CV1309174MWFMRW, 2015 WL 8329916

(C.D. Cal. Dec. 8, 2015). ........................................................................... 7

*Sadowska v. Volkswagen Grp. of Am., Inc.,* No. CV 11–00665–BRO

AGRX, 2013 WL 9600948 (C.D. Cal. Sept. 25, 2013) ............................... 6

*Six Mexican Workers v. Ariz. Citrus Growers,* 904 F.2d 1301 (9th Cir.1990) ............ 7

*Southwest Voucher,* 799 F.3d at 712 .......................................................... 4

*Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370 (9th Cir. 1993) ..................... 7

*UFCW Loc. 880-Retail Food Employers Jt. Pension Fund v. Newmont Min. Corp.,*

352 Fed. Appx. 232 (10th Cir. 2009) ........................................................ 5

*Van Horn v. Nationwide Prop. & Cas. Ins. Co.*, 436 Fed. Appx. 496

(6th Cir. 2011) (unpub.) ........................................................................... 14

*Vizcaino v. Microsoft Corp.*, 290 F.3d 1043 (9th Cir. 2002) ................... 11, 13

*Weeks v. Kellogg Co.*, CV 09-08102 MMM RZX, 2013 WL 6531177

(C.D. Cal. Nov. 23, 2013) (unpub.) ........................................................ 14

*Wilkins v. HSBC Bank Nevada, N.A.,* 14 C 190, 2015 WL 890566

(N.D. Ill. Feb. 27, 2015) ...................................................................... 8, 10

**Statutes**

47 U.S.C. § 227 ........................................................................................... 1

California Business & Professions Code §§ 17200, et seq., the Unfair Competition Law
   ("UCL") ................................................................................................... 5

**Rules**

Fed. R. Civ. P. 23 ..................................................................................... 13

Rule 23(h) ................................................................................................... 5

OBJECTION OF DANIEL HALL

**INTRODUCTION**

This is a class action lawsuit in which 1.19 million plaintiffs[1] assert claims against the Defendant for violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227. Because the Act provides $500 per violation,[2] the potential damages are nearly $600 million without allowing for the possibility of treble damages.[3]

The case was filed and settled in less than a year-and-a-half.[4] The settlement includes a $10.5 million gross fund,[5] of which $6.5 million will go to the class after deduction of administration expenses and class counsels' requested fees.[6] It offers proposed practice changes; however, class counsel fail to assign these any value.[7]

Of course, settling for less than full value is common and does not render the settlement inadequate.[8] But, securing 1% of potential damages, as class counsel have done here, is, at best adequate, and not exceptional. This result does not support an upward adjustment from the 25% benchmark for attorneys' fees.

Class counsels' request for 30%, or $3,150,000, is clearly excessive. It is nearly half of the compensation received by the class.

---

[1] "The Class combined consists of approximately 1,192,555 people throughout the United States." Motion for Preliminary Approval. ECF Doc. 58, at 22.
[2] 47 U.S.C. §227(b)(3).
[3] 1,192,555 x $500 = $596,277,500.
[4] *See* Class Action Complaint, ECF Doc. 1 (filed on April 28, 2015); Settlement Agreement, ECF Doc. 58-1, at 26 (showing the agreement was signed on September 8, 2016).
[5] Motion for Preliminary Approval, ECF Doc. 58, at 6.
[6] $10,500,000-$3,150,000 (in requested fees) - $800,000 in administrative and notice expenses (ECF Doc. 58, at 10) = $6,550,000.
[7] Class counsel state that they "seek no . . . additional valuation here [from the nonmonetary benefits] despite the prospective practice changes in Defendant's conduct. . . ." Memorandum in Support of Motion for Attorneys' Fees, ECF Doc. 67, at 1-2.
[8] To the extent class counsel claim the class damages are worth far less than $600 million, it would appear they have failed to submit their own version of the value of the claims released.

Nothing illustrates this more than a lodestar analysis, either as the method for awarding fees or as a cross-check. Class counsels' lodestar is $631,748.50. The **4.99 multiplier** required to get to $3,155,000, which class counsel concede is "on the high-end"[9] is, without question, unreasonable. As discussed *infra*, it appears TCPA settlements typically allow for multipliers between 1 and 2.[10] If class counsels 4.99 multiplier is indulged, it will produce absurd results such as a paralegal billing $1,721 per hour.[11]

Class counsel should be indulged no more than a generous 2 multiplier, if any at all. Regardless of how attorneys' fees are calculated, $3,155,000 for this settlement is too much.

## STANDING AND PRELIMINARY STATEMENTS

Objector's full name, address, telephone number, are as follows: Daniel Hall, 4159 Steck Ave., Unit 112, Austin, Texas 78759; (361) 510-4981.

Objector is an individual who between April 28, 2011 and January 31, 2016, received a non-emergency Call from or on behalf of Dun & Bradstreet Credibility Corp., Dun & Bradstreet Emerging Businesses Corp., Credibility Corp., or Brad Acquisition Corp., to a cellular telephone through the use of an automated telephone dialing system. *See* Declaration of Daniel Hall, Exhibit "A" hereto, incorporated by reference as though set forth in full. Additionally, a settlement notice postcard was sent to Mr. Hall, and he filed a claim on the settlement website. *See* Exhibits A, A-1, and A-2. As such, Mr. Hall is a member of the class and has standing to make this Objection.

---

[9] Memorandum in Support of Motion for Attorneys' Fees, ECF Doc. 67, at 22.
[10] *See* Section IV, *infra.*
[11] Declaration of Daniel Hutchinson, ECF Doc. 67-1, at 21 ($345 per hour for paralegal Jennifer Rudnick x 4.99 = $1,721).

1    Objector is represented by local counsel, Timothy R. Hanigan, LANG,

2    HANIGAN & CARVALHO, LLP. Objector is also represented by Bandas Law Firm,

3    PC, as his general counsel in objecting to the settlement. Chris Bandas of Bandas Law

4    
5    Firm does not presently intend on making an appearance for himself or his firm.

6    The statement of the objections and the grounds therefore are set forth below.

7    Objector does not intend on appearing at the fairness hearing either in person or

8    
9    through counsel but ask that their objection be submitted on the papers for ruling at that

10   time. Objector relies upon the documents contained in the Court's file in support of

11   these objections. Objection is made to any procedures or requirements to object in this

12   
13   case that require information or documents other than those that are contained herein

14   on grounds that such requirements seek irrelevant information to the objections, are

15   unnecessary, unduly burdensome, are calculated to drive down the number and quality

16   
17   of objections to the settlement and violate Objector's and counsel's due process rights

18   and/or Rule 23.

19   Objector incorporates by reference the arguments and authorities contained in

20   
21   other filed objections, if any, made in opposition to the fairness, reasonableness and

22   adequacy of the proposed settlement, the adequacy of class counsel and to the proposed

23   award of attorneys' fees and expenses that are not inconsistent with this objection.

24

25

26

27

28

# OBJECTIONS

**I. Because Defendants Have Agreed Not to Contest Class Counsels' Fee Request, this Court Should Exercise its Fiduciary Duty Carefully in Assessing Reasonable Attorneys' Fees.**

It is axiomatic that district courts have a fiduciary duty to protect the interests of the absentee class members. *See In re: Mercury Interactive Corp. Securities Litigation*, 618 F.3d 988, 994 (9th Cir. 2010) (because "the relationship between plaintiffs and their attorneys turns adversarial at the fee-setting stage, courts have stressed that when awarding attorneys' fees from a common fund, the district court must assume the role of fiduciary for the class plaintiffs"). This is because in a common fund settlement, every dollar awarded to class counsel is a dollar taken from the class.

A settling defendant only cares about its total settlement payments and keeping them as low as possible. *In re Southwest Voucher Litigation*, 799 F.3d 701, 712 (7th Cir. 2015); *Piambino v. Bailey*, 757 F.2d 1112, 1139 (11th Cir. 1985) ("*Piambino II*"). At the same time, class counsel have a natural incentive to enrich themselves at the expense of the unnamed members of the class. *See Southwest Voucher*, 799 F.3d at 712 ("[j]udicial scrutiny of class action fee awards and class settlements more generally is based on the assumption that class counsel behave as economically rational actors who seek to serve their own interests first and foremost").

When, as here, the parties have agreed to a certain amount of fees,[12] and there is no one with an interest in the outcome (save objecting class members) to protest the

---

[12] "Defendant will not contest Class Counsel's application to this Court for payment of attorneys' fees of not more than 30 percent of the Settlement Fund and costs incurred by Class Counsel in litigating this action." Agreement § 5.01. ECF Doc. 58, at 8.

amount sought,[13] there is a real danger that fees awarded may be excessive. *In re HP Inkjet Printer Litig.*, 716 F.3d 1173, 1178 (9th Cir. 2013) ("because the interests of class members and class counsel nearly always diverge, courts must remain alert to the possibility that some class counsel may 'urge a class settlement at a low figure or less-than-optimal basis in exchange for red-carpet treatment on fees'") (quotation omitted).

Thus, "[a]s a fiduciary for the class, the district court **must 'act with a jealous regard** to the rights of those who are interested in the fund' in determining what a proper fee award is." *Mercury*, 618 F.3d at 994.

## II. Federal, and Not State Law, Governs the Calculation of Attorneys' Fees.

This Court should apply federal law, not California law,[14] in calculating fees. Class counsel urge the Court to apply state law based on their claim under the California Business & Professions Code §§ 17200, et seq., the Unfair Competition Law ("UCL").[15] However, federal law claims predominate in this class action. *See Sadowska v. Volkswagen*

---

[13] Objector anticipates class counsels' response to his objection will be to shoot the messenger rather than focus on the merits of his complaint. Yet, it should be remembered that objectors "add value to the class-action settlement process by . . . preventing collusion between lead plaintiff and defendants." *UFCW Loc. 880-Retail Food Employers Jt. Pension Fund v. Newmont Min. Corp.*, 352 Fed. Appx. 232, 236 (10th Cir. 2009) (citation omitted); *see also* 2003 Committee Note, Rule 23(h) ("In some situations, there may be a basis for making an award to other counsel whose work produced a beneficial result for the class, such as . . . attorneys who represented objectors to a proposed settlement under Rule 23(e) or to the fee motion of Class Counsel"). Further, "[o]bjectors can encourage scrutiny of a proposed settlement and identify areas that need improvement. They can provide important information regarding the fairness, adequacy, and reasonableness of the settlement terms." *Pallister v. Blue Cross and Blue Shield of Montana*, 285 P.3d 562, 568 (Mont. 2012). Because objectors may pose a risk to class counsels' fees "class action lawyers may try to fend off interlopers who oppose a proposed settlement as insufficiently generous to the class[.]" *In re Trans Union Corp. Privacy Litig.*, 629 F.3d 741, 743 (7th Cir. 2011) (Posner, J.). These tactics are improper: objectors "prevent[] cozy deals that favor class lawyers and defendants at the expense of class members. . . ." *Id.*

[14] 30% is likewise excessive under California law, which recognizes the Ninth Circuit 25% benchmark, and allows for a lodestar cross-check. See *infra* Sections III and IV; *Laffitte v. Robert Half Intern. Inc.*, (Cal. 2016)376 P.3d 672, 686 (permitting a percentage calculation with a lodestar cross-check in a common fund case, and acknowledging the Ninth Circuit's 25% benchmark).

[15] Memorandum in Support of Motion for Attorneys' Fees, ECF Doc. 67, at 5

*Grp. of Am., Inc.,* No. CV 11–00665–BRO AGRX, 2013 WL 9600948, at *7 (C.D. Cal. Sept. 25, 2013) (stating that when "state law claims predominate, state law governs the calculation of the award of fees"); *Klee v. Nissan N. Am., Inc.,* CV1208238AWTPJWX, 2015 WL 4538426, at *12–14 (C.D. Cal. July 7, 2015) (state law applied because state law "govern[ed] the majority of the underlying claims").

The majority of Plaintiffs' complaint focuses on the TCPA.[16] Their first two causes of action are TCPA claims.[17] Their third is a single UCL cause of action.[18] Further, the settlement repeatedly mentions Plaintiffs' causes of action under the TCPA, including in discussing the claims released, but makes no mention of the UCL claim.[19] Because federal law governs the majority of the underlying claims here, federal law governs the calculation of attorneys' fees. *Klee,* 2015 WL 4538426, at *12.

### III. Class Counsels' 30% Request is Excessive.

As this Court is well aware, it has discretion to determine whether to apply the percentage-of-the-fund or lodestar method. *See In re Omnivision Techs., Inc.,* 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2008); *Graehl v. Wellpoint, Inc.,* Case 2:14-cv-00421-BRO, at *16-*21 (C.D. Cal. Jan. 8, 2016) (Dkt. No. 62). Regardless of which method this Court determines is most suitable, $3.15 million, or 30% of the gross fund is far too much considering the modest relief secured relative to the damages released, the relatively brief time suit was on file before settling, and the fact that the award would be *nearly five times*

---

[16] *See e.g.,* Complaint, ECF Doc. 1, at 3-6, 13-14
[17] Complaint, ECF Doc. 1, at 13-14 (stating a cause of action for (1) "Knowing And/Or Willful Violations of the Telephone Consumer Protection Act" and (2) "Violations of the Telephone Consumer Protection Act").
[18] Complaint, ECF Doc. 1, at 14-15.
[19] Settlement Agreement, ECF Doc. 58-1, at 1, 6-7, 21, 24.

class counsels' lodestar. Even awarding 25% would be excessive here because it still produces a lodestar multiplier above 4.

### A. 25% is the Benchmark.

The Ninth Circuit has "established 25% of the common fund as the 'benchmark' award for attorneys' fees." *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993); *Roberti v. OSI Sys., Inc.*, CV1309174MWFMRW, 2015 WL 8329916, at *6 (C.D. Cal. Dec. 8, 2015).; *see also McCabe v. Six Continents Hotels, Inc.*, 12-CV-04818 NC, 2016 WL 491332, at *2 (N.D. Cal. Feb. 8, 2016) (noting that "[u]nder both Ninth Circuit and California law, courts have discretion to use the lodestar method in awarding attorneys' fees, or the percentage-of-recovery method. . . . Applying the percentage-of-recovery method, 'courts typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award, providing adequate explanation in the record of any 'special circumstances' justifying a departure.'"). The benchmark is only to be adjusted when "special circumstances indicate the recovery would be either too small or too large in light of the hours devoted to the case or other relevant factors." *Torrisi*, 8 F.3d at 1376 (quoting *Six Mexican Workers v. Ariz. Citrus Growers,* 904 F.2d 1301, 1311 (9th Cir.1990)); *Roberti*, 2015 WL 8329916, at *6.

Courts consider a number of factors to determine the appropriate percentage to apply, including: (1) the results achieved; (2) the risk of litigation; (3) the skill required and the quality of work; (4) the contingent nature of the fee; and (5) awards made in similar cases. *Omnivision*, 559 F. Supp. 2d at 1046. The overall result and benefit to the class from the litigation is the most critical factor. *Id.*

**B. There are No Special Circumstances Justifying an Award Above the Benchmark.**

Class counsel discuss the results without context. $10.5 million is substantial, but not such that it warrants above 25%. *See Gehrich v. Chase Bank USA, N.A.*, 316 F.R.D. 215, 237-38  (N.D. Ill. Mar. 3, 2016) (awarding class counsel 21% of a $34 million common fund); *Wilkins v. HSBC Bank Nevada, N.A.*, 14 C 190, 2015 WL 890566, (N.D. Ill. Feb. 27, 2015)(awarding 23.75% in a case involving a $39 million settlement fund); *Duke v. Bank of Am., N.A.*, No. 5:12-cv-04009, ECF Doc. 59 (N.D. Cal.) (awarding 7.5% of a $32 million fund on a percentage cross-check). In fact, it is diminutive next to the nearly $600 million in potential damages released. *See Bayat v. Bank of the W.*, C-13-2376 EMC, 2015 WL 1744342, at *5 (N.D. Cal. Apr. 15, 2015) (the class recovery under the TCPA settlement "represents a whopping 99.5% discount from the theoretical verdict value were statutory damages to be awarded to the entire class. This cannot be credibly called an "outstanding" result."). While this figure may have been realistically unattainable, it does not appear class counsel have submitted a contrary valuation of damages released.

Class counsel estimate the awards to class members will be in the range of between $60-$120, [20] yet this is a typical recovery for TCPA settlements, and does not support a rise above the benchmark. *See e.g., Bayat*, 2015 WL 1744342,at *8-9 ($151 per-claimant recovery); *Michel v. WM Healthcare Solutions, Inc.*, No. 1:10-cv-638, 2014 WL 497031 (S.D. Ohio Feb. 7, 2014) (providing $190 per claimant and awarding attorneys'

---

[20] Motion for Preliminary Approval,  ECF Doc. 58, at 6.

fees as 15% of the common fund). And, class counsel offer no estimation of the value of the proposed practice changes, adding that they do not include them in their valuation of the settlement.[21]

The time and labor spent here do not justify anything above 25%. Suit was filed and settled in less than a year-and-a-half. Class counsel claim to have spent 1,102.5 hours on this litigation.[22] *Compare with Omnivision Techs.*, 559 F. Supp. 2d at 1049 (attorneys who dedicated over 7,500 hours were entitled to a 3% percent increase from the 25% benchmark) Yet, as discussed *infra*, some undisclosed portion of this amount is taken from a prior case.[23]

Class counsel cite four cases where this Court awarded 28% of a common fund. Yet, in three of the four cases, the Court did so only where there was a negative multiplier demonstrating that the fee was reasonable. *Djukich v. AutoNation Inc.*, Case 2:13-cv-04455-BRO , at*21-23 (C.D. Cal. Nov. 12, 2015) (Dkt. No. 145) (applying a *negative* multiplier while awarding 28% of common fund settlement); *Fiant v. Weatherby, Inc.*, Case No. 2:15-cv-02991-BRO, at *23-24 (C.D. Cal. June 13, 2016) (Dkt. No. 37) (awarding a negative multiplier of .84, and noting that when a "fee award results in a so-called negative multiplier, . . . [it] suggests that the percentage of the fund is reasonable and fair); *Graehl v. Wellpoint, Inc.*, Case 2:14-cv-00421-BRO, at *22-23 (C.D. Cal. Jan. 8, 2016) (Dkt. No. 62) (awarding a negative multiplier of .53). In the one case with a positive multiplier, it was still a far more reasonable 1.59 multiplier. *Bostick v. Herbalife*

[21] Memorandum in Support of Motion for Attorneys' Fees, ECF Doc. 67, at 2.
[22] *Id.* at 19.
[23] *Id.* at 20 n. 15.

1  *Int'l of Am.*, Case No. 2:13-cv-02488-BRO (C.D. Cal. May 14, 2015) (Dkt. No. 145)

2  (awarding 28% of $17.5 million reversionary settlement, plus costs) (lodestar cross-check

3  of 1.59 reasonable, awarding 28%).

4

5  Class counsel considerably exaggerate the risk. As demonstrated in class counsels'

6  supporting papers, they have settled many TCPA class actions. Moreover, the defenses

7  and risks mentioned by class counsel, while significant, are not so unique as to warrant

8  an upward adjustment from the benchmark. *See e.g., Wilkins*, 2015 WL 890566, at *11

9

10  (noting defenses included "the class members' alleged consent to receive automated

11  phone calls; Rule 23 manageability issues; and potentially forthcoming FCC orders"). As

12  this Court recently stated:

13

14          At the final fairness hearing, Class Counsel repeated that there

15          are "nuanced" legal issues in this case, particularly concerning
           the AWS, and further argued that Class Counsel has faced

16          actual losses in other class action cases based on their
           contingent nature, which Class Counsel claims somehow

17          increased the risk associated with this matter. The Court finds
           these arguments unavailing. The Court will not increase Class

18          Counsel's award based on the fact that Class Counsel litigates
           other class action cases that ultimately result in losses; this

19          argument is not relevant to this matter—and more importantly
           the settlement—presently before the Court.

20

21  *Fiant v. Weatherby, Inc.*, Case No. 2:15-cv-02991-BRO, at *17-*23 (C.D. Cal. June 13,

22  2016) (Dkt. No. 37). Class counsel failed to show they are entitled to any more than the

23  25% benchmark. This Court should award below it, however, based on the lodestar

24  figures available.

25

26

27

28

**IV.  Under Either the Lodestar Method or the Percentage Method with a Lodestar Cross-Check, the 4.99 Multiplier Confirms the Requested $3.15 Million in Attorneys' Fees is Excessive.**

Because the 25% benchmark under the percentage-of-the-fund method still offers a windfall to class counsel (*i.e.*, $2,625,000, with a 4.15 multiplier), Objector urges this Court apply the lodestar method. Alternatively, "[e]ven when applying the percentage method, the Court should use the lodestar method as a cross-check to determine the fairness of the fee award."*In re ECOtality, Inc. Sec. Litig.*, 13-CV-03791-SC, 2015 WL 5117618, at *4 (N.D. Cal. Aug. 28, 2015); *see also Vizcaino*, 290 F.3d at 1050 ("[w]here [the lodestar] investment is minimal, as in the case of an early settlement, the lodestar calculation may convince a court that a lower percentage is reasonable"); *Laffitte*, 1 Cal.5th at 496, 205 Cal.Rptr.3d 555, 376 P.3d 672 ("If the implied multiplier is reasonable, then the cross-check confirms the reasonableness of the percentage-based fee[.]").

$3.15 million is too much. A 4.99 multiplier is not just "on the high-end[.]"[24] *Hopkins v. Stryker Sales Corp.*, 2013 WL 496358, *4 (N.D.Cal.2013) ("Multipliers of 1 to 4 are commonly found to be appropriate in complex class action cases."). In the context of a TCPA settlement, it is far outside the range of reasonable multipliers, which typically fall between 1 and 2. *See e.g., Bayat*, 2015 WL 1744342,at *8-9 (N. D. Cal. Apr. 15, 2015) (upholding a 1.5 multiplier in a non-reversionary TCPA settlement); *Bellows v. NCO Fin. Sys., Inc.*, 07-CV-1413 W (AJB), 2009 WL 35468, at *8 (S.D. Cal. Jan. 5, 2009) (awarding a 1.7 multiplier in a TCPA settlement); *see also Landsman & Funk, P.C. v.*

---

[24] Memorandum in Support of Motion for Attorneys' Fees, ECF Doc. 67, at 22.

*Skinder-Strauss Associates*, 639 Fed. Appx. 880, 883 (3d Cir. 2016)(unpublished), (upholding a 2 multiplier in a TCPA class action settlement); *Americana Art China Co. v. Firefox Printing Packaging, Inc.*, 743 F.3d 243, 246 (7th Cir. 2014) (upholding a 1.5 multiplier, and attorneys' fees of $1.1 million in a TCPA settlement which made $6 million available to the class); *Michel*, 2014 WL 497031 (on a lodestar cross-check, allowing for a 1.8 multiplier (instead of 4.3), while reducing the percentage of recovery from 33% to 15%).

Class counsel rely on *Malta v. Wells Fargo Home Mortgage*, 10-cv-01290-BEN-NLS (S.D. Cal. Jne 21, 2013) (Dkt. No. 92) for their suggestion that a 5.1 multiplier is appropriate in the context of a TCPA settlement.[25] Yet, that three-page unpublished order did not conduct a lodestar cross-check analysis, other than mentioning the hours billed and rates, and did not discuss the multiplier. *Id.* at 2-3. Instead, the court awarded attorneys' fees based on the percentage-of-the-fund method, which class counsel neglect to mention amounted to 22.5% of a $17.1 million fund. *Id.*

Notably, in the class action settlements referenced by class counsel where **this Court awarded a 28% recovery, three involved negative multipliers, and only one awarded a positive multiplier of 1.59.**[26] *See Bostick v. Herbalife Int'l of Am.*, Case No. 2:13-cv-02488-BRO, at *54-*57 (C.D. Cal. May 14, 2015) (Dkt. No. 145) (finding a 1.7 multiplier too high and reducing it to 1.59); *Djukich v. AutoNation Inc.*, Case 2:13-cv-04455-BRO , at*21-23 (C.D. Cal. Nov. 12, 2015) (Dkt. No. 145) (applying a *negative* multiplier while awarding 28% of common fund settlement); *Fiant v. Weatherby, Inc.*, Case

---

[25] Memorandum in Support of Motion for Attorneys' Fees, ECF Doc. 67, at 23.
[26] *Id.* at 13.

No. 2:15-cv-02991-BRO, at *23-24 (C.D. Cal. June 13, 2016) (Dkt. No. 37) (awarding a negative multiplier of .84, and noting that when a "fee award results in a so-called negative multiplier, . . . [it] suggests that the percentage of the fund is reasonable and fair); *Graehl v. Wellpoint, Inc.*, Case 2:14-cv-00421-BRO, at *22-23 (C.D. Cal. Jan. 8, 2016) (Dkt. No. 62) (awarding a negative multiplier of .53, and also noting that a "negative multiplier . . . suggests that the percentage of the fund amount is fair and reasonable"). Obviously, **none approached the 4.99 multiplier** advanced by class counsel here.

And, of course, the Ninth Circuit recognizes the "strong presumption that the lodestar amount represents a reasonable fee, [and that] adjustments to the lodestar, 'are the exception rather than the rule.'" *Stranger v. China Elec. Motor, Inc.*, 812 F.3d 734, 738 (9th Cir. 2016) (quotation omitted); *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 556 (2010) (noting the "'strong presumption'" that the lodestar figure is reasonable").[27]

In *Perdue*, the Supreme Court reminded that "lodestar figure includes most, if not all, of the relevant factors constituting a 'reasonable attorney's fee.'" *Perdue*, 559 U.S. at 552 (citing *Burlington v. Dague,* 505 U.S. 557, 552 (1992)). Accordingly, "an enhancement may not be awarded on a factor that is subsumed in the lodestar calculation." *Id.* at 553; *Kelly v. Wengler*, 822 F.3d 1085, 1099 (9th Cir. 2016); *Fleury v. Richemont N.A., Inc.*, C-05-4525 EMC, 2008 WL 3287154, at *4 (N.D. Cal. Aug. 6, 2008); *Weeks v. Kellogg Co.*, CV

---

[27] Though *Perdue* was a civil-rights case, rather than an antitrust class-action settlement, the Court noted that its lodestar jurisprudence was applicable to all "federal fee-shifting statutes[.]" 559 U.S. at 552. There is no reason to treat "reasonable" as meaning something different in 42 U.S.C. Sec. 1988 than in Fed. R. Civ. P. 23(h). While the Ninth Circuit refused to extend the notion that risk multipliers are subsumed within the lodestar to common fund settlements, the Supreme Court has not made this distinction. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043 (9th Cir. 2002) ("[t]he bar against risk multipliers in statutory fee cases does not apply to common fund cases") (citing *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1295-96 (9th Cir. 1994)).

09-08102 MMM RZX, 2013 WL 6531177, at *34 & n. 157 (C.D. Cal. Nov. 23, 2013) (unpub.); *see also Van Horn v. Nationwide Prop. & Cas. Ins. Co.*, 436 Fed. Appx. 496, 500 (6th Cir. 2011) (unpub.) (noting that *Perdue* indicates that enhancements are atypical and should not duplicate considerations affecting the lodestar rate).

As discussed *supra*, there is nothing exceptional about this settlement reached less than a year-and-a-half after filing suit. The results, while arguably passing muster under Rule 23's adequacy requirement, are a modest 1% of potential damages. The risks faced, while certainly significant, are not so unique as to warrant a significant rise above the lodestar, and certainly are not a 4.99 multiplier. The $10.5 million gross fund is a typical, not extraordinary TCPA settlement.

Finally, if class counsel are awarded their requested $3.15 million (with a 4.99 multiplier), it will produce absurd results. Jonathan Seblin, whose rates are already $825 per hour, would bill a preposterous $4,116 per hour.[28] Meanwhile, the senior paralegal at Lieff Cabraser, who already bills $345 per hour, would bill $1,721 per hour with this multiplier.[29]

## V.   Class Counsel Must Give a Better Explanation as to Why they Are Entitled to Bill for Time Spent in *Vadai v. Dunn & Bradstreet Credibility Corp.*

Class counsel admit (in a footnote) that in calculating their lodestar, they "have included time spent on the *Vadai v. Dun & Bradstreet Credibility Corp.*, as their work in that prior case benefitted the Class here."[30] Although there is some general discussion about class counsels' involvement in that case in the supporting papers, class counsel do not

---

[28] Declaration of Daniel Hutchinson, ECF Doc. 68-1, at 21.
[29] *Id.*
[30] Memorandum in Support of Motion for Attorneys' Fees, ECF Doc. 67, at 20 n.15.

explain whether they were compensated in any respect for that work. If they were, then they should explain why they are entitled to double bill. *See, e.g., New Jersey v. E.P.A.*, 703 F.3d 110, 115 (D.C. Cir. 2012) (refusing to grant fees for hours where the court could not ascertain whether efforts had been duplicated); *Katz v. China Century Dragon Media, Inc.*, LACV1102769JAKSSX, 2013 WL 11237202, at *7 (C.D. Cal. Oct. 10, 2013) (reviewing lodestar records for "evidence of double billing or duplicative work"). If they were not compensated, they should submit more detail regarding the extent of the work performed in *Vadai* and how and when it was used and applied to this case. *Loretz v. Regal Stone, Ltd.*, 756 F. Supp. 2d 1203, 1214 (N.D. Cal. 2010) (specifically explaining how work in another case assisted establish liability, without discussing whether the attorneys were previously compensated).

Class counsel also do not break down how much of their lodestar is attributable to time spent on the *Vadai* case versus work in this case. Is it 1% of their lodestar, 20%, 50%? This Court should not approve any fee request until class counsel have fully answered these questions and demonstrated their lodestar represents uncompensated work in this case.

## VI.   This Court Should Judicially Supervise Allocation of Attorneys' Fees.

It would appear that there are at least three firms making up class counsel. Objector submits that the Court should not award a lump sum fee, but rather judicially allocate the funds among the various firms.   The Court should judicially allocate the funds among the various firms.

Although it appears the Ninth Circuit has not reached the issue, several federal courts have observed that in "a class action settlement, the district court has an independent duty . . . to the class and the public to ensure that attorneys' fees are reasonable and divided up fairly among plaintiffs' counsel." *See In re High Sulfur Content Gasoline Prods. Litig.* (5th Cir. 2008) 517 F.3d 220, 227–28 ; *In re "Agent Orange" Prods. Liab. Litig.* (2d Cir. 1987) 818 F.2d 216, 223. The district court "must not ... delegate that duty to the parties." *High Sulfur,* 517 F.3d at 228 (internal quotation omitted). While "lead counsel may be in a better position . . . to evaluate the contributions of all counsel seeking recovery of fees[,]" the allocation should be supervised by the court in light of inherent conflicts among the attorneys. (*Id.* at 234-35 [citing *In re Diet Drugs Prods. Liab. Litig.* (3d Cir. 2005) 401 F.3d 143, 173 (Ambro, J., concurring)]) ("They make recommendations on their own fees and thus have a financial interest in the outcome. How much deference is due the fox who recommends how to divvy up the chickens?""). Accordingly, this Court should oversee any allocation of funds among class counsel.

## CONCLUSION & PRAYER

Wherefore, Objector/Class Member Daniel Hall urges that this Court allow class counsel to recover attorneys' fees reflecting no more than a 2 lodestar multiplier, either under the lodestar method or on a lodestar cross-check, after ensuring class counsels' lodestar is limited to work performed for this case. Under no circumstances should class counsels' fees exceed the 25% benchmark recognized by the Ninth Circuit. Thus, any award of attorneys' fees should be substantially less than class counsels' requested $3.15 million, with the difference applied to the benefit of the class.

DATED:  January 7, 2017

Respectfully submitted,

Timothy R. Hanigan (125791)
LANG, HANIGAN &
CARVALHO, LLP,
21550 Oxnard Street, Suite 760
Woodland Hills, California 91367
(818) 883-5644
trhanigan@gmail.com
Attorney for Objector/Class Member

## Certificate of Service

The undersigned certifies that today he filed the foregoing Motion on ECF which will send electronic notification to all attorneys registered for ECF-filing. The foregoing objection was also mailed today to the Credibility TCPA Settlement Claims Administrator, P.O. Box 43437, Providence, RI 02940-3437.

DATED:  January 7, 2017

Timothy Hanigan