C. Benjamin Nutley (177431)
nutley@zenlaw.com
1055 E. Colorado Blvd., 5th Floor
Pasadena, California  91106
Telephone:  (626) 204-4060
Facsimile:  (626) 204-4061

Attorney for Objector James E. Pentz

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| JEFFREY A. THOMAS, et al., | Case No. 2:15-cv-03194-BRO-GJS |
| Plaintiff, | **OBJECTION TO FINAL APPROVAL OF SETTLEMENT AND REQUEST FOR FEES** |
| v. | |
| DUN & BRADSTREET, et al., | Judge:  Hon. Beverly Reid O'Connell<br>Date:    March 20, 2017 |
| Defendants. | Time:   1:30 pm<br>Dept:  7C |

      Pursuant to order of this Court dated September 28, 2016 (Docket Entry "DE" 64) class member James E. Pentz, 8912 Little Raven Trail, Longmont, CO 80503, (303) 652-3911, hereby objects to final approval of the settlement and to the request for attorney's fees.  Mr. Pentz received a postcard notice, and received a non-emergency automated telephone call from or on behalf of Dun & Bradstreet to his cell phone during the Class Period.  Mr. Pentz intends to appear at the final approval

hearing on this matter through his counsel.

## I.     Objections to the Settlement Agreement

As Plaintiffs point out, a settlement under Rule 23(e) requires that the Court assess a number of factors set forth in *Churchill Vill., LLC v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004).  As to the first three factors, Objector agrees that there are issues of class treatment and defenses in TCPA cases that are presently subject to disputed interpretations, which present uncertainty to the litigants, and which provide a rationale for early settlement.   In addition, Class Counsel are experienced litigators and repeat players in TCPA litigation, though their views about the results obtained are somewhat overstated, as discussed below.

Lacking at this point the final number of valid claims, and thus crediting Class Counsel's freewheeling estimate that expected claims rates will yield $60 - $120 per claimant, the settlement amount is within the low-middle range of those typically found in such settlements. *See, e.g., Couser v. Comenity Bank*, 125 F. Supp. 3d 1034, 1043 (S.D. Cal. 2015) (comparing cases); *In re Capital One Tel. Consumer Prot. Act Litig.*, 80 F. Supp. 3d 781, 789 (N.D. Ill. 2015); *Rose v. Bank of Am. Corp.*, No. 5:11-CV-02390-EJD, 2014 WL 4273358, at *10 (N.D. Cal. Aug. 29, 2014) (collecting and comparing cases).  However, contrary to Class Counsel's argument, there is no cognizable non-monetary or prospective relief.  That does not prevent settlement, but it renders the result less-than extraordinary.

Regarding the extent of discovery completed, Objector observes that

Plaintiffs noticed, but did not take, 30(b)(6) depositions relating to the discovery they served to identify class members called by the automated systems. *See* DE58-1 at 2-3. Particularly where the automated dialing allegations involve an outside vendor, such depositions are important for ensuring that there have not been mistakes or omissions in that process, thus ensuring that all affected class members bound by the release have been identified and sent notice.

In addition to the factors discussed above, courts give additional scrutiny to settlements with certain "red flag" features. *See generally Rose*, 2014 WL 4273358, at *4 (describing settlement "red flags"). Several are present here. As set forth below, Class Counsel assert their fee request is justified because they negotiated a "clear sailing" agreement with the defendant. In a common fund case, an agreement with the defendant does not in any way justify the size of the fee to be taken from a common fund. Such agreements apply to situations in which the defendant is paying the fee separately – not common fund fee awards – and they are given careful scrutiny because they present "the potential of enabling a defendant to pay class counsel excessive fees and costs in exchange for counsel accepting an unfair settlement on behalf of the class." *Id*. at *4, quoting *Lobatz v. U.S. W. Cellular of California, Inc.,* 222 F.3d 1142, 1148 (9th Cir. 2000).

Moreover, there appears to be a possibility of reversion of excessive fees to the defendant, another red flag. The Settlement provides that:

Class Counsel shall be entitled to payment of the fees awarded by the Court

out of the Settlement Fund within five (5) business days of the Funding Date, as defined in Section 2.23 above. *Class Counsel are jointly and severally liable to Defendant for repayment of fees received should the Final Approval Order or the fee Order be reversed or reduced on appeal.*

Settlement Agreement at Section 5.0, DE58-1 at 10 (emphasis added).

If this is not a drafting error, it apparently means that if this Court awards the full fee, and an objector successfully appeals and obtains a reduction in the fee award, the difference will be returned to the Defendant, and not to the Class Fund for distribution under the Settlement.  That arrangement perversely puts the risk that Class Counsel's fee award might be too high on the Class, such that any overpayment will be removed from the common fund and forfeited back to the Defendant.   It would also improperly attempt to insulate the award from review, because it purports to remove any potential benefit to the class from an appeal from the fee award:  a reduction in the fee would only benefit the defendant, who has relinquished any opposition to it and has no standing to challenge it.

A potential contingent reversion of a portion of a facially non-reversionary class fund back to the defendant would certainly be a red flag, for collusion is suggested when "when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund" *Rose*, 2014 WL 4273358, at *4, citing *Mirfasihi v. Fleet Mortg. Corp.,* 356 F.3d 781, 785 (7th Cir. 2004) (Posner, J.).  For the defendant, the potential for a reversion of excessive fees otherwise

belonging to the class is an incentive *to support* an excessive fee request.  Certainly, if the settlement agreement's terms were taken seriously and were enforceable, then this Court's obligation to the class and the preservation of the fund would require awarding a fee in the lowest possible range of reasonableness from the outset.  That, because anything later deemed excessive would no longer belong to the class fund.

For these reasons, the settlement should not be approved as written, and certainly not without further inquiry into the adequacy of discovery and clarification of the terms under which the fees are being paid to Class Counsel.

## II.   The Request for Attorneys' Fees is Excessive

Class Counsel request fees and expenses calculated as thirty percent of the $10,500,000 gross fund, or $3,150,000.   That is excessive in this case.  As explained below, this was a relatively low-risk, short-duration case, yielding average results at best.   Class Counsel's lodestar is only $631,748, and this case lasted a little over a year between filing and settlement.  As explained below, a considered fee would not exceed a maximum range of 15% of the gross fund ($1,575,000) or 2.5 times the hourly billings class counsel claim (totaling $1,579,371), with adequately-supported expenses paid separately.

In common fund cases, courts in the Ninth Circuit may use either the percent-of-fund or the lodestar method to determine a reasonable fee, as long as the resulting fee is reasonable. *Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000).  It is true that there is a widely-cited benchmark of 25% in common fund cases, but the fee

analysis requires a consideration of the time expended on the case, either to determine the basis for a lodestar/multiplier award, or as a cross-check to determine whether to adjust a percentage award.   Here, that analysis counsels against a straight benchmark percentage, and certainly forecloses the higher percentage requested here.  Class Counsel's lodestar to date is only $631,748.50, and that includes time spent working on a previous case against the same defendant. *See* DE67 at 29 & n.15.  That is strongly presumed to be a reasonable fee which, like the percentage benchmark, may be adjusted to account for the circumstances of the case. *Cunningham v. Cnty. of Los Angeles*, 879 F.2d 481, 488 (9th Cir. 1988) (the lodestar figure is "presumptively reasonable.").

The obvious disparity between a 25% "benchmark" percentage fee of about $2,625,000 and a "presumptively reasonable" lodestar fee of about $632,000 suggests that, whichever method it chooses in squaring the circle, this Court should carefully consider the factors used to adjust either figure to ensure it arrives at a reasonable fee.  On that point, the results obtained for the class is the critical factor, and in this case the result appears similar to other cases in which district courts awarded much smaller fees than are requested here.  In fact, one such case, *Rose v. Bank of Am. Corp.*, *supra*, 2014 WL 4273358 (N.D. Cal. Aug. 29, 2014), involved the same Class Counsel.  In *Rose*, the district court rejected a request for a 25% fee that would result in a multiplier of between 5 and 8, and instead applied a multiplier of 2.59 to a reduced lodestar.  *Rose*, 2014 WL 4273358, at *10 (noting three TCPA

cases in which courts awarded between 20-30 percent of a fund but the multipliers averaged 2.6). That is in line with another analogous case, *Couser v. Comenity Bank*, in which the district court rejected a fee request for 16.9% of the common fund and awarded 15%, or $1,271,250, approximately 2.8 times lodestar. *Couser, supra*,125 F. Supp. 3d at 1049. The circumstances and rationale of these recent cases is squarely in line with the settlement presented here, and suggest a fee that is no more than 15% of the gross fund, or 2.5 times their lodestar.

Class counsel also claim that the "result obtained" includes prospective relief, saying that "Defendant's prospective practice changes … will protect Settlement Class Members from receiving automated calls in violation of the TCPA." DE67 at 23; *see also id*. at 11 (the Settlement "confirms" these changes). But the Settlement itself does not contain or confirm any such protection. It says only that: "Prior to and during the pendency of this lawsuit, Defendant initiated certain practice changes that are designed to prevent violations of the TCPA's provisions on dialing cell phones using an automatic telephone dialing system." DE58-1 at 8, Settlement Agreement at Section IV, ¶4.01("Defendant's Business Practices To Ensure Compliance."). This is merely a recitation, and a vague one at that, about unspecified "practice changes" defendant voluntarily adopted before and during the litigation. The provision is not injunctive; it does not set forth clear requirements which if violated would support a motion for enforcement or a contempt order. Whatever "initiated practice changes" are, there is no requirement to carry out or

continue them.  The recitation does not even attribute the changes to the lawsuit, and in fact makes clear that at least some were initiated before to the lawsuit.  This provision is not a "result" that supports the fee request at all.

The district court in *Rose* criticized a more detailed provision describing a change to a defendant's systems to prevent calls without express prior consent, finding it to be too vague to support the fee request because it would not actually prevent the calls to class members disputed in the case.  *Rose*, 2014 WL 4273358, at *11 (concluding that "Because the primary goal of this litigation, as described by Class Counsel, was to put an end to these phone calls, the touted relief falls short and is of particular concern.").  Judge Davila described the vague relief in *Rose* as "particularly nominal" when compared against the actual prospective relief obtained in other TCPA settlements, in which defendants expressly agreed to specific documentation requirements or to refrain from calling certain numbers altogether.  *Id*.  The same exact analysis applies to this case, but with even more force, and justifies the same conclusion that "the results achieved here are not 'exceptional' in the context of other TCPA class action settlements…." *Id; see also Couser*, 125 F. Supp. 3d at 1047 (result obtained was not exceptional where, although favorable to the class, the settlement lacked "any non-monetary relief achieved in other TCPA class action settlements").

Class Counsel's other arguments for a higher fee are unpersuasive.  Class Counsel urge that their requested fee is "presumptively reasonable" because it

resulted from arm's length negotiations with the defendant. *See* DE67 at 19-20.

That is simply incorrect. Where there is a common fund consisting of cash, from

which a fee will be taken under the common fund doctrine, the defendant's

"agreement" to a certain percentage is neither necessary nor relevant. The

defendant typically has no interest in the size of the fee, and no incentive to drive a

hard bargain to benefit the class. *See Couser*, 125 F. Supp. 3d at 1046 (rejecting the

same argument in common fund TCPA case, "the fact that Defendant does not

oppose the fees requested has little bearing on the Court's determination of whether

the requested fees are reasonable."); *In re Bluetooth Headset Products Liab. Litig.*,

654 F.3d 935, 949 (9th Cir. 2011) ("Ordinarily, a defendant is interested only in

disposing of the total claim against it, and the allocation ... is of little or no interest

to the defense."). There is certainly no "presumption of reasonableness" to be

inferred from the fact that Dun & Bradstreet agreed not to oppose Class Counsel's

excessive fee request; to the contrary, as discussed above, it should be considered a

red flag.

     Class Counsel assert that contingency risk justifies the fee request. DE67 at

26. Courts have debunked this notion in this context: although the risk of further

litigation surely drives early settlement in TCPA cases, Class Counsel avoid that

risk by early settlement, counseling a lower-than-benchmark fee. *See Couser*, 125

F. Supp. 3d at 1048 (observing that "TCPA class actions are prone to settle") and

citing *Rose*, 2014 WL 4273358, at *12 (finding contingency factor "does not

support the requested fee" because the TCPA "has the potential of ruinous financial liability … defendants will almost always settle if there is any merit at all to the case.").  The same is true of this case; there is no justification for an enhancement for the unusual risk of TCPA cases when the settlement avoids that risk.

Finally, if Class Counsel have, as they put it, "relatively modest out-of-pocket costs … necessary to secure the resolution of this litigation," (DE67 at 33) then they should support them and have them reimbursed from the class fund separately. Class counsel are ordinarily entitled to recover the out-of-pocket expenses that "would normally be charged to a fee paying client." *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994).  But those expenses must be itemized with the particularity necessary to determine whether they meet that definition.  *Dyer v. Wells Fargo Bank, N.A.*, 303 F.R.D. 326, 334 (N.D. Cal. 2014).  There is no authority to inflate the fee to be taken from a common fund, by some unknown amount, to reimburse actual expenses that should be itemized specifically and reimbursed separately. Respectfully submitted this 7th day of January, 2017.

/s/
C. Benjamin Nutley (177431)
nutley@zenlaw.com
1055 E. Colorado Blvd., 5th Floor
Pasadena, California  91106
Telephone:  (626) 204-4060
Facsimile:  (626) 204-4061

*Attorney for Objector James E. Pentz*

**CERTIFICATE OF SERVICE**

I hereby certify that on October 3, 2016, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record.

_____/s/ John W. Davis_____
John W. Davis

Certificate of Service                                                                                        5:15-cv-01143-RGK-SP