Jonathan D. Selbin (State Bar No. 170222)
Daniel M. Hutchinson (State Bar No. 239458)
Email: dhutchinson@lchb.com
LIEFF, CABRASER, HEIMANN &
BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, California  94111-3339
Telephone:  (415) 956-1000
Facsimile:  (415) 956-1008

SIRI & GLIMSTAD LLP
Aaron Siri
(admitted *pro hac vice*)
Email: aaron@sirillp.com
200 Park Avenue, 17th Floor
New York, New York 10166
Telephone: (212) 532-1091
Facsimile: (646) 417-5967

[Additional Counsel Listed on Signature Page]

*Attorneys for Plaintiff and the Proposed Class*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| JEFFREY A. THOMAS, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>  v.<br><br>DUN & BRADSTREET CREDIBILITY CORP.,<br><br>    Defendant. | Case No. CV15-03194 BRO (GJSx)<br><br>**PLAINTIFF'S NOTICE OF MOTION, MOTION, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Judge:  Hon. Beverly Reid O'Connell<br>Hearing Date:  March 20, 2017<br>Time:  1:30 p.m.<br>Place:  Courtroom 8B |

1338466.4

**TABLE OF CONTENTS**

**Page**

NOTICE OF MOTION AND MOTION....................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES ........................................2

I.     INTRODUCTION ............................................................................................2

II.    STATEMENT OF THE FACTS .....................................................................3

       A.    Procedural Background.........................................................................3

       B.    The Classwide Discovery .....................................................................3

       C.    The Parties Settled After Engaging in Full Classwide Discovery ........5

       D.    The Settlement .....................................................................................5

             1.    The Settlement Class .................................................................6

             2.    Monetary Relief for Settlement Class Members .......................6

             3.    Defendant's Practice Changes ...................................................7

             4.    Cy Pres Distributions ................................................................7

             5.    Class Release ............................................................................8

             6.    Class Representative Service Award ..........................................8

             7.    Attorneys' Fees and Costs .........................................................9

             8.    Administration and Notice.........................................................9

III.   CLASS NOTICE HAS BEEN DISSEMINATED, AND THE
       CLAIMS ADMINISTRATION PROCESS HAS BEEN
       SUCCESSFUL ................................................................................................10

       A.    Direct Mail and Email Notice .............................................................10

       B.    CAFA Notice ......................................................................................10

       C.    Social Media Notice ...........................................................................11

       D.    Toll-Free Number and Settlement Website ........................................11

       E.    Claim Submission ...............................................................................11

       F.    Objections and Requests for Exclusion ..............................................12

IV.    ARGUMENT AND AUTHORITY ..............................................................12

       A.    The Class Action Settlement Approval Process .................................12

       B.    The Settlement is Fair, Reasonable, and Adequate, and Should
             be Approved ........................................................................................14

             1.    The Strength of Plaintiff's Case and the Risk, Expense,
                   Complexity, and Likely Duration of Further Litigation..........15

             2.    The Amount Offered in Settlement .........................................19

             3.    The Extent of Discovery Completed and the Stage of
                   Proceedings.............................................................................21

             4.    The Experience and Views of Counsel ...................................22

             5.    The Presence of a Governmental Participant ..........................23

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**TABLE OF CONTENTS**
**(continued)**

Page

6. The Reaction of Class Members ................................. 23

7. The Settlement in the Product of Arm's Length Negotiations ............................................................... 23

C. Certification Of The Settlement Class Is Appropriate ....................... 23

V. CONCLUSION ............................................................. 25

# TABLE OF AUTHORITIES

**Page**

## CASES

*ACC Int'l v. FCC,*
No. 15-1211 (D.C. Cir.)...............................................16

*Adams v. AllianceOne Receivables Mgmt. Inc.,*
No. 08-cv-00248 (S.D. Cal.)..................................12, 20

*Aghdasi v. Mercury Ins. Grp., Inc.,*
No. CV 15-4030-R, 2016 WL 5899290 (C.D. Cal. Jan. 21, 2016)......................18

*Aliano v. Joe Caputo & Sons—Algonquin, Inc.,*
No. 09 C 910, 2011 WL 1706061 (N.D. Ill. May 5, 2011)...................17

*Arthur v. Sallie Mae, Inc.,*
No. 2:10-cv-00198-JLR, 2012 WL 4075238 (W.D. Wash. Sept. 17, 2012)..12, 18

*Bayat v. Bank of the W.,*
No. C-13-2376 EMC, 2015 WL 1744342 (N.D. Cal. Apr. 15, 2015).............8, 20

*Boyd v. Bechtel Corp.,*
485 F. Supp. 610 (N.D. Cal. 1979).........................................22

*Campbell-Ewald Co. v. Gomez,*
136 S. Ct. 663 (2016)....................................17

*Chapman v. First Index, Inc.,*
No. 09 C 5555, 2014 WL 840565 (N.D. Ill. Mar. 4, 2014) (citing cases),
*aff'd in part,* 796 F.3d 783 (7th Cir. 2015).........................18

*Chen v. Allstate Ins. Co.,*
819 F.3d 1136 (9th Cir. 2016) ...............................17

*Churchill Village, LLC v. Gen. Elec.,*
361 F.3d 566 (9th Cir. 2004) ...............................14

*Class Plaintiffs v. City of Seattle,*
955 F.2d 1268 (9th Cir. 1992) ...............................13, 14

*Couser v. Comenity Bank,*
125 F. Supp. 3d 1034 (S.D. Cal. 2015) ...............................19

*Dennis v. Kellogg Co.,*
697 F.3d 858 (9th Cir. 2012) ...............................8

*Hanlon v. Chrysler Corp.,*
150 F.3d 1011 (9th Cir. 1998) ...............................22

*In re Bluetooth Headset Prods. Liab. Litig.,*
654 F.3d 935 (9th Cir. 2011) ...............................23

1

2

**TABLE OF AUTHORITIES**
**(continued)**

Page

3

*In re Omnivision Techs., Inc.,*
   559 F. Supp. 2d 1036 (N.D. Cal. 2007) ................................................ 22

4

5

*Jordan v. County of Los Angeles,*
   669 F.2d 1311 (9th Cir. 1982) (listing thirteen cases in which courts
   certified classes with fewer than 100 members),

6

   *vacated on other grounds*, 103 S.Ct. 35 ............................................... 24

7

*Juarez v. Citibank, N.A.,*
   No. 16-cv-01984-WHO, 2016 WL 4547914

8

   (N.D. Cal. Sept. 1, 2016) ..................................................................... 17

9

*Linney v. Cellular Alaska P'ship,*
   No. C-96-3008 DLJ, 1997 WL 450064 (N.D. Cal. July 18, 1997) ..................... 22

10

*Malta v. Fed. Home Loan Mortg. Corp.,*

11

   No. 10-CV-1290 BEN NLS, 2013 WL 444619 (S.D. Cal. Feb. 5, 2013) ...... 24, 25

12

*Malta v. Freddie Mac & Wells Fargo Home Mortgage,*
   No. 10-cv-1290-BEN-NLS (S.D. Cal. 2010) ........................................ 12

13

*Meyer v. Portfolio Recovery Associates, LLC,*

14

   707 F.3d 1036 (9th Cir. 2012) ......................................................... 24, 25

15

*Officers for Justice v. Civil Serv. Comm'n,*
   688 F.2d 615 (9th Cir. 1982) .............................................................. 14

16

*Romero v. Dep't Stores Nat'l Bank,*

17

   No. 15-CV-193-CAB-MDD, 2016 WL 4184099
   (S.D. Cal. Aug. 5, 2016) ..................................................................... 16

18

*Simon v. Healthways, Inc.,*

19

   Case No. 14-cv-08022-BRO, 2015 WL 10015953 (C.D. Cal. Dec. 17,
   2015) .............................................................................................. 18

20

*Spokeo v. Robins,*

21

   136 S. Ct. 1540 (2016) ....................................................................... 16

22

*Staton v. Boeing Co.,*
   327 F.3d 938 (9th Cir. 2003) .............................................................. 14

23

*Steinfeld, et al. v. Discover Fin. Servs.,*

24

   No. 3:12-cv-01118-JSW (N.D. Cal.) .................................................... 12

25

*Thomas v. Dun & Bradstreet Credibility Corp.,*
   100 F. Supp. 3d 937 (C.D. Cal. 2015) ................................................... 3

26

*Thorne v. Donald J. Trump for President, Inc.,*

27

   No. 1:16-cv-04603 (N.D. Ill) .............................................................. 16

28

*Torrisi v. Tucson Elec. Power Co.,*
   8 F.3d 1370 (9th Cir. 1993) ................................................................. 7

1
2

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

3

*Tyson Foods, Inc. v. Bouaphakeo,*
   136 S. Ct. 1036 (2016)..................................................................18

4
5

*Vadai v. Dun & Bradstreet Credibility Corp.,*
   302 F.R.D. 308 (S.D.N.Y. 2014)...................................................17

6
7

*Van Patten v. Vertical Fitness Grp., LLC,*
   No. 14-55980, 2017 WL 460663 (9th Cir. Jan. 30, 2017) ...................17

8

**STATUTES**

28 U.S.C. § 1715...............................................................................11, 23

9

47 U.S.C. § 227(b)(1)(A)......................................................................2

10

California Business & Professions Code §§ 17200, *et seq.* .......................2

11

**RULES**

12

Fed. R. Civ. P. 23(a)(1)........................................................................24

13

Fed. R. Civ. P. 23(a)(2)........................................................................24

14

Fed. R. Civ. P. 23(a)(3)........................................................................24

15

Fed. R. Civ. P. 23(a)(4)........................................................................25

16

Fed. R. Civ. P. 23(b)(3)........................................................................25

17

Fed. R. Civ. P. 23(e)(2)........................................................................14

18

**TREATISES**

19

4 *Newberg on Class Actions* (4th ed. 2002)
   § 11.25...........................................................................................13

20

   § 11.41...........................................................................................13

21

*Manual for Complex Litigation* (Fourth) (2004) ("*Manual for Compl. Lit.*")
   § 21.63...........................................................................................13

22

**OTHER AUTHORITIES**

23

Grant Premo, *Trump's New FCC Chairman Ajit Pai May Drain the TCPA
   Swamp*, JD Supra Business Advisor, Feb. 1, 2017..............................16

24

**REGULATIONS**

25

*In the Matter of Rules and Regulations Implementing the Telephone
   Consumer Protection Act of 1991,*

26

   30 F.C.C.R. 7961, 30 FCC Rcd. 7961, 62 Communications Reg. (P&F)
   1539, 2015 WL 4387780 (F.C.C.)...................................................16

27
28

## NOTICE OF MOTION AND MOTION

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

NOTICE IS HEREBY GIVEN that on March 20, 2017, at 1:30 p.m., or as soon as the matter may be heard, in the Courtroom of the Honorable Beverly Reid O'Connell of the Central District of California, located at 350 West 1st Street, Los Angeles, California, Courtroom 8B, 8th Floor, Plaintiff Jeffrey Thomas ("Plaintiff") on behalf of himself and all others similarly situated, by and through his undersigned counsel, requests that this Court grant final approval of the parties' proposed Settlement Agreement.  Dun & Bradstreet Credibility Corp. does not object to the motion in the context of the parties' proposed settlement.

The Motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities in Support of Motion for Final Approval and the exhibits thereto, Class Counsel's contemporaneously filed brief in response to settlement objections, the Proposed Order Granting Final Approval, the 9/8/16 Declaration of Daniel M. Hutchinson and the exhibits thereto (Dkt. Nos. 59 and 59-1), the 12/8/16 Declaration of Daniel M. Hutchinson and the exhibits thereto (Dkt. No. 68-1), the Declaration of Aaron Siri (Dkt. No. 67-2), the Declaration of Jeffrey A. Thomas (Dkt. No. 67-3), the Declaration of Steven J. Powell and the exhibits thereto, the pleadings and papers filed in this case, and any oral argument this Court permits.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Plaintiff Jeffrey A. Thomas ("Plaintiff") respectfully moves the Court for final approval of the nationwide class action settlement ("Settlement") reached between Plaintiff and Dun & Bradstreet Credibility Corp. ("Defendant").  The Settlement would resolve all claims in the above-entitled action (the "Action").  The Action alleges that Defendant or others on its behalf called Plaintiff and Class Members on their cellular telephones through the use of an automatic telephone dialing system without Plaintiff's or Class Members' prior express consent, in violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227(b)(1)(A) and California Business & Professions Code §§ 17200, *et seq.*, the Unfair Competition Law ("UCL").

As described below, the Settlement requires Defendant to pay an all-cash sum of $10,500,000.00 into a settlement fund ("Fund").  Each Class Member who files a qualified claim will receive a *pro rata* cash payment of approximately $100.  No money will revert back to Defendant.  The Settlement also confirms practice changes designed to prevent violations of the TCPA's provisions on dialing cell phones using an automatic telephone dialing system.  Therefore, the alleged conduct that gave rise to this litigation has ended.  This is an excellent result that is better, both overall and on a per-class member basis, than similar TCPA and UCL class action settlements that courts have recently approved.  Class Counsel achieved this Settlement despite the fact that they faced real, case-dispositive risks at every stage of this litigation.

Class Counsel and Defendant have engaged in extensive formal and informal discovery and evaluation of Plaintiff's hotly contested TCPA and UCL claims.  The parties reached settlement only weeks before Plaintiff was to file his Motion for Class Certification.

With this motion, Plaintiff seeks final approval of the Settlement and

certification of a nationwide Settlement Class, and asks the Court to find that Notice comported with due process, to grant all requests for exclusion from the Settlement Class, and to overrule all objections to the Settlement. The Settlement satisfies all criteria for approval under Ninth Circuit law and is fair, reasonable, and adequate.

## II.   STATEMENT OF THE FACTS

### A.   Procedural Background

Following over a year of extensive pre-filing investigation and related litigation, Plaintiff Thomas filed this action on April 28, 2015. 9/8/2016 Declaration of Daniel M. Hutchinson ("Hutchinson Decl.") (Dkt. No. 59), ¶¶ 21-26, 28; Complaint (Dkt. No. 1).

The parties engaged in significant motion practice regarding their respective pleadings. Hutchinson Decl., ¶ 30. On June 12, 2015, Defendant filed a motion to dismiss the Complaint. Dkt. No. 16. Plaintiff filed an opposition and provided supplemental authority to the Court. Dkt. Nos. 17, 18. Following full briefing by the parties, the Court denied that motion on August 5, 2015. *Thomas v. Dun & Bradstreet Credibility Corp.*, 100 F. Supp. 3d 937 (C.D. Cal. 2015) (Dkt. No. 23).

Defendant filed an Answer on August 20, 2015, vigorously contesting Plaintiff's TCPA and UCL claims and asserting 26 affirmative defenses. Dkt. No. 26. Over the next two months, the parties met and conferred extensively regarding Plaintiff's proposed motion pursuant to Rule 12(f) to strike certain of Defendant's affirmative defenses. Hutchinson Decl., ¶ 34. Following that process, Defendant filed an amended answer that withdrew seven affirmative defenses. Dkt. No. 38.

### B.   The Classwide Discovery

The parties have engaged in significant discovery regarding Plaintiff's allegations. Hutchinson Decl., ¶ 36. After Plaintiff served discovery requests on July 27, 2015, the parties negotiated a stipulated protective order and met and conferred regularly for four months regarding Plaintiff's discovery requests. *Id.*,

¶ 37-39.  Those efforts culminated in a motion to compel and joint stipulation pursuant to Local Rule 37-2.3 regarding several categories of contested discovery requests.  *Id.*, ¶ 40.  However, shortly before filing the motion, the parties came to a compromise agreement that resulted in the production of several key categories of discovery.  *Id.*, ¶ 40.

First, Defendant produced call data to Plaintiff's expert so that he could determine the total number of cellular telephone numbers dialed by Defendant.  Hutchinson Decl., ¶ 41.  Second, Defendant produced a total of 8,812 pages of documents and responded in detail to interrogatories propounded by Plaintiff.  *Id.*, ¶ 42.  In addition, Plaintiff obtained 982 documents in response to a nonparty subpoena to a third-party vendor.  *Id.* ¶ 43.  Plaintiff's counsel examined this information and prepared to file for class certification on June 6, 2016.  *Id.*, ¶ 44.

Plaintiff scheduled and fully prepared for Rule 30(b)(6) depositions of Defendant's witnesses in May 2016.  Hutchinson Decl., ¶ 45.  But, some two days before the depositions were to proceed, the parties postponed them to pursue mediation.  *Id.*, ¶ 53.

For its part, Defendant engaged in extensive discovery of the named plaintiff.  Defendant served document requests and interrogatories, and deposed Plaintiff Thomas in Grants Pass, Oregon.  Hutchinson Decl., ¶ 46-48.  Defendant served third-party discovery requests on Plaintiff Thomas' business, wife and business representative, and cell phone provider, and deposed Plaintiff's wife in her individual capacity and as a representative for Plaintiff's business in Grants Pass, Oregon.  *Id.* ¶ 49-50.

Additionally, Defendant has continued to provide Class Counsel with any additional information as necessary to reasonably confirm the material information provided to Class Counsel during settlement negotiations and administrative plans and procedures for compliance with the terms of the Settlement.  Hutchinson Decl., ¶ 59.  Such discovery further confirms that the terms of the Settlement are fair,

1  reasonable, and adequate.

2  **C.      The Parties Settled After Engaging in Full Classwide Discovery**

3        As described above, by the time the parties explored settlement, they had

4  already fully litigated for a year and Plaintiff had prepared to file his motion for

5  class certification.  Hutchinson Decl., ¶¶ 28-44.  The litigation included hotly

6  contested motion practice and classwide discovery.  *Id.*  This discovery was

7  essential to the parties' ability to become fully informed on all relevant case issues.

8        The parties participated in settlement negotiations with the assistance of the

9  Hon. Morton Denlow (Ret.), a JAMS mediator in Chicago, Illinois.  Hutchinson

10 Decl., ¶ 54.  Before the mediation date, the parties exchanged written mediation

11 statements laying out their relative views of the law and the facts and potential

12 relief for the proposed Class.  *Id.*  During the daylong mediation session, counsel

13 exchanged a series of counterproposals on key aspects of the Settlement, including

14 the parameters of the non-reversionary common fund that will provide monetary

15 relief for the Class.  *Id.*  This daylong mediation session ended in an impasse and it

16 took an additional week for the parties, through the efforts of Judge Denlow, to

17 reach mutually agreeable settlement terms.  *Id.*  At all times, the parties' settlement

18 negotiations were highly adversarial, non-collusive, and at arm's length.  *Id.*, ¶ 55.

19 The Settlement Agreement is a result of these arm's-length negotiations, which

20 were themselves the product of an adversarial, yearlong discovery process.  *Id.*,

21 ¶ 55-56.  At the time the case settled, Plaintiff's counsel were preparing to draft a

22 motion requesting that the Court certify a class identical in all material respects to

23 the Settlement Class now proposed for certification.  *Id.*, ¶ 44.  Plaintiff was

24 therefore acutely aware of the risks posed at class certification and that class

25 certification in this case would be hotly contested.  *Id.*, ¶ 53.

26 **D.      The Settlement**

27       The Settlement's details are contained in the Agreement signed by the

28 parties, a copy of which was attached as Exhibit 1 to the Motion for Preliminary

MOTION FOR FINAL APPROVAL
OF CLASS ACTION SETTLEMENT
CV15-03194 BRO (GJSX)

1   Approval (Dkt. No. 58-1).  For purposes of final approval, the following
2   summarizes the Agreement's terms:

3                  **1.      The Settlement Class**
4         The Settlement Class is comprised of:
5         all persons within the United States who, between April 28, 2011 and
6         January 31, 2016, received a nonemergency Call from or on behalf of
7         Dun & Bradstreet Emerging Businesses Corp., or its predecessor
8         entities, Dun & Bradstreet Credibility Corp., Credibility Corp. and
9         Brad Acquisition Corp. to a cellular telephone through the use of an
10        automatic telephone dialing system.

11  Agreement § 2.32.  Excluded from the Class are Defendant; its parent companies,
12  affiliates or subsidiaries, or any employees thereof, and any entities in which any of
13  such companies has a controlling interest; the judge or magistrate judge to whom
14  the Action is assigned; any member of those judges' staffs and immediate families;
15  and Plaintiff's counsel.  *Id.*  Discovery confirms that approximately
16  1,192,555 persons in the Class received calls.  Hutchinson Decl., ¶ 58.

17             **2.      Monetary Relief for Settlement Class Members**
18        The Settlement requires Defendant to create a non-reversionary Settlement
19  Fund of $10,500,000.  Agreement § 4.02.  Out of this Fund, eligible Settlement
20  Class Members who file a qualified claim will receive a Settlement Award.  *Id.*
21  Class Members who received calls at more than one cellular telephone number may
22  make a claim for each number called.  *Id.* §§ 4.03, 9.01.  Awards will be
23  distributed, at the Class Member's election, by check or secure electronic payment.
24  *Id.* § 4.03.
25        The amount of each Class Member's Award will be based on a *pro rata*
26  distribution, depending on the number of valid and timely claims, as more fully
27  described below.  *Id.* § 4.04.  Class Counsel expect awards of approximately $100
28  after deductions for Court-approved attorneys' fees and costs, a Court-approved

incentive award to the Plaintiff, and costs of notice and claims administration. *See id.*; Ex. 1, Declaration of Steven J. Powell ("Powell Decl."), ¶ 15. Checks for Cash Awards will be valid for 180 days from the date of the check. Agreement § 9.03. In the event that 180 days after the initial distribution the combined amounts of uncashed checks exceeds $200,000, the Claims Administrator will make a second distribution of the remaining funds on a *pro rata* basis to those Class Members who previously cashed checks or received electronic payments. *Id.* § 7.05.

In order to exercise the right to obtain the relief outlined above, Class Members completed a simple, one-page claim form and provided it to the Claims Administrator via the Internet site, through a dedicated telephone hotline, or by postage-paid return mail. *Id.* § 9.02. Class Members had 90 days from the Settlement Notice Date—*i.e.* more than 120 days from the Preliminary Approval Order—to submit their claim forms, or 60 days to submit written requests to be excluded from or opt out of the Class—*i.e.* more than 90 days from the Preliminary Approval Order. *Id.* §§ 2.09, 2.26, 2.27; *cf. Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370 (9th Cir. 1993) (approving notice sent 31 days before the deadline for objections).

### 3.   **Defendant's Practice Changes**

Defendant made certain practice changes designed to prevent violations of the TCPA's provisions on dialing cell phones using an automatic telephone dialing system. Agreement § 4.01.

### 4.   *Cy Pres* **Distributions**

In the event that the combined amounts of any settlement payment checks to Class Members that remain uncashed for more than 180 days is equal to or less than $200,000, the parties jointly proposed that the money be distributed *cy pres* to the Opportunity Fund, a non-profit microlending organization whose mission, in part, is to provide microloans for small business owners like the small business owners who comprise the Settlement Class in this Action. Joint Status Report Re: *Cy Pres*

- 7 -

1   Designee for Class Action Settlement (Dkt. No. 66); *see also*

2   https://www.opportunityfund.org/.  Neither the parties nor their counsel believe

3   they have any relationship with the Opportunity Fund.  Dkt. No. 66 at 2.  The

4   Opportunity Fund meets the Ninth Circuit's requirements for *cy pres* approval.  *See*

5   *Dennis v. Kellogg Co.*, 697 F.3d 858, 865 (9th Cir. 2012) (holding that there must

6   be "a driving nexus between the plaintiff class and the *cy pres* beneficiaries" and

7   that the *cy pres* award must be "guided by (1) the objectives of the underlying

8   statute(s) and (2) the interests of the silent class members,...and must not benefit a

9   group too remote from the plaintiff class").  At least one district court in this Circuit

10  has explicitly found, in the context of a TCPA class action settlement, that the

11  Opportunity Fund complies with the *Kellogg* requirements.  *See, e.g.*, *Bayat v. Bank*

12  *of the W.*, No. C-13-2376 EMC, 2015 WL 1744342, at *10 (N.D. Cal. Apr. 15,

13  2015) (approving the Opportunity Fund as *cy pres* recipient in TCPA class action).

14                      **5.   Class Release**

15          In exchange for the benefits allowed under the Settlement, Class Members

16  who do not opt out will provide a release tailored to the practices at issue in this

17  case.  Specifically, they will release all claims "that arise out of" the "use of an

18  'automatic telephone dialing system' or 'artificial or prerecorded voice' to contact

19  or attempt to contact Settlement Class Members."  Agreement § 14.01.

20                  **6.   Class Representative Service Award**

21          By separate motion, Class Counsel asked the Court to award Plaintiff a

22  service award for the time and effort he has personally invested in this Action.  The

23  class notice informed Class Members that Plaintiff would apply for an incentive

24  award of $10,000.  As part of the Settlement, Defendant takes no position on an

25  incentive payment to be paid to the Plaintiff from the Settlement Fund.  Receipt of

26  any service award is *not* conditioned on approval of the Settlement.  Agreement

27  § 5.02.  Class Counsel has previously submitted a declaration detailing the time,

28  risk, and burden carried by the Plaintiff in this Action, and the benefit he provided

to counsel and the class throughout the litigation.  *See* Hutchinson Decl., ¶¶ 46-50, 65-68.  Plaintiff submitted a declaration describing his involvement in the case when Class Counsel filed the Motion for Attorneys' Fees and Costs and a Service Award.  *See* Declaration of Jeffrey Thomas ("Thomas Decl.") (Dkt. 67-3), ¶¶ 1-6.

### 7.   Attorneys' Fees and Costs

Class Counsel have applied to the Court for an award of attorneys' fees and costs.  The class notice informed all Class Members of this request.  Defendant agreed not to contest Class Counsel's application to this Court for payment of attorneys' fees of not more than 30 percent of the Settlement Fund and costs incurred by Class Counsel in litigating this action.  It bears noting that Defendant's agreement was not and should not be construed in any way as a condition to settlement.  Agreement § 5.01.  As addressed in Class Counsel's motion for attorneys' fees and costs and Plaintiff's Response to Objectors (filed herewith), this amount comports with both California and Ninth Circuit law for compensating Class Counsel in common fund class action settlements for the substantial work they have performed in procuring a settlement for the Class, as well as the work remaining to be performed in documenting the settlement, securing Court approval of the settlement, overseeing settlement implementation and administration of a class of approximately 1,192,555 individuals, assisting these Class Members including responding to their varied inquiries, and obtaining dismissal of the action. The enforceability of the Settlement is *not* contingent on Court approval of an award of attorneys' fees or costs.  *Id.*

### 8.   Administration and Notice

All costs of notice and claims administration will be paid from the Settlement Fund.  The Court appointed Kurtzman Carson Consultants LLC ("KCC") to administer the Settlement, subject to review by Class Counsel, which includes the following duties:  (1) issuing Class Notice and claim forms; (2) obtaining new addresses for returned email and mail; (3) setting up and maintaining the settlement

1   website and toll-free number; (4) responding to Class Member inquiries regarding
2   the claims administration process; (5) approving or rejecting claims; and
3   (6) calculating and issuing settlement payments.  Agreement §§ 7.01-7.06.
4   Defendant agreed to cooperate with KCC to ensure that it has all of the information
5   it needs to perform these tasks and to complete the CAFA notice process.  *Id.*
6   § 7.05.

7   **III.   CLASS NOTICE HAS BEEN DISSEMINATED, AND THE CLAIMS**
8   **ADMINISTRATION PROCESS HAS BEEN SUCCESSFUL**

9   The notice program approved by the Court (*see* Dkt. No. 65) has been
10  implemented by the parties and the Court-approved Settlement Administrator in
11  accordance with the Court's direction.  *See generally* Powell Decl., ¶¶ 2-15.

12  **A.    Direct Mail and Email Notice**

13  On November 6, 2016, the Settlement Administrator sent an Email Notice to
14  the email addresses of 347,851 Class Members.

15  On November 9, 2016, the Settlement Administrator mailed a Postcard Claim
16  Form ("Postcard Notice") to 1,091,311 addresses that were obtained from a
17  database provided by Defendant.  Prior to mailing, the names and addresses were
18  updated using the United States Postal Service (USPS) National Change of Address
19  (NCOA) database, certified via the Coding Accuracy Support System (CASS), and
20  verified through Delivery Point Validation (DPV).

21  Since mailing the Postcard Notice, the Settlement Administrator received
22  160,324 Postcard Notices returned by the United States Postal Service ("USPS") as
23  undeliverable.  The Settlement Administrator performed a "skip trace" search on
24  the undeliverable Postcard Notices and found 66,866 new addresses.  It then re-
25  mailed Postcard Notices to the updated addresses.

26  **B.    CAFA Notice**

27  The Settlement Administrator, under Defendant's supervision, provided
28  notice of the Settlement to the officials designated pursuant to the Class Action

MOTION FOR FINAL APPROVAL
OF CLASS ACTION SETTLEMENT
CV15-03194 BRO (GJSX)

1  Fairness Act, 28 U.S.C. § 1715.  To date, there have been no objections from any of

2  the attorneys general.

3     **C.     Social Media Notice**

4        The Settlement Administrator also ran a social media notice campaign using

5  targeted Facebook advertising.  It began on November 9, 2016 and ended on

6  December 8, 2016.  The media campaign targeted cell phone users 18 years of age

7  or older and gained 17,655,170 impressions.

8     **D.     Toll-Free Number and Settlement Website**

9        On November 9, 2016, the Settlement Administrator activated a toll-free

10  number (1-888-344-6707) that Class Members could use to learn more about the

11  Settlement in the form of answers to frequently asked questions, request to have

12  more information mailed directly to them, and file a claim.  The toll-free number

13  was prominently displayed in all printed notice materials.  To date, the toll-free

14  number has received 4,667 calls, of which 517 have been transferred to a live

15  operator.

16        On November 9, 2016, the Settlement Administrator also launched the

17  official Settlement website, www.CredibilityTCPASettlement.com.  Class

18  Members who visited the website were able to obtain additional information and

19  documents about the settlement including answers to Frequently Asked Questions,

20  the Class Notice in English and Spanish, the Claim Form in English and Spanish, a

21  Settlement Exclusion Form in English and Spanish, the Settlement Agreement,

22  Preliminary Approval Order, and other important court documents.  Class Members

23  could also use the Settlement website to file a claim.  The website address was

24  prominently displayed in all printed notice materials.  To date, the website has

25  received 58,992 visitors.

26     **E.     Claim Submission**

27        The postmark deadline for submitting a Claim Form or submitting a claim

28  online or by phone was February 6, 2017.  To date, a total of 65,731 timely claims

have been filed, of which 45,140 were received via mail, 20,077 were submitted online, and 514 were received over the phone.  In addition, to date, 33 late claims have been received.  This 6% claims rate compares favorably to other class action settlements of TCPA and UCL claims.  *See, e.g.*, *Steinfeld v. Discover Fin. Servs.*, No. 3:12-cv-01118-JSW (N.D. Cal.) (1.20%); *Arthur v. Sallie Mae, Inc.*, No. 2:10-cv-00198-JLR (W.D. Wash.) (2.20%); *Adams v. AllianceOne Receivables Mgmt., Inc.*, No. 3:08-cv-00248-JAH-WVG (S.D. Cal.) (1.10% claim rate); *Malta v. Freddie Mac & Wells Fargo Home Mortgage*, No. 10-cv-1290-BEN-NLS (S.D. Cal.) (2.78%).

### F.   Objections and Requests for Exclusion

The postmark deadline for submitting a Request for Exclusion was January 7, 2017.  To date, the Settlement Administrator has received 81 timely Requests for Exclusion and two (2) late Requests for Exclusion—less than 0.007% of Class Members.  A list of Class Members who have submitted a Request for Exclusion is attached to the Powell Declaration as Exhibit C.

The postmark deadline for submitting an Objection was January 7, 2017. To date, the Settlement Administrator has received three (3) Objections.  Copies of the Objections are attached to the Powell Declaration as Exhibit D.  The Settlement Administrator queried Defendant's call database and determined that Objectors Hall and Pentz received one or more calls from Defendant during the Class Period.  The telephone number listed on Objector Arbelaez's objection did not appear in the call database.

## IV.   ARGUMENT AND AUTHORITY

### A.   The Class Action Settlement Approval Process

Federal courts strongly favor and encourage settlements, particularly in class actions and other complex matters, where the inherent costs, delays, and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain.  *See Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276

1   (9th Cir. 1992) (noting the "strong judicial policy that favors settlements,

2   particularly where complex class action litigation is concerned"); *see also*

3   4 *Newberg on Class Actions* § 11.41 (4th ed. 2002) (citing cases).  The traditional

4   means for handling claims like those at issue here—individual litigation—would

5   unduly tax the court system, require a massive expenditure of public and private

6   resources and, given the relatively small value of the claims of the individual Class

7   Members, would be impracticable.  Thus, the proposed Settlement is the best

8   vehicle for Class Members to receive relief to which they are entitled in a prompt

9   and efficient manner.

10          The *Manual for Complex Litigation* (Fourth) (2004) § 21.63 ("*Manual for*

11   *Compl. Lit.*") describes a three-step procedure for approval of class action

12   settlements:

13          (1)  Preliminary approval of the proposed settlement at an informal

14               hearing;

15          (2)  Dissemination of mailed and/or published notice of the settlement

16               to all affected class members; and

17          (3)  A "formal fairness hearing" or final settlement approval hearing,

18               at which class members may be heard regarding the settlement, and at

19               which evidence and argument concerning the fairness, adequacy, and

20               reasonableness of the settlement may be presented.

21   This procedure, used by courts in this Circuit and endorsed by class action

22   commentator Professor Newberg, safeguards class members' due process rights and

23   enables the Court to fulfill its role as the guardian of class interests.  4 *Newberg*

24   § 11.25.

25          The first two steps in this process have occurred.  With this motion, Plaintiff

26   respectfully requests that the Court take the third and final step in the process by

27   granting final approval of the settlement.

28

**B.** **The Settlement is Fair, Reasonable, and Adequate, and Should be Approved**

It is well settled that the law favors the compromise and settlement of class action suits. *See Churchill Village, LLC v. Gen. Elec.,* 361 F.3d 566, 576 (9th Cir. 2004); *Class Plaintiffs,* 955 F.2d at 1276; *Officers for Justice v. Civil Serv. Comm'n,* 688 F.2d 615, 625 (9th Cir. 1982) ("[V]oluntary conciliation and settlement are the preferred means of dispute resolution. This is especially true in complex class action litigation….").

A proposed class action settlement should be approved if the Court, after allowing absent class members an opportunity to be heard, finds that the settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). When assessing a proposed settlement, "the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Officers for Justice,* 688 F.2d at 625.

Courts in the Ninth Circuit consider a number of factors in evaluating class settlements, recognizing that "it is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness." *Staton v. Boeing Co.,* 327 F.3d 938, 952 (9th Cir. 2003). The Ninth Circuit has set forth the following list of factors to be considered: (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement. *Churchill Village,* 361 F.3d at 575.

Application of these factors here confirms that the settlement is fair, reasonable, and adequate, and should be finally approved.

### 1. The Strength of Plaintiff's Case and the Risk, Expense, Complexity, and Likely Duration of Further Litigation

Plaintiff continues to believe that his claims against Defendant have merit and that he could make a compelling case if his claims were tried. If Plaintiff were to prevail, Defendant could face significant statutory penalties. Nevertheless, it is apparent that Plaintiff and the Class would face a number of difficult challenges if the litigation were to continue.

### a. Challenges to the Claims on Their Merits

This Action presented risks on the merits.

First, Plaintiff faced the omnipresent risk of the arguments presented in Defendant's motion to dismiss: (1) Plaintiff's business, and not Plaintiff, was the proper party in this action; (2) Plaintiff was not a "called party" with standing under the TCPA; (3) Section 227(b)(1)(A)(iii) does not apply to business calls; and (4) Plaintiff was not the "current subscriber" of his business' telephone line. *See* Dkt. Nos. 19, 23. Even though the Court denied Defendant's motion to dismiss at the Rule 12(b)(6) stage, it left undecided these issues of law that Defendant would likely raise in any future dispositive motion practice. The Court did not decide whether one must be a "called party" to have standing under the TCPA, whether § 227(b)(1)(A)(iii) applies to business calls, and whether California law should apply to this action. Dkt. No. 23. Defendant tried to marshal facts in support of its argument that Thomas was not the "current subscriber" of the line, and therefore ineligible for relief in this action. *See* Dkt. No. 19. While Plaintiff testified that he received autodialed calls from Defendant on his cellular phone, Defendant would no doubt continue to argue that Plaintiff's business, and not Plaintiff, was the proper party in this action.

Second, the Parties have competing interpretations of what constitutes, and

who can provide, "prior express consent," and what constitutes an automatic telephone dialing system ("ATDS") under various FCC Orders interpreting the TCPA. *See, e.g.*, *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 30 F.C.C.R. 7961, 30 FCC Rcd. 7961, 62 Communications Reg. (P&F) 1539, FCC 15-72, 2015 WL 4387780 (F.C.C.). Defendant argues that it did not use equipment that would constitute an ATDS under the various FCC Orders, that the FCC adopted an incorrect interpretation of the statute, and that a pending petition to the D.C. Circuit will overturn the FCC's 2015 Order, in particular. *See ACC Int'l v. FCC*, No. 15-1211 (D.C. Cir.). These risks are particularly salient because President Trump will appoint two new FCC commissioners in 2017 who will shift the balance of power on the five-member commission. *See, e.g.*, Grant Premo, *Trump's New FCC Chairman Ajit Pai May Drain the TCPA Swamp*, JD Supra Business Advisor, Feb. 1, 2017, available at https://goo.gl/uTF5bm. Mr. Trump has criticized certain litigation and currently faces a TCPA class action. *See Thorne v. Donald J. Trump for President, Inc.*, No. 1:16-cv-04603 (N.D. Ill). Since prior express consent is a complete defense to a claim under the TCPA, Defendant's arguments, if accepted by the D.C. Circuit and/or the new FCC, would have resulted in no recovery for Plaintiff and many (if not all) members of the Class.

Third, Plaintiff faced the real possibility of an adverse ruling from the Supreme Court that would have resulted in no relief at all for the Class. 12/8/16 Hutchinson Decl. (Dkt. No. 68-1) ¶¶ 67-68. In *Spokeo v. Robins*, 136 S. Ct. 1540 (2016), the Supreme Court considered whether an alleged violation of a federal statute, without any concrete harm, confers Article III standing. Although many courts have since held that TCPA claims satisfy Article III's injury-in-fact requirement, some decisions support Defendant's position. *Compare Romero v. Dep't Stores Nat'l Bank*, No. 15-CV-193-CAB-MDD, 2016 WL 4184099, at *6 (S.D. Cal. Aug. 5, 2016) (dismissing TCPA claims where the plaintiff "has not and

cannot satisfy the injury-in-fact requirement of Article III") *with Juarez v. Citibank, N.A.,* Case No. 16-cv-01984-WHO, 2016 WL 4547914, at *3 (N.D. Cal. Sept. 1, 2016) (finding standing post-*Spokeo*); *but see Van Patten v. Vertical Fitness Grp., LLC*, No. 14-55980, 2017 WL 460663, at *5 (9th Cir. Jan. 30, 2017) (holding that a plaintiff alleging a TCPA violation satisfies Article III standing requirement).

Fourth, Defendant has, in the past, made an offer of judgment under Rule 68 and claimed that Plaintiff's claims consequently were mooted. Although that specific proposition was rejected in *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663 (2016), there remained the risk that a more complete tender might moot Plaintiff's claims until the Ninth Circuit recently decided *Chen v. Allstate Ins. Co.*, 819 F.3d 1136, 1149 (9th Cir. 2016). Indeed, this was more than just a theoretical possibility as a prior TCPA action against Defendant by the same Plaintiff's counsel was mooted for this very reason. *Vadai v. Dun & Bradstreet Credibility Corp.*, 302 F.R.D. 308 (S.D.N.Y. 2014).

Fifth, at least some courts view awards of aggregate, statutory damages with skepticism and reduce such awards on due process grounds. *See, e.g.*, *Aliano v. Joe Caputo & Sons—Algonquin, Inc.*, No. 09 C 910, 2011 WL 1706061, at *4 (N.D. Ill. May 5, 2011) (noting that FACTA statutory damages of $100 to $1000 per violation, "although authorized by statute, would be shocking, grossly excessive, and punitive in nature").

Finally, there is the risk of losing a jury trial. And, even if Plaintiff and the Class did prevail, any recovery could be delayed for years by an appeal. Although Plaintiff disputes and disagrees with each of Defendant's defenses, it is obvious that his likelihood of success at trial was far from certain, and supports the Settlement. The Settlement provides substantial relief to Class Members without further delay.

### b. The Risk of Obtaining and Maintaining Class Action Status Throughout Trial

Plaintiff faced an acute risk that the Court would decline to certify this case

1    as a class action.

2           After this case was filed, the Supreme Court granted certiorari in *Tyson*

3    *Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036 (2016), in part to consider whether and

4    when a class can be certified that includes "uninjured" class members.  The Court

5    ultimately did not reach the question and the possibility remained open that a

6    similar argument could result in denial of certification here.

7           In addition, this Court very recently denied class certification in a similar

8    TCPA class action, finding that the issue of prior express consent was an

9    individualized issue that precluded class certification.  *Simon v. Healthways, Inc.*,

10   Case No. 14-cv-08022-BRO, 2015 WL 10015953 (C.D. Cal. Dec. 17, 2015).

11   Similarly, some of Class Counsel lost class certification on this precise basis in a

12   similar action in this District.  *See Aghdasi v. Mercury Ins. Grp., Inc.*, No. CV 15-

13   4030-R, 2016 WL 5899290, at *1 (C.D. Cal. Jan. 21, 2016) (describing

14   "individualized" issues regarding prior express consent that predominated over

15   common questions).  Indeed, throughout the country, "[c]ourts are split on whether

16   the issue of individualized consent renders a TCPA class uncertifiable on

17   predominance and ascertainability grounds, with the outcome depending on the

18   specific facts of each case."  *Chapman v. First Index, Inc*., No. 09 C 5555, 2014

19   WL 840565, at *2 (N.D. Ill. Mar. 4, 2014) (citing cases), *aff'd in part*, 796 F.3d 783

20   (7th Cir. 2015).

21          Because Defendant has consistently maintained that it had prior express

22   consent to contact many (if not most) Class Members, Plaintiff faced the very same

23   issue in this matter.  If Defendant was able to present convincing facts to support its

24   position, the Court might decline to certify the class, leaving only Plaintiff's

25   individual claims.  *See Arthur v. Sallie Mae, Inc.*, No. 2:10-cv-00198-JLR, 2012

26   WL 4075238, at *1 (W.D. Wash. Sept. 17, 2012) (granting final approval of TCPA

27   settlement and noting that "[c]ourts have split on class certification in TCPA cases,

28   increasing the risk of maintaining the class action through trial").

Even if the Court certified the proposed class, Plaintiff faced the risk that subsequent developments in the case or in controlling law would cause the Court to revisit its prior ruling and decertify the Class.  *See Couser v. Comenity Bank*, 125 F. Supp. 3d 1034, 1042 (S.D. Cal. 2015) (observing that "risk that the Class would either not be certified or that something may arise before trial to decertify the class . . . . weighs in favor of settlement").

### 2. <u>The Amount Offered in Settlement</u>

The Settlement provides relief for all Class Members to whom Defendant made automated calls.  Agreement §§ 4.01, 4.02.  All Class Members will benefit from Defendant's business practice changes, protecting them from violations of the TCPA's provisions on the use of an automatic dialing system.  The Settlement also requires Defendant to pay $10,500,000 into a non-reversionary Settlement Fund, out of which eligible Class Members will receive Settlement Awards in the form of cash payments.  *Id*. §§ 4.03.

### a. <u>The Business Practice Changes</u>

Class Counsel's interviews with Plaintiff and Class Members revealed that stopping the autodialed calls to their cell phones was the primary goal of this litigation.  12/8/16 Hutchinson Decl. (Dkt. No. 68-1), ¶ 86; Thomas Decl., ¶ 3. Defendant's practice changes are designed to achieve this result and will protect Settlement Class Members from receiving automated calls in violation of the TCPA.  Specifically, Defendant made changes to its policies and practices to ensure that it would not contact cellular phones using an autodialer.  This amounts to meaningful relief that is important to Class Members because it will prevent them from receiving future potentially non-compliant calls from Defendant on their cellular phones.

### b. <u>The Monetary Relief</u>

The Settlement requires a non-reversionary payment of $10,500,000 into a common fund, out of which Class Member claimants will receive their *pro rata*

1  share of cash payments, currently projected to be approximately $100 per claimant.

2  No amount of this fund will revert back to Defendant.  The Settlement achieved by

3  Class Counsel therefore provides significant monetary relief to the Class Members.

4         This is an excellent result when measured against prior TCPA and UCL

5  settlements.  A recent TCPA settlement underscores just how phenomenal a result

6  Class Counsel achieved here.  In *Adams v. AllianceOne Receivables Mgmt. Inc.,*

7  No. 3:08-cv-00248-JAH-WVG (S.D. Cal.), Judge Houston approved a $9 million

8  settlement and awarded class counsel 30% of the settlement fund as attorneys' fees.

9  12/8/16 Hutchinson Decl. (Dkt. No. 68-1), ¶ 93 & Ex. G.  The class in that case

10 consisted of more than 6,079,411 people, resulting in a *pro rata* amount of $1.48

11 per class member.  *Id.*  Here, Class Counsel achieved a settlement of $10,500,000

12 million for 1,192,555 Class Members, or **$8.80** per Class Member.  In other words,

13 the monetary relief here is ***six times better*** than a similar settlement recently

14 approved as fair, adequate, and reasonable.  Nor is this an isolated example.  As

15 shown in the separate Response to Objections, this Settlement is nearly twice as

16 good as the best TCPA robocall class action settlement identified by the objectors,

17 and more than eight times better than the smallest.

| Case | Settlement Amount | Class Size | Relief Per Class Member |
|------|-------------------|------------|-------------------------|
| *Gehrich v. JP Morgan Chase*, No. 12 C 5510 | $34 million | 33,786,351 | $1.01 |
| *Wilkins v. HSBC Bank Nevada, N.A.,* 1:14-cv-00190 | $39.975 million | 9,065,262 | $4.41 |
| *Bayat v. Bank of the West*, c-13-2376-EMC | $3,354,745.98 | 871,836 | $3.85 |
| *Couser v. Comenity Bank*, 3:12-cv-02484-MMA-BGS | $8.5 million | 4.3 million | $1.98 |
| *In re Capital One Tel. Consumer Prot. Act Litig.*, 1:12-cv-10064 | $75.5 million | 17.5 million | $4.31 |

| Case | Settlement Amount | Class Size | Relief Per Class Member |
|------|-------------------|------------|-------------------------|
| *Rose v. Bank of Am. Corp.*, No. 5:11-CV-02390-EJD (cited in Hall objection as *Duke v. Bank of America, N.A.*, 5:12-cv-04009) | $32 million | 7 million | $4.57 |
| *Bellows v. NCO Fin. Sys., Inc.*, 07-cv-1413 W | $950,000 | "thousands" | Unknown; only 29 claims were filed; each claimant was paid $70, for a total of only $2,030. |

Most importantly, the Settlement provides Class Members with real monetary relief, despite the fact that this is a purely statutory damages case involving nominal economic damages or actual damages (such as harassment and invasion of privacy) that are difficult to quantify. The Settlement provides direct, monetary benefits to Class Members who received only a handful of calls. Class Members realistically would not have filed individual lawsuits because almost any case would be too small to bring on its own.

### 3. The Extent of Discovery Completed and the Stage of Proceedings

The Settlement was informed by Class Counsel's thorough investigation and analysis of the factual and legal issues involved. Class Counsel and Defendant did the work to evaluate properly the value of the case and reach a reasonable resolution. Class Counsel spent significant time thoroughly investigating the factual and legal claims involved in this action, as well as interviewing and collecting relevant information from Class Members, prior to filing the Complaint. In fact, Class Counsel engaged in significant discovery and motion practice in a previous action against Defendant, which contributed to Class Counsel's understanding of the claims and defenses that eventually arose in this case.

In the instant action, Plaintiff served and Defendant answered written requests for production and interrogatories. Plaintiff also reviewed thousands of

- 21 -

1    pages of documents and retained an expert to analyze Defendant's telephone call

2    data.  Plaintiff, his wife, and business were deposed, and Plaintiff was preparing to

3    depose Defendant's 30(b)(6) witness when the parties pursued mediation.  As a

4    result, Class Counsel were well-positioned to evaluate the strengths and weaknesses

5    of their case, as well as the appropriate basis upon which to settle it.  *See Hanlon v.*

6    *Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998) (approving settlement where

7    there was no evidence suggesting "that the settlement was negotiated in haste or in

8    the absence of information").

9        Settlement negotiations were prolonged and hard-fought.  At the time the

10   case settled, Plaintiff's counsel was preparing to file a class certification brief and

11   move forward with litigation.  Accordingly, the final terms of settlement were

12   agreed to only after Class Counsel thoroughly vetted the claims and potential

13   damages through the exchange of both informal and formal discovery and

14   participated in arm's length negotiations.

15           **4.    The Experience and Views of Counsel**

16       Class Counsel are particularly experienced in litigating TCPA and UCL

17   claims, and had a keen understanding of the legal and factual issues involved in this

18   case.  12/8/16 Hutchinson Decl. (Dkt. No. 68-1), ¶¶ 2-51; Declaration of Aaron Siri

19   ("Siri Decl.") (Dkt. No. 67-2), ¶¶ 2-49.  Class Counsel fully endorse the settlement

20   as fair, adequate, and reasonable.  The fact that qualified and well-informed counsel

21   endorse the settlement as being fair, reasonable, and adequate weighs heavily in

22   favor of the Court approving the settlement.  *See In re Omnivision Techs., Inc.*, 559

23   F. Supp. 2d 1036, 1043 (N.D. Cal. 2007) (quoting *Boyd v. Bechtel Corp.*, 485 F.

24   Supp. 610, 622 (N.D. Cal. 1979)) ("The recommendations of plaintiffs' counsel

25   should be given a presumption of reasonableness."); *Linney v. Cellular Alaska*

26   *P'ship*, No. C-96-3008 DLJ, 1997 WL 450064, at *5 (N.D. Cal. July 18, 1997)

27   ("The involvement of experienced class action counsel and the fact that the

28   settlement agreement was reached in arm's length negotiations, after relevant

1    discovery had taken place create a presumption that the agreement is fair.").

2    ### 5.    The Presence of a Governmental Participant

3    No governmental agency is directly involved in this lawsuit; however,

4    Defendant has notified the officials designated pursuant to the Class Action

5    Fairness Act, 28 U.S.C. § 1715 of the proposed settlement.  Deputy attorneys

6    general from California and Texas contacted counsel for the parties to obtain more

7    information about the Settlement, which the parties provided by email and in a

8    telephone call.  No governmental entity has raised objections to the Settlement.

9    ### 6.    The Reaction of Class Members

10   The reaction of Class Members has been very positive.  As of February 15,

11   65,731 timely claims have been filed.  Eighty-three Class Members (including late

12   requests) requested exclusion, and three objections were filed.  Of those objections,

13   two were filed by serial "professional objectors."  Plaintiff responds in detail to

14   those objections, all of which lack merit, in his contemporaneously filed brief.

15   ### 7.    The Settlement in the Product of Arm's Length Negotiations

16   In addition to considering the above factors, the Ninth Circuit has indicated

17   that the court should carefully review the settlement for any signs of collusion or

18   conflicts of interest.  *See In re Bluetooth Headset Prods. Liab. Litig*., 654 F.3d 935,

19   946 (9th Cir. 2011).  As detailed above and in Plaintiff's Response to Objections,

20   the Settlement is the result of lengthy, adversarial arm's-length negotiations in a

21   formal mediation before Judge Morton Denlow (Ret.) of JAMS that extended over

22   a multi-day period between attorneys experienced in the litigation, certification,

23   trial, and settlement of nationwide class action cases.  Accordingly, no signs of

24   collusion or conflicts of interest are present here, because there was no such

25   collusion or conflicts of interest.

26   ### C.    Certification Of The Settlement Class Is Appropriate

27   Having already provisionally certified a Class for settlement purposes, the

28   Court should now formally certify the Settlement Class.

1    The numerosity requirement of Rule 23(a) is satisfied because the Class

2    combined consists of approximately 1,192,555 people throughout the United States,

3    and joinder of all such persons is impracticable.  *See* Fed. R. Civ. P. 23(a)(1);

4    *Jordan v. County of Los Angeles*, 669 F.2d 1311, 1319 & n.10 (9th Cir. 1982)

5    (listing thirteen cases in which courts certified classes with fewer than 100

6    members), *vacated on other grounds*, 103 S.Ct. 35.

7    The commonality requirement is satisfied because there are many questions

8    of law and fact common to the Settlement Class that center on Defendant's

9    common practice of using an automated dialing system to call Class Members.  *See*

10   Fed. R. Civ. P. 23(a)(2).  Courts in the Ninth Circuit likewise relied upon almost

11   identical common questions to find that commonality was satisfied in similar cases

12   in which consumers alleged violations of the TCPA.  *See, e.g.*, *Meyer v. Portfolio*

13   *Recovery Associates, LLC*, 707 F.3d 1036, 1041-42 (9th Cir. 2012) (upholding

14   finding of commonality in TCPA action); *Malta v. Fed. Home Loan Mortg. Corp.*,

15   No. 10-CV-1290 BEN NLS, 2013 WL 444619, at *2 (S.D. Cal. Feb. 5, 2013)

16   (finding common questions of fact "in that the calls were made by Wells Fargo to

17   class members . . . using auto-dialing equipment . . . and common questions of law

18   "including:  (1) whether Wells Fargo negligently violated the TCPA; (2) whether

19   Wells Fargo willfully or knowingly violated the TCPA; and (3) whether Wells

20   Fargo had "prior express consent" for the calls.").

21   The typicality requirement is satisfied because Plaintiff's TCPA and UCL

22   claims, which are based on Defendant's systematic use of automated calls to

23   Plaintiff and all members of the Class, are "reasonably coextensive with those of

24   the absent class members."  *See* Fed. R. Civ. P. 23(a)(3); *Meyer,* 707 F.3d at 1041-

25   42 (upholding typicality finding); *Malta*, 2013 WL 444619, at *2-3 (finding

26   typicality where TCPA claim stemmed from the same course of conduct and were

27   based on the same legal theory).

28   The adequacy of representation requirement is satisfied because Plaintiff's

- 24 -

1    interests are coextensive with, and not antagonistic to, the interests of the

2    Settlement Class. *See* Fed. R. Civ. P. 23(a)(4); *see also Meyer*, 707 F.3d at 1042;

3    *Malta*, 2013 WL 444619, at *3. Further, Plaintiff is represented by qualified and

4    competent counsel who have extensive experience and expertise in prosecuting

5    complex class actions, including TCPA and UCL actions. *See* 12/8/16 Hutchinson

6    Decl. (Dkt. No. 68-1), ¶¶ 2-20 & Exhibit A; Siri Decl., ¶¶ 2-6.

7          The predominance requirement of Rule 23(b)(3) is satisfied because common

8    questions present a significant aspect of the case and can be resolved for all

9    Settlement Class Members in a single adjudication. *See* Fed. R. Civ. P. 23(b)(3);

10   *see also Malta*, 2013 WL 444619, at *2. Because the claims are being certified for

11   purposes of settlement, there are no issues with manageability, and resolution of

12   thousands of claims in one action is far superior to individual lawsuits and

13   promotes consistency and efficiency of adjudication. *See* Fed. R. Civ. P. 23(b)(3);

14   *see also Malta*, 2013 WL 444619, at *4 (superiority met where "considerations of

15   judicial economy favor litigating a predominant common issue once in a class

16   action instead of many times in separate lawsuits" and the "small individual claims

17   of class members" made it "unlikely that individual actions will be filed"). For

18   these reasons, certification of the Settlement Class for purposes of settlement is

19   appropriate.

20   **V.    CONCLUSION**

21         For all of the foregoing reasons, Plaintiff respectfully requests that the Court

22   enter an Order finding that Class Notice comported with due process, certifying the

23   Settlement Class, and granting final approval of the Settlement. A proposed Order

24   is attached as Exhibit 2.

25

26

27

28

1

2

3  Dated: February 17, 2017          LIEFF, CABRASER, HEIMANN
                                      & BERNSTEIN, LLP

4                                    By: */s/  Daniel M. Hutchinson*
                                          Daniel M. Hutchinson
5

6                                    LIEFF CABRASER HEIMANN
                                      & BERNSTEIN, LLP
7                                    Jonathan D. Selbin (State Bar No. 170222)
                                     Email: jselbin@lchb.com
8                                    250 Hudson Street, 8th Floor
                                     New York, NY  10013
9                                    Telephone:  (212) 355-9500
                                     Facsimile:  (212) 355-9592
10
                                     Daniel M. Hutchinson
11                                   (State Bar No. 239458)
                                     Email: dhutchinson@lchb.com
12                                   275 Battery Street, 29th Floor
                                     San Francisco, California  94111-3339
13                                   Telephone:  (415) 956-1000
                                     Facsimile:  (415) 956-1008
14
                                     John T. Spragens
15                                   (State Bar No. 031445)
                                     Email:  jspragens@lchb.com
16                                   One Nashville Place
                                     150 Fourth Avenue North, Suite 1650
17                                   Nashville, TN  37219-2423
                                     Telephone:  (615) 313-9000
18                                   Facsimile:  (615) 313-9965

19                                   SIRI & GLIMSTAD LLP
                                     Aaron Siri
20                                   (admitted *pro hac vice*)
                                     Email: aaron@sirillp.com
21                                   200 Park Avenue, 17th Floor
                                     New York, New York 10166
22                                   Telephone: (212) 532-1091
                                     Facsimile: (646) 417-5967
23                                   PARISI & HAVENS LLP
                                     David C. Parisi
24                                   (State Bar No. 162248)
                                     Email:  dcparisi@parisihavens.com
25                                   212 Marine Street, Unit 100
                                     Santa Monica, CA 90405
26                                   Telephone:  (818) 990-1299
                                     Facsimile:  (818) 501-7852
27
                                     *Counsel for Plaintiff and the Proposed Class*
28