Jonathan D. Selbin (State Bar No. 170222)
Daniel M. Hutchinson (State Bar No. 239458)
Email: dhutchinson@lchb.com
LIEFF, CABRASER, HEIMANN &
BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, California  94111-3339
Telephone:  (415) 956-1000
Facsimile:  (415) 956-1008

SIRI & GLIMSTAD LLP
Aaron Siri
(admitted *pro hac vice*)
Email: aaron@sirillp.com
200 Park Avenue, 17th Floor
New York, New York 10166
Telephone: (212) 532-1091
Facsimile: (646) 417-5967

[Additional Counsel Listed on Signature Page]

*Attorneys for Plaintiff and the Proposed Class*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| JEFFREY A. THOMAS, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>DUN & BRADSTREET CREDIBILITY CORP.,<br><br>Defendant. | Case No. CV15-03194 BRO (GJSx)<br><br>**PLAINTIFF'S RESPONSE TO SETTLEMENT OBJECTIONS**<br><br>Judge:   Hon. Beverly Reid O'Connell<br>Hearing Date:   March 20, 2017<br>Time:   1:30 p.m.<br>Place:   Courtroom 7C |

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ...................................................................................... 1

II.   BACKGROUND ........................................................................................ 2
      A.   Professional Objectors Bandas and Hanigan ..................................... 2
      B.   Professional Objectors Pentz and Nutley ........................................... 4
      C.   Objector Arbelaez ............................................................................... 7
      D.   Expert Opinion of Professor Geoffrey P. Miller ................................ 7

III.  DISCUSSION .......................................................................................... 8
      A.   Objections to the Merits of the Settlement Should Be Overruled ....... 8
           1.   The Settlement Provides Exceptional Monetary and
                Practice Change Relief ............................................................. 8
           2.   There Is No Reversion ............................................................. 13
           3.   The Settlement Has No Indicia of Collusion............................ 14
      B.   Objections to Class Counsel's Fee Request Should Be Overruled .... 15
           1.   Class Counsel's Fee Request Is Justified Under Either
                California or Federal Law......................................................... 16
           2.   Class Counsel's Fee Request, Inclusive of Costs, Is
                Reasonable and Warranted ...................................................... 17
           3.   Class Counsel Faced Significant Risks .................................... 20
           4.   A Lodestar Plus Multiplier Cross-Check Supports the
                Requested Fee........................................................................... 22
           5.   Class Counsel's Time Spent Prosecuting the Vadai Case
                Is Compensable......................................................................... 24
           6.   Absent a Dispute, The Court Should Not Supervise
                Allocation of Attorneys' Fees................................................... 25

IV.   CONCLUSION ...................................................................................... 25

# TABLE OF AUTHORITIES

**Page**

## CASES

*Adams v. AllianceOne Receivables Mgmt., Inc.*,
No. 08-CV-0248 JAH (WVG) (S.D. Cal.) ....................................................4, 11

*Aghdasi v. Mercury Ins. Grp., Inc.*,
No. CV 15-4030-R, 2016 WL 5899290 (C.D. Cal. Jan. 21, 2016) .....................21

*Americana Art China Co. v. Firefox Printing Packaging, Inc.*,
743 F.3d 243 (7th Cir. 2014) ...............................................................................20

*Arbelaez v. Capital Advance Solutions, LLC*,
Case No. 1:15-cv-23137-KMW (S.D. Fla.)............................................................7

*Arthur v. Sallie Mae, Inc.*,
No. 2:10-cv-00198 (W.D. Wash.) ........................................................................11

*Barnes v. Fleetboston Fin. Corp.*,
No. CA 01-10395-NG, 2006 WL 6916834 (D. Mass. Aug. 22, 2006) ..................5

*Bayat v. Bank of the West*,
c-13-2376 ............................................................................................................9, 10

*Bellows v. NCO Fin. Sys., Inc.*,
07-cv-1413 W .....................................................................................................9, 10

*Bostick v. Herbalife Int'l of Am.*,
Case No. 2:13-cv-02488-BRO (C.D. Cal. May 14, 2015) .............................19, 20

*Bronk v. Talarico*,
2007 WL 603405 (Cal. Ct. App. February 28, 2007)............................................6

*Campbell-Ewald v. Gomez*,
136 S. Ct. 663 (2016)...........................................................................................21

*Chambers v. Whirlpool Corp.*,
No. 11-1733, 2016 WL 5922456 (C.D. Cal. Oct. 11, 2016) .................................4

*Conroy v. 3M Corp.*,
2006 U.S. Dist. LEXIS 96169 (S.D. Cal. Aug. 10, 2006)....................................3

*Consumer Cause, Inc. v. Mrs. Gooch's Natural Food Markets, Inc.*,
No. S133166, 2005 WL 1649387 (Cal. App. Supp. Apr. 19, 2005) .....................6

*Couser v. Comenity Bank*,
125 F. Supp. 3d 1034 (S.D. Cal. 2015) .......................................................9, 10, 11

*Dennis v. Kellogg Co.*,
No. 09-cv-1786-L (WMc), 2013 U.S. Dist. LEXIS 163118
(S.D. Cal. Nov. 14, 2013)......................................................................................3

**TABLE OF AUTHORITIES**
(continued)

Page

*Dupler v. Costco Wholesale Corp.*,
705 F. Supp. 2d 231 (E.D.N.Y. 2010) ...................................................... 6

*Ebarle v. Lifelock, Inc.*,
2016 WL 5076203 (N.D. Cal. Sept. 20, 2016) ........................................ 4

*Edelist v. First USA Bank, N.A.*,
2006 WL 1555765 (Cal. Ct. App. June 8, 2006) ...................................... 6

*Edelson PC v. The Bandas Law Firm PC*,
No. 1:16-cv-11075 (N.D. Ill.) ................................................................. 3

*Embry v. ACER Am. Corp.*,
2012 WL 3777163 (N.D. Cal. Aug. 29, 2012) ........................................ 3

*Evans v. Brookstone Co., Inc.*,
No. B176652, 2005 WL 1900531(Cal. Ct. App. May 2, 2005) ............... 6

*Faught v. Am. Home Shield Corp.*,
444 F. App'x 445 (11th Cir. 2011) .......................................................... 6

*Fleury v. Richemont N. Am., Inc.*,
No. C-05-4525 EMC, 2008 WL 3287154 (N.D. Cal. Aug. 6, 2008) ..... 24

*Glass v. UBS Fin. Servs., Inc.*,
No. C-06-4068 MMC, 2007 WL 221862 (N.D. Cal. Jan. 26, 2007)
*aff'd*, 331 F. App'x 452 (9th Cir. 2009) .............................................. 22

*Hanlon v. Chrysler Corp*,
150 F.3d 1011 (9th Cir. 1998) ............................................................... 15

*Hvorcik v. Sheahan*,
1997 WL 695721 (N.D. Ill. Oct. 30, 1997) ........................................... 25

*In re "Agent Orange" Prod. Liab. Litig.*,
818 F.2d 216 (2d Cir. 1987) ................................................................... 25

*In re AOL Time Warner ERISA Litig.*,
2007 U.S. Dist. LEXIS 99769 (S.D.N.Y. Nov. 28, 2007) ....................... 6

*In re Apollo Grp. Inc. Sec. Litig.*,
No. CV 04-2147-PHX-JAT, 2012 WL 1378677 (D. Ariz. Apr. 20, 2012) ......... 24

*In re Capital One Telephone Consumer Prot. Act Litig.*,
80 F. Supp. 3d 781 (N.D. Ill. 2015) .......................................... 9, 10, 11, 12

*In re Cathode Ray Tube Antitrust Litig.*,
281 F.R.D. 531 (N.D. Cal. 2012) ............................................................. 2

*In re Cendant Corp. Litig.*,
243 F. Supp. 2d 166 (D. N.J. 2003) ......................................................... 6

**TABLE OF AUTHORITIES**
**(continued)**

Page

*In re Charles Schwab Corporation Securities Litig.*,
No. C 08–01510, 2011 U.S. Dist. LEXIS 18840 (N.D. Cal. Feb. 11, 2011) .........5

*In re Compact Disc Minimum Advertised Price Antitrust Litig.*,
No. MDL 1361, 2003 WL 22417252 (D. Me. Oct. 7, 2003) .................................5

*In re Elec. Books Antitrust Litig.*,
639 F. App'x 724 (2d Cir. 2016) ............................................................................2

*In re Gen. Elec. Co. Sec. Litig.*,
998 F. Supp. 2d 145 (S.D.N.Y. 2014) ...................................................................3

*In re High Sulfur Content Gasoline Prods. Litig.*,
517 F.3d 220 (5th Cir. 2008) ...............................................................................25

*In re High-Tech Employee Antitrust Litig.*,
2015 WL 5159441 (N.D. Cal. Sep. 2, 2015) ........................................................8

*In re Hydroxycut Mktg. & Sales Practices Litig.*,
No. 09CV1088 BTM KSC, 2013 WL 5275618 (S.D. Cal. Sept. 17, 2013) ..2, 3, 4

*In re Initial Pub. Offering Secs. Litig.*,
721 F. Supp. 2d 210 (S.D.N.Y.2010) ....................................................................6

*In re LifeLock, Inc. Mktg. & Sales Practices Litig.*,
No. MDL 08-1977-MHM, 2010 WL 3715138 (D. Ariz. Aug. 31, 2010)..............5

*In re LifeLock, Inc., Marketing and Sales Practices Litig.*,
No. 10-17177 (9th Cir. Jan. 3, 2011) ....................................................................5

*In re Omnivision Techs.*,
559 F. Supp. 2d 1036 (N.D. Cal. 2007)...........................................................17, 18

*In re Relafen Antitrust Litig.*,
231 F.R.D. 52 (D. Mass. 2005).............................................................................6

*In re Royal Ahod N.V. Securities and ERISA Litig.*,
No. 1:03-md-01539-CCB (D. Md. July 12, 2006) .................................................5

*In re Royal Ahold N.V. Securities & Erisa Litig.*,
461 F. Supp. 2d 383 (D. Md. 2006).......................................................................6

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices,
& Prods. Liab. Litig.*,
8:10ML 02151, 2013 U.S. Dist. LEXIS 123298
(C.D. Cal. July 24, 2013).....................................................................................25

*In re Wal-Mart Wage & Hour Emp't Practices Litig.*,
No. 06-cv-00225, 2010 U.S. Dist. LEXIS 21466
(D. Nev. Mar. 8, 2010) ..................................................................................2, 3, 6

**TABLE OF AUTHORITIES**
**(continued)**

Page

*In re Warfarin Sodium Antitrust Litig.*,
  212 F.R.D. 231 (D. Del. 2002) ............................................................... 25

*In re Washington Pub. Power Supply Sys. Sec. Litig.*,
  19 F.3d 1291 (9th Cir. 1994) ................................................................ 24

*Kelly v. Wengler*,
  822 F.3d 1085 (9th Cir. 2016) ............................................................. 24

*Laffitte v. Robert Half Int'l, Inc.*,
  1 Cal.5th 480 (2016) ............................................................................ 17

*Landsman & Funk, P.C. v. Skinder-Strauss Associates*,
  639 Fed. Appx. 880 (3d Cir. 2016) ....................................................... 20

*Linney v. Cellular Alaska P'ship*,
  151 F.3d 1234 (9th Cir. 1998) ........................................................*passim*

*Lobatz v. U.S. W. Cellular of California, Inc.*,
  222 F.3d 1142 (9th Cir. 2000) ............................................................. 14

*Loretz v. Regal Stone, Ltd.*,
  756 F. Supp. 2d 1203 (N.D. Cal. 2010) ............................................... 24

*Malta v. Freddie Mac & Wells Fargo Home Mortgage*,
  No. 10-cv-1290-BEN-NLS (S.D. Cal. 2010) ....................................... 11

*Mangold v. California Pub. Utilities Comm'n*,
  67 F.3d 1470 (9th Cir. 1995) ................................................................ 16

*Markos v. Wells Fargo Bank, N.A.*,
  Case No. 1:15-cv-01156-LMM (N.D. Ga. Jan. 30, 2017) ............... 22, 23

*Michel v. HM Healthcare Solutions, Inc.*,
  No. 1:10-cv-638, 2014 WL 497031 (S.D. Ohio Feb. 7, 2014) ............. 20

*Officers for Justice v. Civil Serv. Comm'n*,
  688 F.2d 615 (9th Cir. 1982) ............................................................. 2, 8

*Perdue v. Kenny A*,
  130 S. Ct. 1662 (2010) ...................................................................... 23, 24

*Roberts v. Electrolux Home Products, Inc.*,
  No. CV13-2339-CAS VBKX, 2014 WL 4568632 (C.D. Cal. Sept. 11, 2014) ...... 4

*Rose v. Bank of Am. Corp.*,
  No. 5:11–CV–02390, 2014 WL 4273358, (N.D. Cal. Aug. 29, 2014) 9, 10, 11, 14

*Sadowska v. Volkswagen Grp. of Am., Inc.*,
  No. CV 11-00665-BRO AGRX, 2013 WL 9600948
  (C.D. Cal. Sept. 25, 2013) ................................................................ 16, 23

**TABLE OF AUTHORITIES**
**(continued)**

Page

*Simon v. Healthways, Inc.*,
   (C.D. Cal. Dec. 17, 2015) Case No. 14-cv-08022-BRO,
   2015 WL 10015953 ...................................................................21

*Simonet v. GlaxoSmithKline*,
   No. 06-1230 (GAG/CVR), 2009 U.S. Dist. LEXIS 82508
   (D.P.R. Sept. 10, 2009)..............................................................6

*Spokeo v. Robins*,
   126 S. Ct. 1540 (2016)................................................................21

*Stanger v. China Elec. Motor, Inc.*,
   812 F.3d 734 (9th Cir. 2016) ......................................................24

*Steinfeld, et al. v. Discover Fin. Servs.*,
   No. 3:12-cv-01118-JSW (N.D. Cal.) ...........................................11

*Taubenfeld v. Aon Corp.*,
   415 F.3d 597 (7th Cir. 2005) ........................................................5

*Tenuto v. Transworld Sys., Inc.*,
   No. CIV. A. 99-4228, 2002 WL 188569 (E.D. Pa. Jan. 31, 2002) .......5

*Thomas v. Dun & Bradstreet Credibility Corp.*,
   100 F. Supp. 3d 937 (C.D. Cal. 2015) ........................................16

*Torres v. Mercer Canyons Inc.*,
   835 F.3d 1125 (9th Cir. 2016) ....................................................13

*Tyson Foods, Inc. v. Bouaphakeo*,
   136 S. Ct. 1035 (2016)................................................................21

*Vadai v. Dun & Bradstreet Credibility Corp.*,
   302 F.R.D. 308 (S.D.N.Y. 2014).................................15, 16, 20, 24

*Van Horn v. Nationwide Prop. & Cas. Ins. Co.*,
   436 Fed. Appx. 496 (6th Cir. 2011) ............................................24

*Vizcaino v. Microsoft Corp.*,
   290 F.3d 1043 (9th Cir. 2002) ..........................................*passim*

*Vroegh v. Eastman Kodak Co.*,
   2007 WL 4217144 (Cal. Ct. App. November 30, 2007) ....................6

*Walsh v. Kindred Healthcare*,
   No. C 11-00050 JSW, 2013 WL 6623190
   (N.D. Cal. Dec. 16, 2013) ..........................................................19

*Weeks v. Kellogg Co.*,
   No. CV 09-08102 MMM RZX, 2013 WL 6531177
   (C.D. Cal. Nov. 23, 2013)...........................................................24

1

2

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

3

*Wershba v. Apple Computer, Inc.,*
  91 Cal.App.4th 224 (2001) ...................................................................23

4

5

*Wilkins v. HSBC Bank Nev., N.A.,*
  No. 14 C 190, 2015 WL 890566 (N.D. Ill. Feb. 27, 2015) ............................9, 18

6

**STATUTES**

7

42 U.S.C. § 1983...........................................................................................24

8

**TREATISES**

9

Newberg on Class Actions (4th ed. 2002)
  § 11.58....................................................................................................8
  § 14:6 ....................................................................................................22

10

**OTHER AUTHORITIES**

11

Alison Frankel, *The Ted Frank Interview*, Reuters, June 25, 2015...........................3

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## I.    **INTRODUCTION**

Plaintiff is proud of this class action settlement ("Settlement") with Dun & Bradstreet Credibility Corp. ("Defendant").  The Settlement requires Defendant to pay an all-cash sum of $10,500,000.00 into a settlement fund ("Fund"), which will, upon Court approval, be distributed *pro rata* to approximately 65,731 Class Members, resulting in an exceptional award of approximately $100 per Class Member.  No money will revert back to Defendant.  The Settlement also confirms practice changes designed to prevent violations of the TCPA's provisions on dialing cell phones using an automatic telephone dialing system—prospective relief of vital importance to the Class.  Plaintiff respectfully submits that this Settlement is an excellent result, particularly in light of serious litigation risks, and as evidenced by the overwhelmingly positive response of the Class to it.

Two of the three objections were filed by proxies for professional objectors Christopher Bandas and John Pentz.  *See* Dkt. Nos. 70 & 71.  Bandas and Pentz are nothing more than legal "grifters" who put forward objections not to improve settlements or assist the court, but to use the threat of delay and disruption of appeals to leverage payment of fees to themselves.  Plaintiff wants to be clear:  he does not seek to dissuade the Court from considering the substance (or lack thereof) of these professional objections.  The Court has the discretion to, and should, consider all objections, whether advanced for proper purposes or not.  Plaintiff has therefore addressed the bases of the objections substantively, and detailed why they lack merit and should be overruled.

The remaining objector likewise fails to state any valid reason for declining to approve the Settlement as fair, reasonable, and adequate.

By any measure, the Settlement's monetary and practice changes are *better than every other TCPA class settlement cited by the objectors*—despite significant risks not present in those cases.  None of the issues raised in the objections provide cause to doubt the fairness and adequacy of the Settlement or the reasonableness of

- 1 -

the requested attorneys' fees and costs.  Recognizing the Ninth Circuit's preference for settlement of class action litigation, *see Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982), Plaintiff respectfully submits that each objection should be overruled on its merits, and requests that the Court grant final approval of the Settlement.

## II.   BACKGROUND

### A.   Professional Objectors Bandas and Hanigan

Objector Hall is represented by Christopher Bandas, a notorious professional objector.  *See* https://www.serialobjector.com/persons/4.  Professional objectors are grifters: "lawyers who file stock objections to class action settlements—objections that are most often nonmeritorious—and then are rewarded with a fee by class counsel to settle their objections."  *In re Elec. Books Antitrust Litig.*, 639 F. App'x 724 (2d Cir. 2016).  Courts have repeatedly reprimanded Bandas for filing objections not "to effectuate changes to settlements, but . . . for his own personal financial gain; he has been excoriated by Courts for this conduct."  *In re Cathode Ray Tube Antitrust Litig.*, 281 F.R.D. 531, 533 (N.D. Cal. 2012); *see also, e.g., In re Hydroxycut Mktg. & Sales Practices Litig*., No. 09md2087-BTM, 2013 WL 5275618, at *5 (S.D. Cal. Sept. 17, 2013) (striking Bandas objections and finding they "were filed for the improper purpose of obtaining a cash settlement in exchange for withdrawing the objections"); *In re Wal-Mart Wage & Hour Emp't Practices Litig.,* No. 2:06-CV-00225-PMP-PAL,  2010 WL 786513, *1  (D. Nev. Mar. 8, 2010) (finding Bandas' objections were "not supported by law or the facts and are indeed meritless" and that he had "a documented history of filing notices of appeal from orders approving other class action settlements, and thereafter dismissing said appeals when they and their clients were compensated by the settling class or counsel for the settling class").

Bandas's conduct is the subject of a RICO complaint against him.  *See Edelson PC v. The Bandas Law Firm PC*, No. 1:16-cv-11057, Dkt. No. 1 (N.D.

Ill.).  Courts repeatedly sanction Bandas for abusing the objection process.  In *Embry v. ACER Am. Corp.*, No. C 09-01808 JW, 2012 WL 3777163 (N.D. Cal. Aug. 29, 2012), the court struck his objection after he failed to post a court-ordered appellate bond and refused to dismiss his appeal.  In 2013, a district court "revoke[d] Mr. Bandas' authorization to practice in [W.D. Wash.]." *Dennings v. Clearwire Corp.*, No. 10-01859, Dkt. 166 (W.D. Wash. Aug. 20, 2013).  Courts repeatedly impose appellate bonds because Bandas regularly files appeals for improper purposes.  *See, e.g., In re Wal-Mart*, 2010 WL 786513, at *1-2 ($500,000.00 bond); *Conroy v. 3M Corp.*, 2006 U.S. Dist. LEXIS 96169 (S.D. Cal. Aug. 10, 2006) ($431,167.00).

Even well-known objector Ted Frank has disassociated himself from Bandas and concluded that his tactics are "'repugnant' and 'unethical.'"  Alison Frankel, *The Ted Frank Interview*, Reuters, June 25, 2015.[1]  In *In re Hydroxycut*, 2013 WL 5275618, at *5, the court found that Bandas sought $400,000 to "make his objection go away—otherwise, he could hold the settlement process up for two to three years through the appeal process. . . . Mr. Bandas was using the threat of questionable litigation to tie up the settlement unless the payment was made."

Bandas's history of misconduct is so extensive and well-established that his objection must be viewed with skepticism.  *See In re Gen. Elec. Co. Sec. Litig.*, 998 F. Supp. 2d 145, 156 (S.D.N.Y. 2014) (requiring appeal bond, and finding that an objector's "relationship with Bandas, a known vexatious appellant, further supports a finding that [the objector] brings this appeal in bad faith"); *Dennis v. Kellogg Co.*, No. 09-cv-1786-L, 2013 WL 6055326, at *4 n.2 (S.D. Cal. Nov. 14, 2013) ("[W]hen assessing the merits of an objection to a class action settlement, courts consider the background and intent of objectors and their counsel, particularly when indicative of a motive other than putting the interest of the class members first.").

---

[1] *See also* http://www.litigationandtrial.com/files/2015/06/Frank-Declaration.pdf (contrary to his promises when associating with Mr. Frank, Mr. Bandas "settled" an appeal with large self-serving cash payments with no benefit to the class).

1    To avoid sanctions, Bandas frequently ghost-writes objections and hires local

2    counsel. *See, e.g.*, *In re Hydroxycut Mktg.*, 2014 WL 815394, at *3 (declining to

3    impose Rule 11 sanctions for improper objection as it was "doubtful whether the

4    Court has jurisdiction to sanction Mr. Bandas," but threatening to refer him "to the

5    State Bar of Texas's Commission for Lawyer Discipline"). Here, the Hall objection

6    employs this tactic and states that Bandas is co-counsel but "does not presently

7    intend on making an appearance." Dkt. No. 70 at 8. Local counsel Tim Hanigan

8    faces a sanctions motion before Judge Olguin for a Bandas-penned objection that

9    does not reflect his client's views. *See, e.g., Chambers v. Whirlpool Corp.*, No. 11-

10   1733-FMO, 2016 WL 5922456, at *8 (C.D. Cal. Oct. 11, 2016) (Dkt. 377).

11   Hanigan also has a history of objecting to class settlements, appealing when

12   overruled, attempting to extract payment without any benefit to the class or judicial

13   scrutiny, and then voluntarily withdrawing the appeal before it is ruled upon. *See,*

14   *e.g., Roberts v. Electrolux Home Prods., Inc.,* No. SACV-12-1644-CAS, 2014 WL

15   4568632, at *11 n.4 (C.D. Cal. Sept. 11, 2014) (describing Hanigan as a serial

16   objector and finding the objection he filed "misunderstand[s] or misread[s] the

17   Settlement Agreement, or provide[s] no evidence or support"); *Adams v.*

18   *AllianceOne Receivables Mgmt., Inc.*, No. 08-CV-0248, Dkt. 167-1, 169, 171 &

19   175 (S.D. Cal.) (Hanigan and Bandas voluntarily withdrew their client's objection

20   after it was revealed that Bandas signed their objector-client's signature onto a

21   purported *pro se* objection of which the objector had no knowledge); *Ebarle v.*

22   *Lifelock, Inc.*, 2016 WL 5076203, at *7 (N.D. Cal. Sept. 20, 2016) (overruling

23   objection filed by Hanigan); *Ebarle v. LifeLock, Inc.*, No. 15-cv-00258, Dkt. 98

24   (N.D. Cal. Oct. 13, 2016) (Hanigan appeal).

25   The Court should view the Hall objection with deep skepticism in light of his

26   counsel's long history of baseless objections for improper, vexatious purposes.

27   **B.    Professional Objectors Pentz and Nutley**

28   Objector James E. Pentz is no stranger to the class action objection racket; for

the Pentzes, in fact, it is something of a family business.  James Pentz appears to be the brother of John Pentz, founder of what was formerly called "The Objectors Group" (now the "Class Action Fairness Group"), who has previously represented John Pentz as an objector and has also used his father,[2] wife,[3] mother-in-law,[4] and apparently even a deceased grandmother[5] to further his agenda as objector counsel. James Pentz has filed objections in at least two other settlements,[6] while John Pentz's objections have been characterized by at least one court as "frivolous," "reflect[ing] a substantial lack of knowledge of the record of this case."  *In re Royal Ahod N.V. Securities and ERISA Litig.*, No. 1:03-md-01539-CCB, Dkt. No. 771 at 68:9-21 (D. Md. July 12, 2006).  That court found that he had "essentially highjacked [the objector's] objection for his own purposes." *Id.*

"[John] Pentz has been 'shameless in his quest to extort settlement fees' from parties to meritorious class settlements." *In re Charles Schwab Corp. Secs. Litig.*, No. C 08–01510-WHA, 2011 WL 633308, at * 2 (N.D. Cal. Feb. 11, 2011) (overruling Pentz's objection).  In that case, the court noted that

> Class counsel cite at least 33 cases in which Pentz has been an objector
> or objector counsel, some courts having called Pentz out as a serial
> objector, and also describe how he 'stalks settlements in which Hagens
> Berman is class counsel' (Opp. 6—8). . . . This intervention would not
> be in the best interests of the class but rather would only be in

---

[2] *See, e.g., Tenuto v. Transworld Sys., Inc.*, No. CIV. A. 99-4228, 2002 WL 188569, at *2-3 (E.D. Pa. Jan. 31, 2002) (noting factual and legal errors of objections and overruling them).

[3] *See, e.g., Barnes v. Fleetboston Fin.*, No. CA 01-10395-NG, 2006 WL 6916834, at *2 n.1 (D. Mass. Aug. 22, 2006) (finding Pentz is a "professional objector[]" and ordering appeal bond of $645,111.60 for frivolous appeal); *In re Compact Disc Minimum Advertised Price Antitrust Litig.*, No. MDL 1361, 2003 WL 22417252, at *2 (D. Me. Oct. 7, 2003); *Taubenfeld v. Aon Corp.*, 415 F.3d 597 (7th Cir. 2005).

[4] *See, e.g., Barnes*, 2006 WL 6916834, at *2.

[5] *See* http://pslranugget.blogspot.com/2005/07/seventh-circuit-shoots-down.html.

[6] *See Ebarle v. LifeLock, Inc.*, No. 3:15-cv-00258-HSG (N.D. Cal. 2016), Dkt. No. 62; *In re LifeLock, Inc. Mktg. & Sales Practices Litig.*, No. MDL 08-1977-MHM, 2010 WL 3715138, at *6 (D. Ariz. Aug. 31, 2010) (overruling objection), appeal voluntarily dismissed prior to ruling at *In re LifeLock, Inc., Marketing and Sales Practices Litig.*, No. 10-17177, Dkt. No. 13 (9th Cir. Jan. 3, 2011).

Attorney Pentz's best interest.

*Id.* Pentz's behavior in many cases demonstrates that he acts primarily out of self-interest, and repeatedly makes arguments that are not well-reasoned or helpful to the court or class. *See, e.g., In re Initial Pub. Offering Secs. Litig.*, 721 F. Supp. 2d 210, 215 (S.D.N.Y. 2010) finding "bad faith and vexatious conduct"); *In re Wal-Mart Wage & Hour Empl. Practices Litig.*, No. 2:06-cv-00225-PMP-PAL, 2010 WL 786513, at *2 (D. Nev. Mar. 8, 2010) (ordering objector Pentz who appealed the final approval of a class action settlement to post a Rule 7 bond).[7]

Objector Pentz's local counsel is C. Benjamin Nutley, who is also a recognized serial objector.[8]

---

[7] *See also, e.g., Heekin*, 2013 U.S. Dist. LEXIS 26700, at *10 ([Pentz's client] has shown bad faith and vexatious conduct by insisting upon arguments that mischaracterize and misapply Seventh Circuit case law."); *Dupler v. Costco Wholesale Corp.*, 705 F. Supp. 2d 231, 247 (E.D.N.Y. 2010) (finding Pentz's objections without merit); *Simonet v. GlaxoSmithKline*, No. 06-1230 (GAG/CVR), 2009 U.S. Dist. LEXIS 82508, at *9-10 (D.P.R. Sept. 10, 2009) (Pentz's objections are "unfounded" and "result from misunderstanding of the terms of the settlement"); *In re AOL Time Warner ERISA Litig.*, No. 02-cv-8853-SWK, 2007 WL 4225486, at *3 (S.D.N.Y. Nov. 28, 2007) ("[Pentz] Objection contained arguments [that were] counterproductive . . . irrelevant or simply incorrect. . . . Counsel are not entitled to compensation for making them. . . ."); *In re Royal Ahold N.V. Securities & Erisa Litig.*, 461 F. Supp. 2d 383, 386 (D. Md. 2006) ("Pentz did not challenge the lodestar figure calculated by plaintiffs' counsel and *provided no coherent explanation* for his contention that the fee is excessive. In summary, the Pentz/Tsai objection was not well reasoned and was not helpful.").

[8] *See, e.g., Chavez v. Netflix*, 75 Cal. Rptr. 3d 413 (2008); *Faught v. Am. Home Shield Corp.*, 444 F. App'x 445, 446 (11th Cir. 2011) (affirming denial of attorneys' fees to Nutley, finding his objections "were based on speculation that is unsupported by the record"); *Bronk v. Talarico*, 2007 WL 603405, at *7 (Cal. Ct. App. Feb. 28, 2007) (objecting to incentive awards and injunctive relief); *Edelist v. First USA Bank, N.A.*, No. G035215, 2006 WL 1555765, at *1 (Cal. Ct. App. June 8, 2006) (objecting to attorneys' fees and incentive award); *In re Relafen Antitrust Litig.*, 231 F.R.D. 52, 81 (D. Mass. 2005) (objecting to overall fairness, inadequacy of *cy pres*, and attorneys' fees); *In re Cendant Corp. Litig.*, 243 F. Supp. 2d 166, 170 (D. N.J. 2003) (objecting to attorneys' fees); *Vroegh v. Eastman Kodak Co.*, No. A116242, 2007 WL 4217144, at *2 (Cal. Ct. App. Nov. 30, 2007) (objecting that settlement was unfair and unreasonably excluded the claims of business purchasers); Appellant's Opening Brief, *Evans v. Brookstone Co., Inc.*, No. B176652, 2005 WL 1900531, at *5 (Cal. Ct. App. May 2, 2005) (objecting to attorneys' fees and incentive awards); Petition for Review, *Consumer Cause, Inc. v. Mrs. Gooch's Natural Food Markets, Inc.*, No. S133166, 2005 WL 1649387 (Cal. App. Supp. Apr. 19, 2005) (arguing for attorneys' fees for objector's counsel).

1   Because the James E. Pentz objection is merely a stalking horse for another

2   vexatious objection by John Pentz and C. Benjamin Nutley, the Court should view

3   it with deep skepticism.

4       **C.**     **Objector Arbelaez**

5       Ms. Diana Arbelaez submitted an objection claiming that she received

6   thousands of telemarketing calls from various companies over the past five years.

7   She has filed a TCPA action against one of these companies and obtained a default

8   judgment, which she was unable to collect. *Arbelaez v. Capital Advance Solutions,*

9   *LLC*, Case No. 1:15-cv-23137-KMW (S.D. Fla.).

10      **D.**     **Expert Opinion of Professor Geoffrey P. Miller**

11      With this brief, Plaintiff submits the expert opinion of Professor Geoffrey P.

12  Miller, a leading and esteemed expert in the field of class action fee jurisprudence.

13  Ex. 1, Declaration of Geoffrey P. Miller ("Miller Decl.").  Professor Miller is the

14  Stuyvesant P. Comfort Professor of Law at New York University Law School who

15  has worked, researched, and taught in the field of class action litigation for more

16  than twenty-five years.  He has authored hundreds of law review articles, Miller

17  Decl., App. 2, and produced seminal scholarship on class action litigation that has

18  been cited in at least 85 federal court decisions.  *Id.*, App. 1.  Attorneys' fees are a

19  particular focus of his research.  Professor Miller co-authored two of the most

20  widely-cited articles about empirical research on this issue.  *Id.* at ¶ 6.

21      Based on his experience and research, Professor Miller opines that (1) the

22  percentage-of-the-fund approach (favored in this Circuit and through the country)

23  offers advantages over alternative methods of calculating fees, such as lodestar;

24  (2) the requested fee award is warranted in light of the excellent result obtained, the

25  risk undertaken by Class Counsel, and the quality of legal representation provided

26  to the Class; and (3) 30% of the fund is well within the reasonable range of fee

27  awards in similar cases in this District and Circuit, and throughout the nation.  *Id.* at

28  ¶¶ 2, 29-44, 58.  In Professor Miller's words, the requested fee award "aligns best

1   with the interests of class members by incentivizing class counsel to fight for the

2   highest settlement amount possible in an efficient manner, thereby maximizing the

3   primary goal of deterrence in TCPA class actions."  *Id.* at ¶ 2.

4   **III.   DISCUSSION**

5       **A.    Objections to the Merits of the Settlement Should Be Overruled**

6       Objectors Pentz and Arbelaez object that the Settlement is inadequate or

7   improper for several reasons.  All are misguided and should be overruled.

8           **1.    The Settlement Provides Exceptional Monetary and Practice**

9               **Change Relief**

10      Arbelaez contends that the Settlement amount is "ridiculously low."  Dkt.

11  No. 69 at 2-3.  Such objections regarding the sufficiency of the Settlement Fund

12  "offer nothing more than speculation about what damages 'might have been' won

13  had they prevailed at trial."  *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242

14  (9th Cir. 1998) (*quoting Officers for Justice*, 688 F.2d at 625).  As the Ninth Circuit

15  has repeatedly held, "it is the very uncertainty of outcome in litigation and

16  avoidance of wasteful and expensive litigation that induce consensual settlements.

17  The Settlement is not to be judged against a hypothetical or speculative measure of

18  what might have been achieved by the negotiators."  *Id.*; *In re High-Tech Employee*

19  *Antitrust Litig.*, No. 11-cv-02509-LHK, 2015 WL 5159441, at *4 (N.D. Cal. Sep. 2,

20  2015) ("Estimates of what constitutes a fair settlement figure are tempered by

21  factors such as the risk of losing at trial, the expense of litigating the case, and the

22  expected delay in recovery (often measured in years).") (citation omitted).  "A

23  demonstration that the likelihood of recovery is greater than the estimate of the

24  proponents is generally contingent on the facts revealed by discovery."  *Newberg*

25  § 11.58.  "Under most circumstances, the increased benefits that may be secured are

26  outweighted [sic] by the additional time and expense necessary to obtain them."  *Id.*

27  Although the Settlement here provides significant benefits, "[t]he fact that a

28  proposed settlement may only amount to a fraction of the potential recovery does

not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved." *Linney*, 151 F.3d at 1242 (citations and quotations omitted).  The Settlement simply cannot be measured against a hypothetical trial outcome, ignoring the myriad litigation risks, *see infra* Sec. III.B.3.

As an initial matter, $10.5 million is a significant amount.  Defendant was recently purchased for $320 million.[9]  This Settlement therefore reflects over 3% of the Company's total value, an amount which sufficiently furthers the deterrent goal of this action.  *See* Miller Decl. at ¶¶ 2, 33.  Arbelaez states that Defendant "owes me and each of the other class members $1,500 per violation," which she calculates as at least $1.7 billion.  Dkt. No. 69 at 2-3.  Any notion that Class Counsel could have obtained billions from a company worth only $320 million is without merit.

Moreover, when measured against actual TCPA settlements, the $8.80 per class member relief—$100 per claimant—obtained here is truly exceptional.  The objectors collectively cite seven TCPA robocalling settlements.  On a per-class-member-basis, the relief obtained here *is two to eight times better than any other TCPA robocall settlement cited by objectors*.

| Case | Settlement Amount | Class Size | Relief Per Class Member |
|---|---|---|---|
| *Gehrich v. Chase Bank USA, N.A.*, 12 C 5510 | $34 million | 33,786,351 | $1.01 |
| *Wilkins v. HSBC Bank Nevada, N.A.*, 1:14-cv-00190 | $39.975 million | 9,065,262 | $4.41 |
| *Bayat v. Bank of the West*, c-13-2376 | $3,354,745.98 | 871,836 | $3.85 |
| *Couser v. Comenity Bank*, 3:12-cv-02484-MMA-BGS | $8.5 million | 4.3 million | $1.98 |
| *In re Capital One Tel. Consumer Prot. Act Litig.*, 1:12-cv-10064 | $75.5 million | 17.5 million | $4.31 |

---

[9] Dun & Bradstreet Press Release, April 27, 2015, available at https://www.sec.gov/Archives/edgar/data/1115222/000094787115000333/ss427136_ex9901.htm.

- 9 -

| Case | Settlement Amount | Class Size | Relief Per Class Member |
|------|-------------------|------------|-------------------------|
| *Rose v. Bank of Am. Corp.*, Nos. 5:11-CV-02390, 5:12-cv-04009 | $32 million | 7 million | $4.57 |
| *Bellows v. NCO Fin. Sys., Inc.*, 07-cv-1413 | $950,000 | "thousands" | Unknown |

*See* Ex. 2, Declaration of John T. Spragens ("Spragens Decl."), ¶ 4. Class Counsel's dedicated efforts on behalf of the Class made this result possible.

The objectors also ignore Defendant's prospective practice changes, which add further value to the Settlement. Indeed, none of the TCPA robocalling class settlements cited by objectors include the remarkable relief obtained here – a complete change to Defendant's calling systems.

| Case | Prospective Practice Change |
|------|------------------------------|
| *Gehrich v. Chase Bank USA, N.A.*, 12 C 5510 | Class members could request to stop receiving automatic alerts to be processed in accordance with normal business practice. |
| *Wilkins v. HSBC Bank Nevada, N.A.* 1:14-cv-00190 | None. |
| *Rose v. Bank of Am. Corp.*, Nos. 5:11-CV-02390, 5:12-cv-04009 | Agreement to call cell phones only if records reflect the borrower's prior express consent, using Defendant's existing definition of prior express consent. |
| *Bayat v. Bank of the West, c-13-2376* | Class members could revoke consent by submitting revocation form. |
| *Couser v. Comenity Bank 3:12-cv-02484-MMA-BGS* | None. |
| *In re Capital One Tel. Consumer Prot. Act Litig*, 1:12-cv-10064 | None. |
| *Bellows v. NCO Fin. Sys., Inc.*, 07-cv-1413 W | Stipulated injunction requiring defendant to train and test debt collectors on their obligations under the law. |

In particular, these changes are better than changes in *Rose* noted by Pentz. Dkt. No. 71 at 8. There, the defendant agreed to change its servicing policies to prevent calls to consumers who had not given prior express consent. *Rose v. Bank of Am. Corp.,* No. 5:11-cv-02390-EJD, 2014 WL 4273358, at *11. However, the

defendant acknowledged under questioning by the court that it would continue using its existing definition of "prior express consent."  As the court noted, "it would appear that most, perhaps all, Class Members will continue receiving automated calls," falling short of "the primary goal of this litigation"—ending nuisance calls.  *Id.*  Here, in contrast, Defendant has adopted new technology it maintains does not violate the TCPA, ensuring no Class Members, or current or future customers will receive illegal calls.  This exceptional result could not have been obtained without Class Counsel's efforts.[10]

Objector Pentz contends that the Settlement is inadequate because payments on the order of $60-120 per claimant are purportedly within the "low-middle range of those typically found in such settlements," Dkt. No. 71 at 2.  The amount paid to each claimant, however, is largely a function of the claims rate.  Where, as here, the settlement provides excellent relief and a robust notice program has ensured adequate participation, the 6% claims rate is high as compared to other large TCPA settlements in this Circuit.[11]  In any case, the per-claimant award is also quite high as compared to other TCPA class settlements.  Each claimant's award is expected to be at least $99.50, measured *before* de-duplication, fraud detection, and a potential second distribution occurs.  Pentz's own authority confirms that a payment of $100 per Class Member is an *exceptional result* that far exceeds most per capita settlement payments in TCPA robocall class actions.  *See Couser v. Comenity Bank*, 125 F. Supp. 3d 1034, 1043 (S.D. Cal. 2015) (citing settlements with per capita payments ranging from $20 (plus a voucher) up to $100); *In re*

---

[10] Indeed, Class Counsel's efforts compare favorably to Ms. Arbelaez's own efforts with an attorney in her individual action against another company.  In her individual action, despite obtaining a default judgment, Ms. Arbelaez received no money and continues to receive calls. Dkt. No. 69 at 1.  Here, in contrast, each claimant will receive about $100—and the calls at issue have stopped.

[11] *See, e.g.*, *Steinfeld v. Discover Fin. Servs.*, No. 3:12-cv-01118 (N.D. Cal.) (1.20%); *Arthur v. Sallie Mae, Inc.*, No. 2:10-cv-00198 (W.D. Wash.) (2.20%); *Adams v. AllianceOne Receivables Mgmt., Inc.*, No. 3:08-cv-00248 (S.D. Cal. 2012) (1.10% claim rate); *Malta v. Freddie Mac & Wells Fargo Home Mortg.*, No. 10-cv-1290 (S.D. Cal. 2010) (2.78%).

*Capital One Telephone Consumer Prot. Act Litig.*, 80 F. Supp. 3d 781, 789 (N.D. Ill. 2015) (finding that $34.60 recovery per claimant "falls on lower end of the scale"); *Rose*, No. 5:11–CV–02390, 2014 WL 4273358, at *9-10 (N.D. Cal. Aug. 29, 2014) (citing settlements with per capita payments of $84.82, $100 subject to reduction, and $300-325, the latter of which involved a small class with only 1,986 filed claims and a defendant that settled at its $1,000,000 insurance policy limit). Even by Pentz's own measure, the $100 payment here is not in the "low-middle range"; in fact, it is on the high end—even though most other settlements involved a much lower claims rate. This is real monetary relief, despite the fact that this is a purely statutory damages case involving nominal economic damages or actual damages (such as harassment and invasion of privacy) that are difficult to quantify.

Objector Arbelaez contends that the Settlement is inadequate because it fails to account for the number of calls each class member received. Dkt. No. 69 at 2. Class Counsel's investigation concluded that no class member received more than a handful of calls. Spragens Decl., ¶ 3. There is therefore no evidence that any Class Member received an inordinate number of calls. Paying claimants on a per-call basis, meanwhile, would be administratively unworkable. The parties therefore concluded that allocating such relief regardless of the number of calls each Class Member may have received is reasonable and fair, and is in keeping with the structure in most other TCPA settlements. *See, e.g.*, *In re Capital One Tele. Consumer Prot. Act Litig.*, 80 F. Supp. 3d 781, 793 (N.D. Ill. 2015) (approving equal settlement distribution where "it is unlikely that a material portion of the class had an average call volume greater or lesser than any other class member" and "call-based claims process would be extremely costly to administer," which would diminish the class's recovery). The Settlement affords all potential Class Members the opportunity to make a claim for monetary relief. Any Class Member who believed that the cash payments do not adequately compensate him or her for the number of calls received had the opportunity to opt out and pursue individual relief.

Finally, Objector Arbelaez suggests that the Class definition is "suspiciously overbroad," speculating that Defendant continued its robocalling campaigns while the litigation was pending.  Dkt. No. 69 at 6.  But the relevant inquiry is whether "the class definition is reasonably co-extensive with Plaintiffs' chosen theory of liability."  *Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1136–37 (9th Cir. 2016).  Here, that is unquestionably true because the Settlement Class is the same as the class pled in Plaintiff's complaint.  Arbelaez points to no defect in the Settlement that leaves some Class Members better off than others or unfairly releases rights or distributes proceeds.  The Settlement provides that each Class Member who filed a claim will receive $100—a significant amount that fairly compensates each Class Member.  Moreover, Defendant has made prospective practice changes that benefit all Class Members.  Because the Class definition matches the theory of harm, the objection should be overruled on this ground as well.

### 2.     <u>There Is No Reversion</u>

Pentz claims that the Settlement "appears" to include a "possibility of reversion" of attorneys' fees to Defendant in the event the fee award is reduced.  Dkt. 71 at 3.  This is nonsense.  Attorneys' fees will not be paid until the Funding Date, defined as five (5) business days after the Final Approval Order becomes "a final and *non-appealable* order."  *Id.* §§ 2.23, 5.01 (emphasis added).  However, if an objector appeals solely the attorneys' fee award (and not the Final Approval Order), Defendant will pay that amount regardless of any appeal.  *See id.*, § 5.01.  This is known as a modified quick-pay provision.  As Pentz well knows, this provision is designed to prevent objectors from holding an attorneys' fee payment hostage with frivolous objections and appeals lodged solely to receive payment for themselves at the expense of the class.  No wonder he finds it objectionable.  For this reason:  "With respect the 'quick pay' provisions, Federal courts, including this Court and others in this District, routinely approve settlements that provide for payment of attorneys' fees prior to final disposition in complex class actions."  *In*

1   *re TFT-LCD (Flat Panel) Antitrust Litig.*, No. MDL 3:07-md-1827-SI, 2011 WL

2   7575004, at *1 (N.D. Cal. Dec. 27, 2011) (collecting cases).  The presence of a

3   modified quick-pay provision therefore does not weigh against settlement approval.

4         There is no possibility of a reversion to Defendant.  Under the Settlement, the

5   "Settlement Fund" consists of a "non-reversionary cash sum that DBCC will

6   pay . . . in the total amount of $10,500,000.00."  Settlement § 2.35.  The Settlement

7   clearly, repeatedly, and unequivocally states that the Settlement is non-

8   reversionary, and all funds other than Settlement Costs must go to Class Members.

9   Accordingly, if the attorneys' fee award was reduced on appeal, Class Counsel

10   would return that money to Defendant, who would in turn be required to distribute

11   those residual settlement funds to Class Members.  *Id.*, § 2.35.

12             **3.      The Settlement Has No Indicia of Collusion**

13         Nor does the Settlement betray any other indicia of collusion.  There is no

14   "clear sailing" agreement.  Clear sailing agreements are only problematic, as the

15   Pentz objection seems to recognize, "when the defendant has agreed that those fees

16   and costs will be paid separately from the class settlement."  *Lobatz v. U.S. W.*

17   *Cellular of California, Inc.*, 222 F.3d 1142, 1148 (9th Cir. 2000); *accord Rose*,

18   2014 WL 4273358, at *4 (cited in objection).  That is expressly *not* the case in this

19   Settlement, in which attorneys' fees and costs are paid from the common fund.

20   Settlement § 7.05.  Class Counsel's incentives align completely with the Class's

21   incentives: Class Counsel are paid to maximize the recovery to Class Members.

22         Finally, Objectors Pentz and Arbelaez contend that Plaintiff did not engage in

23   sufficient discovery to confirm that the Settlement was fair, adequate, and

24   reasonable.  Dkt. No. 71 at 2-3; Dkt. No. 69 at 3-5.  Arbelaez contends that the

25   lawsuit should have unearthed detailed answers to questions about who authorized

26   the robocalling, how much they were compensated, and whether they were ever

27   disciplined, among other things.  But a settlement by its very nature is a

28   compromise: Plaintiff receives guaranteed compensation in exchange for his

agreement not to pursue answers to every question through costly, protracted, and risky litigation. *See Linney*, 151 F.3d at 1242 ("'[T]he very essence of a settlement is compromise, a yielding of absolutes and an abandoning of highest hopes.'"). Whether Plaintiff obtained an answer to every conceivable factual question is not the standard by which settlements are measured; the appropriate inquiry is whether Class Counsel were well-positioned to evaluate the strengths and weaknesses of their case, as well as the appropriate basis upon which to settle it. *See Hanlon v. Chrysler Corp,* 150 F.3d 1011, 1027 (9th Cir. 1998) (approving settlement where there was no evidence suggesting "that the settlement was negotiated in haste or in the absence of information").

Here, there can be no doubt that Class Counsel developed sufficient factual information upon which to negotiate and evaluate the Settlement. In fact, it was reached only after the parties conducted aggressive discovery. Class Counsel obtained and analyzed comprehensive call data, approximately 10,000 pages of documents, and numerous interrogatory responses. 9/8/16 Hutchinson Decl. (Dkt. No. 59), ¶¶ 41-43. Class Counsel were prepared to file for class certification. *Id.*, ¶ 44. Only after Class Counsel scheduled and were fully prepared for Rule 30(b)(6) depositions did Defendant offer to pursue mediation. *Id.*, ¶ 45. Class Counsel's aggressive prosecution of the case is precisely what drove the Settlement.[12]

### B.    Objections to Class Counsel's Fee Request Should Be Overruled

Objector Hall argues that Class Counsel's fee request should be governed by federal, not state, law; is collusive and excessive; should not encompass time spent prosecuting *Vadai* action; and should be allocated among Class Counsel by the

---

[12] Class Counsel additionally drew upon information learned in the prior *Vadai v. Dun & Bradstreet Credibility Corp.* case to gain valuable insights into DBCC's telemarketing practices. This knowledge afforded Class Counsel a further basis for informed settlement negotiations. *See Linney*, 151 F.3d at 1239-40 (observing that in class action settlements, "'formal discovery is not a necessary ticket to the bargaining table' where the parties have sufficient information to make an informed decision about settlement," and "the district court and plaintiffs may rely on discovery developed in prior or related proceedings") (internal citation omitted).

Court.  Each objection lacks merit and should be overruled.

1.     **Class Counsel's Fee Request Is Justified Under Either California or Federal Law**

Hall contends that the "majority of Plaintiffs' [sic] complaint focuses on the TCPA," ignoring both the reality of this litigation and the fact that Plaintiff brought a claim under California's UCL.  *See* Complaint (Dkt. No. 1) at ¶¶1-2, 61, 72-78.  The *Vadai* action pled only a TCPA claim.  Judge Stanton dismissed that action following an unaccepted offer of judgment under Rule 68.  *Vadai v. Dun & Bradstreet Credibility Corp.*, 302 F.R.D. 308 (S.D.N.Y. 2014).  In bringing this action, Plaintiff Thomas brought a UCL claim.  In denying Defendant's motion to dismiss, this Court specifically found that Plaintiff pled sufficient facts to justify application of the UCL to the nationwide class.  *Thomas v. Dun & Bradstreet Credibility Corp.*, 100 F. Supp. 3d 937, 946-47 (C.D. Cal. 2015).  Because the UCL claim survived, Defendant was unable to obtain dismissal of this action.  In other words, the UCL claim was the but-for cause of this lawsuit and settlement.

Accordingly, because California law governed the UCL claim in the case, it also governs the fee request.  *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002) ("The district court found that the settlement fund was the product of the successful claim for benefits under Microsoft's [employee stock purchase plan].  Because Washington law governed the claim, it also governs the award of fees.") (footnote omitted); *Mangold v. California Pub. Utilities Comm'n*, 67 F.3d 1470, 1478 (9th Cir. 1995) (Where "Plaintiffs succeeded on both federal and state statutory grounds," it is appropriate to award fees based on state law.).[13]

The requested fee is fair, reasonable, and appropriate under California or

---

[13] Hall's cited authority relies on the same Ninth Circuit authority cited by Plaintiff. In *Sadowska v. Volkswagen Grp. of Am., Inc.*, this Court awarded class counsel's full fee request, and relied on *Mangold* in electing to award attorneys' fees pursuant to state law, noting its discretion under federal or state law to choose its method of calculating them.  No. CV 11-00665-BRO AGRX, 2013 WL 9600948, at *7 (C.D. Cal. Sept. 25, 2013).  Similarly, the *Klee v. Nissan N. Am., Inc.* court relied on *Vizcaino*, which endorsed the same approach Plaintiff requests here—determining which claim caused the settlement fund and applying that forum's law.

Federal law.  Class Counsel's fee request is inclusive of, and not in addition to, their reasonable expenses incurred in this litigation.  If granted, the fee would represent 30% of the total monetary payout, which is well below the 33.3% that courts apply in common fund cases arising under California law.  *See Laffitte v. Robert Half Int'l, Inc.*, 1 Cal.5th 480 (2016) (approving trial court's award of 33.3% of $19 million settlement for attorneys' fees).[14]

In the alternative, the request is consistent with Ninth Circuit's benchmark for common fund cases.  *See, e.g., Vizcaino*, 290 F.3d at 1049 (approving trial court's award of 31.9% of $96.885 million settlement for attorneys' fees and costs, including a 28% fee award and $3,825,497.86 in costs).  Both professional objectors concede the Ninth Circuit benchmark.  Hall Obj. at 12 ("25% is the benchmark"); Pentz Obj. at 5 ("It is true that there is a widely-cited benchmark of 25% in common fund cases. . . .").  Professor Miller's research confirms that the benchmark is the average fee awarded, not the ceiling (or the floor).  And, Objector Hall concedes:  "The overall result and benefit to the class from the litigation is the most critical factor" in deciding to adjust the benchmark up (or down).  Obj. at 7.

The requested fee is well-justified under the circumstances of this litigation, given prospective practice changes designed to stop the automated calls to cell phones, the substantial monetary benefits that Class Counsel's efforts generated for Class Members, the challenges and risks that Class Counsel assumed in pursuing this matter on a contingency basis, the time and resources that Class Counsel expended prior to reaching a Settlement, and the market rate for similar class action settlements.  *See* Miller Decl. at ¶¶ 2, 28-58.

---

[14] While *Laffitte* recognizes courts' discretion to conduct a lodestar cross-check and adjust the award only if the multiplier is "far outside the normal range," it also explicitly holds that courts "retain the discretion to forego a lodestar cross-check and use other means to evaluate the reasonableness of a requested percentage fee." 1 Cal.5th at 504, 506; *see* Hall Obj. at 10 n.14.  It does *not* adopt a 25% benchmark.

### 2. **Class Counsel's Fee Request, Inclusive of Costs, Is Reasonable and Warranted**

The Court is well within its discretion to award Class Counsel a reasonable percentage of the settlement fund under federal law. *See In re Omnivision Techs.*, 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2007) ("[U]se of the percentage method in common fund cases appears to be dominant.").

"The overall result and benefit to the class from the litigation is the most critical factor in granting a fee award." *In re Omnivision Techs.*, 559 F. Supp. 2d at 1046. Objector Hall simply ignores the exceptional relief provided to Class Members under the Settlement. Here, Plaintiff and Class Counsel obtained $10,500,000 in a non-reversionary Settlement Fund. The monetary relief provided to Class Members under the Settlement is exceptional and two to eight times better than any other TCPA robocall settlement cited by objectors.

Indeed, although the result is exceptional, Class Counsel's request is consistent with TCPA settlements that obtained much-more-meager results. In *Gehrich v. Chase Bank USA, N.A.*, 316 F.R.D. 215 (N.D. Ill. 2016), cited by Objector Hall, the district court used a graduated percentage-of-the-fund approach to award class counsel fees from a $34 million common fund ($1.01 per class member). It awarded fees of 30% of the first $10 million and 25% of the next $10 million. 316 F.R.D. 215, 237 (N.D. Ill. 2016). In *Wilkins v. HSBC Bank Nev., N.A.*, No. 14 C 190, 2015 WL 890566 (N.D. Ill. Feb. 27, 2015), another fee award cited by Objector Hall, the district court adopted a similar method, likewise awarding fees of 30% of the first $10 million and 25% of the next $10 million from a $39,975,000 common fund ($4.41 per class member). No. 14 C 190, 2015 WL 890566 at *10 (N.D. Ill. Feb. 27, 2015). Therefore, the cases cited by objectors mandate an award of 29.8% (i.e., [30% of $10 million] + [25% of $500,000] = $3,125,000, which is 29.76% of the $10.5 million fund).

The objections also fail to take into account the value of the prospective

- 18 -

1   practice changes generated by this litigation.  "In considering the fairness and

2   reasonableness of a fee request, a district court should recognize the value of

3   nonmonetary relief, and may increase an award 'to reflect the benefits to the public

4   flowing from th[e] litigation.'"  *Bostick v. Herbalife Int'l of Am.*, Case No. 2:13-cv-

5   02488-BRO, at *54-*57 (C.D. Cal. May 14, 2015) (Dkt. No. 145) (citations

6   omitted); *Staton v. Boeing Co.*, 327 F.3d 938, 974 (9th Cir. 2003); *see also*

7   *Vizcaino*, 290 F.3d at 1049 (affirming enhanced fee award where "the court found

8   that counsel's performance generated benefits beyond the cash settlement fund");

9   *Linney*, 1997 WL 450064, *7 (granting fee award of 33.3% of common fund where

10  settlement provided additional non-monetary relief).  Here, the Settlement enshrines

11  a set of prospective practice changes that will protect Settlement Class Members

12  from receiving robocalls in violation of the TCPA.  If the value of this benefit were

13  to be taken into consideration, it would increase the common fund's value above

14  $10,500,000 and effectively "reduce[]the overall percentage of the fees that

15  counsel" seek.  *See Walsh v. Kindred Healthcare*, No. C 11-00050 JSW, 2013 WL

16  6623190 at *3-5 (N.D. Cal. Dec. 16, 2013) (approving fee request of 30% of the

17  common fund, finding that this request was effectively a smaller percentage of the

18  actual recovery on behalf of the class since it did not account for  the "substantial

19  injunctive relief" obtained through the settlement).

20      Professor Miller's analysis and empirical research support the request for

21  attorneys' fees.  Professor Miller is presently conducting a study of all class action

22  settlements from 2009-2013.  His preliminary findings indicate that the mean

23  nationwide fee percentage was 27% and the median fee percentage was 29%.

24  Miller Decl., ¶ 43.  For this District, Professor Miller found that the mean fee

25  awarded was 24% and the median fee was 25%.  *Id.*  In other words, half of all fee

26  awards are above 25%.  Professor Miller concludes that "the requested attorneys'

27  fees are within the range of reason when measured against the result obtained, the

28  quality of class counsel, the risk of the litigation, and—most significantly—the

1    awards in other cases of similar characteristics." *Id.*, ¶ 2.  Plaintiff respectfully

2    submits that, because the relief afforded by this Settlement is clearly above average,

3    a fee award above the mean and median awards is appropriate here.

4         Throughout his objection, Hall mischaracterizes comparator settlements and

5    makes comparisons with unlike cases.  For example, *Michel v. HM Healthcare*

6    *Solutions, Inc.*, No. 1:10-cv-638, 2014 WL 497031 (S.D. Ohio Feb. 7, 2014),

7    *Landsman & Funk, P.C. v. Skinder-Strauss Associates*, 639 Fed. Appx. 880 (3d Cir.

8    2016), and *Americana Art China Co. v. Firefox Printing Packaging, Inc.*, 743 F.3d

9    243 (7th Cir. 2014), were "junk fax" cases.  Those constitute a distinct market from

10   robocall litigation and often settle for higher dollar amounts.  Spragens Decl., ¶ 4.

11        Objector Hall fails to acknowledge that Class Counsel requests an award of

12   30% in attorneys' fees and costs *inclusive of litigation expenses*.  Courts in the

13   Ninth Circuit, including this one, have frequently found an award of 28%, *plus*

14   *costs*, to be appropriate.  *See, e.g.*, *Vizcaino*, 290 F.3d at 1048-50 (awarding 28%,

15   plus $3.8 million in costs); *Bostick*, No. 2:13-cv-02488-BRO, at *54-*57 (C.D. Cal.

16   May 14, 2015) (Dkt. No. 145) (awarding 28% of $17.5 million settlement, plus

17   costs).  Class Counsel's request reasonably seeks *no* additional payment of their

18   litigation expenses on top of the requested fee award, but rather seeks those

19   expenses as part of the total amount requested.

20                    **3.    Class Counsel Faced Significant Risks**

21        Pentz wrongly claims that "this was a relatively low-risk, short-duration

22   case."  Nothing could be further from the truth.  After a pre-filing investigation and

23   six months of litigation, Class Counsel literally lost the TCPA claims in their

24   entirety in the *Vadai* action.  For eight months, no other counsel pursued any TCPA

25   lawsuit against Defendant.  Only after Plaintiff retained Class Counsel did this UCL

26   and TCPA case proceed for almost two years of hard-fought litigation.  The

27   absence of any other counsel willing to step forward attests to riskiness of this case.

28        Hall concedes that the risks associated with bringing this case are

1    "significant," but then contends that Plaintiff exaggerated them.  In fact, the risks

2    only grew larger during the course of the litigation, which was filed during a time

3    of legal uncertainty, both as to the meaning of the TCPA and the possibility of even

4    pursuing claims like this on a class-wide basis, or at all.  The petition for certiorari

5    in *Spokeo v. Robins*, 126 S.Ct. 1540 (2016) was granted the day before Plaintiff

6    filed this case; *Tyson Foods, Inc. v. Bouaphakeo*, 136 S.Ct. 1036 (2016) and

7    *Campbell-Ewald Co. v. Gomez*, 136 S.Ct. 663 (2016), were pending when the case

8    filed; and the petitions for review of the 2015 Declaratory Ruling were filed soon

9    after.  Spragens Decl., ¶ 2; Miller Decl., ¶ 36.  That risk carried through until

10   settlement: the D.C. Circuit review of the 2015 Declaratory Ruling remains

11   pending.  And, the scope of the TCPA is subject to future FCC orders, which may

12   not be plaintiff-friendly.

13        This Court very recently denied class certification in a similar TCPA class

14   action, finding that the issue of prior express consent was an individualized issue

15   that precluded class certification.  *Simon v. Healthways, Inc.*, Case No. 14-cv-

16   08022-BRO, 2015 WL 10015953 (C.D. Cal. Dec. 17, 2015).  Other courts in this

17   district have ruled similarly.  *See Aghdasi v. Mercury Ins. Grp., Inc.*, No. CV 15-

18   4030-R, 2016 WL 5899290, at *1 (C.D. Cal. Jan. 21, 2016) (describing

19   "individualized" issues regarding prior express consent that predominated over

20   common questions).  Among other risks, the FCC's decisional and administrative

21   authority interpreting the TCPA is unsettled on issues that are material to Plaintiff's

22   claims, including the definitions of "called party," "prior express consent," and

23   "automatic telephone dialing system."  And Class Counsel's prior case against

24   Defendant was found to have been mooted when Defendant made an offer of

25   judgment.  Far from being "exaggerated," the very real risks here lend further

26   support to Class Counsel's requested fee award.

27

28

### 4. A Lodestar Plus Multiplier Cross-Check Supports the Requested Fee

Objector Hall insists that the time spent by Class Counsel on the litigation does not justify the requested fees, but this misstates the analysis.  A lodestar cross-check is not necessary where, as happened here, an "early" settlement achieved exceptional results for the class.  *See, e.g., Glass v. UBS Fin. Servs., Inc.*, No. C-06-4068 MMC, 2007 WL 221862, at *16 (N.D. Cal. Jan. 26, 2007) ("Under the circumstances presented here, where the early settlement resulted in a significant benefit to the class, the Court finds no need to conduct a lodestar cross-check."), *aff'd*, 331 F. App'x 452 (9th Cir. 2009).  Awarding fees as a percentage of the recovery obtained by Class Counsel encourages them "to prosecute the case in an efficient manner" rather than "devot[ing] unnecessary hours to generate a substantial fee."  *Newberg on Class Actions* § 14:6 (4th ed. 2002).  Professor Miller opines that the lodestar method is inferior to the percentage approach, concluding that the need for a lodestar cross-check is questionable "because the percentage fee sought in this action is in line with extensive data about awards in other cases."  Miller Decl. at ¶ 45.  Recently, a district court approved a TCPA class action settlement over the objection of another Christopher Bandas client, awarding Class Counsel 30% of the $16.4 million settlement fund in attorneys' fees.  The Court noted that in light of the "excellent result" of $24 for each claimant, it was not concerned that the case settled relatively quickly:

> Judicial economy encourages efficiency and discourages litigation for the sole purpose of driving up fees. The mere fact that the parties were able to reach an excellent settlement quickly should not work as a penalty to Class Counsel, who took risk in taking the case and were able to use targeted informal discovery as a means to secure a quicker payout for the class.

*Markos v. Wells Fargo Bank, N.A.*, Case No. 1:15-cv-01156-LMM, 2017 WL

416425, at *4 (N.D. Ga. Jan. 30, 2017).  Here, Class Counsel obtained formal discovery, prepared to file a class certification brief, and ultimately achieved a negotiated result of approximately $100 per claimant—four times more than the "excellent result" in *Markos*.  Such strong relief counsels in favor of awarding the requested fees regardless of the number of hours spent prosecuting the action.

If the Court does decide to conduct a cross-check, Professor Miller likewise opines that the fee request is appropriate under a lodestar cross-check.  *Id.* at ¶ 56.  In fact, Class Counsel's rates are on the "low end" as compared to billing rates reported in prior class action settlements.  *Id.* at ¶ 53.  The resulting multiplier of less than 4.99[15] is justified, particularly given the excellent results achieved for the class and the risks Class Counsel undertook in taking on this case.  *See, e.g., Vizcaino*, 290 F.3d at 1051 and Appendix (citing cases approving multipliers in common fund cases going as high as 19.6); *see also Sadowska v. Volkswagen Grp. Of Amer., Inc.*, No. cv-11-00665-BRO, 2013 WL 9600948, at *9 (under California law, "[m]ultipliers can range from 2 to 4 or even higher.") (O'Connell, J.) (quoting *Wershba v. Apple Computer, Inc.,* 91 Cal.App.4th 224, 255 (2001)).  Under these circumstances, ample precedent supports the awarding of a multiplier of less than 4.99.  *See* Dkt. No. 67 at 22-23 (collecting cases).

Hall contends that the Ninth Circuit recognizes a "strong presumption" that lodestar alone is reasonable—but this principle applies only in the context of attorneys' fees awarded pursuant to federal fee shifting statutes where the percentage-of-the-fund method does not apply.  *See Perdue v. Kenny A*, 130 S. Ct. 1662, 1669 (2010) ("This case presents the question whether the calculation of an attorney's fee, under federal fee-shifting statutes, based on the 'lodestar,' *i.e.*, the number of hours worked multiplied by the prevailing hourly rates, may be increased due to superior performance and results.").  Lodestar multipliers are not barred in

---

[15] Since Class Counsel reported their lodestar, they have devoted considerable time to this matter and will report their updated lodestar before the Fairness Hearing.

common fund, non-statutory fee shifting cases, and are regularly used as part of the lodestar cross-check.  *See In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1299 (9th Cir. 1994) ("[The] rationale for barring risk multipliers in statutory fee cases does not operate to bar risk multipliers in common fund cases."); *In re Apollo Grp. Inc. Sec. Litig.*, No. CV 04-2147-PHX-JAT, 2012 WL 1378677, at *7 n.1 (D. Ariz. Apr. 20, 2012) ("The reasoning in *Perdue* has not been extended to common fund cases, and Ninth Circuit precedent distinguishes between common fund cases and statutory fee cases.").[16]

Objector Hall also misleadingly cites *Stanger v. China Elec. Motor, Inc.*, 812 F.3d 734, 738 (9th Cir. 2016), for "the strong presumption that the lodestar amount represents a reasonable fee," neglecting to mention that this presumption only applies to courts using the lodestar method.  "[I]n a common fund case, such as this, the district court has the discretion to choose between either the lodestar or the percentage-of-fund methods when calculating fees."  *Id.*  Whichever method a court uses, it is cautioned to avoid a "mechanical or formulaic application" of it that leads to an unreasonable result.  *Id.* at 739 (vacating reduced lodestar award).

### 5.   Class Counsel's Time Spent Prosecuting the *Vadai* Case Is Compensable

Objector Hall makes the unsupported allegation of "double billing" because

---

[16] Hall relies on inapposite applications of *Perdue*.  *Kelly v. Wengler* involved the application of a lodestar enhancement to a prevailing party under 42 U.S.C. § 1983, a federal fee-shifting statute, and the PLRA, which contains specific limits on attorneys' fee rates.  822 F.3d 1085, 1102 (9th Cir. 2016).  In it, the Ninth Circuit *upheld* the lodestar enhancement due to the attorneys' "superior performance and the need to attract competent counsel."  *Id.* The parties in *Fleury v. Richemont N. Am., Inc.*, reached a coupon settlement, not a non-reversionary common fund; so the Court chose to use the lodestar method consistent with the requirements of 28 U.S.C. § 1712(d)(1).  No. C-05-4525 EMC, 2008 WL 3287154, at *2-3 (N.D. Cal. Aug. 6, 2008).  In *Weeks v. Kellogg Co.*, the court declined to award fees on the almost 50% of the settlement that would go to a *cy pres* recipient but proceeded to award counsel 30% of the settlement value that would benefit the class—the same percentage Class Counsel request here.  No. CV 09-08102 MMM RZX, 2013 WL 6531177, at *24-31 (C.D. Cal. Nov. 23, 2013).  Hall also relies on *Van Horn v. Nationwide Prop. & Cas. Ins. Co.*, 436 Fed. Appx. 496, 500 (6th Cir. 2011), but the court there simply found that the district court's reliance on *Perdue* was not an abuse of discretion because the court did, in fact, award a multiplier.

- 24 -

Class Counsel included time spent on the *Vadai v. Dun & Bradstreet Credibility Corp.* in their lodestar calculation.  Including such time is permissible because Class Counsel's work in that prior case benefitted the Class here.  *See, e.g., Loretz v. Regal Stone, Ltd.*, 756 F. Supp. 2d 1203, 1214 (N.D. Cal. 2010); *see also Hvorcik v. Sheahan*, No. 92-c-7329, 1997 WL 695721 (N.D. Ill. Oct. 30, 1997).  Class Members received no compensation from the prior case but did directly benefit from information learned from Class Counsel prosecuting that action.  While a lodestar cross-check is unnecessary in this case, Class Counsel include their uncompensated time to assist the Court should it desire to perform a cross-check.  If the Court requires more detail, Class Counsel stand ready to provide it.

### 6.   Absent a Dispute, The Court Should Not Supervise Allocation of Attorneys' Fees

Hall argues that the Court must supervise the allocation of any fee award among Class Counsel.  Dkt. No. 70, at 20-21.  That is incorrect.  Absent a dispute between attorneys, court supervision of fee allocation is unnecessary.  *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prods. Liab. Litig.*, 8:10ML 02151, 2013 U.S. Dist. LEXIS 123298, at *316 (C.D. Cal. July 24, 2013) (court will not 'specify what share of the common fund award that each attorney [will] receive.'" (citation omitted)); *In re Domestic Air Transp.*, 148 F.R.D. 297, 357 (N.D. Ga. Mar. 22, 1993) ("a private matter to be handled among class counsel"); *In re Warfarin Sodium Anti. Litig.*, 212 F.R.D. 231, 262 (D. Del. 2002).

Hall relies on *In re High Sulfur Content Gasoline Prods. Litig.*, 517 F.3d 220, 227-28 (5th Cir. 2008), but that case is not to the contrary.  There, the court held only that if there is a fee dispute between plaintiffs' attorneys—as there was in *High Sulfur*—judicial intervention is warranted.  *See id.* at 234; *In re "Agent Orange" Prod. Liab. Litig.*, 818 F.2d 216, 223 (2d Cir. 1987) (same).

## IV.   CONCLUSION

Plaintiff respectfully requests that the Court overrule all objections.

1

2   Dated: February 17, 2017          LIEFF, CABRASER, HEIMANN
                                         & BERNSTEIN, LLP
3

4                                     By: */s/   Daniel M. Hutchinson*
                                         Daniel M. Hutchinson
5

6                                     LIEFF CABRASER HEIMANN
                                         & BERNSTEIN, LLP
7                                     Jonathan D. Selbin (State Bar No. 170222)
                                      Email: jselbin@lchb.com
8                                     250 Hudson Street, 8th Floor
                                      New York, NY  10013
9                                     Telephone:  (212) 355-9500
                                      Facsimile:  (212) 355-9592
10

11                                    Daniel M. Hutchinson
                                      (State Bar No. 239458)
12                                    Email: dhutchinson@lchb.com
                                      275 Battery Street, 29th Floor
13                                    San Francisco, California  94111-3339
                                      Telephone:  (415) 956-1000
                                      Facsimile:  (415) 956-1008
14

15                                    John T. Spragens
                                      (State Bar No. 031445)
16                                    Email:  jspragens@lchb.com
                                      One Nashville Place
17                                    150 Fourth Avenue North, Suite 1650
                                      Nashville, TN  37219-2423
18                                    Telephone:  (615) 313-9000
                                      Facsimile:  (615) 313-9965
19

20                                    SIRI & GLIMSTAD LLP
                                      Aaron Siri
21                                    (admitted *pro hac vice*)
                                      Email: aaron@sirillp.com
22                                    200 Park Avenue, 17th Floor
                                      New York, New York 10166
                                      Telephone: (212) 532-1091
                                      Facsimile: (646) 417-5967
23

24                                    PARISI & HAVENS LLP
                                      David C. Parisi
25                                    (State Bar No. 162248)
                                      Email:  dcparisi@parisihavens.com
26                                    212 Marine Street, Unit 100
                                      Santa Monica, CA 90405
27                                    Telephone:  (818) 990-1299
                                      Facsimile:  (818) 501-7852
28                                    *Counsel for Plaintiff and the Proposed Class*