**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 15-03194 BRO (GJSx) | | Date | March 23, 2017 |
|---|---|---|---|---|
| Title | JEFFREY A. THOMAS V. DUN AND BRADSTREET CREDIBILITY CORP. | | | |

Present: The Honorable   **BEVERLY REID O'CONNELL, United States District Judge**

| Renee A. Fisher | Not Present | N/A |
|---|---|---|
| Deputy Clerk | Court Reporter | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Not Present | Not Present |

**Proceedings:**   (IN CHAMBERS)

**ORDER RE MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND MOTION FOR ATTORNEYS' FEES, COSTS, AND CLASS REPRESENTATIVE SERVICE AWARD [67, 73]**

## I.    INTRODUCTION

Pending before the Court are two Motions related to the settlement of this class action case: (1) Motion for Final Approval of Class Action Settlement, (Dkt. No. 73 (hereinafter, "Approval Mot.")); and, (2) Motion for Attorneys' Fees, Costs, and Class Representative Service Award, (Dkt. No. 67 (hereinafter, "Fees Mot.")).  After considering the papers filed in support of the instant motions, the arguments advanced at the final fairness hearing held on March 20, 2017, and the entirety of the record, the Court **GRANTS** Plaintiff's Motion for Final Approval of the Class Settlement and **GRANTS in part** and **DENIES in part**, Plaintiff's Motion for Attorneys' Fees, Costs, and a Class Representative Service Award.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    Plaintiff's Claims

Plaintiff Jeffery A. Thomas ("Plaintiff") is a resident and citizen of the State of Oregon and Executive Vice President of a company called J and J Thomas, Inc.  (Compl., ¶¶ 7, Ex. A.)  Defendant Dun & Bradstreet Credibility Corporation ("Defendant") sells credit building and credibility solutions for businesses.  (Compl. ¶ 8.)  Plaintiff initiated this putative class action on April 28, 2015, alleging violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. §§ 227 *et seq.*, and California's Unfair

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| Case No. | CV 15-03194 BRO (GJSx) | Date | March 23, 2017 |
|---|---|---|---|
| Title | JEFFREY A. THOMAS V. DUN AND BRADSTREET CREDIBILITY CORP. | | |

Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 *et seq.* (*See* Compl.)
Plaintiff seeks to represent a nationwide class of individuals who have received non-
emergency telemarketing calls from or on behalf of Defendant to their cellular telephones
without prior express consent. (Compl. ¶ 40.)

According to the Complaint, Plaintiff received numerous calls from Defendant to
his cellular telephone throughout 2013. (Compl. ¶ 23.) Plaintiff alleges these calls were
unlawful under the TCPA because he never granted Defendant permission to contact him
about any of Defendant's business credit services. (Compl. ¶ 22.) Plaintiff further
alleges he requested Defendant cease calling him and even asked Defendant to place him
on the company's "do-not-call" list on several occasions; Defendant nevertheless
continued to call Plaintiff's cellular telephone. (Compl. ¶ 24.)

On October 7, 2013, Defendant again called Plaintiff's cellular telephone.
(Compl. ¶ 25.) Frustrated by the continued calls, Plaintiff sent a cease-and-desist letter
on October 8, 2013 detailing his efforts over the past year to be placed on Defendant's
"do-not-call" list. (Compl. ¶ 26, Ex. A.) The letter stated the following, in pertinent part:

> [T]he purpose of this letter is to demand that you CEASE AND DESIST
> contact of any kind with me or any member of J and J Thomas, Inc.[,] to
> include the following subsidiaries: Concierge Home and Business Watch, J
> and J Thomas International, Grants Pass Security, and F Wombat and Co.
> This demand includes but is not limited to, phone calls, texts, emails, faxes
> and letters/mailers.

(Compl., Ex. A.) Plaintiff provided a copy of the letter to the Federal Communications
Commission ("FCC"), Oregon Department of Justice, and State of California Department
of Justice. (Compl. ¶ 26.)

Plaintiff contends Defendant's actions violate the TCPA and constitute unlawful
and unfair business practices under the UCL. (Compl. ¶¶ 62–78.) Plaintiff alleges
Defendant acted knowingly and willfully by continuing to call Plaintiff's cellular
telephone despite his requests to be placed on the company's "do-not-call" list.
(Compl. ¶ 64.) Plaintiff seeks statutory damages under the TCPA, injunctive relief, and
an award of attorney's fees and costs. (Compl. Prayer for Relief.)

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 15-03194 BRO (GJSx) | Date | March 23, 2017 |
|---|---|---|---|
| Title | JEFFREY A. THOMAS V. DUN AND BRADSTREET CREDIBILITY CORP. | | |

### B.   Proceedings Leading to the Settlement Agreement

Plaintiff contends that, prior to the filing of his Complaint, he participated in "over a year of extensive pre-filing investigation and related litigation." (Approval Mot. at 3.) On June 12, 2015, Defendant filed a Motion to Dismiss Plaintiff's case, (Dkt. No. 16), which the Court denied on August 5, 2015, (Dkt. No. 23). Following the denial of Defendant's Motion to Dismiss, Plaintiff avers that the parties have "engaged in significant discovery regarding Plaintiff's allegations." (Approval Mot. at 3.) For instance, Defendant produced call data to Plaintiff's expert "so that he could determine the total number of cellular telephone numbers dialed by Defendant." (Approval Mot. at 4.) Defendant produced approximately 8,800 pages during discovery and Plaintiff obtained approximately 982 documents pursuant to a subpoena from a third-party vendor. (*Id.*) Plaintiff scheduled Rule 30(b)(6) depositions, though the depositions were ultimately postponed in favor of proceeding with mediation. (*Id.*) Defendant also "engaged in extensive discovery," including serving third-party discovery requests and deposing Plaintiff's wife. (*Id.*)

### C.   The Settlement Agreement

The parties participated in mediation with the Honorable Morton Denlow (ret.), a JAMS mediator in Chicago, Illinois. (Approval Mot. at 5.) Prior to mediation, the parties exchanged written mediation statements. (*Id.*) One week after mediation, with the assistance of Judge Denlow, the parties reached an agreement. (*Id.*)

The Settlement Agreement defines the Settlement Class as:

All persons within the United States who, between April 28, 2011 and January 31, 2016, received a nonemergency Call [*sic*] from or on behalf of Dun & Bradstreet Emerging Businesses Corp., or its predecessor entities, Dun & Bradstreet Credibility Corp., Credibility Corp. and Brad Acquisition Corp. to a cellular telephone through the use of an automatic telephone dialing system.

LINK:

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | **CV 15-03194 BRO (GJSx)** | | Date | March 23, 2017 |
|----------|----------------------------|---|------|----------------|
| Title | **JEFFREY A. THOMAS V. DUN AND BRADSTREET CREDIBILITY CORP.** | | | |

(*See* Dkt. No. 58-1 (hereinafter, "Settlement Agreement") § 2.32.)  Discovery has indicated that there are approximately 1,192,555 class members.  (Approval Mot. at 6.)

The Settlement Agreement requires Defendant to create a non-reversionary Settlement Fund of $10.5 million (the "Settlement Fund").  (Settlement Agreement § 4.02.)  In addition, the Settlement Agreement acknowledges that Defendant has made certain practice changes to prevent future TCPA violations by dialing cell phones using an automated dialing system.  (*See* Settlement Agreement § 4.01.)  Those who received a phone call at more than one telephone number may make a claim for each number called.  (*See* Settlement Agreement §§ 4.03, 9.01.)  Payment will be made by check or secure electronic payment.  (Settlement Agreement § 4.03.)  The amount of each Class Member's award will be based on a *pro rata* distribution, resulting in an award of approximately $100 per claimant.  (*See* Settlement Agreement § 4.04; Approval Mot. at 6–7.)  If 180 days after the initial distribution the amount of unclaimed checks exceeds $200,000, then the Claims Administrator will make a second distribution of the remaining funds to those who previously received payments.  (Settlement Agreement § 7.05.)

To file a claim, Class Members must complete a one-page claim form and provide it to the Claims Administrator online, via telephone, or through the mail.  (Settlement Agreement § 9.02.)  Class Members had ninety days from the Settlement Notice Date (meaning more than 120 days from the Preliminary Approval Order) in which to submit their claim forms and sixty days to submit any opt-out requests or objections.  (*See* Settlement Agreement §§ 2.09, 2.26, 2.27.)  All Class Members who do not opt out release all claims "that arise out of the use of an automatic telephone dialing system or artificial or prerecorded voice to contact or attempt to contact" the Class Members.  (Approval Mot. at 8 (internal quotation marks omitted); *see also* Settlement Agreement § 14.01.)

Plaintiff requests that the Court award Plaintiff a Class Representative Award of $10,000 for his time and effort during this litigation.  (*See* Approval Mot. at 8–9; *see also* Fees Mot. at 24–25.)  In addition, Plaintiff seeks an award of attorneys' fees in the amount of 30% of the Settlement Fund.  (*See* Approval Mot. at 9; *see also* Fees Mot.)  Though not mentioned in Plaintiff's Motions, it appears that Plaintiff also seeks the reimbursement of costs for Kurtzman Carson Consultants LLC ("KCC"), the Claims

LINK:

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 15-03194 BRO (GJSx) | | Date | March 23, 2017 |
|----------|------------------------|---|------|----------------|
| Title | **JEFFREY A. THOMAS V. DUN AND BRADSTREET CREDIBILITY CORP.** | | | |

Administrator in this case.  (*See* Declaration of Steven J. Powell (Dkt. No. 73-1) (hereinafter, "Powell Decl.") ¶ 15.)  KCC was responsible for (1) issuing Class Notice and claim forms; (2) obtaining new addresses for returned mail and e-mail; (3) creating and maintaining the website and telephone hotline; (4) responding to Class Member inquiries; (5) approving or rejecting claims; and, (6) calculating and issuing settlement payments.  (*See* Approval Mot. at 9–10.)

### D.  Notice to Class Members and Class Response

The Court preliminarily approved the form of class notice in its Preliminary Approval Order on September 28, 2016.  (Dkt. No. 64.)  On November 6, 2016, KCC sent an e-mail notice to the e-mail addresses of 347,851 Class Members.  (Approval Mot. at 10.)  On November 9, 2016, KCC mailed a postcard claim form to 1,091,311 addresses that were gathered by Defendant.  (*Id.*)  Before mailing the postcard notices, the provided addresses were updated using the United States Postal Service's National Change of Address database, certified via the Coding Accuracy Support System, and verified through Delivery Point Validation.  (*Id.*)  KCC has received 160,324 postcard notice as undeliverable, has found 66,866 new addresses, and has remailed the postcard notices to those addresses.  (*Id.*)

KCC has also provided notice of the settlement, under Defendant's supervision, to the officials designated pursuant to the Class Action Fairness Act.  (*See* Approval Mot. at 10–11.)  Thus far, there has been no objection from any of the attorneys general. (Approval Mot. at 11.)  In addition, KCC ran a social media notice campaign, using Facebook targeted advertising to target cellphone users under the age of 18.  (*Id.*) According to Plaintiff, KCC's campaign "gained 17,655,170 impressions."  (*Id.*)

On November 9, 2016, KCC activated a toll-free telephone number that Class Members could access to learn more about the settlement by receiving answers to frequently asked questions, requesting more information, and filing a claim.  (*Id.*)  The toll-free number was "prominently displayed" in all printed notice materials, and has, thus far, received 4,667 calls, 517 of which have been transferred to a live operator.  (*Id.*) That same day, KCC activated the official settlement website.  (*Id.*)  The website also provided answers to frequently asked questions, the class notice in English and Spanish, the claim form in both languages, a settlement exclusion form in both languages, the

LINK:

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 15-03194 BRO (GJSx) | | Date | March 23, 2017 |
|----------|------------------------|--|------|----------------|
| Title | JEFFREY A. THOMAS V. DUN AND BRADSTREET CREDIBILITY CORP. | | | |

Settlement Agreement, Preliminary Approval Order, "and other important court documents." (*Id.*) Class members could also use the settlement website to file a claim. (*Id.*) According to Plaintiff, the website address "was prominently displayed in all printed notice materials." (*Id.*) The website has received approximately 58,992 visitors. (*Id.*)

The claim deadline was February 6, 2017. (*Id.*) Thus far, approximately 65,731 claims have been timely filed, 45,140 of which were received through the mail, 20,077 of which were submitted online, and 514 of which were received over the phone. (Approval Mot. at 11–12.) In addition, thirty-three late claims have been filed. (Approval Mot. at 12.) Plaintiffs contend that this 6.02% claims rate "compares favorably to other class action settlements of TCPA and UCL claims." (*Id.*) The exclusion request deadline was January 7, 2017. (*Id.*) So far, KCC has received eighty-one timely requests for exclusion, two untimely requests, and three objections. (*Id.*) The three objections have been from Daniel Hall, James Pentz, and Diana Arbelaez. (*See* Powell Decl., Ex. D.) According to Plaintiff, KCC examined the Class Member database and confirmed that Objectors Hall and Pentz received calls from Defendant during the Class Period, but it appears that the number Objector Arbelaez includes in her objection was not called. (Approval Mot. at 12.)

### E.    Relevant Procedural History

As discussed above, on September 8, 2016, Plaintiff filed a Motion for Preliminary Approval of the Class Action, (Dkt. No. 58), which the Court granted on September 26, 2016, (Dkt. No. 62). The next day, the parties requested several amendments to the Preliminary Approval Order, (Dkt. No. 63), and the Court issued an Amended Order on September 28, 2016, (Dkt. No. 64).

On October 28, 2016, the parties submitted a Status Report regarding the *cy pres* designee for the settlement. (*See* Dkt. No. 66.) On December 8, 2016, Plaintiff's counsel filed a Motion for Attorneys' Fees, Costs, and a Class Representative Service Award. (*See* Dkt. No. 67.) The next day, Plaintiff's counsel filed a Notice of Errata and filed a corrected Declaration in support of its Attorneys' Fees Motion. (*See* Dkt. No. 68.) On January 6, 2017, the Court received an objection from Objector Arbelaez. (*See* Dkt. No. 69 (hereinafter, "Arbelaez Obj.").) On January 7, 2017, the Court received two

LINK:

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 15-03194 BRO (GJSx) | Date | March 23, 2017 |
|---|---|---|---|
| Title | JEFFREY A. THOMAS V. DUN AND BRADSTREET CREDIBILITY CORP. | | |

additional objections from Objectors Hall and Pentz. (*See* Dkt. Nos. 70 (hereinafter, "Hall Obj."), 71 (hereinafter, "Pentz Obj.").) On February 17, 2017, Plaintiff filed the instant unopposed Motion for Final Approval and his responses to the Objectors. (*See* Approval Mot.; Dkt. No. 74 (hereinafter, "Obj. Response")).) On March 13, 2017, Plaintiff's counsel filed a Supplemental Declaration. (Dkt. No. 75 (hereinafter, "Supp. Hutchinson Decl.").) On March 16, 2017, Objector Arbelaez filed a Reply in support of her objections. (Dkt. No. 76.)

The Court held a final fairness hearing on Tuesday, March 21, 2017.[1] Counsel for Plaintiff and all remaining Defendant were present. Objector Pentz, appearing through his counsel, was the only objector present at the hearing.

## III. LEGAL STANDARD

There is a strong judicial policy favoring settlement agreements, "particularly where complex class action litigation is concerned." *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992). Nevertheless, when reviewing a proposed class action settlement, district courts "have the responsibility of ensuring fairness to all members of the class." *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003). A district court may not approve a class settlement unless the court determines that the "proposed settlement is fundamentally fair, adequate, and reasonable." *Id.* at 959 (internal quotation marks omitted).

### A. Final Approval of a Class Action Settlement Under Rule 23(e)

Under Rule 23(e), the "claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval." Fed. R. Civ. P. 23(e). District courts must follow a two-step process when deciding whether to approve a proposed class action settlement. *See McKenzie v. Fed. Express Corp.*, No. CV 10-02420 GAF, 2012 WL 2930201, at *2 (C.D. Cal. July 2, 2012). "First, the court must determine whether the proposed settlement deserves preliminary approval." *See id.*

---

[1] The Court, on its own motion, continued the fairness hearing from March 20, 2017 to March 21, 2017. However, both the Court's clerk and Plaintiff's counsel waited for any objector to appear on March 20. No objector appeared. Plaintiff's counsel further represented that they posted the change in the hearing on social media.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 15-03194 BRO (GJSx) | Date | March 23, 2017 |
|---|---|---|---|
| Title | JEFFREY A. THOMAS V. DUN AND BRADSTREET CREDIBILITY CORP. | | |

(citing *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 525 (C.D. Cal. 2004)).  Second, once the class members receive notice of the proposed settlement, the court must hold a fairness hearing and determine whether final approval is warranted.  *Id.* (citing *Nat'l Rural Telecomms. Coop.*, 221 F.R.D. at 525).

Under Rule 23(e), a district court may not finally approve a class settlement unless the court determines that the "proposed settlement is fundamentally fair, adequate, and reasonable."  *Staton*, 327 F.3d at 959 (internal quotation marks omitted).  The very circumstances of settlement negotiations raise "incentives for the negotiators to pursue their own self-interest and that of certain class members."  *Id.* at 960.  Thus, a district court must review a proposed class action settlement not only for actual fraud, overreaching, or collusion, but also with an eye to whether the terms are fair, adequate, and reasonable to the class as a whole.  *Id.*

In determining whether a proposed settlement meets the fundamental standard of fairness, adequacy, and reasonableness, a district court may consider the following factors: (1) "the strength of [the] plaintiffs' case"; (2) "the risk, expense, complexity, and likely duration of further litigation"; (3) "the risk of maintaining class action status throughout the trial"; (4) "the amount offered in settlement"; (5) "the extent of discovery completed, and the stage of the proceedings"; (6) "the experience and views of counsel"; (7) "the presence of a governmental participant"; and, (8) "the reaction of the class members to the proposed settlement."  *Id.* at 959 (internal quotation marks omitted); *see also Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998).  "This list is not exclusive and different factors may predominate in different factual contexts."  *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993).

A district court's role in evaluating a proposed settlement is "limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable[,] and adequate to all concerned."  *Officers for Justice v. Civil Serv. Comm'n of S.F.*, 688 F.2d 615, 625 (9th Cir. 1982).  Accordingly, a district court should neither judge the merits of the claims in dispute, nor compare the proposed settlement "against a hypothetical or speculative measure of what might have been achieved by the negotiators."  *Id.*  "Ultimately, the district court's determination is

LINK:

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 15-03194 BRO (GJSx) | | Date | March 23, 2017 |
|---|---|---|---|---|
| Title | JEFFREY A. THOMAS V. DUN AND BRADSTREET CREDIBILITY CORP. | | | |

nothing more than an amalgam of delicate balancing, gross approximations[,] and rough justice." *Id.* (internal quotation marks omitted).

**B.     Attorneys' Fees Under Rule 23(h)**

In any certified class action, a district court may award reasonable attorneys' fees and nontaxable costs as authorized by law or the parties' agreement. Fed. R. Civ. P. 23(h). Where a proposed class action settlement contains a fee provision, the provision is subject to the inquiry into whether the settlement is fair, adequate, and reasonable. *Staton*, 327 F.3d at 963 (explaining that "[t]here is no exception in Rule 23(e) for fees provisions contained in proposed class action settlement agreements"). A district court must "carefully assess" the reasonableness of a fee provision. *Id.* The mere fact that the defendant agrees to pay the fees "does not detract from the need to carefully scrutinize the fee award." *Id.* at 964. This is because the allocation between the class award and the attorneys' fees "is of little or no interest to the defense." *Id.* (internal quotation marks omitted).

"[A] litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). This doctrine is known as the "common fund" doctrine. As the Supreme Court explained:

> The [common fund] doctrine rests on the perception that persons who obtain the benefit of a lawsuit without contributing to its cost are unjustly enriched at the successful litigant's expense. Jurisdiction over the fund involved in the litigation allows a court to prevent this inequity by assessing attorney's fees against the entire fund, thus spreading fees proportionately among those benefited by the suit.

*Id.* (internal citations omitted). Thus, the common fund doctrine permits a district court to award attorneys' fees from the total monetary fund recovered by the class to ensure that each class member "contributes proportionately to the payment of attorneys' fees." *Staton*, 327 F.3d at 967.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 15-03194 BRO (GJSx) | Date | March 23, 2017 |
|---|---|---|---|
| Title | JEFFREY A. THOMAS V. DUN AND BRADSTREET CREDIBILITY CORP. | | |

The Supreme Court has set forth three criteria for obtaining an award of attorneys' fees from a common fund: (1) the class of persons benefiting from the fund must be "easily identifiable"; (2) the court must be able to accurately trace the benefits from the fund to the class beneficiaries; and, (3) the court must be able to shift the fee from the fund to those benefiting from it "with some exactitude." *Van Gemert*, 444 U.S. at 478–79. Generally, these three criteria are satisfied "when each member of a certified class has an undisputed and mathematically ascertainable claim to part of a lump-sum judgment recovered on his behalf." *Id.*

In the Ninth Circuit, a district court presiding over a common fund case may award attorneys' fees based on one of two methods: the lodestar method or the percentage method. *Staton*, 327 F.3d at 967–68; *see also Hanlon*, 150 F.3d at 1029. If the court adopts the lodestar method, it may apply a risk multiplier to increase or decrease the fee award based on various factors, including the risk involved and the length of the proceedings. *Staton*, 327 F.3d at 968. If the court adopts the percentage method, "the court simply awards the attorneys a percentage of the fund sufficient to provide class counsel with a reasonable fee." *Hanlon*, 150 F.3d at 1029.

Although a court has discretion to apply either method, the "use of the percentage method in common fund cases appears to be dominant." *In re Omnivision Techs.*, 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2008) (citing *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002); *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990); *Paul, Johnson, Alston, & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989)). In applying the percentage method, the court "must show why [the chosen] percentage and the ultimate award are appropriate based on the facts of the case. *Id.* (explaining that the court may not "arbitrarily apply a percentage"). The "benchmark" for percentage-method fee awards in the Ninth Circuit is twenty-five percent of the common fund. *Hanlon*, 150 F.3d at 1029. Notwithstanding this benchmark, the percentage should be adjusted "when special circumstances indicate that the percentage recovery would be either too small or too large in light of the hours devoted to the case or other relevant factors." *Six (6) Mexican Workers*, 904 F.2d at 1311.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 15-03194 BRO (GJSx) | Date | March 23, 2017 |
|----------|------------------------|------|----------------|
| Title | JEFFREY A. THOMAS V. DUN AND BRADSTREET CREDIBILITY CORP. | | |

The ultimate goal under either the lodestar method or the percentage method is to "reasonably compensate counsel for their efforts in creating the common fund." *In re Omnivision Techs.*, 559 F. Supp. 2d at 1046 (citing *Paul, Johnson*, 886 F.2d at 271–72). In considering the overall fairness and reasonableness of a fee award, a court should consider the following factors: "(1) the results achieved; (2) the risk of litigation; (3) the skill required and the quality of work; (4) the contingent nature of the fee and the financial burden on class counsel; and (5) awards made in similar cases." *Id.* (citing *Vizcaino*, 290 F.3d at 1048–50).

## IV. DISCUSSION

### A. Motion for Final Approval

#### 1. Whether a Class Exists

Before the Court may approve a final class action settlement when class certification has not yet occurred, the "court must assess whether a class exists." *Staton*, 327 F.3d at 952. "Rule 23(a) establishes four prerequisites for class action litigation, which are: (1) numerosity, (2) commonality, (3) typicality, and, (4) adequacy of representation." *Id.* This requires proof that:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a); *accord Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 345 (2011).

#### a. Numerosity

Numerosity is satisfied if "the class is so large that joinder of all members is impracticable." *Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1029 (9th Cir. 2012) (citing Fed. R. Civ. P. 23(a)). "The numerosity requirement is not tied to any fixed numerical threshold—it 'requires examination of the specific facts of each case and

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 15-03194 BRO (GJSx) | Date | March 23, 2017 |
|---|---|---|---|
| Title | JEFFREY A. THOMAS V. DUN AND BRADSTREET CREDIBILITY CORP. | | |

imposes no absolute limitations.'" *Rannis v. Recchia*, 380 F. App'x 646, 651 (9th Cir. 2010) (quoting *Gen. Tel. Co. of the Nw., Inc. v. EEOC*, 446 U.S. 318, 330 (1980)). Although Rule 23(a) does not require a specific minimum number of class members, Ninth Circuit precedent suggests that numerosity is satisfied when the prospective class includes at least forty members. *Id.* Here, the Settlement Class consists of approximately 1,192,555 potential class members.[2] (*See* Powell Decl. ¶ 13; *see also* Approval Mot. at 24.) Therefore, the Court finds that this requirement is satisfied.

### b.    Commonality and Typicality

Next, Plaintiffs must demonstrate commonality and typicality. Rule 23(a)'s commonality and typicality factors "tend to merge" in that both commonality and typicality "serve as guideposts for determining whether, under the particular circumstances, maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Meyer v. Portfolio Recovery Assocs. LLC*, 707 F.3d 1036, 1041 (9th Cir. 2012) (internal quotation marks omitted) (quoting *Wal-Mart Stores*, 564 U.S. at 349 n.5). "Commonality simply requires that there be at least one legal or factual issue common to the class." *In re Verisign, Inc. Secs. Litig.*, NO. C 02-02270 JW, 2005 WL 7877645, at *5 (N.D. Cal. Jan. 13, 2005). Commonality is generally satisfied where, as in this case, 'the lawsuit challenges a system-wide practice or policy that affects all of the putative class members.'" *Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D 482, 486 (E.D. Cal. 2010) (quoting *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001)).

Here, the Class Members all pursue common legal theories based on similar factual predicates; specifically, the Class Members claim that Defendant knowingly or willfully violated the TCPA by calling them on a cellphone number using an automated dialing

---

[2] In her Objection, Objector Arbelaez contends that the proposed class is too broad, as it includes all people who received calls through January 31, 2016, though this action was filed in April 2015. (*See* Arbelaez Obj. at 6.) Objector Arbelaez claims that she does not understand how Defendant could have continued to violate the TCPA after this action was filed. (*Id.*) It may be that Defendant believed that its defenses, such as consent, were meritorious enough to not require a change in its practice. This question, however, is not dispositive and not within the scope of the Court's decision in deciding whether to certify a settlement class and approve the settlement here.

LINK:

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 15-03194 BRO (GJSx) | Date | March 23, 2017 |
|----------|------------------------|------|----------------|
| Title | JEFFREY A. THOMAS V. DUN AND BRADSTREET CREDIBILITY CORP. | | |

system without their permission. (*See* Compl. ¶ 50.)  Further, as all the Class Members would pursue claims based on the same underlying factual basis and legal theories, the Court finds that the commonality requirement is satisfied.  *See Bee, Denning, Inc. v. Capital All. Grp.*, 310 F.R.D. 614, 625–26 (S.D. Cal. 2015) (finding commonality requirement satisfied in TCPA class action where all class members' claims arose from calls made by the same organization); *see also Malta v. Fed. Home Loan Mortg. Corp.*, No. 10-CV-1290 BEN (NLS), 2013 WL 444619, at *2 (S.D. Cal. Feb. 5, 2013) (finding commonality requirement met where "the proposed class members' claims stem[med] from the same factual circumstances" in that the same organization made all the alleged calls "using auto-dialing equipment or with a prerecorded voice message" and the class members were pursuing common legal theories).

"The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992).  Here, Plaintiff's claims are typical of the Class Members' claims.  Plaintiff alleges that he received nonemergency recorded phone calls from Defendant on his cellphone from an automated dialing system without his consent. (*See* Compl. ¶¶ 30–32.)  Similarly, the Class Members' claims in this case all arise from Defendant allegedly placing nonemergency phone calls "using an automatic telephone dialing system" without their prior express consent. (Compl. ¶ 51.)  Plaintiff appears to pursue no legal claims that are unique or that are not applicable to the class as a whole.  Accordingly, the Court finds that the typicality requirement is satisfied.  *See Malta*, 2013 WL 444619, at *3 (finding typicality requirement satisfied where representative claims arose "from the same factual basis as that of the class" and were "based on the same legal theory as that applicable to the class").

### c.    Adequacy of Representation

Next, Plaintiff must demonstrate that he is an adequate representative of the class.  The adequacy requirement "serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997) (internal citation and quotation marks omitted).  Adequacy depends on the resolution of two questions: (1) whether "the named plaintiffs and their counsel have any conflicts of interest with other class members"; and, (2) whether "the named plaintiffs

LINK:

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 15-03194 BRO (GJSx) | | Date | March 23, 2017 |
|----------|------------------------|--|------|----------------|
| Title | **JEFFREY A. THOMAS V. DUN AND BRADSTREET CREDIBILITY CORP.** | | | |

and their counsel [will] prosecute the action vigorously on behalf of the class." *Hanlon*, 150 F.3d at 1020; *see also In re NJOY, Inc. Consumer Class Action Litig.*, 120 F. Supp. 3d 1050, 1101 (C.D. Cal. 2015) ("Adequate representation depends on, among other factors, an absence of antagonism between representatives and absentees, and a sharing of interest between representatives and absentees." (quoting *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 985 (9th Cir. 2011))).

The Court is satisfied that Plaintiff adequately represents the Class. Plaintiff indicates that he felt that he "ha[s] been actively involved with this case" since March 2015 and this his "main goal in filing and prosecuting this case was to ensure that [Defendant] would stop making unwanted, harassing calls to cellular telephones." (Declaration of Jeffrey A. Thomas (Dkt. No. 67-3) (hereinafter, "Thomas Decl.") ¶ 3.) In addition, Plaintiff indicates that he is satisfied with the settlement as it ensures that he and the other Class Members will be adequately compensated for Defendant's TCPA and UCL violations. (*See* Thomas Decl. ¶ 6.) Thus, it appears that Plaintiff has been actively involved in this litigation and has sought to ensure that a fair and effective result was achieved. Further, Plaintiff's proffered "interests are aligned with those of the class— that is, both [Plaintiff] and the class are primarily interested in maximizing their recovery." *Monterrubio v. Best Buy Stores, L.P.*, 291 F.R.D. 443, 450 (E.D. Cal. 2013); *see also Bee*, 310 F.R.D. at 627 (finding that plaintiffs had established adequacy of representation where "the interests of the representative parties [were] clear—to receive compensation for alleged violations of the TCPA and to deter Defendants from engaging in the alleged conduct—and [were] aligned with the interests of the putative class as a whole"). In addition, it appears that neither Plaintiff nor Plaintiff's counsel have conflicts with any of the Class Members. The parties have identified no conflicts, nor have any of the Objectors.

Finally, Plaintiff's counsel has significant experience litigating TCPA and UCL class actions and has been involved with this litigation throughout its history. (*See* Declaration of Daniel M. Hutchinson (Dkt. No. 68-1) (hereinafter, "Hutchinson Decl.") ¶¶ 5–7, 28.) Therefore, the Court is satisfied that Plaintiff and his counsel have "prosecute[d] the action vigorously on behalf of the class." *Hanlon*, 150 F.3d at 1020. Accordingly, the Court finds that the Class is adequately represented.

//

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| Case No. | CV 15-03194 BRO (GJSx) | Date | March 23, 2017 |
|----------|------------------------|------|----------------|
| Title | JEFFREY A. THOMAS V. DUN AND BRADSTREET CREDIBILITY CORP. | | |

### d.  Rule 23(b)(3)

#### i.  Predominance

Plaintiff contends that the proposed Class satisfies the requirements of Rule 23(b)(3).  (*See* Approval Mot. at 25.)  First, to certify a class under Rule 23(b)(3), a court must find that "the questions of law or fact common to class members predominate over any questions affecting only individual members."  Fed. R. Civ. P. 23(b)(3).  The predominance inquiry "requires that common questions of law and fact 'present a significant aspect of the case and that they can be resolved for all members of the class in a single adjudication.'"  *Malta*, 2013 WL 444619, at *4 (alteration omitted) (quoting *Hanlon*, 150 F.3d at 1022).

Here, it appears that for purposes of settlement, common issues predominate.  As explained above, there is a common nucleus of facts that is uniform amongst all class members: specifically, that all class members received allegedly unlawful phone calls on their cellphones from Defendant using automated call technology without the Class Members' consent.  *See id.* ("The central inquiry is whether Wells Fargo violated the TCPA by making class to the class members.  Accordingly, the predominance requirement is met.").  Therefore, the Court finds that the predominance requirement is satisfied.

#### ii.  Superiority

Rule 23 also requires that the court determine whether "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  The Court may consider four factors in making this determination: (1) "the class members' interests in individually controlling the prosecution or defense of separate actions"; (2) the "extent and nature" of litigation based on the same controversy that other class members have already begun; (3) the desirability, or not, of "concentrating the litigation of the claims in the particular forum"; and, (4) "the likely difficulties in managing a class action."  *Id.*

The class members' interest is particularly "relevant when class members have suffered sizeable damages or have an emotional stake in the litigation."  *Torchia v. V.W.*

LINK:

### UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL

| Case No. | CV 15-03194 BRO (GJSx) | Date | March 23, 2017 |
|----------|------------------------|------|----------------|
| Title | JEFFREY A. THOMAS V. DUN AND BRADSTREET CREDIBILITY CORP. | | |

*Grainger, Inc.*, 304 F.R.D. 256, 267 (E.D. Cal. 2014). Here, each Class Member will receive approximately $100. (*See* Powell Decl. ¶ 15.) Objector Arbelaez argues that the Class Members have suffered at least $1,500 in statutory damages under the TCPA, as each TCPA violation gives rise to a statutory penalty of $500 for negligent violations and $1,500 for knowing or willful violations. (*See* Arbelaez Obj. at 2 (citing 47 U.S.C. § 227(b)(3)).) However, even assuming Objector Arbelaez is correct and that each Class Member could potentially recover up to $1,500, the Court finds that this amount is not so sizeable as to give the Class Members a significant interest in individual litigation. *See Torchia*, 304 F.R.D. at 268 (finding that average settlement amount of approximately $1,400 did not provide interest in individual litigation).

As to the next element, there is no evidence currently before the Court of any other pending actions based on the same legal theories or facts. Thus, this factor weighs in favor of certification, as well. Regarding the third element, where common issues predominate (as determined above), "presentation of the evidence in one consolidated action will reduce unnecessarily duplicative litigation and promote judicial economy." *Galvan v. KDI Distribution Inc.*, No. SACV 08-0999-JVS (ANx), 2011 WL 5116585, at *12 (C.D. Cal. Oct. 25, 2011). And as to the final element regarding manageability, "because the parties have reached a settlement agreement, it does not appear there are any problems with managing the action." *Torchia*, 304 F.R.D. at 268. Therefore, the Court finds that all of the Rule 23(b)(3) factors weigh in favor of certification.

Accordingly, because all of the Rule 23(a) requirements are satisfied, common issues predominate, and class action litigation is the superior method of proceeding in this action, the Court finds that certification of the Class for settlement purposes is appropriate.

### 2. Rule 23's Notice Requirements

Next, the Court will determine whether Rule 23's notice requirements have been satisfied. Rule 23(c)(2)(B) requires that class members be provided "the best notice that is practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B). "However, actual notice is not required under Rule 23(c)(2)(B)." *Monterrubio*, 291 F.R.D. at 452. Sufficient notice is that which is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to

LINK:

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 15-03194 BRO (GJSx) | Date | March 23, 2017 |
|---|---|---|---|
| Title | JEFFREY A. THOMAS V. DUN AND BRADSTREET CREDIBILITY CORP. | | |

present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950). Here, the parties hired KCC to handle providing notice to the Class Members. (*See* Powell Decl. ¶ 1.) On November 9, 2016, KCC sent approximately 1,091,311 postcard notices and 347,851 e-mail notices to addresses obtained from a database maintained by Defendant and launched a social media campaign to reach younger cellphone users. (Powell Decl. ¶¶ 2, 5.) These addresses were updated using the United States Postal Service National Change of Address database, and were certified and verified through additional services. (*See id.*) Since the mailing, KCC has received approximately 160,324 returned postcard notices, 66,866 of which have been resent using updated addresses. (Powell Decl. ¶ 3.) KCC made a significant effort to find addresses for the returned postcard notices by performing a "skip trace" search. (*See id.*) As of February 17, 2017, KCC had received approximately 65,731 timely claims, resulting in a claim filing rate of 6.02%. (*See* Powell Decl. ¶¶ 13–14.) This appears to be a favorable claims rate compared to similar TCPA and UCL class actions. (*See* Approval Mot. at 12 (collecting cases approving of notice where claims rate ranged from 1.10% to 2.78%).)

Further, "[a] class action settlement notice 'is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'" *Monterrubio*, 291 F.R.D. at 453 (quoting *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 962 (9th Cir. 2009)). Rule 23(c)(2)(B) includes specific requirements for a settlement class certified under Rule 23(b)(3). *See* Fed. R. Civ. P. 23(c)(2)(B). The notice must clearly state: (1) the nature of the action; (2) the definition of the class; (3) the class claims, issues, or defenses; (4) that a class member may appear with or through an attorney; (5) that any member may be excluded from the class; (6) the time and manner to request exclusion; and, (7) the binding effect of any judgment. *See id.* The Notice of Class Action Settlement here meets all of these requirements. (*See* Powell Decl., Ex. B.) Therefore, the Court finds that Rule 23's notice requirements are satisfied.

### 3.    Approval of the Settlement

The Court may only approve a class action settlement "after a hearing and on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e). After considering the papers filed in connection with Plaintiffs' Motion for Final Approval, the arguments advanced at the final fairness hearing, and the relevant factors, the Court concludes that

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 15-03194 BRO (GJSx) | | Date | March 23, 2017 |
|---|---|---|---|---|
| Title | JEFFREY A. THOMAS V. DUN AND BRADSTREET CREDIBILITY CORP. | | | |

the Settlement Agreement here is fair, adequate, and reasonable within the meaning of Rule 23(e).

### a.     The Strength of Plaintiffs' Case

The first fairness factor considers the strength of the plaintiffs' case. *See Staton*, 327 F.3d at 959. In assessing the strength of the case, a district court need not "reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute, for it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements." *Officers for Justice*, 688 F.2d at 625.

Plaintiff brings two claims pursuant to the TCPA and one claim under the UCL alleging that Defendant acted unlawfully by calling Class Members on their cellphone using an automated dialing system without their permission. (*See* Compl. ¶¶ 29–32, 50.) While Plaintiff maintains a belief in the merits of his case, he acknowledges that he "faced the omnipresent risk of the arguments presented in Defendant's motion to dismiss." (Approval Mot. at 15.) Specifically: (1) whether it was Plaintiff's business, rather than Plaintiff himself, who was the appropriate party in this action; (2) whether Plaintiff was a "called party" with standing to pursue his TCPA claim; (3) whether 47 U.S.C. § 227(b)(1)(A)(iii) applies to business calls; and, (4) whether Plaintiff was the "current subscriber" of his business's telephone line. (*See id.*) Though the Court denied Defendant's Motion to Dismiss when viewing the facts in the light most favorable to Plaintiff, it did not answer many of these legal questions, which likely would have been raised by Defendant in future dispositive motions. (*See id.*; *see also* Dkt. No. 23.)

In addition, the parties dispute the proper definition of, and who can provide, "prior express consent"—another potentially dispositive issue. (*See* Approval Mot. at 15–16.) The proper definition is currently defined under various FCC Orders interpreting the TCPA. (*See* Approval Mot. at 16 (citing *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 30 FCC Rcd. 7961 (F.C.C. July 10, 2015)).) As Plaintiff notes, these definitions are subject to change depending on the appointment of two new FCC Commissioners this year. (*Id.*) If Defendant's arguments are accepted by the FCC and by this Court, Plaintiff could have lost his right to recovery. (*Id.*) Further, Plaintiff's claims were threatened by recent Supreme Court decisions in *Spokeo v. Robins*, 136 S. Ct. 1540 (2016), and *Campbell-*

LINK:

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 15-03194 BRO (GJSx) | | Date | March 23, 2017 |
|----------|------------------------|---|------|----------------|
| Title | JEFFREY A. THOMAS V. DUN AND BRADSTREET CREDIBILITY CORP. | | | |

*Ewald Co. v. Gomez*, 136 S. Ct. 663 (2016), on standing and mootness grounds. (*See* Approval Mot. at 16–17.) Finally, as with any case, Plaintiff faced the risk of not prevailing had the case progressed to trial. (*See* Approval Mot. at 17.)

Accordingly, it appears Plaintiff has accurately weighed the probability of success in agreeing to settle his claims. This factor weighs in favor of approval. *See Franco v. Ruiz Food Prods.*, No. 1:10-CV-02354-SKO, 2012 WL 5941801, at *11 (E.D. Cal. Nov. 27, 2012) (finding this factor favored settlement approval where the plaintiffs properly accounted for their likelihood of success); *see also Vandervort v. Balboa Capital Corp.*, 8 F. Supp. 3d 1200, 1206 (C.D. Cal. 2014) (finding this factor weighed in favor of approving class action settlement where defendant had asserted a viable defense, there were "several novel legal issues," and defendant had "strongly defended" the case).

        **b.**      **The Risk, Expense, Complexity, and Likely Duration of Further Litigation**

"In assessing the risk, expense, complexity, and likely duration of further litigation, the court evaluates the time and cost required." *Adoma v. Univ. of Phoenix, Inc.*, 913 F. Supp. 2d 964, 976 (E.D. Cal. 2012). "In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *Nat'l Rural Telecomms. Coop.*, 221 F.R.D. at 526 (internal quotation marks omitted).

As explained above, though Plaintiff believes that he would have prevailed had the case progressed, this case involved significant risk for the Class Members regarding the likelihood of certification and prevailing on the merits of their claims. (*See* Approval Mot. at 15–17.) In addition, if the case had not settled, Plaintiff would have been required to file a motion for class certification, participated in further discovery post-certification, prepared for and conducted trial, and undertaken any possible appeal. The Court finds that "[i]n light of the risks and costs of continued litigation, the immediate rewards to class members are preferable." *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 255 (N.D. Cal. 2015). Accordingly, this factor weighs in favor of approval.

//

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 15-03194 BRO (GJSx) | Date | March 23, 2017 |
|---|---|---|---|
| Title | JEFFREY A. THOMAS V. DUN AND BRADSTREET CREDIBILITY CORP. | | |

### c. The Risk of Maintaining Class Action Status Throughout the Trial

The third factor examines whether the class would have been able to maintain class status were the litigation to proceed. *See id.* Here, Plaintiff notes that there was an "acute risk" that the Court would decline to certify this case had the case not settled. (*See* Approval Mot. at 17–18.) After Plaintiff commenced this case, the Supreme Court granted certiorari in *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036 (2016), which addressed, in part, whether a class is certifiable when there are "uninjured" class members. (*See* Approval Mot. at 18.) Though the Supreme Court did not reach the issue, this argument could have prevented class certification here. (*Id.*)

Further, Plaintiff identifies another TCPA class action that this Court refused to certify, finding that the issue of prior express consent was an individualized issue that prevented class certification. (*See id.* (citing *Simon v. Healthways, Inc.*, No. 14-cv-08022-BRO (JCx), 2015 WL 10015953, at *8 (C.D. Cal. Dec. 17, 2015)).) Other courts have held similarly and refused to certify TCPA classes. (*See id.*) Here, Defendant contends that it had prior express consent to contact most (or many) of the Class Members, meaning the Court would likely have had to address the same issue. (*Id.*) Moreover, because of the changing landscape of the law in this area, even if the Court had chosen to initially certify the class, there was a risk that the law could have changed and the Court could have decertified the class in the course of the litigation. (*Id.*) Therefore, the Court finds that this factor weighs in favor of approval. *See Vandervort*, 8 F. Supp. 3d at 1206 (noting that the elimination of even a "small risk" of decertification weighs in favor of granting approval); *see also Couser v. Comenity Bank*, 125 F. Supp. 3d 1034, 1042 (S.D. Cal. 2015) (finding that, in a TCPA case, "there is a risk that the Class would either not be certified or that something may arise before trial to decertify the class," thus weighing in favor of settlement).

### d. The Amount Offered in Settlement

Next, the Court will consider the amount of the settlement. In considering the overall fairness of a settlement, a court should view "the complete package taken as a whole, rather than the individual component parts." *Officers for Justice*, 688 F.2d at 628. A proposed settlement may be fair, adequate, and reasonable even though greater

LINK:

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 15-03194 BRO (GJSx) | Date | March 23, 2017 |
|----------|------------------------|------|----------------|
| Title | JEFFREY A. THOMAS V. DUN AND BRADSTREET CREDIBILITY CORP. | | |

recovery might be available to the class members at trial. *See Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998); *Officers for Justice*, 688 F.2d at 628 ("It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery will not per se render the settlement inadequate or unfair."). Further, the Ninth Circuit has long deferred to the parties' private, consensual decisions. *See Hanlon*, 150 F.3d at 1027.

Plaintiffs have secured a gross settlement amount of $10.5 million. (*See* Settlement Agreement § 2.35.) Of this gross settlement amount, the Class Members will receive approximately $100 each. (*See* Powell Decl. ¶ 15.) Plaintiff contends that this settlement amount constitutes a "phenomenal" result based on other similar TCPA and UCL class actions. (*See* Approval Mot. at 20.) For instance, in another recent case, the court approved a $9 million settlement in a case with approximately 6,000,000 class members, resulting in a *pro rata* recovery of $1.48 per class member. (*See id.*; *see also* Hutchinson Decl., Ex. G.) Here, the total settlement of $10.5 million when compared to approximately 1,192,555 potential class members results in a *pro rata* recovery of $8.80 per class member. (Approval Mot. at 20.) The Court agrees that this is a favorable result.

Further, though Objector Arbelaez contends that the Class Members are receiving only a fraction of their potential recovery,[3] (*see* Arbelaez Obj. at 3), "[e]ven a fractional

---

[3] Objector Arbelaez contends that each Class Member may be able to recover, at minimum, $1,500 per TCPA violation, and, therefore, a payout amount of $100 for each Class Member constitutes only "0.067%" of their potential $1,500 recovery. (*See* Arbelaez Obj. at 3.) Using Objector Arbelaez's example, however, $100 would constitute approximately 6.7% of a possible $1,500 recovery—a significantly better result. Moreover, as other courts have held, the Court finds that recover of $100 in a class action proceeding like this constitutes a favorable result based on the limited actual damage that each Class Member suffered and on the risk that each Class Member's claims may have failed on the merits. *See Bayat v. Bank of the W.*, No. C-13-2376 EMC, 2015 WL 1744342, at *5 (N.D. Cal. Apr. 15, 2015) (finding recovery of $151 per claimant in a TCPA class action reasonable despite possible statutory damages because of the risk individual claims failing on the merits and "the fact that class members did not suffer any actual damages beyond a few unpleasant phone calls" (internal quotation marks omitted)).

In addition, Objector Pentz claims that a range of $60–$120 per claimant is in the "low-middle range" of typical TCPA settlements. (Pentz Obj. at 2.) The Court agrees with Objector Pentz that the results in this case are approximately in the middle range of recovery in similar suits. This does not

LINK:

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 15-03194 BRO (GJSx) | | Date | March 23, 2017 |
|----------|------------------------|---|------|----------------|
| Title | **JEFFREY A. THOMAS V. DUN AND BRADSTREET CREDIBILITY CORP.** | | | |

recovery of the possible maximum recovery amount may be fair and adequate in light of the uncertainties of trial and difficulties in proving the case." *Millan v. Cascade Water Servs.*, 310 F.R.D. 593, 611 (E.D. Cal. 2015). In addition, Plaintiff provides examples of several other TCPA class actions where the court has approved class action settlements in which the *pro rata* recovery per class member has ranged from $1.01 to $4.57—a significantly smaller recovery than Plaintiff has recovered here. (*See* Approval Mot. at 20–21.)

Moreover, here, each claimant currently stands to receive approximately $100. (*See* Powell Decl. ¶ 15.) This appears to fall well within the standard range of approved TCPA class action settlements. *See Couser*, 125 F. Supp. 3d at 1043–44 (approving TCPA class action settlement of $8.475 million where each of 308,000 claimants stood to receive $13.75); *see also Rose v. Bank of Am. Corp.*, Nos. 5:11-CV-02390-EJD, 5:12-CV-04009-EJD, 2014 WL 4273358, at *10–*11 (N.D. Cal. Aug. 29, 2014) (approving TCPA class action settlement where each claimant received between $20 and $40); *Knutson v. Schwan's Home Serv., Inc.*, No. 3:12-cv-00964-GPC-DHB, 2014 WL 3519064, at *4 (S.D. Cal. July 14, 2014) (approving TCPA class action settlement where each claimant was to receive a $20 settlement check and an $80 merchandise voucher); *Grannan v. Alliant Law Grp., P.C.*, No. C10-02803 HRL, 2012 WL 216522, at *10 (N.D. Cal. Jan. 24, 2012) (approving TCPA settlement where each claimant received approximately $306). Based on the risk of diminished recovery had the case proceeded, the unlikelihood that many of the claimants would have proceeded individually, and "the parties' agreement that this amount provides adequate compensation for class members," the Court finds that this factor weighs in favor of approval.[4] *Torchia*, 304 F.R.D. at 269–70.

---

warrant disapproval of the settlement, though it is a factor to consider when determining attorneys' fees, as addressed below.

[4] Though not specifically addressed by Plaintiff, the Court finds that the *cy pres* arrangement here also warrants approval in this case. "A *cy pres* award must be guided by (1) the objectives of the underlying statute(s) and (2) the interests of the silent class members, and must not benefit a group too remote from the plaintiff class." *Dennis v. Kellogg Co.*, 697 F.3d 858, 865 (9th Cir. 2012) (citations and internal quotation marks omitted). Here, the parties jointly present the Opportunity Fund, a non-profit microlending organization, as the *cy pres* beneficiary. (*See* Dkt. No. 66 at 1.) As Plaintiff was a small

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 15-03194 BRO (GJSx) | Date | March 23, 2017 |
|---|---|---|---|
| Title | JEFFREY A. THOMAS V. DUN AND BRADSTREET CREDIBILITY CORP. | | |

### e. The Extent of Discovery Completed and the Stage of Proceedings

The extent of discovery may be indicative of the parties' knowledge of the case and is therefore relevant to determining the overall fairness of a settlement. *Nat'l Rural Telecomms. Coop.*, 221 F.R.D. at 527. Where the parties have conducted extensive discovery, this factor favors final approval "because it suggests that the parties arrived at a compromise based on a full understanding of the legal and factual issues surrounding the case." *Id.* (internal quotation marks omitted). "A settlement following sufficient discovery and genuine arms-length negotiation is presumed fair." *Id.*

Though this case had not yet proceeded to the certification stage, Plaintiff indicates that counsel has "spent significant time thoroughly investigating the factual and legal claims involved in this action, as well as interviewing and collecting relevant information from Class Members, prior to filing the Complaint." (Approval Mot. at 21.) Plaintiff contends that (1) the parties had traded requests for production and interrogatories, (2) Plaintiff had "reviewed thousands of pages of documents," and, (3) Plaintiff retained an expert to analyze Defendant's telephone call data. (Approval Mot. at 21–22.) In addition, Plaintiff and his wife were deposed and Plaintiff was preparing to conduct Rule 30(b)(6) depositions when the parties went to mediation.[5] (Approval Mot. at 22.) The Court finds that the significant discovery that the parties conducted indicate that they properly understood the basis and strength of their claims and defenses. *See Rose*, 2014

---

business owner who alleges that he was damaged due to Defendant's conduct (and Plaintiff claims that there are other small business owners who are Class Members), (*see id.*), the Court finds that there is a connection between the objectives of the underlying statutes and the interests of the Class Members here. The parties represent that they have no relationship with the Opportunity Fund. (*See id.*) Accordingly, the Court finds that the Opportunity Fund is an appropriate *cy pres* beneficiary in this case.

[5] Objectors Arbelaez and Pentz contend that Plaintiff's counsel should have conducted Rule 30(b)(6) depositions before entering a settlement. (*See* Pentz. Obj. at 3; Arbelaez Obj. at 4.) In addition, Objector Arbelaez argues that the discovery Plaintiff's counsel conducted in this case was lacking. (Arbelaez Obj. at 4.) The Court disagrees. Plaintiff's counsel conducted sufficient discovery in this case before reaching settlement. (*See* Approval Mot. at 21–22.) There is no requirement that Plaintiff's counsel have reached a certain point in the discovery before approving settlement; the Court finds, as determined above, that the settlement was reached as a result of arms-length bargaining after considering the relative weight of the parties' positions.

LINK:

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | **CV 15-03194 BRO (GJSx)** | | Date | March 23, 2017 |
|---|---|---|---|---|
| Title | **JEFFREY A. THOMAS V. DUN AND BRADSTREET CREDIBILITY CORP.** | | | |

WL 4273358, at *5 (finding this factor weighed in favor of approval where parties exchanged thousands of pages of discovery, class counsel reviewed call record data, and the parties participated in mediation). Accordingly, the Court finds that this factor weighs in favor of approval.

### f.      The Experience and View of Counsel

"Parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation." *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995). Here, Plaintiff's counsel has extensive experience handling class action litigation, including TCPA class action litigation like the instant case. (*See* Hutchinson Decl. ¶¶ 2–20; Declaration of Aaron Siri (Dkt. No. 67-2) (hereinafter, "Siri Decl.") ¶¶ 2–5.) Therefore, given counsel's experience in handling similar matters and their review of substantial and meaningful discovery, the Court finds that counsel's belief that the parties' settlement is a just and fair result should be given significant weight. *See Vasquez*, 266 F.R.D. at 490 ("Here, class counsel understood the complex risks and benefits of any settlement and concluded that the proposed Settlement was a just, fair and certain result. This factor weighs in favor of approval."). Accordingly, the Court finds that this factor weighs in favor of approval.

### g.      The Presence of a Governmental Participant

There is no governmental participant in this case. However, Defendant has notified the officials designated pursuant to the Class Action Fairness Act, 28 U.S.C. § 1715. (*See* Approval Mot. at 23.) According to Plaintiff, deputy attorneys general from California and Texas contacted counsel to obtain more information about the settlement, but no governmental entity has objected to the settlement. (*Id.*); *see also See Rose*, 2014 WL 4273358, at *5 ("Although CAFA notice was sent to various governmental entities, none sought to participate in the settlement proceedings by objection or comment. Thus, this factor weighs in favor of approval."). Therefore, this factor weighs in favor of approving the settlement.

//

### UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL

| Case No. | CV 15-03194 BRO (GJSx) | Date | March 23, 2017 |
|---|---|---|---|
| Title | JEFFREY A. THOMAS V. DUN AND BRADSTREET CREDIBILITY CORP. | | |

### h.   The Reaction of the Class Members to the Proposed Settlement

"[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms . . . are favorable to the class members." *Nat'l Rural Telecomms. Coop.*, 221 F.R.D. at 529; *see also Barbosa v. Cargill Meat Sols. Corp.*, 297 F.R.D. 431, 448 (E.D. Cal. 2013) ("Where a settlement agreement enjoys overwhelming support from the class, this lends weight to a finding that the settlement agreement is fair, adequate, and reasonable.").  Following the Court's preliminary approval of the proposed settlement, KCC distributed 1,091,311 postcard notices and 347,851 e-mail notices, the vast majority of which were not returned and ran a social media campaign on Facebook.  (Powell Decl. ¶¶ 2–5.)  As of today's date, KCC has received eighty-one timely requests for exclusion, two untimely requests for exclusion, and three objections.[6]  (*See* Powell Decl. ¶¶ 11–12.)  Further, KCC has received 65,731 timely filed claims, for a total claims rate of 6.02%.  (Powell Decl. ¶¶ 13–14.)  Thus, the Court finds that the overall reaction to the settlement has been positive as there is a high claims rate and a low number of exclusions and objectors; accordingly, this factor weighs in favor of approving the settlement.  *See Rose*, 2014 WL 4273358, at *5 (finding this factor weighed in favor of approval where there was a 3.2% claims rate, sixteen objectors, and 390 opt outs); *see also Couser*, 125 F. Supp. 3d at 1044 (finding this factor weighed in favor of approval where there was a 7.7% claims rate and 168 requests for exclusion out of approximately four million potential class members); *see also Nat'l Rural Telecomms. Coop.*, 221 F.R.D. at 529 ("It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members.").

### i.   The Method of Distribution

In addition, Objector Arbelaez objects to the method of distribution, as each Class Members receives a set *pro rata* distribution, regardless of the number of calls (i.e., number of potential TCPA violations) each Class Member received.  (*See* Arbelaez Obj.

---

[6] Eighty-one requests for exclusion constitute only 0.00679% of the potential class members (81/1,192,555).

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 15-03194 BRO (GJSx) | Date | March 23, 2017 |
|---|---|---|---|
| Title | JEFFREY A. THOMAS V. DUN AND BRADSTREET CREDIBILITY CORP. | | |

at 2.)  When challenged, a district court must find that a proposed settlement's plan for allocation among the class members is fair and reasonable before granting final settlement approval.  *See Class Plaintiffs*, 955 F.2d at 1284–85.  The Court finds that the method of distribution here is fair and appropriate in this case.  Plaintiff indicates that his investigation "concluded that no class member received more than a handful of calls." (Obj. Response at 12.)  Thus, while Objector Arbelaez poses the hypothetical that some class members may have received fifty calls compared to others who received only one call, (*see* Arbelaez Obj. at 2), it appears these concerns are unfounded, *see In re Capital One Tel. Consumer Protection Act Litig.*, 80 F. Supp. 3d 781, 793 (N.D. Ill. 2015) (accepting counsel's representation "that it [was] unlikely that a material portion of the class had an average call volume greater or lesser than any other class member").  Further, determining the number of calls each claimant received would be administratively untenable and could actually reduce the Class Members' total recovery. *See id.* ("The court also accepts Class Counsel's representations that a call-based claims process would be extremely costly to administer and is inadvisable given the fact that increased administration costs would result in a corresponding decrease in the money available to the class.").  Therefore, the Court finds that the method of distribution in this case—a flat *pro rata* share for each claimant—is fair and reasonable and well calculated to compensate each Class Member for Defendant's unlawful acts.

### j.    The *Bluetooth* Factors

Because this case was settled prior to class certification, the court must "examine the settlement for evidence of collusion with an even higher level of scrutiny." *Bellinghausen*, 306 F.R.D. at 258.  Thus, the court is required to determine "whether the settlement was the result of good faith, arms-length negotiations or fraud and collusion." *Id.*  The Ninth Circuit has recognized three "warning signs" that suggest a settlement was the result of collusion: (1) when counsel receives a disproportionate distribution of the settlement award or the class receives no monetary distribution while class counsel is "amply rewarded"; (2) "when the parties negotiate a 'clear sailing' arrangement providing for the payment of attorneys' fees separate and apart from class funds"; and, (3) "when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund."  *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011).  However, the Court need not find collusion, even if the warning signs are present.  *See Bellinghausen*, 306 F.R.D. at 258.

LINK:

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 15-03194 BRO (GJSx) | Date | March 23, 2017 |
|---|---|---|---|
| Title | JEFFREY A. THOMAS V. DUN AND BRADSTREET CREDIBILITY CORP. | | |

"First, the Court compares the payout to the class (actual and expected) to the unopposed claim of fees by class counsel." *Id.* Here, the Class Members are receiving a net amount of approximately $6,540,000,[7] while Plaintiffs' counsel requests $3.15 million in fees. (*See* Powell Decl. ¶ 15; Fees Mot.) Thus, Plaintiffs' counsel's requested fees are approximately one-half the net recovery to the Class Members. The Court finds that this amount does not suggest collusion. *See In re Linkedin User Privacy Litig.*, 309 F.R.D. 573, 589 (N.D. Cal. 2015) (determining that fee award equivalent to approximately one-half of net award to class members did not suggestion collusion); *Bellinghausen*, 306 F.R.D. at 258–59 (finding that fees request of 40% of net class award was reasonable).

The second warning sign involves a "clear sailing arrangement," i.e., "an agreement 'where the party paying the [attorneys'] fee agrees not to contest the amount to be awarded by the fee-setting court so long as the award falls beneath a negotiated ceiling.'" *In re Linkedin*, 309 F.R.D. at 589 (quoting *In re Toys R Us-Delaware, Inc.-Fair & Accurate Credit Transactions Act (FACTA) Litig.*, 295 F.R.D. 438, 458 (C.D. Cal. 2014)). The settlement agreement does contain a clear sailing agreement, as Defendant has agreed not to contest Plaintiff's counsel's request for attorneys' fees so long as the request does not exceed 30% of the Settlement Fund. (*See* Settlement Agreement § 5.01.) The presence of one warning sign on its own, however, does not invalidate a settlement agreement. *See Bellinghausen*, 306 F.R.D. at 258 (finding no collusion where two of the three warnings signs were present).

As for the third warning sign, while the Settlement Agreement indicates that, if the attorneys' fee award is reduced on appeal Plaintiff's counsel will be jointly and severally liable for returning the reduced amount to Defendant, (*see* Settlement Agreement § 5.01), Plaintiff indicates that Defendant would nonetheless be required to distribute the reduced amount to the Class Members, (*see* Obj. Response at 13–14). The Settlement Agreement specifically defines the Settlement Fund as "the non-reversionary cash sum" of $10.5 million that Defendant is paying to settle the action. (*See* Settlement Agreement § 2.35.)

---

[7] Plaintiff's counsel seeks $3.15 million in attorneys' fees, Plaintiff seeks a $10,000 representative award, and KCC apparently seeks $800,000 in administration costs. (*See* Powell Decl. ¶ 15.) This amount totals $3,960,000, which, deducted from the total settlement amount of $10,500,000, results in a net recovery of $6,540,000.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 15-03194 BRO (GJSx) | | Date | March 23, 2017 |
|----------|------------------------|---|------|----------------|
| Title | **JEFFREY A. THOMAS V. DUN AND BRADSTREET CREDIBILITY CORP.** | | | |

At the hearing, the parties confirmed that the settlement is entirely non-reversionary. Thus, it does not appear that there is any risk of reversion here.[8]

Therefore, only the second warning sign is present here. However, as the Court has discussed above, the Court finds that this settlement was reached after the parties participated in significant discovery, understood the risks and strengths of their positions, and with the assistance of an experienced and neutral mediator. Accordingly, the Court finds that the settlement was not reached as result of collusion.

### k.   **Weighing the Factors**

Therefore, all of the fairness factors weigh in favor of approving the settlement in this case. The settlement provides immediate and reasonable recovery to a class of individuals who would otherwise risk no recovery were the case to proceed. Further, the Court finds that the parties had participated in significant discovery and reasonably understood the strengths and weaknesses of their positions. Finally, the Court finds that the settlement agreement was reached as a result of arms-length bargaining and does not appear to have been the result of collusion or bad faith between the parties. For these reasons, the Court concludes that the proposed settlement is fair, adequate, and reasonable. The Court therefore **GRANTS** Plaintiffs' Motion for Final Approval of the Class Action Settlement.

//

---

[8] Objector Pentz appears to challenge the provision of the Settlement Agreement that allows for payment of attorneys' fees within five days of the Final Approval Order becoming a final and non-appealable order. (*See* Pentz Obj. at 3–4; *see also* Settlement Agreement §§ 2.23, 5.01.) As Plaintiff notes, this provision is commonly referred to as a "quick-pay provision." (*See* Obj. Response at 13.) "Federal courts . . . routinely approve settlements that provide for payment of attorneys' fees prior to final disposition in complex class actions." *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. MDL 3:07-md-1827 SI, 2011 WL 7575004, at *1 (N.D. Cal. Dec. 27, 2011); *see also Brown v. Hain Celestial Grp., Inc.*, No. 3:11-cv-03082-LB, 2016 WL 631880, at *10 (N.D. Cal. Feb. 17, 2016) (noting that courts routinely approve quick-pay provisions). Accordingly, the Court finds that the quick-pay provision is permissible and does not suggest collusion.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 15-03194 BRO (GJSx) | | Date | March 23, 2017 |
|---|---|---|---|---|
| Title | JEFFREY A. THOMAS V. DUN AND BRADSTREET CREDIBILITY CORP. | | | |

**B.     Plaintiffs' Motion for Attorneys' Fees, Costs, and a Class Representative Service Award**

Next, the Court must examine Plaintiffs' counsel's request for attorneys' fees. Plaintiffs' counsel seeks a percentage fee award of 30% based on the $10.5 million gross settlement amount, for a total award of $3.15 million.  (Fees Mot. at 1.)  The Court will first determine whether an award of attorneys' fees from the gross Settlement Fund is appropriate, and will then decide whether Plaintiffs' counsel's requested fee is fair and reasonable.  The Court will also apply the lodestar method as a "cross-check" on the reasonableness of a percentage fee based award.  In addition, the Court will determine whether Plaintiffs' counsel request that Plaintiff receive a $10,000 Class Representative Service Award is appropriate and reasonable.

### 1.     Whether Federal or California Law Applies

Plaintiff argues that California law should control the award of fees in this case because Plaintiff brought a class claim under California's UCL.  (*See* Fees Mot. at 5–6); *see also Vizcaino*, 290 F.3d at 1047 ("Because Washington law governed the claim, it also governs the award of fees.").  The Court disagrees.  State law may apply to an award of attorneys' fees in a class action if: (1) the court is sitting in diversity, *see Hartless v. Clorox Co.*, 273 F.R.D. 630, 642 (S.D. Cal. 2011) ("In diversity actions, the Ninth Circuit applies state law to determine the right to fees and the method for calculating fees."); *see also Parkinson v. Hyundai Motor Am.*, 796 F. Supp. 2d 1160, 1169 (C.D. Cal. 2010) (holding that where the court was "sitting in diversity adjudicating state law claims" it should apply state law to determining attorneys' fees in a class action); or, (2) where "state law claims predominate," *Sadowska v. Volkswagen Grp. of Am., Inc.*, No. CV 11-00665-BRO (AGRx), 2013 WL 9600948, at *7 (C.D. Cal. Sept. 25, 2013) (citing *Mangold v. Cal. Pub. Utils. Comm'n*, 67 F.3d 1470, 1478 (9th Cir. 1995)).

First, this is not a diversity action as the Court has federal jurisdiction based on Plaintiff's federal TCPA claims.  (*See* Compl. ¶¶ 62–71.)  Second, the Court finds that Plaintiff's TCPA claim predominates—not his California UCL claim—as it is violations of the TCPA, which gives rise to Plaintiff's claims and his UCL claim is merely derivative of his TCPA claim.  (*See* Compl. ¶¶ 73–74.)  Therefore, the Court finds that Ninth Circuit law applies to the award of attorneys' fees in this case.  Moreover, even if

LINK:

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 15-03194 BRO (GJSx) | Date | March 23, 2017 |
|---|---|---|---|
| Title | JEFFREY A. THOMAS V. DUN AND BRADSTREET CREDIBILITY CORP. | | |

California law applied, California law also allows for a percentage-fee award in a common fund case. *See Laffitte v. Robert Half Int'l Inc.*, 1 Cal. 5th 480, 503 (Cal. 2016).

> **2.      Whether an Award of Attorneys' Fees from the Gross Settlement Fund is Appropriate**

"Courts have long recognized the 'common fund' or 'common benefit' doctrine, under which attorneys who create a common fund or benefit for a group of persons may be awarded their fees and costs to be paid out of the fund." *Vasquez*, 266 F.R.D. at 491. An award of attorneys' fees from a common fund is appropriate only where the court can: "(1) sufficiently identify the class of beneficiaries; (2) accurately trace the benefits; and (3) shift the fee to those benefitting with some exactitude." *Staton*, 327 F.3d at 972 (citing *Van Gemert*, 444 U.S. at 478–79). "'[T]he criteria are satisfied when each member of a certified class has an undisputed and mathematically ascertainable claim to part of a lump-sum judgment recovered on his behalf,' whereas they are not satisfied when 'litigants simply vindicate a general social grievance.'" *Id.* (quoting *Van Gemert*, 444 U.S. at 479). These criteria are satisfied here. First, the Class Members are easily ascertainable as they have been determined through a database created by Defendant and include those who Defendant called on their cellphone using an automated dialing system. (*See* Approval Mot. at 10.) Next, Plaintiffs' proposed plan of *pro rata* distribution of approximately $100 to each claimant makes it simple to accurately trace the benefits in this case and to shift the fee to those benefitting with exactitude. *See Vasquez*, 266 F.R.D. at 491 (determining that common fund award was appropriate where "each Class Member who submits a valid claim will receive a mathematically ascertainable payment"). Therefore, "[b]ecause this case involves a common settlement fund with an easily quantifiable benefit to the class, the Court will primarily determine attorneys' fees using the benchmark method but will incorporate a lodestar cross-check to ensure the reasonableness of the award." *Bellinghausen*, 306 F.R.D. at 260.

> **3.      Whether Plaintiffs' Counsel's Requested Fee is Fair and Reasonable**

The Court next considers whether Plaintiffs' counsel's request for a thirty percent fee award, which, based on the $10.5 million gross settlement sum totals $3.15 million, is reasonable. "The typical range of acceptable attorneys' fees in the Ninth Circuit is 20%

LINK:

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 15-03194 BRO (GJSx) | Date | March 23, 2017 |
|----------|------------------------|------|----------------|
| Title | JEFFREY A. THOMAS V. DUN AND BRADSTREET CREDIBILITY CORP. | | |

to 33 1/3% of the total settlement value, with 25% considered the benchmark." *Barbosa*, 297 F.R.D. at 448; *see also Romero v. Producers Dairy Foods, Inc.*, No. 1:05cv0484 DLB, 2007 WL 3492841, at *3 (E.D. Cal. Nov. 14, 2007) ("The Ninth Circuit has repeatedly held that 25 percent of the gross settlement amount is the benchmark for attorneys' fees awarded under the percentage method, with 20 to 30 percent as the usual range. . . . If the Court departs from that benchmark, the record must indicate the Court's reasons for doing so." (citation omitted)). When awarding attorneys' fees, the guiding fundamental principle is that the award be reasonable under the circumstances. *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1296 (9th Cir. 1994). In considering the overall fairness and reasonableness of a fee award, a court should consider the following factors: "(1) the results achieved; (2) the risk of litigation; (3) the skill required and the quality of work; (4) the contingent nature of the fee and the financial burden on class counsel; and (5) awards made in similar cases." *In re Omnivision Techs.*, 559 F. Supp. 2d at 1046 (citing *Vizcaino*, 290 F.3d at 1048–50). The Court may also consider the reaction of the class as a determining factor, and it may, as a "final check" on the reasonableness of the fee award, "compare the fee counsel seeks as a percentage with what their hourly bills would amount to under the lodestar analysis." *Vizcaino*, 290 F.3d at 1048. Here, Plaintiff's counsel seeks an award of 30%—an amount above the Ninth Circuit's established benchmark. Nonetheless, Plaintiff's counsel contends that an increased award is appropriate in this case. For the following reasons, the Court agrees, but finds that an attorneys' fees award of 27%—not 30%—is warranted.

### a.    The Results Achieved

"The overall result and benefit to the class from the litigation is the most critical factor in granting a fee award." *In re Omnivision Techs.*, 559 F. Supp. 2d at 1046. In this case, Plaintiff has achieved two forms of recovery: prospective relief and monetary relief. (*See* Settlement Agreement §§ 4.01, 4.02.) First, the Settlement Agreement ensures that Defendant has "initiated certain practice changes that are designed to prevent violations of the TCPA's provisions on dialing cell phones using an automatic telephone dialing system." (Settlement Agreement § 4.01.) Second, the monetary settlement here consists of a $10.5 million Settlement Fund, with each claimant receiving approximately $100. (*See* Settlement Agreement § 4.02; Fees Mot. at 14.)

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 15-03194 BRO (GJSx) | Date | March 23, 2017 |
|---|---|---|---|
| Title | JEFFREY A. THOMAS V. DUN AND BRADSTREET CREDIBILITY CORP. | | |

First, Plaintiff's counsel contends that, based on his communications with Plaintiff and other Class Members, "stopping the autodialed calls to their cell phones was the primary goal of this litigation." (Fees Mot. at 14; *see also* Thomas Decl. ¶ 3.) Therefore, according to Plaintiff's counsel, the prospective relief in this case constitutes a significant benefit which increases the Settlement Fund's value.[9] (*See* Fees Mot. at 14.)

Second, Plaintiff's counsel argues that the monetary settlement award is a significant recovery in this case. (*See* Fees Mot. at 14–15.) Though the settlement amount is less than the maximum statutory damages each Class Member could have received had they proceeded individually, a "proposed settlement is not to be judged against a hypothetical or speculative measure of what *might* have been achieved." *Officers for Justice*, 688 F.2d at 625. Here, as addressed further above, this settlement amount appears to be fair given the significant risks associated with the merits of Plaintiff's case and based on the average amount claimants have received in other similar class actions.

However, as addressed above, it does not appear that the recovery in this case is significantly higher than that in other similar TCPA class action cases. *Knutson*, 2014 WL 3519064, at *4 (collecting examples of TCPA settlements where each claimant received between $20 and $100); *see also Rose*, 2014 WL 4273358, at *10 (finding that, in TCPA settlement, recovery of $20 to $40 per claimant "falls in the lower range of recovery" and noting that in other similar cases, average recovery ranged from approximately $85 to $325); *Grannan*, 2012 WL 216522, at *10 (addressing TCPA settlement where each claimant received approximately $306). Therefore, while the results achieved in this case are favorable, it does not appear that they are particularly outstanding when compared other similar cases (and, in fact, appear to be in the middle range of similar cases) and do not, on their own, warrant an upward adjustment from the Ninth Circuit's 25% benchmark.

---

[9] Objector Arbelaez expresses concerns regarding possible future TCPA violations and continued automated-calling marketing campaigns. (*See* Arbelaez Obj. at 5.) It appears, however, that the Settlement Agreement in this case, which indicates that Defendant has taken steps to ensure that no future marketing campaigns run afoul of the TCPA, (*see* Settlement Agreement § 4.01), quells Objector Arbelaez's concerns.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 15-03194 BRO (GJSx) | | Date | March 23, 2017 |
|---|---|---|---|---|
| Title | JEFFREY A. THOMAS V. DUN AND BRADSTREET CREDIBILITY CORP. | | | |

### b.    The Risk of Litigation

The risk that further litigation might result in no recovery is a "significant factor" in assessing the fairness and reasonableness of an award of attorneys' fees. *In re Omnivision Techs.*, 559 F. Supp. 2d at 1046–47; *see also Vizcaino*, 290 F.3d at 1048 (discussing that "[r]isk is a relevant circumstance" in determining an attorney fee award in a common fund case). In evaluating the risk of the litigation, a court may consider the complexity of the legal issues involved. *In re Omnivision Techs.*, 559 F. Supp. 2d at 1046–47.

As discussed above, there were multiple risks involved in the continued litigation of Plaintiff's case. The risks to Plaintiff's case here included: (1) the possibility that Plaintiff's business, rather than Plaintiff himself, was the proper Plaintiff in this action; (2) Plaintiff was not a "called party" under the TCPA; (3) the relevant provision of the TCPA does not apply to business calls; and, (4) Plaintiff was not the "current subscriber" to his telephone line. (*See* Fees Mot. at 15.) In addition, and as discussed above, the landscape of the law in class actions is in flux and different aspects of class action practice are frequently reviewed by the Supreme Court. Depending on the Supreme Court's decision in several recent decisions, Plaintiff's claims may have been mooted. (*See* Fees Mot. at 15–16.) Further, there is no guarantee that the proposed class in this case would have been certified or that Plaintiff would have prevailed had the case proceeded through additional dispositive motions or trial. Thus, Plaintiff and the class faced numerous hurdles—both substantive and procedural—had the case continued and not settled. Based on this significant risk, the Court finds that this factor weighs in favor of an increase from the benchmark. *See Rose*, 2014 WL 4273358, at *11–*12 (finding risk that class may not have been certified alone was enough to support requested fee award).

### c.    The Skill Required and Quality of Work

The Court may also consider the skill required to prosecute and manage this litigation, as well as Plaintiffs' counsel's overall performance. *See In re Omnivision Techs.*, 559 F. Supp. 2d at 1047. As the Court recognized above, Plaintiff's counsel has significant class action litigation experience, particularly in the area of TCPA and UCL class action litigation. (*See* Hutchinson Decl. ¶¶ 2–20; Siri Decl. ¶¶ 2–5.) Further,

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 15-03194 BRO (GJSx) | | Date | March 23, 2017 |
|----------|------------------------|---|------|----------------|
| Title | JEFFREY A. THOMAS V. DUN AND BRADSTREET CREDIBILITY CORP. | | | |

Plaintiff's counsel argues that it performed significant factual investigation before filing this case, successfully defended Defendant's Motion to Dismiss, prepared a motion to compel discovery, conducted extensive written discovery, prepared for Rule 30(b)(6) depositions, retained an expert, and participated in mediation and extensive negotiation with defense counsel. (*See* Fees Mot. at 16–17.) The Court agrees that Plaintiff's counsel has significant experience and that this experience contributed to the favorable recovery in this case. However, while Plaintiff's counsel was able to secure a favorable result for Plaintiffs, as the Court noted above, this result was not exceptional. Thus, while the Court finds that this factor supports an award of the Ninth Circuit's 25% benchmark, it does not, on its own, support an upward adjustment in this case. *See Rose*, 2014 WL 4273358, at *12 (finding this factor supported benchmark 25% fee award where class counsel was "experienced TCPA litigators and clearly [had] a wealth of experience in this area").

### d.    The Contingent Nature of the Fee and the Financial Burden on Class Counsel

The contingent nature of the representation bears on the overall fairness and reasonableness of a fee request. *See In re Omnivision Techs.*, 559 F. Supp. 2d at 1047. The risk that counsel will not recover any award, as well as the financial burden accompanying the contingent nature of the representation, may justify a higher percentage fee award. *See id.* at 1049; *see also Vizcaino*, 290 F.3d at 1048–50.

Plaintiff's counsel indicates that it took this case on "a purely contingent basis," and that it agreed to advance all expenses associated with the case. (Fees Mot. at 17.) Therefore, Plaintiff's counsel avers that the risk associated with a contingency case as well as the opportunity costs associated with devoting sufficient time to the case warrant an upward adjustment of the benchmark award in this case. (*See* Fees Mot. at 17–18.) The Court agrees in part.

As one court has noted, where class counsel is experienced in TCPA litigation it "presumably would 'know how to pick a winner,'" thereby diminishing the risk it took. *Rose*, 2014 WL 4273358, at *12. Further, another court has held that because (1) a TCPA class action was litigated in its entirety over the course of two and a half years, the amount of hours expended were not so significant as to suggest significant opportunity

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 15-03194 BRO (GJSx) | | Date | March 23, 2017 |
|---|---|---|---|---|
| Title | JEFFREY A. THOMAS V. DUN AND BRADSTREET CREDIBILITY CORP. | | | |

cost, and, (2) "TCPA class actions are prone to settle," this factor did not weigh in favor of counsel's requested fee award. *Couser*, 125 F. Supp. 3d at 1047–48. The Court finds that the same considerations apply here. Based on Plaintiff's counsel's significant TCPA and UCL class action litigation, it appears it would have chosen to prosecute only a case in which it believed it had a significant chance of recovery. However, as explained above, the Court finds that the risks were significant in this case and Plaintiff's counsel was not guaranteed a recovery. Thus, while some of the risk was tempered due to Plaintiff's counsel extensive class action experience, the risk of no recovery due to the challenges to the merits of Plaintiff's claims supports a slight increase in the benchmark award, though it does not support Plaintiff's requested 30% fee award. Accordingly, the Court finds that this factor weighs in favor of a slight upward adjustment from the benchmark award.

### e.   Awards Made in Similar Cases

Next, Plaintiff's counsel provides a list of eight TCPA class action cases where the court has approved a fee award of at least 30% of the common fund. (*See* Fees Mot. at 18.) In addition, Plaintiff's counsel asserts that 30% is less than the "typical" class action fee award within the Ninth Circuit and this district. (*See* Fees Mot. at 18–19.) The Court disagrees with Plaintiff's counsel's assertion. As explained above, the Ninth Circuit has clearly established a 25% benchmark as the standard award of attorneys' fees in class action common fund cases. *In re Pac. Enters.*, 47 F.3d at 379 ("Twenty-five percent is the 'benchmark' that district courts should award in common fund cases."). Thus, even if some courts within this district and circuit have found that an upward adjustment is appropriate, 25% must be considered the "typical" starting point for attorneys' fees awards.

As to the cases Plaintiff provides, the Court finds that (1) they do not fully support Plaintiff's counsel's requested fee award in this case, and, (2) that other cases within this district suggest that a lower award is more appropriate. First, many of the cases Plaintiff's counsel cites are cases governed by the Seventh Circuit's "sliding scale" approach under which the attorneys' fees award percentage decreases as the settlement amount increases. *See In re Capital One*, 80 F. Supp. 3d at 804 (awarding approximately 21% of an over $75 million settlement as an attorneys' fees award); *see also Gehrich v. Chase Bank USA, N.A.*, No. 12 C 5510, 2016 WL 806549, at *16 (N.D. Ill. Mar. 2, 2016)

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 15-03194 BRO (GJSx) | Date | March 23, 2017 |
|----------|------------------------|------|----------------|
| Title    | JEFFREY A. THOMAS V. DUN AND BRADSTREET CREDIBILITY CORP. | | |

(adopting Seventh Circuit's sliding scale approach, under which the court awards 30% of the first $10 million of a settlement, 25% of the second $10 million, and so on). Plaintiff's counsel provides no authority—and the Court is unaware of any—indicating that the Ninth Circuit follows a similar approach.

Second, in *Rose*, the court held that where, in a similar case, several of the relevant factors did not support Plaintiff's requested fee award, a benchmark 25% fee award was not appropriate. *See Rose*, 2014 WL 4273358, at *12–*13. Ultimately, the court awarded approximately $2.5 million in fees based on an approximately $32 million settlement fund. *See id.* at *13. In addition, in *Couser*, the court determined that a 15% award of attorneys' fees was appropriate based on the above factors, resulting in a fee award of approximately $1.3 million based on a settlement fund of nearly $8.5 million. *See Couser*, 125 F. Supp. 3d at 1049. The Court recognizes, however, that other courts within this circuit have found awards at the benchmark amount (or higher) appropriate in TCPA class actions. *See Vandervort*, 8 F. Supp. 3d at 1210 (awarding 33% of $3.3 million common fund settlement); *Grannan*, 2012 WL 216522, at *10 (finding that benchmark 25% award was appropriate).

Therefore, in sum, the Court finds that as similar cases within this circuit have awarded both an increase and a decrease in the benchmark award in TCPA class actions, these cases do not fully support Plaintiff's counsel's requested attorneys' fees award of 30%, but they do support a slight upward adjustment from the benchmark.

## f.    Reaction of the Class

Finally, the reaction of the class is relevant in determining the overall fairness and reasonableness of an award of attorneys' fees. *See In re Heritage Bond Litig.*, No. 02-ML-1475-DT (RCX), 2005 WL 1594389, at *15 (C.D. Cal. June 10, 2005) ("The presence or absence of objections from the class is also a factor in determining the proper fee award."). Here, there are several objections to the requested attorneys' fees award.

First, Objector Pentz argues that Plaintiff's counsel's requested 30% award is "excessive" and that a more appropriate award is one closer to 15%.[10] (*See* Pentz Obj. at

---

[10] Plaintiff contends that the Court should be cautious in considering Objector Pentz's arguments as he and other members of his family have frequently appeared in similar cases to extort settlement fees from

LINK:

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 15-03194 BRO (GJSx) | | Date | March 23, 2017 |
|---|---|---|---|---|
| Title | JEFFREY A. THOMAS V. DUN AND BRADSTREET CREDIBILITY CORP. | | | |

5.) In addition, Objector Pentz raises several concerns regarding the appropriate weight to be given to each of the above factors. (*See* Pentz Obj. at 6–10.) Objector Pentz raises the following concerns: (1) the lodestar multiplier is too high to support a 30% attorneys' fees award in this case; (2) the prospective relief in this case is not sufficient injunctive relief and does not support an upward adjustment to the benchmark award; and, (3) Plaintiff's counsel's contingency risk and costs expended do not support an upward adjustment. (*See id.*) The Court generally agrees with each of his objections. For instance, the Court noted that the relief in this case, while beneficial to the class, does not constitute an exceptional recovery. In addition, as explained above, the contingency risk does not support Plaintiff's counsel's requested fee in this case, though it does support a slight upward adjustment from the benchmark. And, as addressed further below, the Court agrees with Objector Pentz that the lodestar multiplier in this case supports a lower attorneys' fees award than what Plaintiff's counsel requests.

Likewise, Objector Hall challenges the requested attorneys' fees award on several grounds.[11] (*See* Hall Obj.) First, he avers that federal law, not state law should apply to the award of attorneys' fees. (*See* Hall Obj. at 10–11.)[12] As explained above, the Court agrees. Next, Objector Hall argues that counsel's 30% request is too high based on the lodestar multiplier and that even the 25% benchmark is too high based on the enumerated factors. (*See* Hall Obj. at 11–16.) Like Objector Pentz, Objector Hall argues that a recovery of near $100 is typical for similar cases, the risk was not so great as to warrant

---

the parties. (*See* Obj. Response at 4–7.) But at oral argument, Plaintiff's counsel conceded that the Court should consider the merits of the objectors' arguments and indicated that he had no intention to suggest otherwise. Moreover, as addressed here, the Court finds that several of Objector Pentz's arguments have merit in this case.

[11] Plaintiff argues that the Court should be hesitant in considering Objector Hall's arguments because he is represented by Christopher Bandas, "a notorious professional objector." (Obj. Response at 2.) However, Objector Hall's local counsel is Timothy Hanigan of Lang, Hanigan & Carvalho, LLP, and Mr. Bandas indicates that he does not intend to make an appearance on behalf of himself or his firm in this case. (*See* Hall Obj. at 8.) Moreover, as addressed here, the Court finds that some of Objector Hall's arguments have merit.

[12] Page numbers associated with Objector's Hall's objections reference the ECF page numbering as his Objections are not separately paginated.

LINK:

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 15-03194 BRO (GJSx) | Date | March 23, 2017 |
|---|---|---|---|
| Title | JEFFREY A. THOMAS V. DUN AND BRADSTREET CREDIBILITY CORP. | | |

an upward adjustment, and other similar cases have awarded less than the benchmark amount.  (*See id.*)  Further, Objector Hall goes into detail in support of his averment that a lodestar multiplier of over 4.0 is unreasonable.  As addressed above (and, as to the lodestar multiplier, as will be addressed below), the Court agrees with Objector Hall's contention that a 30% fee award is inappropriate, but disagrees with his contention that an award slightly above the benchmark is not.

Next, Objector Hall argues that Plaintiff's counsel should not be permitted to include hours billed in a similar, but dismissed, TCPA class action in reaching its lodestar amount.  (*See* Hall Obj. at 19–20.)  The Court disagrees.  Courts have compensated class counsel for work performed in prior, related case where "the work performed advanced [the instant] class action."[13]  *Loretz v. Regal Stone, Ltd.*, 756 F. Supp. 2d 1203, 1214 (N.D. Cal. 2010).  Here, Plaintiff's counsel indicates that the work it performed in *Vidai v. Dun & Bradstreet Credibility Corp.*, a similar class action that was dismissed and for which Plaintiff's counsel was not compensated, benefitted the Class Members in this case.  (*See* Obj. Response at 24–25.)  Finally, Objector Hall also urges the Court not simply to award a lump sum of attorneys' fees but to allocate the fees amongst Plaintiff's counsel.  (Hall Obj. at 20–21.)  The Court declines to do so.  As Objector Hall notes, the Ninth Circuit has never reached the issue or placed such a burden on the district courts.  (*See* Hall Obj. at 21.)  The Court finds no reason to follow Objector Hall's proffered out-of-circuit authority when the Ninth Circuit has never suggested such a requirement.

### g.   Balancing the Factors

The Court finds that the factors in this case do not support Plaintiff's counsel's requested attorneys' fees award, though they do support a slight upward adjustment from the 25% benchmark.  Specifically, the Court finds that based on the results achieved, the significant risk Plaintiff's counsel undertook based on Defendant's possible defenses, the skill required, and the quality of work performed support a slight upward adjustment.  In addition, while Plaintiff provides cases within this circuit that have found an upward adjustment from the benchmark award appropriate, the Court has also found cases within

---

[13] Moreover, lodestar cross-check calculations need not be exact, as they merely serve "as a point of comparison by which to assess the reasonableness of a percentage award."  *Fernandez v. Victoria Secret Stores, LLC*, No. CV 06-04149 MMM (SHx), 2008 WL 8150856, at *14 (C.D. Cal. July 21, 2008).

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 15-03194 BRO (GJSx) | | Date | March 23, 2017 |
|----------|------------------------|---|------|----------------|
| Title | JEFFREY A. THOMAS V. DUN AND BRADSTREET CREDIBILITY CORP. | | | |

this circuit that have found downward adjustments from the benchmark award are warranted.  Thus, the Court finds that these cases do not support Plaintiff's requested award of 30%, but do support a slight upward adjustment from the benchmark.  Finally, the Court agrees with several of the objections made by Objectors Hall and Pentz, as addressed above.[14]  Accordingly, the Court finds that, balancing all of the factors, a slight upward adjustment from the Ninth Circuit's 25% benchmark award is warranted, and awards Plaintiff's counsel 27% of the common fund, or a total of $2,835,000 in attorneys' fees.  The Court will next perform a lodestar cross-check to determine whether the lodestar multiplier is appropriate in this case or whether a downward adjustment is warranted to make the lodestar multiplier more reasonable.

### h.    The Lodestar Cross-Check

Courts may apply the lodestar method as a "cross-check" on the reasonableness of a percentage-based fee award.  *Vizcaino*, 290 F.3d at 1050.  The lodestar "is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer." *In re Bluetooth*, 654 F.3d at 941.  A court may adjust the lodestar figure upward or downward by an appropriate multiplier to reflect "a host of 'reasonableness' factors, including the quality of representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment." *Id.* at 941–42 (internal quotation marks omitted).  Where the attorney's investment of time in the litigation is minimal, such as in the case of an early settlement, the lodestar calculation may favor a lower percentage. *Vizcaino*, 290 F.3d at 1050 n.5 ("The lodestar method is merely a cross-check on the reasonableness of a percentage figure, and it is widely recognized that the lodestar method creates incentives for counsel to expend more hours than may be necessary on litigating a case so as to recover a reasonable fee, since the lodestar method does not reward early settlement.").

---

[14] Plaintiff provides an expert report written by Professor Geoffrey P. Miller in support of their attorneys' fee request along with their response to Objectors Hall, Pentz, and Arbelaez.  (*See* Obj. Response, Ex. 1.)  Plaintiff's counsel explained at the hearing that this report was intended to provide context for common attorneys' fees awards in class action litigation in this district and throughout the country.

LINK:

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 15-03194 BRO (GJSx) | Date | March 23, 2017 |
|---|---|---|---|
| Title | JEFFREY A. THOMAS V. DUN AND BRADSTREET CREDIBILITY CORP. | | |

Plaintiff's counsel calculated its lodestar amount at the time of filing its Fees Motion as $631,748.50, comprised of approximately 652.9 hours spent by attorneys from Lieff, Cabraser, Heimann & Bernstein, LLP ("LCHB") (for a total of $328,268.50) and 449.6 hours by attorneys from Siri & Glimstad LLP ("SG") (for a total of $303,480). (Hutchinson Decl. ¶ 73; Siri Decl. ¶ 72.) Plaintiff's counsel claims that Jonathan Selbin, a partner at LCHB regularly charges $825 per hour for his time, Daniel Hutchinson, also a partner at LCHB regularly charges $600 per hour, John Spragens, an associate at LCHB charges $435 per hour, and Jennifer Rudnick, a paralegal at LCHB charges $345 per hour. (Hutchinson Decl. ¶ 78.) Plaintiff's counsel does not indicate how many hours each attorney has billed on this case. Aaron Siri, a partner at SG, charges $675 per hour. (Siri Decl. ¶ 77.)

On March 13, 2017, Plaintiff's counsel filed a Supplemental Declaration indicating that they have spent additional time working on the case and urging the Court to consider this additional time when determining the lodestar amount. (*See* Supp. Hutchinson Decl.) According to this Supplemental Declaration, LCHB attorneys have spent an additional 168.8 hours on this action, with a lodestar of $79,480.50, and SG has spent an additional 18.6 hours with a lodestar of $12,555. (Supp. Hutchinson Decl. ¶¶ 6–7.) Combining these additional amounts with Plaintiff's counsel's prior lodestar, the total lodestar is $723,784.

When performing the lodestar cross-check, the first step "requires the district court to determine a reasonable hourly rate for the fee applicant's services." *Cotton v. City of Eureka*, 889 F. Supp. 2d 1154, 1167 (N.D. Cal. 2012). "This determination is made by examining the prevailing market rates in the relevant community charged for similar services by lawyers of reasonably comparable skill, experience and reputation." *Id.* (internal quotation marks omitted). The relevant community is the district in which the case is proceeding. *See id.* (citing *Barjon v. Dalton*, 132 F.3d 496, 500 (9th Cir. 1997)). "The fee applicant has the burden of producing satisfactory evidence . . . that the requested rate is in line with those prevailing in the community." *Jordan v. Multnomah County*, 815 F.2d 1258, 1263 (9th Cir. 1987). The fee applicant may provide affidavits from the attorney who worked on the case, as well as affidavits from other area attorneys or examples of rates awarded to counsel in previous cases. *See Bellinghausen*, 306 F.R.D. at 262.

LINK:

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 15-03194 BRO (GJSx) | Date | March 23, 2017 |
|---|---|---|---|
| Title | JEFFREY A. THOMAS V. DUN AND BRADSTREET CREDIBILITY CORP. | | |

Plaintiffs' counsel provides examples of other federal courts in California and throughout the country—though none within this district—in which the Court has approved of LCHB's hourly rates. (*See* Hutchinson Decl. ¶¶ 81–82.) Plaintiff's counsel provides no similar examples supporting SG's requested rates. Nonetheless, upon conducting its own review of similar awards, the Court finds that district courts within California have found similar rates reasonable. *See Rose*, 2014 WL 4273358, at *7–*8 (approving of LCHB's requested rates ranging from $435 per hour for an associate to $775 per hour for a partner); *see also Chambers v. Whirlpool Corp.*, __ F. Supp. 3d __, No. CV 11-1733 FMO (JCGx), 2016 WL 5922456, at *14 (C.D. Cal. Oct. 11, 2016) (approving hourly rates between $485 and $750 per hour); *Hightower v. JPMorgan Chase Bank, N.A.*, No. CV 11-1802 PSG (PLAx), 2015 WL 9664959, at *11 (C.D. Cal. Aug. 4, 2015) (reducing hourly rate of partner in class action litigation from $750 to $620 per hour); *Kearney v. Hyundai Motor Am.*, No. SACV 09–1298–JST (MLGx), 2013 WL 3287996, at *8 (C.D. Cal. June 28, 2013) (approving hourly rates between $650 and $800 for class counsel in a consumer class action); *Parkinson v. Hyundai Motor Am.*, 796 F. Supp. 2d at 1172 (approving hourly rates between $445 and $675 for class counsel in a consumer class action); *POM Wonderful, LLC v. Purely Juice, Inc.*, No. CV 07–2633, 2008 WL 4351842, at *4 (C.D. Cal. Sept. 22, 2008) (finding rates of $475 to $750 for partners and $275 to $425 for associates reasonable in a consumer class action).

Though the Court is wary that Mr. Selbin's hourly rate of $825 per hour may be slightly high, "[t]he lodestar 'cross-check' need not be as exhaustive as a pure lodestar calculation" because it only "serves as a point of comparison by which to assess the reasonableness of a percentage award." *Fernandez*, 2008 WL 8150856, at *14. "As a result, the lodestar can be approximate and still serve its purpose." *Id.* Therefore, the Court finds that Plaintiff's counsel's proposed hourly rates are reasonable for the purposes of a lodestar cross-check.

Next, the Court examines whether the number of hours Plaintiffs' counsel expended was reasonable. Plaintiffs' counsel spent a total of approximately 1,289.9 hours on this case, which appears to include time spent investigating Plaintiff's claims, opposing Defendant's Motion to Dismiss, drafting a motion to compel, reviewing discovery materials, preparing for and participating in mediation, and the time spent

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 15-03194 BRO (GJSx) | | Date | March 23, 2017 |
|----------|------------------------|---|------|----------------|
| Title | **JEFFREY A. THOMAS V. DUN AND BRADSTREET CREDIBILITY CORP.** | | | |

seeking approval of, implementing, and overseeing the settlement and claims administration process. (*See* Fees Mot. at 20–21.) The Court finds this amount of time is reasonable. Courts have found similar time spent in TCPA class action litigation reasonable. *See Rose*, 2014 WL 4273358, at *8–*9 (reducing requested 2,500 hours of time to 1,700). Therefore, the Court finds that Plaintiffs' counsel's proposed lodestar calculation of $723,784 is a reasonable estimate under the lodestar method.

Thus, Plaintiff's counsel's requested percentage fee award of $3,150,000 results in a lodestar multiplier of approximately 4.35 ($3,150,000/$723,784). Based on the Court's award of 27% of the common fund, the lodestar multiplier becomes 3.92 ($2,835,000/$723,784). The Court finds that, as this adjusted award amount brings the lodestar multiplier under four, this award is reasonable. *See Vizcaino*, 290 F.3d at 1051 n.6 (recognizing that multipliers between one and four are most common); *see also Steiner v. Am. Broad. Co.*, 248 F. App'x 780, 783 (9th Cir. 2007) (affirming attorneys' fees award where lodestar multiplier was 6.85 because it fell "well within the range of multipliers that courts have allowed).

Therefore, the Court **GRANTS** Plaintiffs' counsel's request for attorneys' fees, but weighing all of the factors and considering the lodestar cross-check, finds that Plaintiff's counsel's requested award of 30% of the Settlement Fund is excessive. However, while the Court recognizes the Ninth Circuit sets the benchmark award at 25%, the Court finds that, here, based on the favorable results to the class, the significant risk Plaintiff's counsel undertook, the substantive challenges to Plaintiff's claims, and the guidance of other similar cases, a slight upward adjustment in the attorneys' fees award is appropriate. Accordingly, the Court awards Plaintiff's counsel 27% of the Settlement Fund, or $2,835,000. This results in a lodestar cross-check multiplier of approximately 3.92, a number well within the range allowed by the Ninth Circuit.[15]

//

---

[15] Plaintiff's counsel indicates that they will not be seeking the recovery of costs separately from their attorneys' fees award. (*See* Fees Mot. at 23–24.) Plaintiff's counsel does not indicate the amount of costs it has accrued up to this point.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 15-03194 BRO (GJSx) | Date | March 23, 2017 |
|---|---|---|---|
| Title | JEFFREY A. THOMAS V. DUN AND BRADSTREET CREDIBILITY CORP. | | |

### 4.   Plaintiff's Request for a Class Representative Service Award

Plaintiff also requests that the Court approve a $10,000 class representative service award for Plaintiff.  (Approval Mot. at 24–25.)  In the context of class action cases, incentive awards for the named representatives are discretionary but nevertheless "fairly typical." *Rodriguez*, 563 F.3d at 958.  Incentive awards are designed "to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Id.* at 958–59.  Factors to consider in determining whether to approve an incentive award include:

> (1) the risk to the class representative in commencing suit, both financial and otherwise; (2) the notoriety and personal difficulties encountered by the class representative; (3) the amount of time and effort spent by the class representative; (4) the duration of the litigation and; (5) the personal benefit (or lack thereof) enjoyed by the class representative as a result of the litigation.

*Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995).  Generally, in the Ninth Circuit, a $5,000 incentive award is presumed reasonable.  *See Harris v. Vector Mktg. Corp.*, No. C-08-5198 EMC, 2012 WL 381202, at *7 (N.D. Cal. Feb. 6, 2012).  Courts will, however, grant an award that exceeds $5,000 when warranted."  *Dyer v. Wells Fargo Bank, N.A.*, 303 F.R.D. 326, 335 (N.D. Cal. Oct. 22, 2014) (reducing $15,000 proposed incentive award to $10,000); *see also Bellinghausen*, 306 F.R.D. at 268 (noting that "[h]igher awards are sometimes given in cases involving much larger settlement amounts" and awarding $10,000 incentive award in a $1 million settlement).

Here, Plaintiff contends that a class representative service award is appropriate because Plaintiff (1) subjected himself to public attention, (2) provided information to Plaintiff's counsel for the complaint, (3) reviewed pleadings, (4) communicated "on a regular basis" with counsel and "kept himself informed" of how the litigation progressed, (5) reviewed and approved the proposed settlement, and, (6) submitted to extensive discovery, including being deposed.  (Fees Mot. at 24–25.)  In addition, Plaintiff turned down a Rule 68 offer from Defendant to pursue this class settlement.  (Fees Mot. at 25.)

LINK:

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 15-03194 BRO (GJSx) | Date | March 23, 2017 |
|----------|------------------------|------|----------------|
| Title | JEFFREY A. THOMAS V. DUN AND BRADSTREET CREDIBILITY CORP. | | |

Based on Plaintiff's continued involvement in the litigation, the time he spent in providing discovery and reviewing the settlement, and the size of the settlement, the Court finds that a class representative service award of $10,000 is appropriate. Accordingly, the Court **GRANTS** Plaintiff's request for a $10,000 class representative service award.

### 5.   KCC's Payment for Administrative Costs

Finally, though Plaintiff does not address it in his papers,[16] it appears that the parties have agreed to compensate KCC $800,000 for its work as Claims Administrator. (*See* Powell Decl. ¶ 15; Dkt. No. 58 at 10.)  "Courts regularly award administrative costs associated with providing notice to the class."  *Bellinghausen*, 306 F.R.D. at 266.  Here, KCC's requested administrative costs appear to be reasonable based on other similar cases.  *See Franklin v. Wells Fargo Bank, N.A.*, No. 14cv2349-MMA (BGS), 2016 WL 402249, at *7 (S.D. Cal. Jan. 29, 2016) (approving costs of approximately $2.7 million for claims administrator in case involving nearly $14 million settlement with approximately 4 million class members); *Grannan*, 2012 WL 216522, at *11 (awarding approximately $121,000 in costs to claims administrator where settlement was for $1 million and included nearly 138,000 potential class members).  Accordingly, the Court **GRANTS** KCC's request for a $800,000 payment out of the settlement proceeds to cover administrative costs.

## II.   CONCLUSION

For the reasons discussed above, the Court holds as follows:

1.   The Court **GRANTS** Plaintiff's Motion for Final Approval of the parties' settlement;

2.   The Court **GRANTS** Plaintiff's counsel's Motion for Attorneys' Fees, but in the modified amount of $2,835,000;

3.   The Court **GRANTS** Plaintiff's request for a class representative service award in the amount of $10,000; and,

---

[16] Plaintiff's counsel confirmed at the hearing that KCC's costs will be paid out of the gross settlement amount.

LINK:

## UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL

| Case No. | CV 15-03194 BRO (GJSx) | Date | March 23, 2017 |
|----------|------------------------|------|----------------|
| Title | JEFFREY A. THOMAS V. DUN AND BRADSTREET CREDIBILITY CORP. | | |

4.     The Court **GRANTS** KCC's request for $800,000 to reimburse it for the costs of claims administration.

Plaintiff is **ORDERED** to lodge a proposed Judgment consistent with this **ORDER** no later than **Wednesday, March 29, 2017, by 4:00 p.m.**

   **IT IS SO ORDERED.**                                                   :

|  | Initials of Preparer | rf |
|--|----------------------|----|